IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STEVEN L. MARKOS, | : | |
| on behalf of himself and all | : | |
| others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action File No. |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., | : | **Jury Trial Demanded** |
| | : | |
| Defendant. | : | |
| ——————————————— | : | |

## CLASS ACTION COMPLAINT

1.   Plaintiff STEVEN L. MARKOS ("MARKOS"), on behalf of himself and all
others similarly situated, alleges defendant Wells Fargo Bank, N.A.
("WELLS FARGO") violated the Telephone Consumer Protection Act, 47
U.S.C. § 227 ("TCPA"), by initiating non-emergency telephone calls using
an automatic telephone dialing system to cellular telephone numbers without
the prior express consent of the subscribers of those cellular telephone
numbers.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1337 and 47
U.S.C. § 227(b)(3).

3.     This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to

hear Plaintiff's state law claims as they are so related to Plaintiff's TCPA

claim that they form part of the same case or controversy.

4.     Venue in this District is proper because the Plaintiff resides here and the

Defendants transact business here.

## PARTIES

5.     Plaintiff is a natural person who resides in the Northern District of Georgia.

6.     Plaintiff is a subscriber for his cellular telephone services for telephone

number (404) 693-0147.

7.     Defendant WELLS FARGO BANK, N.A. [hereinafter "WELLS FARGO"]

is a national banking association which boasts assets of $1.7 trillion dollars

and a stock market value of $283 Billion dollars as of the close of 2014.

8.     WELLS FARGO is headquartered and has its corporate offices at 420

Montgomery Street, San Francisco, CA  94104.

9.     WELLS FARGO has maintained a call center in Iowa and many of the calls

to class members were generated from this location.

10.    WELLS FARGO's website as of April 9, 2015 states that it is "the 8th

Biggest Public Company in the World ....with more than 8,700 locations and

over 70 million customers."

2

https://www08.wellsfargomedia.com/downloads/pdf/about/wellsfargotoday.pdf

11.  WELLS FARGO has numerous banking branches in the metropolitan Atlanta area.

12.  Other defendants may be discovered in the course of litigation, and Plaintiff respectfully prays that the Court will permit the addition of later discovered parties upon motion.

13.  WELLS FARGO may be served by personal service on its registered agent at its registered office in Georgia, to wit: Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA  30092.

## FACTUAL ALLEGATIONS

14.  In the four year period preceding the filing of this action, WELLS FARGO, its predecessors in interest and/or vendors have made numerous telephone calls to Plaintiff's cellular telephone number, (404) 693-0147, in an attempt to collect a secured debt on a home equity line of credit.

15.  The telephone calls were made using a predictive dialer.

16.  In some of the telephone calls, defendant left an unattended and pre-recorded voice mail message.

3

17.   In other telephone calls, WELLS FARGO left messages from "live" collection agents which had a pause at the beginning of the message before the WELLS FARGO representative began speaking.

18.   A pause at the beginning of a message or call is characteristic of predictive dialer technology where the dialer connects a call to a consumer and then connects an agent to the call.

19.   WELLS FARGO has historically used and has registered with various regulatory agencies a dialing system manufactured by Sun Microsystems.

20.   WELLS FARGO also uses software on its dialing system(s) which has the capacity to predictively dial in its telephone calls to telephone number (404) 693-0147.

21.   WELLS FARGO's call center(s) and dialing infrastructure have the capacity to store a database of telephone numbers.

22.   WELLS FARGO's call center(s) and dialing infrastructure have the capacity to dial telephone numbers from a stored list either at random or in some sequence.

23.   WELLS FARGO programs telephone numbers into its dialing system(s) which then dials those numbers at a rate to ensure that a customer representative will be available when a consumer answers the telephone.

24.  WELLS FARGO's dialing system(s) has the capacity to dial from a list of telephone numbers without human intervention.

25.  The telephone calls to Plaintiff were initiated by Defendant WELLS FARGO using an automatic telephone dialing system.

26.  Plaintiff did not initiate the loan with WELLS FARGO, but rather initiated it with Wachovia Bank, N.A. and never provided express permission or consent for either Wachovia Bank, N.A. or WELLS FARGO to make the telephone calls to his cellular telephone number.

27.  Plaintiff was specifically requested to authorize "Automated Dialing System Calls" by a Wells Fargo employee, to which he unequivocally declined to give such authorization.

28.  Plaintiff has orally advised more than one WELLS FARGO employee that he did not want WELLS FARGO to contact him on his cellular telephone number after expressly declining to consent to autodialed calls.

29.  WELLS FARGO employees specifically advised that they would not honor a verbal request to cease calling Plaintiff's cellular telephone number and that they would continue to call his cellular telephone number.

30.  WELLS FARGO employees said it was their policy only to honor written cease communication requests that were made to their Iowa corporate office.

5

31.    Upon information and belief, WELLS FARGO's practice was to make
       computerized notations regarding oral requests to cease and desist, including
       but not limited to (a) hand-typed notes and (b) placement of a brief (e.g.
       three-day) "hold" on calls, for alleged purposes of allowing the consumer to
       request that calls cease and desist in writing. However, if Wells Fargo did
       not receive a written cease and desist, then it would automatically load the
       cellular telephone number back into its autodialer. There were likely other
       computerized methodologies for keeping track of do not call requests as
       well.

32.    WELLS FARGO continued calling Plaintiff after one or more clear requests
       not to call his cellular telephone number by leaving unattended and pre-
       recorded messages.

33.    WELLS FARGO continued calling Plaintiff after one or more clear requests
       not to call his cellular telephone number by leaving live messages that
       utilized automated and predictive dialing technology.

34.    Defendant knew about the TCPA before making the calls to plaintiff and the
       class, but made these autodialed calls to cellular phones in spite of such
       knowledge.

6

35. WELLS FARGO was a defendant in the case of *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) in which the Eleventh Circuit cited *Osorio v. State Farm Bank, FSB*, 746 F. 3d 1242 (11th Cir. 2014).

36. By virtue of the Eleventh Circuit's decision in *Breslow*, WELLS FARGO was made aware of the Eleventh Circuit's holding in *Osorio* that it must honor verbal requests to cease calling using automated dialers and prerecorded voice messages.

37. WELLS FARGO has continued calling Plaintiff and other consumers' cellular telephone numbers using a predictive dialer and leaving unattended and prerecorded messages after requests to cease calling despite its knowledge of the Eleventh Circuit's holding in *Osorio*.

38. WELLS FARGO had previously settled multiple TCPA class actions involving millions of class members who received TCPA violative calls to their cell phones in regard to collection calls on primary home mortgages in the case of *Alberto Malta, et al. v. The Federal Loan Mortgage Corporation A/K/A Freddie Mac; and Wells Fargo Home Mortgage, Inc.*, Case No. 3:10-cv-01290-BEN-NLS, USDC SDCA.

39. The telephone calls made by WELLS FARGO were intentionally, willfully and knowingly initiated. Moreover, WELLS FARGO knew that it did not

have plaintiff or the subclass members' consent to make these calls, by

virtue of having received and ignored requests that calls stop, and because it

lost the *Breslow* appeal, but made the calls anyway.

40.    The telephone calls were not initiated by accident or mistake.


## CLASS ACTION ALLEGATION

41.    Plaintiff is a member of and seeks to bring this action on behalf of himself

and on behalf of all other similarly situated individuals (hereinafter the

"Class" as well as "Subclass One").

42.    This action is brought by Plaintiff on behalf of the Class of individuals

defined as (i) all persons to whom a call was initiated by either WELLS

FARGO or some vendor on its behalf (ii) to such person's cellular telephone

number (iii) using an unattended telephone message and/or the same or

similar telephone system(s) WELLS FARGO, or any person on its behalf,

used to call (404) 693-0147, (iv) in the four year period preceding the filing

of this action (v) and where Wells Fargo did not have permission to make

the call.


8

43.     Plaintiff also seeks to represent, and is a member of, Subclass One, consisting of all persons within the Class, who Wells Fargo called after it had received notification that it did not have permission to call.

44.     Excluded from the class are claims related to any calls released as part of prior settlements, including but not limited to *Malta v. Wells Fargo Home Mortgage, Inc.*, 3:10-cv-1290-BEN-NLS (S.D.Cal.), or *Franklin v. Wells Fargo Bank, N.A.*, 14-cv-2349-MMA (BGS)  (S.D.Cal.). Defendant is in exclusive possession, custody and control of the list of persons who were class members in those, and any other, cases. And while there are other cases pending against Wells Fargo, for example, *McLean v. CBV Collection Services, LTD* et al, 1:14-cv-7789 (N.D.Ill.) and *Luster v. Wells Fargo Dealer Services, Inc.*, 1:15-cv-01058-MHC (N.D. Ga.), counsel does not believe the proposed class members' claims in this matter overlaps with those cases. It is not Counsel's intent to have overlapping classes, and any overlap will be ameliorated through amendment if facts show that they do overlap.

45.     The exact size of the class is information within the exclusive knowledge of the defendants.

46.   The class and subclass are so numerous that joinder of all members is impractical.

47.   The allegation of the previous paragraph is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  This allegation is based upon the following information: 1) Plaintiff himself received such calls to his cellular telephone from multiple collection agents of WELLS FARGO indicating Defendant did not scrub to remove cellular telephone numbers; 2) the very purpose of automated dialers is to call numerous persons in a short amount of time; and 3) the sheer size and national scope of WELLS FARGO.

48.   There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. The principal issues are:

   a.   Whether WELLS FARGO's dialing system constitutes an automatic telephone dialing system under the TCPA and/or the FCC's rules;

   b.   Whether WELLS FARGO's unattended messages used an artificial or prerecorded voice under the TCPA and/or the FCC's rules; and

      c.  Whether the telephone calls were made knowingly or willfully.

49.    The claims of the Plaintiff are typical of those of the class members.  All are based on the same facts and legal theories.

50.    Plaintiff will fairly and adequately protect the interests of the class.  He has retained counsel experienced in handling TCPA robocall actions and class actions.  Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this action.

51.    Certification of the class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendants have acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

52.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that:

a.    The questions of law or fact common to the members of the class predominate over any questions affecting an individual member

b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment will permit a large number of similarly situated persons to prosecute their common claims relating to Defendant's autodialed calls to their

11

cellular telephones in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual lawsuits would entail. Absent a class action, many members of the class will likely not even obtain relief, whether because they are unaware of their right to relief from the harm caused by Defendant's illegal practices, due to the prohibitive time and monetary cost inherent in individual litigation, or otherwise.

53.     Plaintiff requests certification of a hybrid class pursuant to Fed. R. Civ. P. 23(b)(2) and (3) for monetary damages and injunctive relief.

## CAUSES OF ACTION

## COUNT ONE: TELEPHONE CONSUMER PROTECTION ACT

54.     The acts of Defendants constitute violations of the Telephone Consumer Protection Act.

55.     Defendants' violations of the TCPA include, but are not limited to, the following:

Making and/or initiating telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone

number assigned to a cellular telephone service, in violation of 47

U.S.C. § 227(b)(1)(A)(iii) and 47 CFR §  64.1200(a)(1)(iii).

56.   As a result of Defendants' actions, Plaintiff and the members of the class are

entitled to an award of actual damages or $500.00, whichever is greater, for

each such violation and an injunction prohibiting future conduct in violation

of the TCPA.

57.   Defendants' violations were committed willfully and knowingly.

58.   Plaintiff, on behalf of himself and the class, requests the court treble

damages pursuant to 47 U.S.C. § 227(b)(3).

59.   Plaintiff requests, on behalf of himself and the class, that Defendants be

enjoined from future TCPA violations.


WHEREFORE, Plaintiff requests that the Court enter judgment in favor of

himself and the class he seeks to represent against Defendants, as follows:

A.   Certification of this matter to proceed as a class action;

B.   Damages pursuant to 47 U.S.C. § 227(b)(3)(B);

C.   Treble damages pursuant to 47 U.S.C. § 227(b)(3);

D.   Injunctive relief 47 U.S.C. § 227(b)(3)(A) preventing future

conduct by the defendants in violation of the TCPA;

13

E.   Costs of this Action pursuant to Fed. R. Civ. P. 54; and

F.   Such further and additional relief as the court deems just and

proper.

Plaintiff herein demands a trial by jury on all issues so triable.

Respectfully submitted,

SKAAR & FEAGLE, LLP

by:   /s/ James M. Feagle
James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
2374 Main Street
Suite B
Tucker, GA 30084
404 / 373-1970
404 / 601-1855 fax

Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
Georgia Bar No. 649610
krisskaar@aol.com
133 Mirramont Lake Drive
Woodstock, GA  30189
770 / 427-5600
404 / 601-1855 fax

14

**BURKE LAW OFFICES, LLC**

Alexander H. Burke
*Application Pro Hac Vice forthcoming*
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

ATTORNEYS FOR PLAINTIFF