# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Steven L. Markos, Tiffany Davis, and Gregory Page, on behalf of themselves and all others similarly situated, | Case No. 1:15-cv-01156-LMM |
| Plaintiffs, | |
| v. | |
| Wells Fargo Bank, N.A., | |
| Defendant, | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................1

II.  BACKGROUND ....................................................................2

   A.   Summary of Plaintiffs' Allegations .....................................2

   B.   Procedural Background ..................................................3

   C.   Settlement Negotiations ................................................5

III. MATERIAL TERMS OF THE SETTLEMENT ...........................................5

   A.   The Settlement Class ...................................................5

   B.   Monetary Relief .........................................................6

   C.   Class Release ...........................................................8

   D.   Class Representative Service Awards, Attorneys' Fees, and Costs .........................................................................9

   E.   Administration and Notice .............................................9

IV.  ARGUMENT ......................................................................11

   A.   Preliminary Approval of the Settlement is Appropriate. ..................11

      1.   The Settlement Provides Substantial Relief, Particularly in Light of the Risks...............................................12

         a.   The Monetary Amount Offered in Settlement. ........................................................13

         b.   The Strength of Plaintiffs' Case. .........................14

      2.   Continued Litigation is Likely to be Complex, Lengthy, and Expensive. ......................................................18

      3.   There is No Opposition to the Settlement................................18

      4.   The Stage of the Proceedings Supports Preliminary Approval.................................................................19

   B.   The Settlement Class Should Be Certified...............................20

      1.   Numerosity...........................................................21

      2.   Commonality.........................................................21

# TABLE OF CONTENTS
## (continued)

Page

3.   Typicality ..................................................................22

4.   Adequacy ..................................................................22

5.   Predominance..........................................................23

6.   Superiority...............................................................24

C.   Approval of the Proposed Class Notice is Warranted........................25

V.   CONCLUSION...........................................................................25

# TABLE OF AUTHORITIES

Page

**Cases**

*Adams v. AllianceOne Receivables Mgmt. Inc.*,
No. 08-cv-00248 (S.D. Cal.) ...............................................................14

*Aliano v. Joe Caputo & Sons—Algonquin, Inc.*,
No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011)...................17

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ...........................................................................24

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ........................................................................23

*Arthur v. Sallie Mae Inc.*,
No. 10-cv-00198 (W.D. Wash.) ...........................................................13

*Arthur v. Sallie Mae, Inc.*,
No. 10-cv-132413, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012).................15

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984)......................................... 11, 12, 13, 19

*Blessing v. Sirius XM Radio Inc.*,
507 F. App'x 1(2d Cir. 2012)...............................................................20

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) ..........................................................................17

*Carriuolo v. Gen. Motors. Co.*,
N. 15-14442, 2016 WL 2870025 (11th Cir. May 17, 2016) ......................... 23, 24

*Chapman v. First Index, Inc.*,
No. 09 C 5555, 2014 WL 840565 (N.D. Ill. Mar. 4, 2014) (citing cases),
*aff'd in part*, 796 F.3d 783 (7th Cir. 2015) .......................................16

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
258 F.R.D. 545 (N.D. Ga. 2007) ................................................. 18, 20

*Connor v. JPMorgan Chase Bank*,
No. 10 CV 1284 (S.D. Cal.) .................................................................14

*Duke v. Bank of Am., N.A.*,
No. 5:12-cv-04009 (N.D. Cal.)..............................................................13

1305786.8

*Figueroa v. Sharper Image Corp.*,
  517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................................................. 12

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
  No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ............... 22

*Gehrich v. Chase Bank USA, N.A.*,
  No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 3, 2016) .................... 13

*Greco v. Ginn Dev. Co., LLC*,
  635 F. App'x 628 (11th Cir. 2015) ........................................................ 20

*In re Capital One Tel. Consumer Protection Act Litig.*,
  No. 12-cv-10064 (N.D. Ill.) ................................................................. 14

*In re Checking Account Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011) .......................................................... 12

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ..................................................... 13, 14

*In re Netback, Inc. Sec. Litig.*,
  259 F.R.D. 656 (N.D. Ga. 2009) .......................................................... 21

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) .............................................................. 11

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ..................................................... 18, 19

*Karhu v. Vital Pharm., Inc.*,
  621 F. App'x 945 (11th Cir. 2015) ........................................................ 21

*Kennedy v. Tallent*,
  710 F.2d 711 (11th Cir. 1983) .............................................................. 24

*Kirkpatrick v. J.C. Bradford & Co.*,
  827 F.2d 718 (11th Cir. 1987) ......................................................... 22, 23

*Kornberg v. Carnival Cruise Lines, Inc.*,
  741 F.2d 1332 (11th Cir. 1984) ............................................................ 22

*Kramer v. Autobytel*,
  No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ..... 14

*Malta v. Fed. Home Loan Mortg. Corp.*,
  No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ........... 13, 24

1305786.8

# TABLE OF AUTHORITIES
## (continued)

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
    289 F.R.D. 674 (S.D. Fla. 2013) ..........................................................16

*Melanie K. v. Horton*,
    No. 1:14-cv-710, 2015 WL 1799808 (N.D. Ga. Apr. 15, 2015) ..........11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................25

*Palmer v. Sprint Nextel Corp.*,
    No. 09-cv-01211, (W.D. Wash.) ..........................................................14

*Picchi v. World Fin. Network Bank*,
    No. 11-CV-61797 (S.D. Fla.) ................................................................13

*Pierre-Val v. Buccaneers Ltd. P'ship*,
    No. 8:14-cv-01182, 2015 WL 3776918 (M.D. Fla. June 17, 2015) ....13

*Poertner v. Gillette Co.*,
    618 F. App'x 624 (11th Cir. 2015) ......................................................20

*Spokeo v. Robins*,
    136 S. Ct. 1540 (2016) ........................................................................17

*Synfuel Techs., Inc. v. DHL Exp. (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ...............................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................21

*Wilkins v. HSBC Bank Nev., N.A.*,
    No. 14-cv-190 (N.D. Ill.) ......................................................................14

**Statutes**

47 U.S.C. § 227(b)(1)(A) ............................................................................1

47 U.S.C. § 227(b)(1)(A)(iii) ......................................................................2

47 U.S.C. § 227(b)(3) .................................................................................2

**Rules**

Fed. R. Civ. P. 23 ............................................................................... 20, 25

Fed. R. Civ. P. 23(a) ................................................................................20

Fed. R. Civ. P. 23(a)(1) ............................................................................21

Fed. R. Civ. P. 23(a)(2)..............................................................21

Fed. R. Civ. P. 23(a)(3)..............................................................22

Fed. R. Civ. P. 23(a)(4)..............................................................22

Fed. R. Civ. P. 23(b)..................................................................20

Fed. R. Civ. P. 23(b)(3).................................................... 20, 23, 24

Fed. R. Civ. P. 23(e)........................................................... 11, 12

Fed. R. Civ. P. 23(e)(1)(B) .........................................................25

Fed. R. Civ. P. 68 .....................................................................9

**Other Authorities**

2 McLaughlin on Class Actions § 6:7 (8th ed. 2011)............................20

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) ........................15

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, 62 Communications Reg. (P&F) 1539, 2015 WL 4387780 (F.C.C.) .................16

*Manual for Complex Litigation (Fourth)* § 21.312 (2004).....................25

Rubenstein, Newberg on Class Actions  (5th ed. 2015)...................... 11, 12, 19, 24

1305786.8

# I.    INTRODUCTION

Plaintiffs Steven L. Markos, Tiffany Davis, and Gregory Page respectfully move the Court for preliminary approval of a nationwide class action settlement ("Settlement") reached with Defendant Wells Fargo Bank, N.A.[1]  Plaintiffs allege that Wells Fargo called Plaintiffs and Settlement Class Members on their cellular telephones through the use of an automatic telephone dialing system or by using an artificial or prerecorded voice without Plaintiffs' or Class Members' prior express consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A). The calls at issue here were all non-emergency, debt-collection calls and texts made in connection with mortgage loans.

The Settlement was reached only after good faith, contentious, arm's-length negotiations, with the assistance of an experienced and well-respected private mediator, Hunter R. Hughes.  The Settlement provides excellent value for the class.  Specifically, Wells Fargo will pay a non-reversionary cash sum of approximately $16,319,000, to be distributed (after deductions for cost of notice, claims administration, and Court-awarded attorneys' fees and costs) on a pro rata

---

[1] The Settlement is attached as Exhibit 1.  Unless otherwise stated, all capitalized terms in this Memorandum carry the same meaning as defined in the Settlement.

basis to the Class Members who file qualified claims.[2]  Based upon the size of the fund, the number of class members, and Class Counsel's experience with over a dozen similar large settlements, the expected per-class-member cash award, while dependent upon the number of claims, may be in the range of $25 to $75.  Ex. 2 (Hutchinson Decl.) at ¶ 37.

Plaintiffs respectfully submit that the proposed Settlement is well within the range of possible approval, and request that the Court grant preliminary approval, certify the Settlement Class, and order Notice to the Class.

## II.     BACKGROUND

### A.     Summary of Plaintiffs' Allegations

The TCPA regulates, *inter alia*, the use of automated telephone equipment, or "auto dialers" and prohibits the use of auto dialers or an artificial or prerecorded voice to call a wireless number absent an emergency or the prior express consent of the called party.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides for injunctive relief, statutory damages of $500 per violation, and treble damages of $1,500 for willful or knowing violations.  47 U.S.C. § 227(b)(3).

---

[2] The final Settlement Fund amount will be determined through confirmatory discovery to establish the Final Class Size, and will be "trued up" prior to Final Approval to account for any additional class members so that the Court will know exactly the amount and the class numbers.

Wells Fargo services Home Equity Loans and Residential Mortgage Loans made by Wells Fargo or by a prior lender and assigned to Wells Fargo (the "Loans"). Dkt. No 33-1 (Am. Compl.), at ¶¶ 13-15; Settlement at ¶¶ 2.23, 2.31. Plaintiffs allege Wells Fargo called their cell phones (and those of class members) in connection with the Loans using auto dialers and/or artificial or prerecorded voices without prior express consent. Dkt. No 33-1, at ¶¶ 13-34. Plaintiffs seek statutory damages for Wells Fargo's alleged violations of the TCPA.

The parties have sharply opposing positions on issues central to Plaintiffs' claims, including whether Plaintiffs and class members consented to the calls at issue, whether Plaintiffs and class members have standing, and whether the case is appropriate for class certification.

## B.    <u>Procedural Background</u>

On April 14, 2015, Plaintiff Markos filed this class action in the Northern District of Georgia against Wells Fargo, Case No. 1:15-cv-01156 (N.D. Ga.), alleging that Wells Fargo made calls to his cell phone using an automatic telephone dialing system and/or prerecorded voice without prior express consent. *Id.*, Dkt. No. 1. Wells Fargo answered on June 5, 2015. *Id.*, Dkt. No. 7. On November 30, 2015, this Court stayed the case for mediation, and extended the stay thereafter.

*Id.*, Dkt. Nos. 19, 21, 23.  On June 29, 2016, Plaintiffs filed a motion for leave to amend the complaint to include Page and Davis as named plainitffs.  Dkt. No. 33.

On July 27, 2015, Plaintiff Page filed a class action in the Northern District of Illinois against Wells Fargo, Case No. 1:15-cv-06511 (N.D. Ill.), alleging that Wells Fargo made calls to his cell phone using an automatic telephone dialing system and/or prerecorded voice without prior express consent.  *Id.*, Dkt. No. 1.  Subsquently, Page propounded discovery requests upon Defendant including discovery seeking class data.  On October 17, 2015, the Court denied Wells Fargo's motion to strike the class allegations.  *Id.*, Dkt. No. 35.  On October 19, 2015, the Court stayed the case for mediation.  *Id.*, Dkt. No. 37.

On August 5, 2015, Davis filed a class action in the State Court of Cobb County, Georgia, Case No. 15 A 1891-1.  The case was removed to the Northern District of Georgia, Case No. 1:15-cv-3140.  Davis alleged that Wells Fargo made calls to her cell phone using an automatic telephone dialing system and/or prerecorded voice without prior express consent.  *Id.*, Dkt. No. 1. On November 25, 2015, the Court stayed the case for mediation, and extended the stay thereafter. *Id.*, Dkt. Nos. 19, 21, 23.

## C.    Settlement Negotiations

The Settlement was reached only after good faith, contentious, arm's-length negotiations. All settlement discussions took place under the direction of Hunter R. Hughes, an experienced and well-respected private mediator. Ex. 2 (Hutchinson Decl.) at ¶ 32. To facilitate mediation, the parties conducted an extensive investigation and discovery, and submitted detailed mediation submissions setting forth their respective views on the cases. *Id.* at ¶¶ 28-31.

The parties participated in an all-day in-person mediation with Mr. Hughes on January 13, 2016. *Id.* at ¶ 32. Although the mediation was productive, the parties were unable to reach a resolution at that time. *Id.* at ¶¶ 32-33. With Mr. Hughes' assistance the parties continued to negotiate over the course of several months. *Id.* at ¶ 34. An MOU was executed on January 25, 2016, and a final Settlement Agreement was executed on June 10, 2016. The parties initiated additional confirmatory discovery to confirm the Final Class Size, including a deposition of Darrell Hunt to be held on July 13, 2016; *Id.* at ¶ 35; *see also* Settlement at ¶¶ 4.01-02.

## III.    MATERIAL TERMS OF THE SETTLEMENT

### A.    The Settlement Class

The proposed Settlement Class is defined as:

> All users or subscribers to a wireless or cellular service within the United States who used or subscribed to a phone number to which Wells Fargo made or initiated one or more Calls during the Class Period using any automated dialing technology or artificial or prerecorded voice technology, according to Wells Fargo's available records, and who are within Subclass One and/or Two.

Settlement at ¶ 2.33.

Subclass One consists of "persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Residential Mortgage Loan." *Id.* at ¶ 2.33(a). Subclass Two consists of "persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Home Equity Loan. *Id.* at ¶ 2.33(b). A person who is a member of both Subclasses is eligible to make two claims on the Settlement Fund.

## B. <u>Monetary Relief</u>

The Settlement requires Well Fargo to create a non-reversionary cash Settlement Fund. *Id.* at ¶ 4.04. The parties' good faith estimate of the number of Class Members (the Preliminary Class Size) is 3,296,755, which creates an estimated Settlement Fund of $16,318,937.25. *Id.* at ¶ 2.28.

The parties have been conducting confirmatory discovery to determine the Final Class Size and the corresponding Settlement Fund. *Id.* at ¶ 4.01. For

purposes of calculating the Preliminary and Final Class Sizes, a unique cell phone number that has been called in connection with both Subclass One and Subclass Two will be counted twice. *Id.* at ¶ 4.03.[3]

Each Class Member who files a timely and valid claim will be entitled to a Cash Award. *Id.* at ¶¶ 4.05, 4.06. Class Members who are members of both Subclasses are entitled to make two claims and receive two Cash Awards. *Id.* at ¶ 4.05. The amount of each Cash Award is the Class Member's pro rata share of the Settlement Fund minus the Settlement Costs. *Id.* at ¶ 4.06. Settlement Costs include Court-approved attorneys' fees and costs, Court-approved incentive awards, and costs of notice and claims administration. *Id.* No amount of the Settlement Fund will revert to Wells Fargo. Although it is not possible to predict the precise amount of the Cash Awards until all claims have been submitted, Class Counsel, based on their experience in similar TCPA class actions, conservatively estimate that each Cash Award, while dependent upon the number of claims, may be in the range of $25 to $75. Ex. 2 (Hutchinson Decl.) at ¶ 37. Checks for Cash

---

[3] If confirmatory discovery reveals that the Final Class size is greater than 110% of the Preliminary Class Size, the parties have agreed to negotiate in good faith to reach agreement regarding the scope of the class to be included in the Settlement. No other terms of the Settlement are subject to renegotiation. *Id.* at ¶ 4.02.

Awards will remain valid for 210 days from the date of the check. Settlement at ¶¶ 7.04(e) & (f).

If uncashed checks permit a second pro rata distribution equal to or greater than $1.00 per qualifying claimant, the Claims Administrator will make a second pro rata distribution to Settlement Class Members who cashed settlement checks. *Id.* at ¶ 7.04(e). Only if a second distribution is not made, or if checks remain uncashed after the second distribution, will the uncashed amount be paid *cy pres* to a non-profit organization, subject to Court approval. *Id.* at ¶ 7.04(f).

### C.    Class Release

Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims "that arise out of [Wells Fargo's] use of an 'automatic telephone dialing system' or 'artificial or prerecorded voice' to contact or attempt to contact Settlement Class Members in connection with a Residential Mortgage Loan and/or Home Equity Loan during the Class Period." *Id.* at ¶13.01. The Class Period applicable to Subclass One is November 17, 2011 to February 29, 2016, and the Class Period applicable to Subclass Two is April 14, 2011 to February 29, 2016. *Id.* at ¶ 2.13. The Release is tailored not just to calls made in alleged violation of the TPCA, but

specifically to calls made in connection with the specified types of mortgage loans during the applicable Class Period.

**D.**     **Class Representative Service Awards, Attorneys' Fees, and Costs**

Prior to the Final Approval hearing, the Class Representatives will ask the Court to award them service awards for the time and effort they have personally invested in the case, including declining offers of judgment pursuant to Rule of Civil Procedure 68.  *Id.* at ¶ 5.03.  Wells Fargo agrees not to object to such incentive payments to be paid to Davis, Markos, and Page from the Settlement Fund provided that the payments do not exceed $60,000 in the aggregate or $20,000 for each Class Representative, subject to Court approval.  *Id.*

Prior to the Final Approval hearing, Class Counsel will apply to the Court for an award of attorneys' fees and costs of 30% of the Settlement Fund.  *Id.* at ¶ 5.02.  However, the Settlement is not dependent or conditioned upon the Court's approval of Plaintiffs' requests for fees or costs, or an award of any specific amount.  *Id.* at ¶ 5.04.

**E.**     **Administration and Notice**

All costs of notice and claims administration will be paid from the Settlement Fund.  *Id.* at ¶ 4.06.  The parties have agreed that Garden City Group will serve as Claims Administrator, subject to Court approval.  *Id.* at ¶ 2.10.

A summary of the proposed notice plan is set forth in Exhibit 3, the Declaration of Stephen Cirami.  Within 25 days of the Preliminary Approval Order, the Claims Administrator will send the Class Notice (Exhibit C to the Settlement) via first class mail to all Settlement Class Members for whom Wells Fargo possesses contact information.  Settlement at ¶¶ 7.02, 8.02.[4]  The Claims Administrator will also design and conduct a nationwide publication website-based notice program, maintain and administer a dedicated Settlement Website, and operate a toll-free telephone number.  *Id.* at ¶¶ 8.03, 8.04, 8.05.

To obtain compensation, Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator via the Settlement Website, by telephone, or by mail.  *Id.* at ¶ 9.02.  The Claim Form (Exhibit A to the Settlement) requires Settlement Class Members to provide only their name, current address, cell phone number(s) called, certification that the claimant was called by Wells Fargo on the identified phone number(s) without consent, certification that the claimant was called by Wells Fargo in connection with either

---

[4] The Claims Administrator will confirm or update the addresses in Wells Fargo's databases using the United States Post Office National Change of Address Database, and will conduct a reasonable search to locate an updated address for any person in the Settlement Class whose Settlement Notice is returned as undeliverable.  *Id.* at ¶ 8.02(a).

10

a Residential Mortgage Loan and/or a Home Equity Loan, the identification code in the mailed notice (if applicable), and a contact number. *Id.* at ¶ 9.02.

## IV.  ARGUMENT

### A.  Preliminary Approval of the Settlement is Appropriate.

When parties propose to resolve class action litigation through settlement, they must obtain court approval. Fed. R. Civ. P. 23(e); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals." Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.").

Before authorizing class notice and holding a final fairness hearing, the Court makes a "preliminary determination on the fairness, reasonableness, and adequacy of the proposed settlement terms." *Melanie K. v. Horton*, No. 1:14-cv-710, 2015 WL 1799808, at *2 (N.D. Ga. Apr. 15, 2015) (Duffey, Jr., J.) (citation omitted). Courts grant preliminary approval "where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." Newberg § 13:10 (citation omitted); *see also In re Checking Account Overdraft*

*Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, where there are no obvious deficiencies and the settlement falls within the range of reason.") (citation omitted).

Courts consider "many of the same factors" that would be relevant at final approval, "though with somewhat less scrutiny." Newberg § 13:15. In this Circuit, the relevant factors are "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement, and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986.

Because the Settlement meets all of the relevant factors, it should be preliminarily approved.

1.  **The Settlement Provides Substantial Relief, Particularly in Light of the Risks.**

The first three *Bennett* factors capture the essence of the Rule 23(e) analysis: whether the Settlement provides reasonable value to the Class when measured against the strength of the plaintiffs' case. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323-24 (S.D. Fla. 2007) ("The most important factor

relevant to the fairness of a class action settlement is the . . . strength of the plaintiff's case on the merits balanced against the amount offered in the settlement.") (quoting *Synfuel Techs., Inc. v. DHL Exp. (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). Nevertheless, courts "must be guided by . . . 'the realization that compromise is the essence of settlement.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993) (quoting *Bennett*, 737 F.2d at 986). In particular, at the preliminary approval stage, a settlement need only be "within the range of possible approval[.]" *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 8:14-cv-01182, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015) (internal quotation marks omitted).

### a. The Monetary Amount Offered in Settlement.

The Settlement requires Wells Fargo to pay approximately $16.3 million into a non-reversionary cash Settlement Fund, an excellent result when measured against twenty-five years of TCPA settlements.[5] Most importantly, the Settlement

---

[5] *See* Hutchinson Decl. at ¶ 36 (citing *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 3, 2016), *appeal filed* ($34 million for more than 32 million class members); *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. Wash.) ($24.15 million for 7,792,256 class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ($17.1 million for 5,887,508 class members); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009 (N.D. Cal.) ($32,083,905 for approximately 7,723,860 class members); *Connor v. JPMorgan Chase Bank*, No. 10 CV 1284 (S.D. Cal.) ($11,665,592.09 for 2,684,518 class members); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190
*Footnote continued on next page*

provides class members with real monetary relief, despite the fact that this is a purely statutory damages case involving nominal economic damages or actual damages (such as invasion of privacy) that are difficult to quantify.

Of course, the settlement amount does not constitute the full measure of statutory damages potentially available to the Class. This fact alone, however, should not weigh against preliminary approval. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 319 ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal quotation marks omitted).

### b. The Strength of Plaintiffs' Case.

Plaintiffs continue to believe that their claims against Defendant have merit. Nevertheless, Plaintiffs and the Class would face a number of difficult challenges if the litigation were to continue.

---

*Footnote continued from previous page*
(N.D. Ill.) ($39,975,000 for 9,065,262 class members); *In re Capital One Tel. Consumer Protection Act Litig.*, No. 12-cv-10064 (N.D. Ill.) ($75,455,098 for 16,645,221 class members); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ($12.2 million for 47 million class members); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248 (S.D. Cal.) ($9 million for more than 6,079,411 class members).

First, the Parties have competing interpretations of what constitutes "prior express consent" under the TCPA based on the FCC's January 4, 2008, declaratory ruling, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (hereinafter "2008 Declaratory Ruling").  Plaintiffs maintain that the TCPA requires that the cell phone number be "provided during the transaction that resulted in the debt owed," *i.e.*, during the "origination" of the credit or banking relationship.  *See id.*  Wells Fargo, however, interprets the term "transaction" to cover a much longer time period.  If the Court found that the TCPA permits "prior express consent" to be given any time a customer provides a cell phone number as a contact number, the amount of recoverable damages could be reduced significantly or eliminated altogether.  *See, e.g.*, *Arthur v. Sallie Mae, Inc.*, No. 10-cv-132413, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012) (granting final approval of TCPA settlement "in part because of the novelty of central issues").

Second, Plaintiffs maintain that, under the 2008 Declaratory Ruling, only "the customer" can provide prior express consent.  A recent FCC Order found that consent provided by a customer does not transfer to non-customers called at the same number.  *In the Matter of Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, 62

Communications Reg. (P&F) 1539, 2015 WL 4387780 (F.C.C.).  Wells Fargo

argues that the FCC Order was wrongly decided and that a pending petition to the

D.C. Circuit will overturn the FCC Order.  *See ACC Int'l v. FCC*, No. 15-1211

(D.C. Cir.).

Third, while Plaintiffs continue to believe that class certification would be

appropriate, Wells Fargo argues that class certification would be inappropriate due

to the question of whether Settlement Class Members consented to the calls at

issue.  And "[c]ourts are split on whether the issue of individualized consent

renders a TCPA class uncertifiable on predominance and ascertainability grounds,

with the outcome depending on the specific facts of each case."  *Chapman v. First*

*Index, Inc*., No. 09 C 5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) (citing

cases), *aff'd in part*, 796 F.3d 783 (7th Cir. 2015); *Manno v. Healthcare Revenue*

*Recovery Grp., LLC*, 289 F.R.D. 674, 689-90 (S.D. Fla. 2013) (certifying TCPA

class for trial only because "any persons who may have been subject to an

individualized consent defense were excluded during [class] discovery").  If Wells

Fargo were able to present convincing facts to support its position, there is a risk

that the Court would decline to certify the class, leaving only the named Plaintiffs

to pursue their individual claims.

Fourth, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards on due process grounds. *See, e.g.*, *Aliano v. Joe Caputo & Sons—Algonquin, Inc.,* No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.").

Fifth, Wells Fargo contends that Plaintiffs may lack standing to pursue their claims after *Spokeo v. Robins*, 136 S. Ct. 1540 (2016). Additionally, Wells Fargo has, in the past, made offers of judgment under Rule 68 and claimed that Plaintiffs' claims consequently were mooted. Although that specific proposition was rejected in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), there remains the possibility that a more complete tender might moot Plaintiffs' claims.

Finally, there is a risk of losing a jury trial. And, even if Plaintiffs did prevail at trial, any judgment could be reversed on appeal.

The Settlement provides substantial relief to Settlement Class Members without delay and is within the range of reasonableness, particularly in light of the above risks that Settlement Class Members would face in litigation.

## 2. Continued Litigation is Likely to be Complex, Lengthy, and Expensive.

Continued litigation would involve extensive discovery and motion practice, including Plaintiffs' motion for class certification and Wells Fargo's motion for summary judgment. The parties would engage experts to analyze Wells Fargo's call data. It is likely to be years before the case could proceed to trial and through appeal. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiffs and Settlement Class Members to receive immediate and certain relief. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 691 (N.D. Ga. 2001) (approving settlement where "the likely alternative to settlement now is lengthy, burdensome, and expensive litigation," and explaining that "the added benefit of obtaining [relief] now rather than years from now makes approval of this settlement in the best interests of the class").

## 3. There is No Opposition to the Settlement.

This factor is of limited relevance at preliminary approval, because no notice has yet been provided to the Class Members. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 560 (N.D. Ga. 2007). Nevertheless, it is worth noting that all parties favor settlement, and, in particular, Class Counsel strongly endorse the Settlement. Ex. 2 (Hutchinson Decl.) at ¶¶ 36-37; *see also, e.g., Ingram*, 200 F.R.D. at 691 ("In a case where experienced counsel represent

the class, the Court, absent fraud, collusion, or the like, should hesitate to substitute

its own judgment for that of counsel.") (internal quotation marks omitted).

### 4. The Stage of the Proceedings Supports Preliminary Approval.

Although the Settlement was reached at an early stage of the litigation, it is

the product of good faith, arm's-length negotiations and should be preliminarily

approved. *See* Newberg § 13:14 ("The primary procedural factor courts consider

in determining whether to preliminarily approve a proposed settlement is whether

the agreement arose out of arms-length-noncollusive negotiations."); *Bennett*, 737

F.2d at 987 n.9 (approving settlement where the district court had "determined that

the settlement ha[d] been achieved in good faith through arms-length negotiations

and is not the product of collusion between the parties and/or their attorneys").

Before entering mediation, Class Counsel thoroughly investigated the facts

and law of the case, and conducted significant informal discovery. Ex. 2

(Hutchinson Decl.) at ¶¶ 23, 28. The Settlement was only reached after an in-

person mediation, several telephone conferences with Mr. Hughes (a well-

respected mediator with whom this Court is well-familiar), and many months of

negotiation. *See Ingram*, 200 F.R.D. at 693 ("The fact that the entire mediation

was conducted under the auspices of Mr. Hughes, a highly experienced mediator,

lends further support to the absence of collusion."); Ex. 2 (Hutchinson Decl.) at ¶¶ 26-34.

These facts support approval. *See, e.g.*, *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 630 (11th Cir. 2015) (approving settlement reached after four in-person mediations); *Poertner v. Gillette Co.*, 618 F. App'x 624, 625 (11th Cir. 2015) (approving settlement reached after "months" of mediation); *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 3 (2d Cir. 2012) (finding that "the district court did not abuse its discretion when it presumed the proposed settlement was fair" where "competent counsel appeared on both sides" and "settlement was reached only after contentious negotiations"); 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

## B.    The Settlement Class Should Be Certified.

Before a court may certify a class for settlement, it must ensure that the class satisfies each requirement of Rule 23(a) and that it falls within one of the three categories permitted by Rule 23(b). *See, e.g.*, *Columbus Drywall*, 258 F.R.D. at 553-54. Here, each element of Rule 23(a) and Rule 23(b)(3) is satisfied.[6] The

---

[6] Assuming that Rule 23 includes an ascertainability requirement, the requirement is met here because the vast majority of class members can be identified through
*Footnote continued on next page*

analysis does not vary as between Subclass One and Subclass Two, and so this section discusses the Settlement Class as a whole.

### 1. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." *See In re Netback, Inc. Sec. Litig.*, 259 F.R.D. 656, 664 (N.D. Ga. 2009). Here, the parties estimate that the Settlement Class includes more than three million Class Members, and so the numerosity requirement is met.

### 2. Commonality

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." This said, "even a single common question will do," so long as resolution of that question will advance the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation marks and alterations omitted).

The commonality requirement is met here because common questions include whether Wells Fargo used an autodialer to call Plaintiffs' cell phone, and whether Wells Fargo negligently or willfully violated the TCPA. *See G.M. Sign,*

---

*Footnote continued from previous page*
Wells Fargo's records in an administratively feasible way. *See Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 947-49 (11th Cir. 2015). For class members who do not appear in Wells Fargo's records, self-identification is "administratively feasible and not otherwise problematic" because claimants must corroborate their claims by providing the cell phone numbers that were allegedly called. *Id.*

*Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (finding several common questions in a TCPA class action).

### 3. <u>Typicality</u>

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Here, the typicality requirement is satisfied because Plaintiffs' TCPA claims, which are based on Wells Fargo's systematic use of automated calls to cell phones, arise of the same "event or pattern or practice and are based on the same legal theory" as the class's claims. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1336 (11th Cir. 1984). Moreover, Class Representatives are typical of both Subclasses. Settlement at ¶ 5.01; *see* Dkt. No. 33-1 (Am. Compl.), at ¶¶ 35, 50, 66, 77, 78.

### 4. <u>Adequacy</u>

Rule 23(a)(4) requires that the named representatives "will fairly and adequately protect the interests of the class." This requirement has two components. First, the named plaintiffs must not "have interests antagonistic to those of the rest of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987) (citation omitted). This component is satisfied here because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. Second, Class counsel must be "qualified, experienced, and

generally able to conduct the proposed litigation[.]"  *Id.*  Here, Class Counsel have extensive experience prosecuting complex class actions generally, and TCPA cases specifically.  Ex. 2 (Hutchinson Decl.) at ¶¶ 3-12; Ex. 4 (Lieff Cabraser Heimann & Bernstein, LLP firm resume); Ex. 5 (Burke Decl.).

### 5.     Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." This requirement is met if "[c]ommon issues . . . have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the . . . claims of each class member." *Carriuolo v. Gen. Motors. Co.*, N. 15-14442, 2016 WL 2870025, at *4 (11th Cir. May 17, 2016) (internal quotation marks omitted).  The presence of individualized defenses does not compel a finding that individual issues predominate.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) ("Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof.") (internal quotation marks and alterations omitted).

The predominance requirement is met here because common questions represent a significant aspect of the case and, and through resolution in one stroke,

will substantially advance the litigation.  *See Malta*, 2013 WL 444619, at *4 ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members.  Accordingly, the predominance requirement is met.").

### 6.    Superiority

Finally, Rule 23(b)(3) requires a showing that "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Resolution of millions of low-value claims in one action is far superior to individual lawsuits and promotes consistent and efficient adjudication.  *See, e.g.*, *Carriuolo*, 2016 WL at *8 (finding superiority met where "individual claims may be too small for a separate action by each class member"); *Kennedy v. Tallent*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.").

Moreover, manageability, while "by [] far, the most critical concern in determining whether a class action is a superior means of adjudication," Newberg § 4:72, are irrelevant in this context.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

### C.     Approval of the Proposed Class Notice is Warranted.

Before granting approval to a class action settlement, the Court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement.  Fed. R. Civ. P. 23(e)(1)(B).  Notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

A settlement notice should define the class, describe the essential terms of the settlement, and explain the procedures and deadlines for making a claim, opting out, or objecting.  *Manual for Complex Litigation (Fourth)* § 21.312 (2004). The proposed forms of Notice, Exhibit C to the Settlement, meet those criteria. The Notice Plan also satisfies due process and Rule 23 by providing individual notice by mail, and nationwide publication notice.  *See* Ex. 3 (Cirami Decl.).

## V.     CONCLUSION

Plaintiffs respectfully request that the Court: (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) certify the Settlement Class and Subclasses and appoint Plaintiffs as class representatives; (3) appoint Class Counsel; and (4) appoint Garden City Group as the Claims Administrator to administer the proposed Notice and Claims Program.

Respectfully submitted,

Dated: June 29, 2016

SKAAR & FEAGLE, LLP

by: /s/ James M. Feagle
James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
404 / 373-1970
404 / 601-1855 fax

Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
Georgia Bar No. 649610
krisskaar@aol.com
133 Mirramont Lake Drive
Woodstock, GA 30189
770 / 427-5600
404 / 601-1855 fax

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (*pro hac vice* pending)
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice*
pending)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Andrew R. Kaufman (*pro hac vice* pending)
Email: akaufman@lchb.com
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965

BURKE LAW LLC

by: /s/ Alexander H. Burke
Alexander H. Burke (*pro hac vice*)
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice* pending)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice* pending)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

LAW OFFICES OF DOUGLAS J.
CAMPION, APC
Douglas J. Campion
Email: doug@djcampion.com
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Facsimile:  (619) 858-0034

KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Telephone: 312-265-3258
Facsimile: 312-726-1093

GREENWALD DAVISON RADBIL PLLC
Michael L. Greenwald
Email:  mgreenwald@gdrlawfirm.com
5550 Glades Rd., Suite 500
Boca Raton, FL 33431
Telephone: (561) 826-5477
Facsimile: (561) 961-5684

Aaron D. Radbil
Email: aradbil@gdrlawfirm.com
106 East Sixth Street, Suite 913
Austin, Texas 78701
Telephone: (512) 322-3912
Facsimile: (561) 961-5684

KAZAROUNI LAW GROUP, APC
Abbas Kazerounian
Email: ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6806
Facsimile: (800) 520-5523

HYDE & SWIGART
Joshua B. Swigart, Esq.
josh@westcoastlitigation.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone (619) 233-7770
Facsimile (619) 297-1022

*Attorneys for Plaintiffs Steven L. Markos,
Tiffany Davis, and Gregory Page, and the
Proposed Class*

# CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1.C and 7.1.D of the Northern

District of Georgia, that the MEMORANDUM IN SUPPORT OF PLAINTIFF'S

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS

ACTION SETTLEMENT was prepared in 14-point Times New Roman Font.

June 29, 2016.

*/s/*      Alexander H. Burke

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

June 29, 2016.

*/s/*    Alexander H. Burke