# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is entered into by and between plaintiffs Tiffany Davis ("Davis"), Steven L. Markos ("Markos") and Gregory Page ("Page") (together, "Plaintiffs"), for themselves and the Settlement Class members (as defined below), on the one hand, and Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"), on the other hand.  Plaintiffs and Defendant are referred to collectively in this Settlement Agreement as the "Parties."

## I.    RECITALS

**1.01**    On April 14, 2015, Markos filed a class action in the Northern District of Georgia against Wells Fargo entitled *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM (N.D. Ga.) (the "*Markos* Action").  On July 27, 2015, Page filed a class action in the Northern District of Illinois against Wells Fargo entitled *Page v. Wells Fargo Bank, N.A.*, Case No. 1:15-cv-06511-MFK (N.D. Ill.) (the "*Page* Action").  On August 5, 2015, Davis filed a class action in the State Court of Cobb County, Georgia entitled *Davis v. Wells Fargo Bank, N.A.*, Case No. 15 A 1898-1 (the "*Davis* Action").  The *Davis* Action was subsequently removed to the United States District Court for the Northern District of Georgia, as Case No. 1:15-cv-3140-TWT (N.D. Ga.).

**1.02**    The complaints in the *Markos*, *Page* and *Davis* actions all allege that Wells Fargo violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA") by using an automatic telephone dialing system and/or an artificial or prerecorded voice to call cellular telephones, without the prior express consent of the Plaintiffs and putative class members.

**1.03**    Wells Fargo denies all material allegations in the complaints in the *Markos*, *Page* and *Davis* Actions.  Wells Fargo specifically disputes that it used an automated dialer or artificial or prerecorded voice messages to contact Plaintiffs or putative class members without their prior express consent; that it violated the TCPA; or that Plaintiffs and putative class members are entitled to any relief from Defendant.  Wells Fargo further contends that the actions are not amenable to class certification.  Nevertheless, given the risks, uncertainties, burden and expense

07685.1518/7555005.1

of continued litigation, Defendant has agreed to settle this litigation on the terms set forth in this Agreement, subject to Court approval.

**1.04** This Settlement Agreement resulted from good faith, arms-length settlement negotiations, including an in-person negotiation as well as numerous telephonic conferences with Hunter R. Hughes, an experienced and well-respected private mediator. Plaintiffs and Defendant submitted detailed mediation submissions to Mr. Hughes setting forth their respective views as to the strengths of their cases. Additionally, Plaintiffs have reviewed documents and data that Defendant has produced.

**1.05** Based on their investigation and the negotiations described above, and assuming that the information currently known to Plaintiffs is confirmed through additional discovery to be conducted as described in Section 4.01 below, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty and cost of further prosecution of this litigation, and the substantial benefits to be received by class members pursuant to this Agreement, that a settlement with Defendant on the terms set forth herein is fair, reasonable, adequate and in the best interests of the Settlement Class Members.

**1.06** Plaintiffs' Motion for Preliminary Approval will include a request for leave from the Court to file an Amended Complaint in the *Markos* Action which will designate Subclass One and Subclass Two, as defined in Section 2.33 below, and will add Davis and Page as additional class representatives. If the Court grants leave to file an Amended Complaint in the *Markos* Action, the *Page* and *Davis* Actions will be dismissed through a stipulation of dismissal within 10 days following the entry of the Order allowing the Amended Complaint. Dismissal of the *Davis* and *Page* Actions is a material term of this Agreement.

**1.07** The Parties understand, acknowledge and agree that the execution of this Settlement Agreement constitutes the settlement and compromise of disputed claims. This Settlement Agreement is inadmissible as evidence against any party except to enforce the terms of the Settlement Agreement and is not an admission of wrongdoing or liability on the part of any party to this Settlement Agreement. The Parties desire and intend to effect a full, complete

and final settlement and resolution of all existing disputes and claims as set forth herein.

**1.08**     The Settlement contemplated by this Settlement Agreement is subject to preliminary approval and final approval by the Court, as set forth herein. This Settlement Agreement is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

## II.     DEFINITIONS

**2.01**     "Action" means the *Markos* Action, as the complaint in that action may be amended pursuant to the terms of this Settlement Agreement.

**2.02**     "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release.

**2.03**     "Approved Claims" means claims that have been validly completed, timely submitted, and approved for payment.

**2.04**      "CAFA Notice" refers to the notice requirements imposed by 28 U.S.C. § 1715(b).

**2.05**     "Call" or "Calls," consistent with applicable regulations and legal authority interpreting the TCPA, means and includes voice calls, artificial or prerecorded voice calls, and SMS/text messages, excluding SMS/texts sent for an emergency purpose.

**2.06**     "Cash Award" means a cash payment to an eligible Settlement Class Member.

**2.07**     "Claim Form" means the claim form substantially in the form attached hereto as Exhibit A.

**2.08**     "Claims Deadline" means ninety (90) days from the Settlement Notice Date.

**2.09**     "Claims Period" means the 90-day period that begins on the Settlement Notice Date.

**2.10**     "Claims Administrator" means Garden City Group, subject to Court approval.

**2.11**     "Class Counsel" means and includes: Lieff Cabraser Heimann & Bernstein, LLP; Burke Law Offices, LLC; Meyer Wilson Co., LPA; Skaar & Feagle, LLP, Greenwald Davidson

Radbil PLLC; Keogh Law Ltd.; Kazerouni Law Group, APC; Law Offices of Douglas J. Campion, APC; and, Hyde & Swigart.

**2.12**     "Class Notice" or "Notice" means the notice specified in Section VIII of this Settlement Agreement including, without limitation, mail notice, publication notice and internet notice.  Notice shall be substantially in the forms attached hereto collectively as Exhibit C, subject to the Court's approval.

**2.13**     "Class Period" means November 17, 2011 to February 29, 2016 for Settlement Class Members in Subclass One, and April 14, 2011 to February 29, 2016 for Settlement Class Members in Subclass Two.

**2.14**     "Class Representatives" means Plaintiffs Markos, Davis and Page.

**2.15**     "Court" shall mean the United States District Court for the Northern District of Georgia, and U.S. District Judge Leigh Martin May, to whom the *Markos* Action has been assigned.

**2.16**     "Cy Pres Distribution" means monies that may be distributed in connection with the Settlement pursuant to Section 7.04.f.

**2.17**     "Effective Date" means the date on which the Judgment has become final as provided in Section 12.01.

**2.18**     "Final Approval Hearing" means the hearing held by the Court to determine whether to finally approve the Settlement set forth in this Settlement Agreement as fair, reasonable and adequate, sometimes referred to herein as the "Fairness Hearing."

**2.19**     "Final Approval Order" means the order to be submitted to the Court in connection with the Final Approval Hearing, substantially in the form attached hereto as Exhibit B.

**2.20**     "Final Class Size" means the number of unique cellular telephone numbers used or subscribed to by members of Subclass One and Subclass Two to which Wells Fargo made or initiated Calls during the Class Period using any automated dialing technology or artificial or prerecorded voice technology, according to Wells Fargo's available records, after any

adjustments described in Section 4.01 and Section 4.02.

**2.21**   "Final Distribution Date" means the earlier of (i) the date as of which all the checks for Cash Awards have been cashed, or (ii) 210 days after the date on which the last check for a Cash Award was issued.

**2.22**   "Funding Date" means twenty (20) business days after the Effective Date.

**2.23**   "Home Equity Loan" means an agreement to extend credit using a residential property as collateral, which loan is secured by a lien that is subordinate to a first priority lien on the property arising out of a Residential Mortgage Loan made by Wells Fargo or another lender. Home Equity Loans include but are not limited to lines of credit, loans that were made by Wells Fargo Bank, N.A. or Wells Fargo Home Equity, and loans that were made by a different lender and then subsequently assigned to Wells Fargo Bank, N.A. or Wells Fargo Home Equity for servicing, in its own name or a trade name.

**2.24**   "Notice Databases" means the databases containing Settlement Class Members' information Defendant has provided pursuant to Section 7.02.

**2.25**   "Objection Deadline" means sixty (60) days from the Settlement Notice Date.

**2.26**   "Opt-Out Deadline" means sixty (60) days from the Settlement Notice Date.

**2.27**   "Preliminary Approval Order" means the order by the Court granting preliminary approval to this settlement, substantially in the form attached hereto as Exhibit D.

**2.28**   "Preliminary Class Size" means the Parties' good faith estimate of the number of unique cellular telephone numbers used or subscribed to by members of Subclass One and Subclass Two to which Wells Fargo made or initiated Calls during the Class Period using any automated dialing technology or artificial or prerecorded voice technology, according to Wells Fargo's available records.  As of the date of the execution of this Agreement, the Preliminary Class Size is 3,296,775, which is subject to the confirmatory discovery to be conducted pursuant to Section 4.01.

**2.29**   "Released Claims" means the releases identified in Section 13.

**2.30**   "Released Parties" means Wells Fargo Bank, N.A. and each of its respective past,

present and future parents, subsidiaries, affiliated companies and corporations, and each of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, assigns, or related entities, and each of their respective executors, successors, and legal representatives. "Released Parties" specifically includes all corporate affiliates of Wells Fargo related to its Residential Mortgage Loan and Home Equity Loan lines of business and all entities with which Wells Fargo contracts to obtain representatives to place calls.

2.31   "Residential Mortgage Loan" means an agreement to extend credit for the purchase or refinance of a residential property, which loan is secured by a first priority lien on the property. Residential Mortgage Loans include loans that were made by Wells Fargo Bank, N.A. or Wells Fargo Home Mortgage, as well as loans that were made by a different lender and then subsequently assigned to Wells Fargo Bank, N.A. or Wells Fargo Home Mortgage for servicing, in its own or a trade name.

2.32   "Settlement" or "Settlement Agreement" means this Agreement between Plaintiffs and Defendant and each and every exhibit attached hereto.

2.33   "Settlement Class" means all users or subscribers to a wireless or cellular service within the United States who used or subscribed to a phone number to which Wells Fargo made or initiated one or more Calls during the Class Period using any automated dialing technology or artificial or prerecorded voice technology, according to Wells Fargo's available records, and who are within Subclass One and/or Two, which are defined as follows:

a.     Subclass One consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Residential Mortgage Loan.

b.     Subclass Two consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Home Equity Loan.

**2.34**    "Settlement Class Members" means those persons who are members of the Settlement Class, as set forth in the definition in Section 2.33 above, and who do not timely and validly request exclusion from the Settlement Class.

**2.35**    "Settlement Costs" means all costs incurred by Plaintiffs, the Class and their attorneys, including but not limited to Plaintiffs' attorneys' fees, costs of suit, Plaintiffs' expert or consultant fees, any incentive payments paid to the Class Representatives, notice costs, costs of claims administration and all other costs of administering the settlement.

**2.36**    "Settlement Fund" means the non-reversionary cash sum that Wells Fargo will pay to settle this Action and obtain a release of all Released Claims, as calculated in Section 4.04 below.

**2.37**    "Settlement Notice Date" means fifteen (15) days after an Order Granting Preliminary Approval is issued.

**2.38**    "Settlement Website" means the Internet website operated by the Claims Administrator as described in Section 8.04.

**2.39**    "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, and any regulations or rulings promulgated under it.

### III.    <u>BOTH SIDES RECOMMEND APPROVAL OF THE SETTLEMENT</u>

**3.01**    <u>Defendant's Position on the Conditional Certification of Settlement Class</u>. Defendant disputes that a class would be manageable or that common issues predominate over individual ones, and further denies that a litigation class properly could be certified on the claims asserted in this Action.  However, solely for purposes of avoiding the expense and inconvenience of further litigation, Defendant does not oppose the certification for <u>settlement purposes only</u> of the Settlement Class.  Preliminary certification of the Settlement Class for settlement purposes shall not be deemed a concession that certification of a litigation class is appropriate, nor would Defendant be precluded from challenging class certification in further proceedings in this Action or in any other action if the Settlement Agreement is not finalized or finally approved.  If the Settlement Agreement is not finally approved by the Court for any reason whatsoever, the

certification of the Settlement Class will be void, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated certification proceedings in this Action.  No agreements made by or entered into by Defendant in connection with the Settlement Agreement may be used by Plaintiffs, any person in the Settlement Class or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in this Action or any other judicial proceeding.

       **3.02**    <u>Plaintiffs' Belief in the Merits of Case</u>.  Plaintiffs believe that the claims asserted in this Action have merit and that the evidence developed to date supports those claims.  This Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Plaintiffs that there is any infirmity in the claims asserted by Plaintiffs, or that there is any merit whatsoever to any of the contentions and defenses that Defendant has asserted.

       **3.03**    <u>Plaintiffs Recognize the Benefits of Settlement</u>.  Plaintiffs recognize and acknowledge, however, the expense and amount of time which would be required to continue to pursue this Action against Defendant, as well as the uncertainty, risk and difficulties of proof inherent in prosecuting such claims on behalf of the Settlement Class.  Plaintiffs have concluded that it is desirable that this Action and any Released Claims be fully and finally settled and released as set forth in this Settlement.  Plaintiffs and Class Counsel believe that the agreement set forth in this Settlement confers substantial benefits upon the Settlement Class and that it is in the best interests of the Class to settle as described herein.

    **IV.**       <u>**SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS**</u>

       **4.01**    <u>Confirmatory Discovery</u>:  As soon as practicable after entering into this agreement, Plaintiffs will conduct reasonable, mutually agreeable confirmatory discovery regarding the size of the class.  The Parties agree that this discovery shall be used for the sole purpose of settlement, and the information provided as part of this confirmatory discovery process will not be used for any other purpose.

**4.02**     Final Determination of the Class Size:  If the confirmatory discovery described in Section 4.01 confirms that the number of unique cellular telephone numbers used or subscribed to by Settlement Class Members is no greater than 110% of Preliminary Class Size, the number confirmed by the Parties during this process shall be the Final Class Size.  If the number of unique cellular telephone numbers used or subscribed to by Settlement Class Members exceeds the Preliminary Class Size by an amount greater than 10%, then the Parties agree to negotiate in good faith in an effort to reach an agreement regarding the scope of the class to be included in this settlement, and the Final Class Size will be determined based on the Parties' agreement regarding the scope of the class; the other terms of this Settlement Agreement shall not be subject to renegotiation.

**4.03**     Membership in Multiple Subclasses:  For purposes of calculating the Preliminary and Final Class Sizes, a unique cellular telephone number that is determined to have been called by Wells Fargo in connection with both Subclass One and Subclass Two shall be counted twice, once as part of Subclass One and again as part of Subclass Two.

**4.04**     Monetary Consideration.  Wells Fargo shall pay an amount equal to $4.95 times the Final Class Size, after eliminating cellular telephone numbers associated with Settlement Class Members who excluded themselves from the settlement as set forth in Section 10, to settle this Action and obtain a release of all Released Claims.  This sum will be used to pay Approved Claims and any Settlement Costs.  Under no circumstances shall Wells Fargo be required to pay any amount in excess of this sum in order to resolve the Action and obtain releases from Plaintiffs and Settlement Class Members.

**4.05**     Eligibility for Cash Awards.  Cash Awards shall be made to eligible Settlement Class Members who make valid and timely claims.  Each Settlement Class Member shall be entitled to make one claim for a Cash Award, except for Settlement Class Members who received calls in connection with both a Residential Mortgage Loan and a Home Equity Loan as described in Section 4.03, who shall be entitled to make two claims for a Cash Award.

**4.06**     Amount Paid per Claim.  Each Settlement Class Member who makes a valid and

timely claim shall receive a Cash Award or Awards.  The amount of each Cash Award shall be determined by the following formula:  (Settlement Fund – Settlement Costs) ÷ (Total Number of Valid and Timely Claims) = Cash Award.  Therefore, the Cash Award for each Settlement Class Member who makes a valid and timely claim is the Settlement Class Member's pro rata share of the total payments to Settlement Class Members.

## V.       ATTORNEYS' FEES, COSTS AND PAYMENT TO CLASS REPRESENTATIVES

**5.01**    Class Representative and Class Counsel Appointment.  For settlement purposes, and subject to Court approval, Markos, Davis and Page are appointed as the Class Representatives for the Settlement Class as a whole.  In addition, Davis and Page are appointed as representatives of Subclass One, and Markos is appointed as a representative of Subclass Two. In addition, Class Counsel shall be appointed to represent the Settlement Class.

**5.02**    Attorneys' Fees and Costs.  Class Counsel shall move the Court for an award of attorneys' fees and expenses to be paid from the Settlement Fund.  Class Counsel shall be entitled to payment of the fees awarded by the Court out of the Settlement Fund as set forth in Section 7.04.  This Settlement will be binding and enforceable regardless of whether the Court approves the attorneys' fees and costs sought by Class Counsel. In addition, no interest will accrue on such amounts at any time.

**5.03**    Payment to Class Representatives.  The Class Representatives will ask the Court to award them incentive payments for the time and effort they have personally invested in the actions on behalf of the Settlement Class, including but not limited to declining offers of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure.  Defendant shall not object to such incentive payments to be paid to Davis, Markos and Page from the Settlement Fund provided they do not exceed $60,000 in the aggregate (or $20,000 for each Class Representative), subject to Court approval.  Within five (5) days of the Funding Date, and after receiving W-9 forms from the Class Representatives, the Claims Administrator shall pay to Class Counsel the amount of incentive payments awarded by the Court, and Class Counsel shall

disburse such funds.  Court approval of any incentive payments, or their amount, is not a condition of the Settlement.

5.04     Settlement Independent of Award of Fees, Costs and Incentive Payments.  The payments of attorneys' fees, costs and incentive payments set forth in Sections 5.02 and 5.03 are subject to and dependent upon the Court's approval as fair, reasonable, adequate and in the best interests of Settlement Class Members.  However, this Settlement is not dependent or conditioned upon the Court's approving Plaintiffs' requests for such payments or awarding the particular amounts sought by Plaintiffs.  In the event the Court declines Plaintiffs' requests or awards less than the amounts sought, this Settlement shall continue to be effective and enforceable by the Parties.

## VI.     PRELIMINARY APPROVAL

6.01     Order of Preliminary Approval.  As soon as practicable after the execution of this Agreement, Plaintiffs shall move the Court for entry of the Preliminary Approval Order in substantially the form attached as Exhibit D.  Pursuant to the motion for preliminary approval, the Plaintiffs will request that:

a.     the Court conditionally certify the Settlement Class for settlement purposes only and appoint Class Counsel as counsel for the Settlement Class for settlement purposes only;

b.     the Court preliminarily approve the Settlement and this Agreement as fair, adequate and reasonable, and within the reasonable range of possible final approval;

c.     the Court approve the form(s) of Notice and find that the notice program set forth herein constitutes the best notice practicable under the circumstances, and satisfies due process and Rule 23 of the Federal Rules of Civil Procedure;

d.     the Court set the date and time for the Final Approval Hearing, which may be continued by the Court from time to time without the necessity of further notice; and,

e.     the Court set the Claims Deadline, the Objection Deadline and the Opt-Out Deadline.

## VII.   ADMINISTRATION AND NOTIFICATION PROCESS

**7.01**   <u>Third-Party Claims Administrator</u>.  The Claims Administrator shall be responsible for all matters relating to the administration of this Settlement, as set forth herein. Those responsibilities include, but are not limited to, giving notice, obtaining new addresses for returned mail, setting up and maintaining the Settlement Website and toll-free telephone number, fielding inquiries about the Settlement, processing claims, acting as a liaison between Settlement Class Members and the Parties regarding claims information, approving claims, rejecting any Claim Form where there is evidence of fraud or noncompliance, directing the mailing of Cash Awards to Settlement Class Members, and any other tasks reasonably required to effectuate the foregoing.  The Claims Administrator will provide monthly updates on the claims status to counsel for all Parties.

**7.02**   <u>Notice Databases</u>. To facilitate the notice and claims administration process, Wells Fargo will provide to the Claims Administrator and to Class Counsel within 45 days of the determination of the Final Class Size, in an electronically searchable and readable format, Notice Databases which include the names, last known mailing addresses and cellular telephone numbers called for all known members of the Settlement Class, as such information is contained in the reasonably available computerized account Wells Fargo maintains.  If any of the terms of this Settlement relating to the Claims Administrator's services would unreasonably hinder or delay such processes or make them more costly, the Claims Administrator shall so advise the Parties, and the Parties will accommodate the Claims Administrator to the extent necessary to carry out the intent of this Settlement Agreement. Any personal information relating to members of the Settlement Class provided to the Claims Administrator or Class Counsel pursuant to this Settlement shall be provided solely for the purpose of providing notice to members of the Settlement Class and allowing them to recover under this Settlement; shall be kept in strict confidence; shall be used only for purposes of this Settlement; and shall not be disclosed to any third party.

**7.03**     Payment of Notice and Claims Administration Costs.  Wells Fargo shall pay the reasonable costs of notice and settlement administration that are incurred prior to the creation of the Settlement Fund, and Wells Fargo will be given credit for all such payments which shall be deducted from the Settlement Fund as set forth below.  The Claims Administrator shall provide the Parties with an estimate of the costs of sending notice, establishing the Settlement Website and establishing a toll-free telephone number, as well as any other initial administration costs.  Wells Fargo shall pay the estimated amount to the Claims Administrator within ten (10) days after the entry of the Preliminary Approval Order.  After that upfront payment of administration costs by Wells Fargo, the Claims Administrator shall bill Wells Fargo monthly for any reasonable additional costs of settlement administration, until such time as the Settlement Fund is established.  Any amounts paid by Wells Fargo for the estimated costs of administration which are not incurred by the Claims Administrator shall be used for other administration costs, or shall be deducted from future billings by the Claims Administrator.  The Claims Administrator shall maintain detailed records of the amounts spent on the administration of the Settlement and shall provide those to the Parties monthly.  At such time that Wells Fargo funds the Settlement Fund, all amounts previously paid to the Claims Administrator by Wells Fargo shall be deducted from the total payment which it is required to pay to create the Settlement Fund under Section 4.04.  After Wells Fargo has created the Settlement Fund, Wells Fargo shall have no further obligation to pay any amount under this Settlement Agreement, and any additional Settlement Costs shall be paid out of the Settlement Fund.

**7.04**     Distribution of the Settlement Fund.  The Claims Administrator shall distribute the funds in the Settlement Fund in the following order and within the time period set forth with respect to each such payment:

        a.     first, no later than five (5) days after the Funding Date, the Claims Administrator shall pay to Class Counsel the attorneys' fees, costs, and expenses ordered by the Court as set forth in Section 5.02;

b.      next, no later than five (5) days after the Funding Date, the Claims Administrator shall pay to the Class Representatives any incentive award ordered by the Court, as described in Section 5.03;

c.      next, no later than twenty (20) days after the Funding Date, the Claims Administrator shall be paid for any unreimbursed costs of administration incurred;

d.      next, no later than thirty (30) days after the Funding Date, the Claims Administrator shall pay the Cash Awards to eligible Settlement Class Members pursuant to Section 9;

e.      next, if checks that remain uncashed after 210 days of the first pro rata distribution yield an amount that, after administration costs, would allow a second pro rata distribution to the qualifying claimants equal to or greater than $1.00 per qualifying claimant, the Claims Administrator shall distribute any such funds on a pro rata basis to Settlement Class Members who cashed settlement checks.

f.      finally, if a second pro rata distribution is not made, or if checks remain uncashed 210 days after the second distribution, the uncashed amount will be paid to a mutually agreeable *cy pres* recipient, subject to Court approval.  Any *cy pres* recipient of unclaimed funds shall be a non-profit organization and no Party shall have a financial interest in such organization.  If, for any reason, the Parties determine that an organization is no longer an appropriate recipient, or the Court determines that a proposed recipient is not or is no longer an appropriate recipient, the Parties shall agree on a replacement recipient of such monies, subject to Court approval.

## VIII.      NOTICES

**8.01**      Timing of Class Notice.  Class Notice shall be provided to all persons in the Settlement Class within twenty-five (25) days following entry of the Preliminary Approval Order as described herein.

**8.02**    Mailing of Settlement Notice.  The Claims Administrator shall send the Settlement Notice via first class mail, to the most recent mailing address as reflected in Wells Fargo's reasonably available computerized account records.

a.    Address Confirmation.  The last known address of persons in the Settlement Class will be subject to confirmation or updating as follows: (a) the Claims Administrator will check each address against the United States Post Office National Change of Address Database before the initial mailing; (b) the Claims Administrator will conduct a reasonable search to locate an updated address for any person in the Settlement Class whose Settlement Notice is returned as undeliverable; (c) the Claims Administrator shall update addresses based on any forwarding information received from the United States Post Office; and, (d) the Claims Administrator shall update addresses based on any requests received from persons in the Settlement Class.

b.    Re-Mailing of Returned Settlement Notices.  The Claims Administrator shall promptly re-mail any Notices that are returned as non-deliverable with a forwarding address to such forwarding address.  The Claims Administrator may perform skip tracing for returned mail.

c.    Costs Considered Settlement Costs.  All costs of address confirmation, skip tracing, and re-mailing of returned Settlement Notices will be considered Settlement Costs and deducted from the Settlement Fund.

**8.03**    Publication Notice.  The Claims Administrator shall design and conduct a nationwide publication website-based notice program which the Parties believe will fully satisfy the requirements of due process in conjunction with the other forms of notice discussed in this Agreement.  The nationwide publication website-based notice program will be agreed to by the Parties and submitted to the Court with Plaintiffs' Motion for Preliminary Approval.  The nationwide publication website-based notice program will be initiated on the Settlement Notice Date, or as soon thereafter as practicable.  The Publication Notice shall be published on the Settlement Website on the same date, and retained on the website thereafter.

**8.04**   <u>Internet Notice</u>.  By the Settlement Notice Date, the Claims Administrator shall maintain and administer a dedicated settlement website containing class information and related documents, along with information necessary to file a claim, and an electronic version of the Claim Form members can download, complete and submit electronically.  At a minimum, such documents shall include the Settlement Agreement and attached exhibits, Mail Notice, a downloadable Claim Form for anyone wanting to print a hard copy and mail in the Claim Form, the operative complaints in the Actions, and when filed, the Final Approval Order.  The settlement website shall remain operative until the date of the *cy pres* distribution.

**8.05**   <u>Toll-Free Telephone Number</u>.  Within ten (10) days of Preliminary Approval, the Claims Administrator shall set up a toll-free telephone number for receiving toll-free calls related to the Settlement.  That telephone number shall be maintained until thirty (30) days after the Claims Deadline.  After that time, and for a period of ninety (90) days thereafter, a recording will advise any caller to the toll-free telephone number that the Claims Deadline has passed and the details regarding the Settlement may be reviewed on the related Settlement Website.

**8.06**   <u>Press Release</u>.   After preliminary approval, Plaintiffs will issue a neutrally worded press release, the contents of which have been agreed to in advance by all Parties.  The purpose of the press release is to facilitate Class Members learning about the settlement through internet searches, and to provide instructions on how they may obtain additional information about the settlement.  The press release will announce that the Action has been settled, and will include the URL for the dedicated settlement website through which Class Members can obtain relevant information.

**8.07**   <u>CAFA Notice</u>.  Wells Fargo and/or the Claims Administrator shall be responsible for serving the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715 within ten (10) days of the filing of the Preliminary Approval Motion.

## IX.   CLAIMS PROCESS

**9.01**   <u>Potential Claimants</u>.  Each member of the Settlement Class who does not timely and validly request exclusion from the Settlement as required in this Agreement shall be a

Settlement Class Member and entitled to make a claim.  Each Settlement Class Member shall be entitled to make one claim regardless of the number of times the Settlement Class Member was called, except to the extent a Settlement Class Member received Calls qualifying under Subclass One and Subclass Two, as discussed in Section 4.03, above, in which case that Settlement Class Member shall be entitled to make one claim for each subclass to which he or she belongs.

      **9.02**    Conditions for Claiming Cash Award.  To make a claim, Settlement Class Members must submit by the Claims Deadline a valid and timely Claim Form by U.S. mail, through the Settlement Website, or through the toll-free telephone number, which shall contain the information set forth in Exhibit A hereto, including the Settlement Class Member's (1) name; (2) current address; (3) cellular phone number(s) called; (4) certification that the claimant was called by Wells Fargo on the identified cellular number(s) without consent; (5) certification that the claimant was called by Wells Fargo in connection with either a Residential Mortgage Loan and/or Home Equity Loan; (6) where applicable, the identification code the Mail Notice; and (7) contact telephone number.  If a Settlement Class Member fails to fully complete a Claim Form, the Claim Form will be invalid.  Any Settlement Class Member who submits an incomplete or inaccurate Claim Form shall be permitted to re-submit a Claim Form within 35 days of the sending of notice of the defect by the Claims Administrator.  Class Counsel shall be kept apprised of the volume and nature of defective claims and allowed to communicate with Settlement Class Members as they deem appropriate to cure such deficiencies.

      **9.03**    Mailing of Settlement Check.  Settlement checks shall be sent to qualified class members by the Claims Administrator via U.S. mail no later than thirty (30) days after the Funding Date.  If any settlement checks are returned, the Claims Administrator shall attempt to obtain a new mailing address for that Settlement Class Member by taking the steps described in Section 8.02.  If, after a second mailing, the settlement check is again returned, no further efforts need be taken by the Claims Administrator to resend the check.  The Claims Administrator shall advise Class Counsel and counsel for Defendant of the names of the claimants whose checks are returned by the postal service as soon as practicable.  Each settlement check will be negotiable

for one hundred eighty (180) days after it is issued.

## X.     OPT-OUTS AND OBJECTIONS

**10.01**   Opting Out of the Settlement.  Any members of the Settlement Class who wish to exclude themselves from the Settlement Class must advise the Claims Administrator in writing of that intent, and their opt out request must be postmarked no later than the Opt-Out Deadline.

**10.02**   Deadline.  The Claims Administrator shall provide the Parties with copies of all opt-out requests it receives, and shall provide a list of all Settlement Class members who timely and validly opted out of the settlement in its declaration filed with the Court, as required by Section 11.01.  The declaration shall include the names of persons who have excluded themselves from the settlement but shall not include their addresses or any other personal identifying information.  Settlement Class members who do not properly and timely submit an opt-out request will be bound by this Agreement and the judgment, including the releases in Section 13 below.

a.     In the written request for exclusion, the Settlement Class member must state his or her full name, address, and telephone number.  Further, the Settlement Class member must include a statement in the written request that he or she wishes to be excluded from the Settlement.

b.     Any member of the Settlement Class who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be bound by the terms of this Agreement.

**10.03**   Objections.  Any Settlement Class Member who intends to object to the fairness of this settlement must file a written objection with the Court by the Objection Deadline.  In the written objection, the Settlement Class Member must state his or her full name, address and telephone number, the reasons for his or her objection, and whether he or she intends to appear at the Fairness Hearing on his or her own behalf or through counsel.  Any and all objections shall identify any lawyer that assisted or provided advice as to this case or such objection. Any documents supporting the objection must also be attached to the objection.

**10.04**   Any Settlement Class Member who objects may appear at the Fairness Hearing, either in person or through an attorney hired at the Settlement Class Member's own expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the Settlement.

## XI.   FINAL APPROVAL AND JUDGMENT ORDER

**11.01**   No later than fourteen (14) calendar days prior to the Final Approval Hearing, the Claims Administrator shall file with the Court and serve on counsel for all Parties a declaration stating that the Notice required by the Agreement has been completed in accordance with the terms of the Preliminary Approval Order.

**11.02**   If the Settlement is approved preliminarily by the Court, and all other conditions precedent to the settlement have been satisfied, no later than fourteen (14) calendar days prior to Final Approval Hearing:

a.   The Parties shall both request, individually or collectively, that the Court enter the Final Approval Order in substantially the form attached as Exhibit B, with Class Counsel filing a memorandum of points and authorities in support of the motion; and,

b.   Class Counsel and/or Defendant may file a memorandum addressing any objections submitted to the Settlement.

**11.03**   At the Final Approval Hearing, the Parties will ask the Court to consider and determine whether the provisions of this Agreement should be approved, whether the Settlement should be finally approved as fair, reasonable and adequate, whether any objections to the Settlement should be overruled, whether the fee award and incentive payments to the Class Representatives should be approved, and whether a judgment finally approving the Settlement should be entered.

**11.04**   This Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order which grants final approval of this Agreement and:

a.   finds that the Notice provided satisfies the requirements of due process and Federal Rule of Civil Procedure Rule 23(e)(1);

b.   finds that Settlement Class Members have been adequately represented by

the Class Representatives and Class Counsel;

c.      finds that the Settlement Agreement is fair, reasonable and adequate to the Settlement Class, that each Settlement Class Member shall be bound by this Agreement, including the release in Sections 13.01 and 13.02, and the covenant not to sue in Section 13.04, and that this Settlement Agreement should be and is approved;

d.      dismisses on the merits and with prejudice all Released Claims of the Settlement Class Members;

e.      permanently enjoins each and every Settlement Class Member from bringing, joining or continuing to prosecute any Released Claims against Defendant or the Released Parties; and,

f.      retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Settlement.

## XII.     FINAL JUDGMENT

**12.01**   The judgment entered at the Final Approval Hearing shall be deemed final:

a.      Thirty (30) days after entry of the judgment approving the Settlement if no document is filed within that time seeking appeal, review or rehearing of the judgment; or

b.      If any such document is filed, then five (5) days after the date upon which all appellate and/or other proceedings resulting from such document have been finally terminated in such a manner as to permit the judgment to take effect in substantially the form described in Section 11.04.

## XIII.     RELEASE OF CLAIMS

**13.01**   Released Claims.  Plaintiffs and each Settlement Class Member, as well as their respective assigns, executors, administrators, successors and agents, hereby release, resolve, relinquish and discharge each and all of the Released Parties from each of the Released Claims (as defined below).  The Settlement Class Members further agree that they will not institute any action or cause of action (in law, in equity or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have, in state or

federal court, in arbitration, or with any state, federal or local government agency or with any administrative or advisory body, arising from the Released Claims.  The release does not apply to members of the Settlement Class who timely opt-out of the Settlement. "Released Claims" mean any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order, that arise out of the Released Parties' use of an "automatic telephone dialing system" or "artificial or prerecorded voice"  to contact or attempt to contact Settlement Class Members in connection with a Residential Mortgage Loan and/or Home Equity Loan during the Class Period. Released Claims include the claims of Wells Fargo Residential Mortgage Loan account holders, Home Equity Loan account holders and non-account holders who are members of the Settlement Class. Notwithstanding the above, the Parties agree that any claims related to Calls made in an attempt to collect any debts other than those allegedly owed for a Wells Fargo Residential Mortgage Loan and/or a Home Equity Loan are not released.

13.02   Waiver of Unknown Claims.  Without limiting the foregoing, the Released Claims specifically extend to claims that Plaintiffs and Settlement Class Members do not know or suspect to exist in their favor at the time that the Settlement and the releases contained therein become effective.  This Section constitutes a waiver, without limitation as to any other applicable law, of Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

**13.03**   Plaintiffs and Settlement Class Members understand and acknowledge the significance of these waivers of California Civil Code Section 1542 and similar federal and state statutes, case law, rules, or regulations relating to limitations on releases.  In connection with such waivers and relinquishment, Plaintiffs and the Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts that they now know or believe to be true with respect to the subject matter of the Settlement, but that it is their intention to release fully, finally, and forever all Released Claims with respect to the Released Parties, and in furtherance of such intention, the releases of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

**13.04**   <u>Covenant Not To Sue</u>. Plaintiffs agree and covenant, and each Settlement Class Member will be deemed to have agreed and covenanted, not to sue any of the Released Parties with respect to any of the Released Claims, and agree to be forever barred from doing so in any court of law or equity, arbitration proceeding, or any other forum.  However, nothing herein is intended to restrict any Settlement Class member from contacting, assisting or cooperating with any government agency.

**XIV.**   <u>**TERMINATION OF AGREEMENT**</u>

**14.01**   <u>Either Side May Terminate the Agreement</u>. Plaintiffs and Defendant shall each have the right to unilaterally terminate this Agreement by providing written notice of his, her, or its election to do so ("Termination Notice") to all other Parties hereto within ten (10) calendar days of any of the following occurrences:

      a.    the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement Agreement;

      b.    an appellate court reverses the Final Approval Order, and the Settlement Agreement is not reinstated without material change by the Court on remand;

      c.    any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement

Agreement in a way that is material, unless such modification or amendment is accepted in writing by all Parties;

        d.     the Effective Date does not occur; or

        e.     any other ground for termination provided for elsewhere in this Agreement occurs.

**14.02**  <u>Termination if Large Number of Opt–Outs</u>.  If, as of the Opt-Out Deadline, more than 1,000 Settlement Class Members have opted-out of the Settlement pursuant to Section 10, Wells Fargo shall have, in its sole and absolute discretion, the option to terminate this Agreement within ten (10) calendar days after the Opt-Out Deadline.

**14.03**  <u>Revert to Status Quo</u>.  If either Plaintiffs or Defendant terminate this Agreement as provided herein, the Agreement shall be of no force and effect and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if this Agreement had never been executed, and any orders entered by the Court in connection with this Agreement shall be vacated.  However, any payments made to the Claims Administrator for services rendered to the date of termination shall not be refunded to Wells Fargo, but such payments shall constitute recoverable costs to the extent allowed by law.

## XV.   <u>NO ADMISSION OF LIABILITY</u>

**15.01**  Defendant denies any liability or wrongdoing of any kind associated with the alleged claims in the operative complaints.  Defendant has denied and continues to deny each and every material factual allegation and all claims asserted against it in the Actions.  Nothing herein shall constitute an admission of wrongdoing or liability, or of the truth of any allegations in the Actions. Nothing herein shall constitute an admission by Defendant that the Actions are properly brought on a class or representative basis, or that classes may be certified in those actions, other than for settlement purposes.  To this end, the settlement of the Action, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the Settlement: (i) are not and shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Wells

Fargo or of the truth of any of the allegations in the Actions; (ii) are not and shall not be deemed to be, and may not be used as an admission or evidence of any fault or omission on the part of Wells Fargo in any civil, criminal or administrative proceeding in any court, arbitration forum, administrative agency or other tribunal; and, (iii) are not and shall not be deemed to be and may not be used as an admission of the appropriateness of these or similar claims for class certification.

**15.02**   Pursuant to Federal Rules of Evidence Rule 408 and any similar provisions under the laws of other states, neither this Agreement nor any related documents filed or created in connection with this Agreement shall be admissible in evidence in any proceeding, except as necessary to approve, interpret or enforce this Agreement.

## XVI.    TAXES

**16.01**   Qualified Settlement Fund. The Parties agree that the account into which the Settlement Fund is deposited is intended to be and will at all times constitute a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B 1.  The Claims Administrator shall timely make such elections as necessary or advisable to carry out the provisions of Section 13, including, if necessary, the "relation back election" (as defined in Treas. Reg. §1.468B 1(j)(2)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under §1.468B of the Internal Revenue Code of 1986, as amended (the "Code").  It shall be the responsibility of the Claims Administrator to cause the timely and proper preparation and delivery of the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

**16.02**   Claims Administrator is "Administrator". For the purpose of §1.468B of the Code and the Treasury regulations thereunder, the Claims Administrator shall be designated as the "administrator" of the Settlement Fund.  The Claims Administrator shall cause to be timely and properly filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B

2(k)). Such returns shall reflect that all Taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

**16.03**   Taxes Paid by Administrator. All taxes arising in connection with income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Wells Fargo or any of the other Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes shall be paid by the Claims Administrator from the Settlement Fund.

**16.04**   Expenses Paid from Fund. Any expenses reasonably incurred by the Claims Administrator in carrying out its duties , including fees of tax attorneys and/or accountants, shall be paid by the Claims Administrator from the Settlement Fund.

**16.05**   Responsibility for Taxes on Distribution. Any person or entity that receives a distribution from the Settlement Fund shall be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of that distribution.  Such taxes and tax-related expenses shall not be paid from the Settlement Fund.

**16.06**   Defendant Is Not Responsible.  In no event shall Wells Fargo or any of the other Released Parties have any responsibility or liability for taxes or tax-related expenses arising in connection with the payment or distribution of the Settlement Fund to Plaintiffs, Settlement Class Members, Class Counsel or any other person or entity, and the Settlement Fund shall indemnify and hold Wells Fargo and the other Released Parties harmless for all such taxes and tax-related expenses (including, without limitation, taxes and tax-related expenses payable by reason of any such indemnification).

## XVII.    MISCELLANEOUS

**17.01**   Entire Agreement.  This Agreement and the exhibits hereto constitute the entire agreement between the Parties.  Any previous memoranda regarding settlement are superseded by this Agreement.  No representations, warranties or inducements have been made to any of the Parties, other than those representations, warranties, and covenants contained in this Agreement.

**17.02**   Governing Law.   This Agreement shall be governed by the laws of the State of Georgia.

**17.03**   Non-Waiver Of Debts/Obligations Owing By Class Members.   The Parties understand and agree that this Settlement Agreement and any terms herein shall not affect in any regard any debt or obligation owed by any Plaintiff or Settlement Class Member to Defendant and/or their clients, principals and their related or affiliated entities.   This Settlement Agreement does not operate to waive, extinguish, terminate, reduce or affect any debt or obligation owed by Plaintiff or Settlement Class Members, and shall not impair or limit any right or cause of action or right to enforce or otherwise collect any underlying debt or amount owed to Defendant and their clients, principals and their related or affiliated entities. The Settlement and any and all payments to class members that may arise from the settlement shall in no way re-trigger/re-activate the statute of limitations for any alleged debts that class members may owe Wells Fargo.

**17.04**   Jurisdiction.   The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement, including the Plaintiff and all Settlement Class members, for purposes of the administration and enforcement of this Agreement.

**17.05**   No Construction Against Drafter.   This Agreement was drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any Party based upon the contention that this Agreement or a portion of it was purportedly drafted or prepared by that Party.

**17.06**   Resolution of Disputes.   The Parties shall cooperate in good faith in the administration of this Settlement and agree to use their best efforts to promptly file a motion for preliminary approval with the Court.   Any unresolved dispute regarding the administration of this Agreement shall be decided by the Court, or by a mediator upon agreement of the Parties.

**17.07**   Counterparts.   This Agreement may be signed in counterparts and the separate signature pages executed by the Parties and their counsel may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.

**17.08**   Time Periods.  The time periods and dates described herein are subject to Court approval and may be modified upon order of the Court or written stipulation of the Parties.

**17.09**   Authority.  Each person executing this Settlement Agreement on behalf of any of the Parties hereto represents that such person has the authority to so execute this Agreement.

**17.10**   No Oral Modifications.  This Agreement may not be amended, modified, altered or otherwise changed in any manner, except by a writing signed by a duly authorized agent of Defendants and Plaintiffs, and approved by the Court.

**17.11**   Publicity and Confidentiality.  Subject to Section 8.06, the Parties agree that they will not initiate any publicity of the Settlement and will not respond to requests by any media (whether print, online, or any traditional or non-traditional form) about the Settlement.  Notice of the Settlement will be delivered exclusively through the notice process set forth in Section 8, above.

**17.12**   Notices.  Unless otherwise stated herein, any notice required or provided for under this Agreement shall be in writing and may be sent by electronic mail, fax or hand delivery, postage prepaid, as follows:

If to Class Counsel:

>       Alexander H. Burke
>       Burke Law Offices LLC
>       155 North Michigan Avenue, Suite 9020
>       Chicago, Illinois 60601
>       Telephone: (312) 729-5288
>       aburke@burkelawllc.com
>
>       Daniel M. Hutchinson
>       Lieff Cabraser Heimann & Bernstein, LLP
>       275 Battery Street, 29th Floor
>       San Francisco, CA 94111-3339
>       Telephone: (415) 956-1000
>       dhutchinson@lchb.com

If to counsel for Defendant:

>       John C. Lynch
>       David M. Gettings
>       Troutman Sanders LLP
>       222 Central Park Avenue, Suite 2000

Virginia Beach, VA 23462
Telephone: (757) 687-7500
John.lynch@troutmansanders.com
David.gettings@troutmansanders.com

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be executed, dated as of _____, 2016.

DATED: _____        Plaintiff Steven Markos

                                   _____

DATED: __5/27/16_____         Plaintiff Gregory Page

                                   _____

DATED: __5/27/16_____         Plaintiff Tiffany Davis

                                   _____

DATED: _____        Defendant Wells Fargo Bank, N.A.


                                   Name: _____

                                   Title: _____

APPROVED AS TO FORM AND CONTENT:

DATED: _____        TROUTMAN SANDERS LLP


                                   By: _____
                                        John C. Lynch
                                        David M. Gettings
                                        Attorneys for Defendant Wells Fargo


DATED: _____        BURKE LAW OFFICES, LLC

Virginia Beach, VA 23462
Telephone: (757) 687-7500
John.lynch@troutmansanders.com
David.gettings@troutmansanders.com

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to

be executed, dated as of _____, 2016.

DATED: _____          Plaintiff Steven Markos

                                _____

DATED:  5/27/16                 Plaintiff Gregory Page

                                _____

DATED:  5/27/16                 Plaintiff Tiffany Davis

                                _____

DATED: _____          Defendant Wells Fargo Bank, N.A.

                                Name: _____

                                Title: _____

APPROVED AS TO FORM AND CONTENT:

DATED: _____          TROUTMAN SANDERS LLP

                                By: _____
                                    John C. Lynch
                                    David M. Gettings
                                    Attorneys for Defendant Wells Fargo

DATED: _____          BURKE LAW OFFICES, LLC

07685.1518/7555005.1                    - 28 -

By: _____
        Alexander Holmes Burke
        Class Counsel

DATED: _____

LIEFF CABRASER HEIMANN &
BERNSTEIN LLP


By: _____
        Daniel M. Hutchinson
        Class Counsel

DATED: ___5/27/2016___

KEOGH LAW, LTD.


By: _____
        Keith James Keogh
        Class Counsel

DATED: _____

SKAAR & FEAGLE


By: _____
        James M. Feagle
        Class Counsel

DATED: _____

GREENWALD DAVIDSON RADBIL PLLC


By: _____
        Aaron Radbil
        Class Counsel

DATED: _____

MEYER WILSON CO., LPA


By: _____
        Matthew R. Wilson
        Class Counsel

By: _____
        Alexander Holmes Burke
        Class Counsel


DATED: _May 27, 2016_        LIEFF CABRASER HEIMANN &
                              BERNSTEIN LLP

                              By: _____
                                      Daniel M. Hutchinson
                                      Class Counsel


DATED: _____        KEOGH LAW, LTD.


                              By: _____
                                      Keith James Keogh
                                      Class Counsel


DATED: _____        SKAAR & FEAGLE


                              By: _____
                                      James  M. Feagle
                                      Class Counsel


DATED: _____        GREENWALD DAVIDSON RADBIL PLLC


                              By: _____
                                      Aaron Radbil
                                      Class Counsel


DATED: _____        MEYER WILSON CO., LPA


                              By: _____
                                      Matthew R. Wilson
                                      Class Counsel


07685.1518/7555005.1        - 29 -

By: _____
      Alexander Holmes Burke
      Class Counsel


DATED: _____      LIEFF CABRASER HEIMANN &
                                       BERNSTEIN LLP


By: _____
      Daniel M. Hutchinson
      Class Counsel


DATED: ____5/27/2016____      KEOGH LAW, LTD.


By: _____
      Keith James Keogh
      Class Counsel


DATED: _____      SKAAR & FEAGLE


By: _____
      James  M. Feagle
      Class Counsel


DATED: _____      GREENWALD DAVIDSON RADBIL PLLC


By: _____
      Aaron Radbil
      Class Counsel


DATED: _____      MEYER WILSON CO., LPA


By: _____
      Matthew R. Wilson
      Class Counsel

By: _____

     Alexander Holmes Burke
     Class Counsel

DATED: _____

LIEFF CABRASER HEIMANN &
BERNSTEIN LLP

By: _____

     Daniel M. Hutchinson
     Class Counsel

DATED: _____

KEOGH LAW, LTD.

By: _____

     Keith James Keogh
     Class Counsel

DATED: _____

SKAAR & FEAGLE

By: _____

     James M. Feagle
     Class Counsel

DATED: _____

GREENWALD DAVIDSON RADBIL PLLC

By: _____

     Aaron Radbil
     Class Counsel

DATED: _____

MEYER WILSON CO., LPA

By: _____

     Matthew R. Wilson
     Class Counsel

By: _____
      Alexander Holmes Burke
      Class Counsel

DATED: _____    LIEFF CABRASER HEIMANN &
                              BERNSTEIN LLP

By: _____
      Daniel M. Hutchinson
      Class Counsel

DATED: _____    KEOGH LAW, LTD.

By: _____
      Keith James Keogh
      Class Counsel

DATED: _____    SKAAR & FEAGLE

By: _____
      James  M. Feagle
      Class Counsel

DATED: Ma, 27, 2016    GREENWALD DAVIDSON RADBIL PLLC

By: _____
      Aaron Radbil
      Class Counsel

DATED: _____    MEYER WILSON CO., LPA

By: _____
      Matthew R. Wilson
      Class Counsel

By: _____
       Alexander Holmes Burke
       Class Counsel

DATED: _____          LIEFF CABRASER HEIMANN &
                                          BERNSTEIN LLP


                                          By: _____
                                                 Daniel M. Hutchinson
                                                 Class Counsel

DATED: _____          KEOGH LAW, LTD.


                                          By: _____
                                                 Keith James Keogh
                                                 Class Counsel

DATED: _____          SKAAR & FEAGLE


                                          By: _____
                                                 James  M. Feagle
                                                 Class Counsel

DATED: _____          GREENWALD DAVIDSON RADBIL PLLC


                                          By: _____
                                                 Aaron Radbil
                                                 Class Counsel

DATED: _5/27/16_                          MEYER WILSON CO., LPA

                                          By: _____
                                                 Matthew R. Wilson
                                                 Class Counsel