## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

STEVEN L. MARKOS, TIFFANY :
DAVIS, and GREGORY PAGE, on :
behalf of themselves and all others :
similarly situated, :
                       :     Civil Action File No.
     Plaintiffs, :    1:15-cv-01156-LMM
                       :
v. :    **Jury Trial Demanded**
                       :
WELLS FARGO BANK, N.A., :
                       :
     Defendant. :
_____ :

## FIRST AMENDED CLASS ACTION COMPLAINT

1.    Plaintiffs STEVEN L. MARKOS ("MARKOS"), TIFFANY DAVIS

("DAVIS"), and GREGORY PAGE ("PAGE"), on behalf of themselves and

all others similarly situated, allege that defendant Wells Fargo Bank, N.A.

("WELLS FARGO") violated the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227, by initiating non-emergency telephone calls

using an automatic telephone dialing system to cellular telephone numbers

without the prior express consent of the subscribers of those cellular

telephone numbers.

1

## JURISDICTION AND VENUE

2.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1337 and 47 U.S.C. § 227(b)(3).

3.   Personal jurisdiction and venue in this District are proper because Plaintiffs MARKOS and DAVIS reside here, the Defendant transacts business here, and a substantial portion of the events giving rise to Plaintiffs' cause of action occurred here, including Defendant's calls to MARKOS and DAVIS.

## PARTIES

4.   Plaintiff MARKOS is a natural person who resides in the Northern District of Georgia. Plaintiff is a subscriber for his cellular telephone services for telephone number (404) ___-____.

5.   Plaintiff DAVIS is a natural person who resides in the Northern District of Georgia. Plaintiff is a subscriber for her cellular telephone services for telephone number (770) ___-____.

6.   Plaintiff PAGE is a natural person who resides in the Northern District of Illinois.

7.   Defendant Wells Fargo Bank, N.A. [hereinafter "WELLS FARGO"] is a national banking association which boasts assets of $1.7 trillion dollars and a stock market value of $283 Billion dollars as of the close of 2014.

2

8.    WELLS FARGO is headquartered and has its corporate offices at 420 Montgomery Street, San Francisco, CA 94104.

9.    WELLS FARGO has maintained a call center in Iowa and many of the calls to class members were generated from this location.

10.   WELLS FARGO's website as of April 9, 2015 states that it is "the 8th Biggest Public Company in the World ....with more than 8,700 locations and over 70 million customers." https://www08.wellsfargomedia.com/downloads/pdf/about/wellsfargotoday.pdf

11.   WELLS FARGO has numerous banking branches in the metropolitan Atlanta area.

12.   WELLS FARGO may be served by personal service on its registered agent in Georgia: Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA  30092.

## FACTUAL ALLEGATIONS

13.   In the four year period preceding the filing of this action, WELLS FARGO, its predecessors in interest and/or vendors have made numerous telephone calls to the cellular telephone numbers of Plaintiffs and others across the

3

country for the purpose of collecting on two types of mortgage loans: Residential Mortgage Loans and Home Equity Loans.

14.   Home Equity Loans are agreements to extend credit using a residential property as collateral, which loan is secured by a lien that is subordinate to a first priority lien arising out of a Residential Mortgage Loan.

15.   Both Residential Mortgage Loans and Home Equity Loans include loans made by WELLS FARGO and loans made by a different lender and then subsequently assigned to WELLS FARGO.

16.   The telephone calls to Plaintiffs and others members of the class and subclass defined below were initiated by Defendant WELLS FARGO using an automatic telephone dialing system.

17.   WELLS FARGO's dialing system(s) has the capacity to dial from a list of telephone numbers without human intervention.

18.   Defendant's call center(s) and dialing infrastructure likewise have the capacity to store a database of telephone numbers, and to dial such numbers either at random or in some sequence.

19.   WELLS FARGO's telephone calls to the cellular telephone numbers of Plaintiffs and the class were made using equipment with the capacity to dial numbers predictively.

4

20.   Defendant programs telephone numbers into its dialing system(s), which then dials those numbers at a rate to ensure that a customer representative will be available when a consumer answers the telephone.

21.   WELLS FARGO uses the same dialing systems and calling policies, practices and procedures to make calls, regardless of what line of business is being collected.

22.   WELLS FARGO has historically used and has registered with various regulatory agencies a dialing system manufactured by Sun Microsystems.

23.   In some of the telephone calls to Plaintiffs and the class, Defendant left an unattended and pre-recorded voicemail message.

24.   WELLS FARGO made such autodialed or prerecorded voice calls to the cellular telephone numbers of Plaintiffs and others without their prior express consent.

25.   In fact, in the case of Plaintiffs and numerous others, WELLS FARGO continued to make its autodialed or prerecorded voice calls to their cellular telephone numbers even after receiving notification that it did not have permission to call, including after direct requests from the consumer that further calling cease.

5

26.     WELLS FARGO's policy is to honor only written cease and desist communication requests made to its Iowa corporate office.

27.     Upon information and belief, WELLS FARGO's practice has been to make computerized notations regarding oral requests to cease and desist, including but not limited to (a) hand-typed notes and (b) placement of a brief (e.g. three-day) "hold" on calls, for alleged purposes of allowing the consumer to request that calls cease and desist in writing. However, if Wells Fargo did not receive a written cease and desist, then it would automatically load the cellular telephone number back into its autodialer. There were likely other computerized methodologies for keeping track of do not call requests as well.

28.     Defendant knew about the TCPA before making the calls to Plaintiff and the class, but made these autodialed calls to cellular phones in spite of such knowledge.

29.     WELLS FARGO was a defendant in the case of *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) in which the Eleventh Circuit cited *Osorio v. State Farm Bank, FSB*, 746 F. 3d 1242 (11th Cir. 2014).

30.     By virtue of the Eleventh Circuit's decision in *Breslow*, WELLS FARGO was made aware of the Eleventh Circuit's holding in *Osorio* that it must

honor verbal requests to cease calling using automated dialers and

prerecorded voice messages.

31.     WELLS FARGO continued calling Plaintiffs and other consumers' cellular

telephone numbers using a predictive dialer and leaving unattended and

prerecorded messages after requests to cease calling, despite its knowledge

of the Eleventh Circuit's holding in *Osorio*.

32.     WELLS FARGO has previously settled multiple TCPA class actions,

involving millions of class members who received calls to their cell phones

in regard to collection calls. *Malta v. Wells Fargo Home Mortgage, Inc. et

al.*, No. 3:10-cv-01290-BEN-NLS (S.D. Cal.), and *Franklin v. Wells Fargo

Bank NA.*, No. 14-cv-2349-MMA-BGS (S.D. Cal.). Notwithstanding such

settlements, WELLS FARGO has continued making such calls without

consent.

33.     WELLS FARGO's calls to Plaintiffs and the class were not initiated by

accident or mistake; rather the telephone calls made by WELLS FARGO

were intentionally, willfully, and knowingly initiated. Moreover, WELLS

FARGO knew that it did not have Plaintiffs or the subclass members'

consent to make these calls, by virtue of having received and ignored

7

requests that calls stop, and because it lost the *Breslow* appeal, but made the calls anyway.

34.     Plaintiffs and the class and subclass have been damaged by WELLS FARGO's calls alleged herein. Their privacy was improperly invaded, and they were forced to divert attention away from other activities to address the incoming calls and voicemail messages. *See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

<u>**Facts Relating to Plaintiff MARKOS**</u>

35.     In the four year period preceding the filing of this action, WELLS FARGO, its predecessors in interest and/or vendors have made numerous telephone calls to Plaintiff MARKOS' cellular telephone number, (404) ___-____, in an attempt to collect a secured debt on a Home Equity Loan.

36.     The telephone calls to Plaintiff's cellular telephone number were initiated by Defendant WELLS FARGO using an automatic telephone dialing system; specifically, a predictive dialer.

37.     In some of the telephone calls to Plaintiff's cell phone, Defendant left an unattended and pre-recorded voicemail message.

38. In other telephone calls, WELLS FARGO left messages from "live" collection agents, which had a pause at the beginning of the message before the WELLS FARGO representative began speaking.

39. A pause at the beginning of a message or call is characteristic of predictive dialer technology, where the dialer connects a call to a consumer and then connects an agent to the call.

40. WELLS FARGO did not have the prior express consent of the Plaintiff to make the telephone calls to his cellular telephone number.

41. Plaintiff MARKOS did not initiate the loan with WELLS FARGO, but rather initiated it with Wachovia Bank, N.A. and never provided express permission or consent for either Wachovia Bank, N.A. or WELLS FARGO to make the telephone calls to his cellular telephone number.

42. Plaintiff was specifically requested to authorize "Automated Dialing System Calls" by a Wells Fargo employee, to which he unequivocally declined to give such authorization.

43. Plaintiff has orally advised more than one WELLS FARGO employee that he did not want WELLS FARGO to contact him on his cellular telephone number after expressly declining to consent to autodialed calls.

44.  WELLS FARGO employees specifically advised Plaintiff that they would not honor a verbal request to cease calling his cellular telephone number and that they would continue to call his cellular telephone number.

45.  WELLS FARGO employees said it was their policy only to honor written cease communication requests that were made to their Iowa corporate office.

46.  WELLS FARGO continued calling Plaintiff after one or more clear requests not to call his cellular telephone number by leaving unattended and pre-recorded messages.

47.  WELLS FARGO continued calling Plaintiff after one or more clear requests not to call his cellular telephone number by leaving live messages that utilized automated and predictive dialing technology.

48.  The telephone calls to Plaintiff MARKOS were not initiated by accident or mistake.

49.  The telephone calls were annoying to Plaintiff, invaded Plaintiff's privacy interests, and temporarily blocked use of his cellular telephone line for other potential callers.

## Facts Relating to Plaintiff DAVIS

50.  In the four year period preceding the filing of this action, WELLS FARGO, its predecessors in interest and/or vendors have made numerous telephone

10

calls to Plaintiff DAVIS' cellular telephone number, (770) ___-____, in an attempt to collect a Residential Mortgage Loan.

51.  Plaintiff's mortgage payment is due at the beginning of each month; however, she has a grace period in which to make her payment without penalty.

52.  Every month, Plaintiff pays her WELLS FARGO mortgage payment within the grace period.

53.  During the grace period, WELLS FARGO barrages Plaintiff's cellular telephone number with annoying and unwanted robocalls until her payment is received.

54.  The telephone calls to Plaintiff were initiated by Defendant WELLS FARGO using an automatic telephone dialing system; specifically, a predictive dialer.

55.  In some of the telephone calls, Defendant left an unattended and prerecorded voicemail message.

56.  In other telephone calls, WELLS FARGO left messages from "live" collection agents which had a pause at the beginning of the message before the WELLS FARGO representative began speaking—characteristic of

predictive dialer technology, where the dialer connects a call to a consumer and then connects an agent to the call.

57. WELLS FARGO did not have the prior express consent of the Plaintiff to make the telephone calls to her cellular telephone number.

58. Plaintiff has orally advised more than one WELLS FARGO employee that she did not want WELLS FARGO to contact her on her cellular telephone, expressly declining to consent to autodialed calls.

59. For instance, Plaintiff informed WELLS FARGO on May 7, 2015 in a telephone call that she did not want to receive calls from WELLS FARGO, and WELLS FARGO has continued to call.

60. WELLS FARGO did not honor verbal requests to cease calling Plaintiff's cellular telephone number; it continued to call her cellular telephone number after such requests.

61. WELLS FARGO continued calling Plaintiff after one or more clear requests not to call her cellular telephone number by leaving unattended and prerecorded messages.

62. WELLS FARGO continued calling Plaintiff after one or more clear requests not to call her cellular telephone number by leaving live messages that utilized automated and predictive dialing technology.

12

63.     The telephone calls were not initiated by accident or mistake.

64.     The telephone calls were annoying to Plaintiff, invaded Plaintiff's privacy

        interests, and temporarily blocked use of her cellular telephone line for other

        potential callers.

### Facts Relating to Plaintiff PAGE

65.     Plaintiff PAGE has a mortgage which is serviced by Wells Fargo Home

        Mortgage, a division of Defendant WELLS FARGO.

66.     In or around May 2015, Plaintiff began to receive calls on his cellular

        telephone from Defendant regarding an allegedly late or missed payment for

        his Residential Mortgage Loan.

67.     In fact, Plaintiff had pre-paid his loan a month ahead of time; however

        Defendant misapplied the funds from his payment and did not properly

        notate his account.

68.     During the second of these communications, Plaintiff notified Defendant

        that his account was current and requested that Defendant not contact his

        cellular telephone number.

69.     Despite Plaintiff's notice, Defendant continued to telephone Plaintiff on his

        cellular telephone number in an attempt to collect an allegedly delinquent

        mortgage payment.

70.   Defendant placed at least eleven telephone calls to Plaintiff's cellular
      telephone number after Plaintiff notified Defendant that he did not owe a
      delinquent payment and requested that the calls to his cellular phone cease.

71.   The above referenced calls were all made using an automated telephone
      dialing system.

72.   Many of the above referenced telephone calls that Defendant placed to
      Plaintiff's cellular telephone number were placed using a prerecorded or
      artificial voice message.

73.   Defendant did not have consent to call Plaintiff on his cellular telephone
      number because Plaintiff had revoked consent to receive such calls.

74.   The telephone calls were not initiated by accident or mistake.

75.   The telephone calls were annoying to Plaintiff, invaded Plaintiff's privacy
      interests, and temporarily blocked use of his cellular telephone line for other
      potential callers.

## **CLASS ACTION ALLEGATION**

76.   Plaintiffs are members of and seek to bring this action on behalf of
      themselves and a class defined as all users or subscribers to a wireless or
      cellular service within the United States who used or subscribed to a phone
      number to which Wells Fargo made or initiated one or more calls during the

14

class period using any automated dialing technology, according to Wells Fargo's available records, and who are within Subclass One and/or Two.

77.   Subclass One consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a call or calls in connection with a Residential Mortgage Loan.  The class period applicable to Subclass One is November 17, 2011 to February 29, 2016.  DAVIS and PAGE are members of Subclass One.

78.   Subclass Two consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a call or calls in connection with a Home Equity Loan.  The class period applicable to Subclass Two is April 14, 2011 to February 29, 2016.  MARKOS is a member of Subclass Two.

79.   Excluded from the class are claims related to any calls released as part of prior settlements, including but not limited to *Malta v. Wells Fargo Home Mortgage, Inc.*, 3:10-cv-1290-BEN-NLS (S.D. Cal.), or *Franklin v. Wells Fargo Bank, N.A.*, 14-cv-2349-MMA (BGS)  (S.D. Cal.). Defendant is in exclusive possession, custody and control of the list of persons who were class members in those, and any other, cases. And while there are other cases pending against Wells Fargo, for example, *McLean v. CBV Collection*

*Services, LTD* et al, 1:14-cv-7789 (N.D. Ill.) and *Luster v. Wells Fargo Dealer Services, Inc.*, 1:15-cv-01058-MHC (N.D. Ga.), counsel does not believe the proposed class members' claims in this matter overlap with those cases. It is not counsel's intent to have overlapping classes, and any overlap will be ameliorated through amendment if facts show that they do overlap.

80.   The exact size of the class is information within the exclusive knowledge of the Defendant.

81.   The class and subclass are so numerous that joinder of all members is impractical.

82.   The allegation of the previous paragraph is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  This allegation is based upon the following information: 1) Plaintiffs themselves received such calls to their cellular telephones from multiple collection agents of WELLS FARGO, indicating that Defendant did not scrub to remove cellular telephone numbers; 2) the very purpose of automated dialers is to call numerous persons in a short amount of time; and 3) the sheer size and national scope of WELLS FARGO.

83.   There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. The principal issues are:

> a.   Whether WELLS FARGO's dialing system constitutes an automatic telephone dialing system under the TCPA and/or the FCC's rules;
>
> b.   Whether WELLS FARGO's unattended messages used an artificial or prerecorded voice under the TCPA and/or the FCC's rules; and
>
> c.   Whether the telephone calls were made knowingly or willfully.

84.   The claims of the Plaintiffs are typical of those of the class members.  All are based on the same facts and legal theories.

85.   Plaintiffs will fairly and adequately protect the interests of the class.  They have retained counsel experienced in handling TCPA robocall actions and class actions.  Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

86.   Certification of the class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendant has acted on grounds that

apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

87. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that:

    a.    The questions of law or fact common to the members of the class predominate over any questions affecting an individual member

    b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment will permit a large number of similarly situated persons to prosecute their common claims relating to Defendant's autodialed calls to their cellular telephones in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual lawsuits would entail. Absent a class action, many members of the class will likely not even obtain relief, whether because they are unaware of their right to relief from the harm caused by Defendant's illegal practices, due to the prohibitive time and monetary cost inherent in individual litigation, or otherwise.

88. Plaintiffs request certification of a hybrid class pursuant to Fed. R. Civ. P. 23(b)(2) and (3) for monetary damages and injunctive relief.

## CAUSE OF ACTION

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

89.   The acts of Defendant constitute violations of the Telephone Consumer

Protection Act.

90.   Defendant's violations of the TCPA include, but are not limited to, the

following:

Making and/or initiating telephone calls using an automatic telephone

dialing system or an artificial or prerecorded voice to any telephone

number assigned to a cellular telephone service, in violation of 47

U.S.C. § 227(b)(1)(A)(iii) and 47 CFR § 64.1200(a)(1)(iii).

91.   As a result of Defendant's actions, Plaintiffs and the members of the class

are entitled to an award of actual damages or $500.00, whichever is greater,

for each such violation and an injunction prohibiting future conduct in

violation of the TCPA.

92.   Defendant's violations were committed willfully and knowingly.

93.   Plaintiffs, on behalf of themselves and the class, request that the Court treble

damages pursuant to 47 U.S.C. § 227(b)(3).

94.   Plaintiffs request, on behalf of themselves and the class, that Defendant be

enjoined from future TCPA violations.

19

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of themselves and the class they seek to represent against Defendant, as follows:

A.    Certification of this matter to proceed as a class action;

B.    Damages pursuant to 47 U.S.C. § 227(b)(3)(B);

C.    Treble damages pursuant to 47 U.S.C. § 227(b)(3);

D.    Injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) preventing future conduct by the Defendant in violation of the TCPA;

E.    Costs of this Action pursuant to Fed. R. Civ. P. 54; and

F.    Such further and additional relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs herein demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated:  June 29, 2016

SKAAR & FEAGLE, LLP

by: /s/ James M. Feagle
James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
404 / 373-1970
404 / 601-1855 fax

Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
Georgia Bar No. 649610
krisskaar@aol.com
133 Mirramont Lake Drive
Woodstock, GA 30189
770 / 427-5600
404 / 601-1855 fax

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (*pro hac vice* pending)
Email:  jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

21

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice*
pending)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Andrew R. Kaufman (*pro hac vice* pending)
Email: akaufman@lchb.com
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965

BURKE LAW LLC

by: /s/ Alexander H. Burke
Alexander H. Burke (*pro hac vice*)
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

22

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice* pending)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice* pending)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

LAW OFFICES OF DOUGLAS J.
CAMPION, APC
Douglas J. Campion
Email: doug@djcampion.com
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Facsimile:  (619) 858-0034

KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Telephone: 312-265-3258
Facsimile: 312-726-1093

GREENWALD DAVISON RADBIL PLLC
Michael L. Greenwald
Email:  mgreenwald@gdrlawfirm.com
5550 Glades Rd., Suite 500
Boca Raton, FL 33431
Telephone: (561) 826-5477
Facsimile: (561) 961-5684

Aaron D. Radbil
Email:  aradbil@gdrlawfirm.com
106 East Sixth Street, Suite 913
Austin, Texas 78701
Telephone: (512) 322-3912
Facsimile: (561) 961-5684

KAZAROUNI LAW GROUP, APC
Abbas Kazerounian
Email:  ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA  92626
Telephone:  (800) 400-6806
Facsimile:  (800) 520-5523

HYDE & SWIGART
Joshua B. Swigart, Esq.
josh@westcoastlitigation.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone (619) 233-7770
Facsimile (619) 297-1022

*Attorneys for Plaintiffs Steven L. Markos,
Tiffany Davis, and Gregory Page, and the
Proposed Class*