# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| Steven L. Markos, Tiffany Davis, and Gregory Page, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>Wells Fargo Bank, N.A.,<br><br>          Defendant, | Case No. 1:15-cv-01156-LMM |

**MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND
<u>SERVICE AWARDS FOR CLASS REPRESENTATIVES</u>**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................ 1

II.     BACKGROUND .............................................................................. 2

        A.      The Common Settlement Fund and Cash Payments to the
                Class ................................................................................... 2

        B.      Class Counsel's Prosecution of This Matter ............................ 4

III.    ARGUMENT .................................................................................... 6

        A.      Class Counsel Are Entitled to a Percentage of the
                Common Fund Created Through Their Efforts. ....................... 6

        B.      The Relevant Factors Support the Requested Fee. ................... 9

                1.      Class Counsel Obtained an Excellent Result for the
                        Class. ................................................................... 11

                2.      Class Counsel Worked Hard to Secure Prompt
                        Relief for the Class. ............................................. 13

                3.      Class Counsel Are Experienced TCPA and Class
                        Action Lawyers. ..................................................... 14

                4.      Class Counsel Undertook the Litigation at
                        Significant Risk with No Guarantee of Recovery. ........ 15

                5.      The Requested Fee Comports with Fees Awarded
                        in Similar Cases, as well as Customary Fees in
                        Contingent Commercial Litigation. .............................. 20

        C.      The Class Representative Service Awards are
                Reasonable. ........................................................................ 22

IV.     CONCLUSION ............................................................................... 23

1319236.6

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ACC Int'l v. FCC*,
 No. 15-1211 (D.C. Cir.).......................................................................17

*Aliano v. Joe Caputo & Sons—Algonquin, Inc.*,
 No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011)...................................18

*Allapattah Servs., Inc. v. Exxon Corp.*,
 454 F. Supp. 2d 1185 (S.D. Fla. 2006)......................................................... passim

*Allen v. JPMorgan Chase Bank, N.A.*,
 13-cv-8285, Dkt. No. 93 (N.D. Ill. Oct. 21, 2015)..............................................21

*Behrens v. Wometco Enters., Inc.*,
 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ...............14

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980) ............................................................................7

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
 946 F.2d 768 (11th Cir. 1991) .................................................................. passim

*Campbell-Ewald Co. v. Gomez*,
 136 S. Ct. 663 (2016) .........................................................................18

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
 587 F. Supp. 2d 1266 (N.D. Ga. 2008) ..................................................7

*CE Design Ltd. v. Cy's Crab House N., Inc.*,
 1:07-cv-5456, Dkt. No. 424 (N.D. Ill. Oct. 21, 2011).........................................21

*Chapman v. First Index, Inc.*, No. 09 C 5555,
 2014 WL 840565 (N.D. Ill. Mar. 4, 2014), *aff'd in part*, 796 F.3d 783 (7th Cir.
 2015)........................................................................................17

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
 No. 1:04-v-3066, 2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ......................6, 7

*Craft v. North Seattle Cmty. College Found.*,
 No. 07-cv-132, Dkt. No. 135 (M.D. Ga. Sept. 2, 2010)................................. 9, 20

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
 No. 11-CV-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015).........................23

1319236.6

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Cummings v Sallie Mae*,
  12 C-9984 (N.D. Ill. May 30, 2014)....................................................21

*Desai v. ADT Sec. Servs., Inc.*,
  1:11-cv-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) ........................21

*Dresdner Bank AG v. M/V Olympia Voyager*,
  446 F.3d 1377 (11th Cir. 2006)............................................................9

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
  No. 13-cv-21016, Dkt. No. 95 (S.D. Fla. June 24, 2015) ...................20

*Gutierrez v. Wells Fargo Bank*,
  No. C 07-05923 WHA (N.D. Cal.)......................................................19

*Hageman v. AT&T Mobility LLC, et al.*,
  1:13-cv-50, Dkt. No. 68 (D. Mont. Feb. 11, 2015) ...................... 21, 23

*Hanley v. Fifth Third Bank*,
  1:12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013)........................21

*Holtzman v. CCH*,
  1:07-cv-7033, Dkt. No. 33 (N.D. Ill. Sept. 30, 2009) .........................21

*Ikuseghan v. Multicare Health Sys.*,
  No. No. C14-5539, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) ...............21

*In re Capital One Tel. Consumer Protection Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015)....................................................21

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011)........................................ passim

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) .................................................. passim

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001)................................................16

*In re: Healthtronics Surgical Servs., Inc. Sec. Litig.*,
  No. 03-cv-02800, Dkt. No. 62 (N.D. Ga. Dec. 1, 2005) .....................20

*In re: Managed Care Litig.*,
  No. 00-1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003)...............20

*In re: Profit Recovery Grp. Int'l, Inc. Sec. Litig.*,
  No. 00-cv-01416, Dkt. No. 203 (N.D. Gal. May 26, 2005) .................20

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................22

*Johnson v. Ga. Hwy. Exp., Inc.*,
  488 F.2d 714 (5th Cir. 1974) .............................................................................9

*Jones v. I.Q. Data Int'l, Inc.*,
  No. 1:14-cv-00130, 2015 WL 5704016 (D.N.M. Sept. 23, 2015) ......................23

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
  No. 2:10-CV-02847, 2015 WL 5626414 (N.D. Ala. Sept. 14, 2015) .................20

*Locklear Elec., Inc. v. Norma L. Lay*,
  No. 3:09-cv-00531, Dkt. No. 67 (S.D. Ill. Sept. 8, 2010) ...................................21

*Martin v. Dun & Bradstreet, Inc. et al*,
  No. 1:12-cv-00215, Dkt. No. 63 (N.D. Ill. Jan. 16, 2014) ........................... 21, 23

*Pinto v. Princess Cruise Lines, Ltd.*,
  513 F. Supp. 2d 1334 (S.D. Fla. 2007) ......................................................... 11, 21

*Prater v. Medicredit, Inc.*,
  No. 4:14-cv-00159, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) ......................23

*Soto v. The Gallup Org.*,
  No. 13-cv-61747, Dkt. No. 95 (S.D. Fla. Nov. 24, 2015) ...................................20

*Spokeo v. Robins*,
  136 S. Ct. 1540 (2016) .......................................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .......................................................................................18

*Vendervort v. Balboa Capital Corp.*,
  8 F. Supp. 3d 1200 (C.D. Cal. 2014) .................................................................21

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) ............................................................. 1, 8, 9, 20

*Wolff v. Cash 4 Titles*,
  No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ......................20

**Rules**

Fed. R. Civ. P. 23(h) ................................................................................................8

Fed. R. Civ. P. 54(d)(1)............................................................................................8

1319236.6

# TABLE OF AUTHORITIES
## (continued)

**Page**

**Regulations**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) ......................................................16

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, 62 Communications Reg. (P&F) 1539, 2015 WL 4387780 (F.C.C.) *pet. for rev. pending*, *ACC Int'l v. FCC*, No. 15-1211 (D.C. Cir.) ...........................................5

**Treatise**

Rubenstein, Newberg on Class Action § 16:1 (5th ed. 2016) ..................................8

1319236.6

## I.   <u>INTRODUCTION</u>

Class Counsel respectfully move the Court for an award of: (a) attorneys' fees and costs in the total amount of $4,925,249, which is 30% of the $16,417,496.70 non-reversionary cash Settlement Fund that Class Counsel obtained for the Class (costs included); and (b) Service Awards to the three Class Representatives of $20,000 each, for a total of $60,000.  Class counsel respectfully submit that the requested fees and Service Awards are fair, reasonable, consistent with Eleventh Circuit law, and should be approved.[1]

Class Counsel seek attorneys' fees under the percentage-of-the-fund method, which, under long-standing and controlling Circuit authority, is the appropriate method for calculating and awarding fees in a common fund settlement like this. *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991). Moreover, courts in this Circuit have long held that 30% of the common fund plus costs is appropriate.  *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (affirming where the district court identified 30% plus costs as the benchmark and adjusted upward due to circumstances of the case).

---

[1] The Settlement is attached as Exhibit 1 to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 34-2).  Unless otherwise stated, all capitalized terms in this Memorandum carry the same meaning as defined in the Settlement.

Consistent with this authority, Class Counsel seek 30% of the non-reversionary cash Settlement Fund, inclusive of, and not in addition to, their costs. The relevant factors confirm that Class Counsel's request is well-supported.

The Service Awards are also well-justified for each Class Representative's efforts on behalf of the Class, including their refusal to accept Rule 68 offers of judgment so they could instead pursue a Class recovery, as they ultimately did.

For these reasons, and as detailed below, Class Counsel respectfully submit that the fee request and Service Awards are well-supported and should be approved.

## II.   __BACKGROUND__

### A.   __The Common Settlement Fund and Cash Payments to the Class__

The Settlement requires Wells Fargo to fund a non-reversionary cash Settlement Fund of $16,417,496.70.  Settlement at ¶ 4.04; Dkt. No. 38-1 (Supp. Hutchinson Decl.) at ¶¶ 3-9.  Each Class Member who submits a simple claim form online, by phone, or by mail will receive a Cash Award.  Settlement at ¶¶ 4.05, 4.06.[2]  Under no circumstances will any amount of the Settlement Fund revert to Wells Fargo.

---

[2] The Class is composed of two Subclasses, Subclass One for persons called in connection with a Residential Mortgage Loan from November 17, 2011 to February 29, 2016, and Subclass Two for persons called in connection with a

*Footnote continued on next page*

The amount of each Cash Award is the claiming Class Member's *pro rata* share of the Settlement Fund, after payment of attorneys' fees, costs of notice and claims administration, and Service Awards.  *Id*. at ¶¶ 4.05, 4.06.  Although it is not possible to predict the precise amount of the Cash Awards until all claims have been submitted and verified, Class Counsel, based on their experience in similar TCPA class actions, conservatively estimated that each Cash Award will be in the range of $25 to $75.  Ex. A (Hutchinson Decl.) at ¶ 25.  Class Counsel will provide the Court with a report on the final claims numbers and estimated payment per Class Member with the Motion for Final Approval.

If uncashed checks permit a second *pro rata* distribution equal to or greater than $1.00 per qualifying claimant, the Claims Administrator will make a second *pro rata* distribution to Settlement Class Members who cashed settlement checks. Settlement at ¶ 7.04(e).  Only if a second distribution is not made, or if checks remain uncashed after the second distribution, will the uncashed amount be distributed *cy pres* to Habitat for Humanity, subject to Court approval.  *Id.* at ¶ 7.04(f); Dkt. No. 38-1 (Supp. Hutchinson Decl.) at ¶¶ 10-13.

---

*Footnote continued from previous page*
Home Equity Loan from April 14, 2011 to February 29, 2016.  *Id.* at ¶¶ 2.13, 2.33. A person who is a member of both Subclasses is eligible to make two claims on the Settlement Fund and receive two Cash Awards.  *Id.* at ¶ 4.05.

Although it is early in the Claims Period, initial estimates suggest that the claims rate may be high relative to similar settlements, and may even exceed the claims-rate estimates in the Motion for Preliminary Approval and the Class Notice. Ex. A (Hutchinson Decl.) at ¶ 40.

### B.      Class Counsel's Prosecution of This Matter

Class Counsel worked hard to obtain the substantial, all-cash, non-reversionary Settlement Fund for the Class.  Since 2012, co-lead Class Counsel and additional Class Counsel together engaged in a comprehensive litigation strategy to pursue class action TCPA claims against Wells Fargo.  Ex. A (Hutchinson Decl.) at ¶ 28.  Before filing the *Markos*, *Page*, and *Davis* actions, Class Counsel thoroughly researched and investigated Wells Fargo's practices and Plaintiffs' legal claims by, among other things, interviewing Class Members, reviewing Class Members' pertinent documents and information, including account applications and agreements, and researching relevant TCPA case law and regulations.  This information was critical to Class Counsel's understanding of the nature of the Class's claims and the scope of potential damages and remedies, particularly because the TCPA legal landscape is in a state of flux.  *Id.* at ¶ 29; *see also, e.g.*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, 62

Communications Reg. (P&F) 1539, 2015 WL 4387780 (F.C.C.) ("2015

Declaratory Ruling"), *pet. for rev. pending*, *ACC Int'l v. FCC*, No. 15-1211 (D.C.

Cir.).

After filing the cases, the parties agreed to explore mediation in large part

because Class Counsel's extensive pre-filing investigation and expertise from

dozens of TCPA class actions, including TCPA class actions against Wells Fargo

itself, prepared them to navigate an effective—and efficient—resolution of this

litigation.  Ex. A (Hutchinson Decl.) at ¶ 30.  To facilitate mediation, the parties

conducted significant informal discovery, including review and analysis of Wells

Fargo's call data and 3,245 pages of key documents.  *Id.* at ¶ 31.  Concurrent with

settlement negotiations, Class Counsel continued to speak with scores of Class

Members about their experiences and problems with Wells Fargo's telephone calls.

*Id.* at ¶ 32.

The Settlement was reached only after good faith, contentious, arms'-length

negotiations.  All settlement discussions took place under the direction of Hunter

R. Hughes, an experienced and well-respected private mediator.  *Id.* at ¶ 33.  To

facilitate mediation, the parties submitted detailed mediation submissions setting

forth their respective views on the cases.  *Id.* at ¶ 34.

The parties participated in an all-day, in-person mediation with Mr. Hughes on January 13, 2016. *Id.* at 35.   Although the mediation was productive, the parties were unable to reach a resolution at that time. *Id.* at ¶ 36.   After further negotiations1, an MOU was executed on January 25, 2016. *Id.* at ¶ 37.   With Mr. Hughes' assistance, the parties continued to negotiate the terms of the Settlement Agreement over the course of several months, until a final Settlement Agreement was executed on June 10, 2016. *Id.*   The parties initiated additional confirmatory discovery to confirm the Final Class Size, including a deposition of Darrell Hunt, Wells Fargo's corporate representative most knowledgeable about the size of the Settlement Class, which was taken on July 13, 2016. *Id.* at ¶ 38.

## III.   ARGUMENT

### A.   Class Counsel Are Entitled to a Percentage of the Common Fund Created Through Their Efforts.

It is well established that, when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *See, e.g.*, *Camden 1 Condo. Ass'n*, 946 F.2d at 771; *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-v-3066, 2012 WL 12540344, at *1 (N.D. Ga. Oct. 26, 2012); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011).   The common benefit doctrine "rests on the perception that persons who obtain the benefit of a

lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 349 (N.D. Ga. 1993) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Furthermore, "in order to encourage 'private attorney general' class actions brought to enforce laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Columbus Drywall*, 2012 WL 12540344, at *1 (internal quotation marks and alterations omitted).

Where, as in this case, Class Counsel's efforts result in a common, all-cash fund that provides direct monetary payments to the Class, attorneys' fees are determined as a percentage of the fund that Class Counsel's efforts created for the Class's benefit. *See Camden I Condo. Ass'n*, 946 F.2d at 774 ("[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.").

This Court has substantial discretion in determining the appropriate fee percentage awarded to counsel, within a specified range. *See, e.g.*, *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1268-69 (N.D. Ga. 2008) ("[T]here is no hard and fast rule mandating a certain percentage of a

common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of the case.") (quoting *Camden I Condo. Ass'n*, 946 F.2d at 774).  Nevertheless, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund," although "an upper limit of 50 percent of the fund may be stated as a general rule, though even larger percentages have been awarded."  *Camden I Condo. Ass'n*, 946 F.2d at 774-75; *see also Waters*, 190 F.3d at 1294-95 (explaining that "[*Camden I*] directed district courts to view this range as a 'benchmark,'" and affirming where the district court identified 30% as the benchmark and adjusted upward due to circumstances of the case).

In addition to a percentage of the fund in fees, Class Counsel are entitled to reimbursement of out-of-pocket costs advanced for the Class.  *See, e.g.*, *In re Domestic Air Transp.*, 148 F.R.D. at 306; Rubenstein, Newberg on Class Actions § 16:1 (5th ed. 2016).  Class Counsel may recover the taxable costs recoverable by any prevailing party, *see* Fed. R. Civ. P. 54(d)(1), and also "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

In this case, Class Counsel, although entitled to percentage of the fund as fees *plus* expenses, seek 30% of the fund *inclusive* of expenses.[3]  The requested award is well within the norm in this Circuit and should be approved.  *See, e.g.*, *Waters*, 190 F.3d at 1294-95 (approving 33 1/3%); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1365 ("Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent").

## B.  The Relevant Factors Support the Requested Fee.

The Eleventh Circuit has identified a list of factors potentially relevant in determining the appropriate percentage to be awarded as a fee.  First are twelve factors identified in *Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974):[4]  (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case;

---

[3] Class Counsel request that the Court determine an aggregate fee and costs award and give co-lead Class Counsel the authority to allocate among Class Counsel.  *See Craft v. North Seattle Cmty. College Found.*, No. 07-cv-132, Dkt. No. 135 (M.D. Ga. Sept. 2, 2010) ("At the appropriate time, Class Counsel, in its discretion but subject to any agreements with counsel for the Class, shall allocate and distribute this award of Attorneys' Fees among counsel for the Class."); *In re Domestic Air Transp.*, 148 F.R.D. at 357 ("Ideally, allocation is a private matter to be handled among class counsel.").

[4] *Camden I* looked to *Johnson* because "decisions of the former Fifth Circuit rendered before October 1, 1981, are binding on this circuit."  *Dresdner Bank AG v. M/V Olympia Voyager*, 446 F.3d 1377, 1381 n.1 (11th Cir. 2006).

(5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I Condo. Ass'n*, 946 F.2d at 772 n.3, 776. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action. In most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration." *Id.* at 775.

As is evident from the number of factors identified, district courts are not required to evaluate each and every factor. Rather, "[t]he district court's reasoning should identify all factors upon which it relied and explain how each factor affected its selection of the percentage of the fund awarded as fees." *Id*; *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1359 ("These factors are merely guidelines[.]"). Here, the relevant factors demonstrate that the requested fee award is reasonable and should be granted.

## 1.    Class Counsel Obtained an Excellent Result for the Class.

The eighth *Johnson* factor—"the amount involved and the results

obtained"—is "the most important factor," recognizing as it does that "a fee award

should reflect the relief obtained." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.

Supp. 2d 1185, 1204-05 (S.D. Fla. 2006); *see also Pinto v. Princess Cruise Lines,

Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) ("The result achieved is a major

factor to consider in making a fee award."); *In re Domestic Air Transp.*, 148

F.R.D. at 351 ("The most important element in determining the appropriate fee to

be awarded class counsel out of a common fund is the result obtained for the class

through the efforts of such counsel.").  The Settlement is a terrific result for the

Class and supports the 30% fee request that is well within the typical range.

The Settlement requires Wells Fargo to pay $16,417,496.70 into a non-

reversionary cash Settlement Fund that will result in estimated payments of

between $25 and $75 for Class Members who submit a simple claim form.  That

result is excellent when measured against twenty-five years of TCPA settlements:[5]

| Caption | Amount | Class Members |
|---|---|---|
| *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 3, 2016), *appeal filed* | $34 million | More than 32 million |
| *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. | $24.15 | 7,792,256 |

[5] *See* Ex. A (Hutchinson Decl.) at ¶ 27.

| Wash.) | million | |
|---|---|---|
| *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) | $17.1 million | 5,887,508 |
| *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009 (N.D. Cal.) | $32,083,905 | 7,723,860 |
| *Connor v. JPMorgan Chase Bank*, No. 10 CV 1284 (S.D. Cal.) | $11,665,592.09 | 2,684,518 |
| *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190 (N.D. Ill.) | $39,975,000 | 9,065,262 |
| *In re Capital One Tel. Consumer Protection Act Litig.*, No. 12-cv-10064 (N.D. Ill.) | $75,455,098 | 16,645,221 |
| *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) | $12.2 million | 47 million |
| *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248 (S.D. Cal.) | $9 million | More than 6,079,411 |

Notable on that list is the *Malta* case, which, like this case, involved Wells Fargo mortgage debt collection calls.  This case yields a per-class-member recovery that is approximately *40% higher* than what the class received in Malta.[6]

Most importantly, the Settlement provides Class Members with real monetary relief, despite the fact that this is a purely statutory damages case involving nominal economic damages or actual damages (such as harassment and invasion of privacy) that are difficult to quantify.  This Settlement provides direct, monetary benefits to Class Members who realistically would not have filed their

---

[6] $4.95 per Class Member here vs. $2.90 in *Malta*.

own individual lawsuits because each Class Member's case would have been too small to bring on its own.

### 2. Class Counsel Worked Hard to Secure Prompt Relief for the Class.

The first *Johnson* factor measures Class Counsel's efforts at securing the result for the Class. Those considerations support the fee requested here.

Class Counsel worked hard to obtain the substantial, all-cash, non-reversionary Settlement Fund for the Class. This case and the Settlement are part of a carefully-crafted global litigation strategy to pursue class action TCPA claims against Wells Fargo. Before filing the *Markos*, *Page*, and *Davis* actions, Counsel thoroughly investigated Wells Fargo's practices and Plaintiffs' claims. That investigation and research was critical to Class Counsel's understanding of the claims and remedies at issue, in particular because the TCPA legal landscape is in a state of flux. *See* 2015 Declaratory Ruling.

Before the parties went to mediation, the court in the *Page* action denied Wells Fargo's motion to strike the class allegations; Class Counsel conducted significant informal discovery, including review of Wells Fargo's call data and 3,245 pages of key documents; and both parties submitted detailed mediation briefs. The Settlement was reached only after months of good faith, contentious, arms'-length negotiations under the direction of Hunter R. Hughes, an experienced

and well-respected private mediator.  After the Settlement was reached, Class

Counsel conducted additional confirmatory discovery, including a Rule 30(b)(6)

deposition of Wells Fargo's corporate representative.

The quality of those efforts is best evidenced by the result: a large, all-cash,

non-reversionary Settlement Fund that compares very favorably with similar large

TCPA class settlements.  *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534,

547-48 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("The quality of work

performed in a case that settles before trial is best measured by the benefit

obtained.").  Just as important, Class Counsel's pre-filing investigation and

approach to mediation resulted in a Settlement *now*, rather than after years of

litigation.

### 3. Class Counsel Are Experienced TCPA and Class Action Lawyers.

An important factor in favor of the requested fee is Class Counsel's

experience, reputation, and ability.  *See Allapattah Servs.*, 454 F. Supp. 2d at 1209

("Courts in this circuit routinely emphasis this factor in calculating percentage fee

awards.").  Class Counsel are experienced class action litigators who have

successfully prosecuted complex consumer cases, and who are particularly skilled

and experienced in litigating TCPA class actions.  Ex. A (Hutchinson Decl.) at ¶¶

3-13; Ex. B (Burke Decl.) at ¶¶ 2-11; Ex. C (Keogh Decl.) at ¶¶ 15-54; Ex. D

(Feagle Decl.) at ¶¶ 6-27; Ex. E (Wilson Decl.) at ¶¶ 1-5; Ex. F (Campion Decl.) at ¶¶ 4-10; Ex. G (Greenwald Decl.) at ¶¶ 7-26; Ex. H (Kazarounian Decl.) at ¶¶ 5-27; Ex. I (Swigart Decl.) at ¶¶ 5-13.  Collectively, they have been involved in literally every major piece of TCPA litigation involving banks and debt collectors, and have recovered over $280 million in non-reversionary cash for class members in those cases. Ex. A (Hutchinson Decl.) at ¶¶ 6, 13; Ex. B (Burke Decl.) at ¶¶ 2-6; Ex. C (Keogh Decl.) at ¶¶ 15-23; Ex. D (Feagle Decl.) at ¶¶ 21, 24; Ex. E (Wilson Decl.) at ¶ 3; Ex. F (Campion Decl.) at ¶¶ 8-10; Ex. G (Greenwald Decl.) at ¶¶ 7-9; Ex. H (Kazarounian Decl.) at ¶¶ 7-9; Ex. I (Swigart Decl.) at ¶¶ 7-9.

Moreover, although Class Counsel seek fees based on a percentage-of-the-fund method  (as appropriate in this Circuit), they nonetheless worked closely and in cooperation with one another to divide tasks, ensure efficient case management, and prevent duplication of efforts.  By assigning specific tasks among firms, they were able to capitalize on their expertise and obtain the best and most efficient resolution to this matter.  Ex. A (Hutchinson Decl.) at ¶ 43.

### 4.    Class Counsel Undertook the Litigation at Significant Risk with No Guarantee of Recovery.

Class Counsel prosecuted this matter entirely on a contingent fee basis, *id.* at ¶¶ 45-47, "assum[ing] a significant risk of nonpayment or underpayment." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364.  That factor supports

the requested fee.  *See id.* ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.") (citation omitted); *In re Domestic Air Transp.*, 148 F.R.D. at 356 (awarding a fee multiplier where "Class Counsel have borne the entire risk of failing to achieve a successful and substantial result for the class.").

The risk of diminished or no recovery was substantial because the parties have real disputes on a number of issues relating to both class certification and the merits of Plaintiffs' claims, including issues that were teed up for resolution in the Supreme Court at the time these cases were filed.  First, Wells Fargo contends that "prior express consent" can be given whenever a customer provides a cell phone number to the defendant as a contact number.  *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (hereinafter "2008 Declaratory Ruling") (declaring that cell phone numbers must be "provided during the transaction that resulted in the debt owed").  Although Plaintiffs take a narrower view of "transaction," if the Court adopted

Wells Fargo's view, the amount of recoverable damages could be reduced significantly or eliminated altogether.

Second, Plaintiffs maintain that the FCC correctly determined that consent provided by a customer does not transfer to other customers called at the same number. *See* 2015 Declaratory Ruling. Wells Fargo disagrees, and argues that that a pending petition to the D.C. Circuit will overturn the FCC Order. *See ACC Int'l v. FCC*, No. 15-1211 (D.C. Cir.).

Third, while Plaintiffs continue to believe that class certification would be appropriate, Wells Fargo argues that class certification outside the context of settlement would be inappropriate due to the question of whether Settlement Class Members consented to the calls at issue. *See Chapman v. First Index, Inc.*, No. 09 C 5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) (citing cases), *aff'd in part*, 796 F.3d 783 (7th Cir. 2015) ("Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case."). If Wells Fargo were able to present convincing facts to support its position, there is a risk that the Court would decline to certify the class, leaving only the named Plaintiffs to pursue their individual claims.

Fourth, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards on due process grounds. *See, e.g.*, *Aliano v. Joe Caputo & Sons—Algonquin, Inc.,* No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.").

Fifth, Wells Fargo contends that Plaintiffs may lack standing to pursue their claims after *Spokeo v. Robins*, 136 S. Ct. 1540 (2016). *Spokeo* was pending when the *Markos*, *Davis*, and *Page* actions were filed and remained pending during settlement talks. Class Counsel were at risk of recovery nothing at all throughout the litigation had *Spokeo* come down as many expected.

Sixth, other Supreme Court cases in the past term had the possibility of resulting in no recovery here. In *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), the Court considered (and ultimately rejected) the argument that an unaccepted Rule 68 offer of judgment could moot a named plaintiff's claim and prevent her from pursuing a class action. And in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), the Court considered (though ultimately did not decide)

whether and when a plaintiff must show that each class member suffered the alleged injury.

Finally, there was the ever-present risk of losing a jury trial. And, even if Plaintiffs did prevail, any recovery would be delayed for years by an appeal.[7] Any potential statutory recovery in this case would likely be impossible to recover as a practical matter due in part to the fact that Wells Fargo would have every incentive to litigate appeals of any such judgment over many years. Class Counsel believe that they could have prevailed on these issues, but success was by no means assured. Each of these issues presented an acute and case-dispositive risk that the Class would receive nothing. Yet, despite the risks of recovering nothing for the Class, Class Counsel procured a $16,417,496.70 all-cash settlement.

---

[7] Wells Fargo was specifically aware that Class Counsel were willing to take cases to trial and on appeal, with all of the attendant risk. In *Gutierrez v. Wells Fargo Bank*, No. C 07-05923 WHA (N.D. Cal.), Lieff Cabraser, following years of litigation and a two-week trial, secured an order in August 2010 holding that Wells Fargo violated California law by improperly and illegally assessing overdraft fees on its California customers and ordering $203 million in restitution to the certified class. Following Wells Fargo's appeal, in December 2012 the Ninth Circuit issued an opinion upholding and reversing portions of Judge Alsup's order, and remanding the case to the District Court for further proceedings. In May 2013, Judge Alsup reinstated the $203 million judgment against Wells Fargo and imposed post-judgment interest bringing the total award to nearly $250 million. On October 29, 2014, the Ninth Circuit affirmed the Judge Alsup's order reinstating the judgment. Wells Fargo sought certiorari, which was not finally denied until April 4, 2016.

**5.**     **The Requested Fee Comports with Fees Awarded in Similar Cases, as well as Customary Fees in Contingent Commercial Litigation.**

The requested fee of 30%, inclusive of expenses, is well within the typical range in this Circuit.  *Waters*, 190 F.3d at 1294-95 (affirming 33 1/3% fees, plus costs); *Craft*, No. 07-cv-132, Dkt. No. 135 (awarding 33 1/3%, plus costs); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1365 ("Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent."); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions).[8]  Moreover, the requested fee is well within the norm for fees awarded in TCPA class actions, in this Circuit and elsewhere.  *See Soto v. The Gallup Org.*, No. 13-cv-61747, Dkt. No. 95 (S.D. Fla. Nov. 24, 2015) (awarding 33 1/3%, inclusive of costs); *Guarisma v. ADCAHB*

---

[8] *See also, e.g.*, *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. 2:10-CV-02847, 2015 WL 5626414, at *1-2 (N.D. Ala. Sept. 14, 2015) (awarding 30%, plus costs); *Allapattah Servs.*, 454 F. Supp. 2d at 1204 (awarding 31 1/3%, with costs to be awarded in a future order); *In re: Healthtronics Surgical Servs., Inc. Sec. Litig.*, No. 03-cv-02800, Dkt. No. 62 (N.D. Ga. Dec. 1, 2005) (awarding 33% plus costs);  *In re: Profit Recovery Grp. Int'l, Inc. Sec. Litig.*, No. 00-cv-01416, Dkt. No. 203 (N.D. Gal. May 26, 2005) (awarding 33 1/3%, plus costs); *In re: Managed Care Litig.*, No. 00-1334, 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003) (awarding 35.5% in fees and costs).

*Med. Coverages, Inc.*, No. 13-cv-21016, Dkt. No. 95 (S.D. Fla. June 24, 2015) (awarding 33 1/3%, plus costs).[9]

The requested fee is also less than fees typical in commercial complex litigation. *See Pinto*, 513 F. Supp. 2d at 1341 ("In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients."); *Allapattah Servs.*, 454 F. Supp. 2d at 1209 ("A fee of 31 and 1/3% to Class Counsel is well within the range of customary fees.").  And, of course, in

---

[9] *See also, e.g.*, *Hageman v. AT&T Mobility LLC, et al.*, 1:13-cv-50, Dkt. No. 68 (D. Mont. Feb. 11, 2015) (awarding 33%, inclusive of costs); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539`, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (awarding 30%, plus costs); *In re Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 803-807 (N.D. Ill. 2015) (awarding a modified fee structure including 36% of the first $10 million, and 25% of the next $10 million); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33%); *Allen v. JPMorgan Chase Bank, N.A.*, 13-cv-8285, Dkt. No. 93 (N.D. Ill. Oct. 21, 2015) (awarding 33%, inclusive of costs); *Cummings v Sallie Mae*, 1:12-cv-9984, Dkt. No. 91 (N.D. Ill. May 30, 2014) (awarding 33%, inclusive of costs); *Hanley v. Fifth Third Bank*, 1:12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) (awarding 33%, inclusive of costs); *Desai v. ADT Sec. Servs., Inc.*, 1:11-cv-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) (awarding 33%, inclusive of costs); *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215, Dkt. No. 63 (N.D. Ill. Jan. 16, 2014) (awarding more than 33 1/3%); *Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531, Dkt. No. 67 (S.D. Ill. Sept. 8, 2010) (awarding 33 1/3%, plus costs); *CE Design Ltd. v. Cy's Crab House N., Inc.*, 1:07-cv-5456, Dkt. No. 424 (N.D. Ill. Oct. 21, 2011) (awarding 33%, plus costs); *Holtzman v. CCH*, 1:07-cv-7033, Dkt. No. 33 (N.D. Ill. Sept. 30, 2009) (awarding 33%, inclusive of costs).

private litigation, the client typically pays out-of-pocket costs; here, Class Counsel request a fee *inclusive* of, not in addition to, such costs.

### C.     The Class Representative Service Awards are Reasonable.

Courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (citation omitted) (awarding $300,000 service payments to each of four representative plaintiffs); *see also Allapattah Servs.*, 454 F. Supp. 2d at 1218 ("Incentive awards are not uncommon in class litigation where, as here, a common fund has been created for the benefit of the class.").

The requested service awards of $20,000 to each Class Representative are reasonable and should be approved, especially in light of the fact that each Class Representative received, and refused, a Rule 68 offer of judgment from Wells Fargo. Ex. A (Hutchinson Decl.) at ¶ 50. Each Class Representative received multiple calls from Wells Fargo, each potentially justifying $1,500 in statutory damages. Dkt. No. 36 (First Amended Class Action Complaint) at ¶¶ 35-75. Each Class Representative therefore put the Class's interests before his or her own, rejecting offers of judgment that likely would have compensated them more than the requested service awards. For example, on October 14, 2015, Wells Fargo

served an offer of judgment providing Dr. Page $46,501 inclusive of attorney fees. Dr. Page chose not to accept that offer, but instead proceed on behalf of the class. *See* Ex. C (Keogh Decl.) at ¶ 5.

The requested awards are also consistent with awards in other TCPA settlements. *See Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving $25,000 service award to TCPA class representative); *Martin v. Dun & Bradstreet, Inc.,* No. 1:12–cv–215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving $20,000 service award to TCPA class representative); *Benzion*, No. 12-61826, Dkt. No. 201 (awarding $20,000 incentive award in TCPA class settlement); *Prater v. Medicredit, Inc.*, No. 4:14-cv-00159, 2015 WL 8331602, at *4 (E.D. Mo. Dec. 7, 2015) (awarding $20,000 in TCPA class settlement where class representative declined offer of judgment); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-cv-00130, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) (same); *Hageman*, 1:13-cv-50, Dkt. No. 68 (awarding $25,000 incentive award in TCPA class settlement).

## IV.   <u>CONCLUSION</u>

Class Counsel respectfully request that the Court (a) award attorneys' fees and costs in the total amount of $4,925,249, which is 30% of the $16,417,496.70

Settlement Fund (inclusive of costs); (b) award Service Awards to the three Class

Representatives of $20,000 each, for a total of $60,000; and (c) authorize co-lead

Class Counsel to allocate the awarded fees and costs among Class Counsel.

     Respectfully submitted,

     Dated:  October 25, 2016.

> LIEFF CABRASER HEIMANN &
> BERNSTEIN, LLP
> By: /s/ Daniel M. Hutchinson
> Daniel M. Hutchinson (*pro hac vice*)
> Email: dhutchinson@lchb.com
> 275 Battery Street, 29th Floor
> San Francisco, CA 94111-3339
> Telephone: (415) 956-1000
> Facsimile: (415) 956-1008
>
> Jonathan D. Selbin (*pro hac vice*)
> Email: jselbin@lchb.com
> 250 Hudson Street, 8th Floor
> New York, NY 10013
> Telephone: (212) 355-9500
> Facsimile: (212) 355-9592
>
> Andrew R. Kaufman (*pro hac vice*)
> Email: akaufman@lchb.com
> 150 Fourth Avenue North, Suite 1650
> Nashville, TN 37219
> Telephone: (615) 313-9000
> Facsimile: (615) 313-9965
>
> BURKE LAW LLC
>
> Alexander h. Burke (*pro hac vice*)
> 155 N. Michigan Ave., Suite 9020

Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
Aburke@BurkeLawLLC.com

*Co-Lead Class Counsel*

SKAAR & FEAGLE, LLP
By: /s/ James M. Feagle
Georgia Bar No. 256916
Jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
404 / 373-1970
404 / 601-1855 fax

Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeable.com
Kris Skaar
krisskaar@aol.com
133 Mirramont Lake Drive
Woodstock, GA 30189
770 / 427-5600
404 / 601-1855 fax

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice*)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

LAW OFFICES OF DOUGLAS J.
CAMPION, APC

Douglas J. Campion (*pro hac vice*)
Email: doug@djcampion.com
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

KEOGH LAW, LTD.
Keith Keogh (*pro hac vice*)
Email: keith@koeghlaw.com
55 W. Monroe, Ste. 3390
Chicago, IL 60603
Telephone: 312-265-3258
Facsimile: 312-726-1093

GREENWALD DAVISON RADBIL PLLC
Michael L. Greenwald (*pro hac vice*)
Email: mgreenwald@gdrlawfirm.com
5550 Glades Rd., Suite 500
Boca Raton, FL 33431
Telephone: (561) 826-5477
Facsimile: (561) 961-5684

Aaron D. Radbil (*pro hac vice*)
Email: aradbil@gdrlawfirm.com
106 East Sixth Street, Suite 913
Austin, TX 78701
Telephone: (512) 322-3912
Facsimile: (561) 961-5684

KAZAROUNI LAW GROUP, APC
Abbas Kazerounian (*pro hac vice*)
Email: ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6806
Facsimile: (800) 520-5523

HYDE & SWIGART
Joshua B. Swigart, Esq. (*pro hac vice*)
josh@westcoastlitigation.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Additional Class Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1.C and 7.1.D of the Northern District of Georgia, that the foregoing was prepared in 14-point Times New Roman Font.

October 25, 2016.

/s/    Andrew R. Kaufman

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

October 25, 2016.


                                        */s/*     Andrew R. Kaufman_____