# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| Steven L. Markos, Tiffany Davis, and Gregory Page, on behalf of themselves and all others similarly situated, | Case No. 1:15-cv-01156-LMM |
| Plaintiffs, | |
| v. | |
| Wells Fargo Bank, N.A., | |
| Defendant, | |

## DECLARATION OF DANIEL M. HUTCHINSON IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS FOR CLASS REPRESENTATIVES

Pursuant to 28 U.S.C. § 1746, I, Daniel M. Hutchinson, declare as follows:

1.     I am a partner in the law firm of Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), Court-appointed co-lead Class Counsel in this matter.  I am a member in good standing of the bar of the State of California;

the United States District Courts for the Central, Northern, and Southern

Districts of California; the United States District Court for the Eastern District

of Wisconsin; and the U.S. Courts of Appeals for the First, Third, Fourth, and

Ninth Circuits.

2.     I have been one of the lawyers responsible for the prosecution of

Plaintiffs' claims on behalf of the Class.  I respectfully submit this declaration

in support of Class Counsel's Motion for an Award of Attorneys' Fees, Costs,

and Service Awards for Class Representatives.  Except as otherwise noted, I

have personal knowledge of the facts set forth in this declaration, and could

testify competently to them if called upon to do so.

## I.     <u>BACKGROUND AND EXPERIENCE</u>

3.     LCHB is a national law firm with offices in San Francisco, New

York, Nashville, and Seattle.  LCHB's practice focuses on complex and class

action litigation involving product liability, consumer, employment, financial,

securities, environmental, and personal injury matters.  Attached as Exhibit 4 to

the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary

Approval (Dkt. No. 34-10) is a true and correct copy of LCHB's current firm

resume, showing some of the firm's experience in complex and class action

litigation and a short biographical summary of each LCHB attorney's

1323218.1

educational background, employment history, publications and presentations, and awards and honors.  This resume is not a complete listing of all cases in which LCHB has been class counsel or otherwise counsel of record.

4.      I graduated from Brown University in 1999.  I served as a judicial extern to the Honorable Martin J. Jenkins, U.S. District Court, Northern District of California, in 2004.  I graduated from the University of California at Berkeley, Boalt Hall School of Law in 2005.

5.      Since 2005, I have practiced with LCHB, where I became a partner in January 2011.  At LCHB, I have focused on focused on representing plaintiffs in consumer and financial fraud cases, and employment litigation.

**B.      Actions Under the Telephone Consumer Protection Act**

6.      LCHB has actively and successfully litigated—and has specifically been at the forefront of—class action lawsuits under the Telephone Consumer Protection Act ("TCPA").  TCPA cases in which LCHB has served as Class Counsel and in which I played a lead role include the following:

a.      In September 2012, the court approved a $24.15 million class settlement against Sallie Mae, the then-largest monetary settlement in the history of the TCPA.  *See Arthur v. Sallie Mae, Inc.*, No. C10-0198 JLR, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012).

1323218.1

b.     I, along with other attorneys from my firm and co-counsel, served as counsel in *Rose v. Bank of Am. Corp.*, 5:11-cv-02390-EJD (N.D. Cal.), and *Duke v. Bank of Am., N.A.*, 5:12-cv-04009-EJD (N.D. Cal.).  On August 29, 2014, the Court approved a $32,083,905 class settlement, which surpassed the *Sallie Mae* settlement as the largest monetary settlement in the history of the TCPA.

c.     I, along with other attorneys from my firm and co-counsel, served as counsel in *In re Capital One Telephone Consumer Protection Act Litigation*, Master Docket No. 1:12-cv-10064 (N.D. Ill.).  On February 12, 2015, the court approved a $75,455,098.74 class settlement.

d.     I, along with other attorneys from my firm and co-counsel, served as counsel in *Wilkins v. HSBC Bank Nev., N.A.*, Case No. 14-cv-190 (N.D. Ill.).  On February 27, 2015, the court approved a $39,975,000 class settlement.  In approving the settlement Judge James F. Holderman commented on "the excellent work" and "professionalism" of LCHB and its co-counsel in securing a $39.975 million non-reversionary cash settlement in that TCPA class action.

e.     I, along with other attorneys from my firm and co-counsel, served as counsel in *Connor v. JPMorgan Chase Bank*, Case No. 10 CV 1284

DMS BGS (S.D. Cal. Mar. 12, 2012), a nationwide TCPA class action.  On February 5, 2015, the court approved a $11,665,592.09 class settlement.

      f.     I, along with other attorneys from my firm and co-counsel, served as counsel in *Thomas v. Dun & Bradstreet Credibility Corp.*, Case No. 2:15-cv-03194-BRO-GJS (C.D. Cal.).  On September 27, 2016, the court preliminarily approved a $10.5 million cash settlement for a class of small business owners who received telemarketing calls.

      g.     I, along with other attorneys from my firm and co-counsel, served as counsel in the nationwide TCPA class actions *Bradley v. Discover Financial Services,* Case No. 4:11-cv-5746-YGR (N.D. Cal.), and *Steinfeld  v. Discover Financial Services*, Case No. 3:12-cv-01118-JSW (N.D. Cal.).  In March 2014, the court approved an $8.7 million class settlement.

      h.     I, along with other attorneys from my firm and co counsel, serve as counsel in *Ossola v. American Express Co., et al.*, Case No. 1:13-CV-4836 (N.D. Ill)  On July 6, 2015, the court preliminarily approved two separate class settlements of $8.25 million and $1 million each.

      i.     m.     I, along with other attorneys from my firm and co-counsel, serve as counsel in *Smith v. State Farm Mutual Auto. Ins. Co., et al.*,

Case No. 1:13-cv-02018 (N.D. Ill.).  On August 10, 2015, the court

preliminarily approved a $7 million settlement.

       j.      I, along with other attorneys from my firm and co-counsel,

served as counsel in *Bayat v. Bank of the West*, Case 3:13-cv-02376-EMC

(N.D. Cal.).  On April 15, 2015, the court approved a $3,354,745.98 settlement.

       k.      I, along with other attorneys from my firm and co-counsel,

served as counsel in *Wannemacher v. Carrington Mortgage Services LLC*, Case

No. 8:12-cv-02016-FMO-AN (C.D. Cal.).  On December 22, 2014, the court

approved a $1.035 million settlement.

       l.      In addition to the foregoing, I currently serve as co-lead

counsel in the following cases under the TCPA:

       i.      *Pritchard v. Comenity Bank*, Case No. 2:15-cv-05994-

KM-MAH (D.N.J.) (pending);

       ii.      *Brown v. Directv LLC*, Case No. 2:13-cv-01170-

DMG-E (C.D. Cal.) (pending);

       iii.      *Jenkins v. National Grid USA, et al.*, Case No. 2:15-

cv-01219-JS-GRB (E.D.N.Y.) (pending); and

       iv.      *Rice-Redding v. Nationwide Mutual Automobile Ins.*

*Co.*, Case No. 1:16-cv-03634-TCB (N.D. Ga.) (pending).

### C.    Consumer Protection Class Actions

7.    As an LCHB partner, my practice has focused on a number of nationwide consumer protection class actions.

a.    I, along with other attorneys from my firm, served as chair of the Plaintiffs Executive Committee in *In re: Bank of Am. Credit Protection Mktg. & Sales Practices Litig.*, 3:11-md-02269-TEH (N.D. Cal.), multi-district litigation ("MDL") against Bank of America and FIA Card Services, challenging the imposition of charges for so-called "payment protection" or "credit protection" programs.  In January 2013, the Court approved a $20 million settlement including required practice changes.

b.    I was co-lead counsel in *Yarger v. ING Bank, fsb*, Civil Action No. 1:11-cv-00154-LPS (D. Del.), representing consumers who charge that ING Direct breached its promise to allow them to refinance their home mortgages for a fixed flat fee of $500 or $750, and instead charged a higher fee of one-monthly mortgage payment for refinancing.  In 2012, the court certified a class of consumers in ten states who purchased or retained an ING mortgage during the class period.  On October 7, 2014, the court approved a $20,350,000 class settlement.

8.     Prior to my elevation to partner, I participated in successful litigation of a wide variety of other complex federal and state consumer class actions during my professional career.  Class action cases I have successfully prosecuted to judgment or settlement, in addition to the foregoing, include: *Sutter Health Uninsured Pricing Cases*, Case No. J.C.C.P. 4388 (Sacramento Super. Ct.) (lead class counsel in consumer class action that resulted in over $275 million settlement and comprehensive pricing and collections policy changes for uninsured patients across all Sutter hospitals); *Catholic Healthcare West Cases*, Case No. J.C.C.P. 4453 (San Francisco County Super. Ct.) (lead class counsel in consumer class action that resulted in over $423 million settlement and pricing and collections policy changes for uninsured patients across all CHW hospitals); *Scripps Health Cases*, Case No. IC859468 (S.D. Super. Ct.) (lead class counsel in consumer class action that resulted in over $73 million settlement and pricing and collections policy changes for uninsured patients at Scripps hospitals); *John Muir Uninsured Healthcare Cases*, Case No. J.C.C.P. 4494) (Contra Costa County Super. Ct.) (lead class counsel in consumer class action that resulted in over $113 million settlement and pricing and collections policy changes for uninsured patients at John Muir hospitals); *Cincotta v. California Emergency Physicians Medical Group*, No. 07359096

(Cal. Supr. Ct.) (lead class counsel in consumer class action that resulted in over $27 million settlement and pricing and collections policy changes, including complete debt elimination—100% cancellation of the bill, for nearly 100,000 uninsured patients who alleged they were charged excessive and unfair rates for emergency room service across 55 hospitals throughout California.

### D.   <u>Antitrust and Securities Actions</u>

9.     I have also served as Class Counsel in several antitrust and other financial fraud actions.

a.     I served, with my co-counsel, as Lead Counsel in *Haley Paint Co. v. E.I. Dupont De Nemours and Co. et al.*, No. 10-cv-00318-RDB (N.D. Md.),  a certified nationwide class action lawsuit on behalf of direct purchasers of titanium dioxide charging that defendants conspired to fix, raise, and maintain the price of titanium dioxide in the United States.  In November 2013, the court approved class settlements with four defendants totaling $163.5 million.

10.     As an LCHB associate, I played a significant role in several antitrust and securities actions, including:

a.     I, along with other attorneys from my firm and co-counsel, served as Plaintiffs' counsel in *Quantegy Recording Solutions, LLC, et al. v.*

*Toda Kogyo Corp., et al.*, No. C-02-1611 (PJH), antitrust litigation against manufacturers, producers, and distributors of magnetic iron oxide ("MIO").   In August 2006 and January 2009, the court approved settlements totaling $6.35 million.

        b.     I have also successfully litigated complex individual actions, including *Alaska State Department of Revenue v. America Online*, No. 1JU-04-503 (Alaska Supr. Ct.) (co-counsel in securities fraud action brought by the Alaska State Department of Revenue, Alaska State Pension Investment Board and Alaska Permanent Fund Corporation that settled for $50 million December 2006).

        **E.**     **Employment Class Actions**

11.     As an LCHB partner, I have gained extensive experience in the litigation, trial, and settlement of complex employment class actions as Class Counsel in several cases.

        a.     I served as co-lead counsel in *Vedachalam v. Tata Am. Int'l Corp.*, Case No. 3:06-cv-00963-CW (N.D. Cal.), a case on behalf of a certified class of over 13,000 foreign nationals working in the United States who were denied promised wages and benefits.  In July 2013, the court approved a $29.75 million nationwide class settlement.

b.    I served as co-lead counsel in *Ellis v. Costco Wholesale Corp.*, No. 04-03341-EMC (N.D. Cal.), a case on behalf of two certified classes of female employees charging that Costco discriminates against women in promotions to management positions.  On May 27, 2014, the Court approved a class settlement requiring changes to Costco's promotion process and establishing an $8 million settlement fund.

c.    I, along with other attorneys from my firm and co-counsel, represented plaintiffs who contracted with MHN Government Services, Inc., to provide counseling services through the Department of Defense to military members and their families. The case was venued in the United States District Court for the Northern District of California.  In April 2016, an arbitrator approved a class settlement in the matter, which resulted in payment of $7,433,109.19 to class members.

d.    I served as co-lead counsel in *Martin v. Bohemian Club*, Case No.  SCV-258731 (Sonoma Super. Ct.), a wage-and-hour case on behalf of approximately 664 individuals who worked as seasonal camp valets.  On September 28, 2016, the court approved a $7 million class settlement.

e.    I, along with other attorneys from my firm and co-counsel, served as co-lead counsel in *Holloway v. Best Buy,* No. C05-5056-PJH (N.D.

Cal.), representing a class of current employees of Best Buy that alleged Best

Buy stores nationwide discriminated against women, African Americans, and

Latinos.  In November 2011, the Court approved a settlement of the class action

in which Best Buy agreed to changes to its personnel policies and procedures

that will enhance the equal employment opportunities of the tens of thousands

of women, African Americans, and Latinos employed by Best Buy nationwide.

       f.     I , along with other attorneys from my firm and co-counsel,

am court-appointed co-lead counsel in *Tatum v. R.J. Reynolds Tobacco Co.*,

Case No. 1:02 CV 373 (M.D. N.C.), a class action on behalf of approximately

3,500 participants in the RJR pension plan who brought claims under the

Employee Retirement Income Security Act of 1974 ("ERISA").  In February

2010, I, along with co-counsel, completed a five-week trial in this matter.

Following a successful appeal to the Fourth Circuit Court of Appeals, *see*

*Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346 (4th Cir. 2014), the matter has

not yet resolved.

     12.    In addition to the foregoing, prior to my elevation to partner I

participated in successful litigation of a wide variety of other complex federal

and state employment class actions during my professional career.

a.      I, along with other attorneys from my firm and co-counsel,

served as co-lead counsel in *Cruz v. U.S., Estados Unidos Mexicanos, Wells*

*Fargo Bank, et al.*, No. 01-0892-CRB (N.D. Cal.), representing Mexican

workers and laborers, known as Braceros ("strong arms"), who came from

Mexico to the United States pursuant to bilateral agreements from 1942 through

1946 to aid American farms and industries hurt by employee shortages during

World War II in the agricultural, railroad, and other industries.  A settlement

required the Mexican government to provide a payment of approximately

$3,500 to Braceros, or their surviving spouses or children.  In approving the

settlement in February 2009, U.S. District Court Judge Charles Breyer stated:

> I've never seen such litigation in eleven years on the
> bench that was more difficult than this one. . . .
> Notwithstanding all of these issues that kept surfacing
> . . . over the years, the plaintiffs persisted. . . .  And, in
> fact, they achieved a settlement of the case, which I
> find remarkable under all of these circumstances.

b.      I, along with other attorneys from my firm and co-counsel,

served as co-lead counsel in *Barnett v. Wal-mart Stores, Inc.*, Case No.

01-2-24553-8 SEA (Sup. Ct. Wash.), a certified statewide wage and hour class

action filed on behalf of hourly employees challenging the company's failure to

compensate its hourly employees for missed rest and meal breaks and off-the-

- 13 -

clock work in stores throughout Washington state.  This case settled for $35 million, as well as injunctive relief governing company policies.

        c.     I, along with other attorneys from my firm and co-counsel, served as one of plaintiffs' lead counsel in *Amochaev v. Citigroup d/b/a Smith Barney*, Civ. No. 05-1298-PJH (N.D. Cal.), a gender discrimination class action on behalf of female Financial Advisors employed by Smith Barney that resulted in a settlement involving comprehensive injunctive relief and over $33 million in monetary relief.

        13.     Together, the cases described above have resulted in court-approved class action settlements, with a combined total recovery for class members exceeding $650 million in cash, plus other relief.  The TCPA class settlements described in paragraph 6 above (but excluding the proposed Settlement in this action), total over $280 million.  LCHB's experience in these cases, and my experience in particular, has provided LCHB and me with expertise in the legal, factual, management, notice, and administration issues that characterize these types of class actions.

        **F.**     **<u>Other Experience and Awards</u>**

        14.     I have received several awards and honors for my litigation efforts.

15.     In 2016, I was named as one of the Daily Journal's Top 40 Under 40 leading lawyers in California.

16.     In 2014, Law360 recognized me as one of six of the nation's top employment lawyers under 40.  *See* Daniel Siegal, *Rising Star: Lieff Cabraser's Daniel Hutchinson* (Apr. 22, 2014), *available at* http://www.law360.com/employment/articles/530612; *Law360 Names Top Attorneys Under 40* (Apr. 11, 2014), *available at* http://www.law360.com/employment/articles/525943.

17.     In 2012, The Recorder named me as one of "50 Lawyers on the Fast Track."

18.     In 2013, 2014, 2015, and 2016, I was recognized as a Northern California Super Lawyer and, from 2009 to 2012, was named as a Northern California Super Lawyer Rising Star.

19.     In addition to being an active litigator, I have long been involved in many educational and legal groups, including as of the Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board Chair, 2015; Board Chair-elect, 2014; Board Secretary, 2011-2013; Member of the Board of Directors, 2009-present); American Bar Association (Section of Labor & Employment Law Leadership Development Program); Association of Business

Trial Lawyers (Leadership Development Committee, 2008-2010); Bar Association of San Francisco; Consumer Attorneys of California; and National Bar Association.

20.     I am a frequent speaker on class action and employment law topics, including at events sponsored by the American Bar Association's Section of Labor and Employment Law, the Consumer Attorneys of California, the Mason Judicial Education Program, the Impact Fund, the National Employment Lawyers Association, the Practising Law Institute, and the UCLA School of Law.

21.     In 2014, I provided a CLE presentation on arbitration and class actions to approximately 75 California state and federal court judges through the Judicial Education Program provided by the Law & Economics Center at George Mason University School of Law.

22.     I have published and presented papers on race and gender class actions under Title VII, including "Ten Points from Dukes v. Wal-Mart Stores, Inc.," 20(3) CADS Report 1 (Spring 2010); "Pleading an Employment Discrimination Class Action" and "EEO Litigation:  From Complaint to the Courthouse Steps," ABA Section of Labor and Employment Law Second

Annual CLE Conference (2008); and "Rule 23 Basics in Employment Cases," Strategic Conference on Employment Discrimination Class Actions (2008).

## II.   **THE PROPOSED SETTLEMENT**

23.    The Settlement requires Wells Fargo to fund a non-reversionary cash Settlement Fund of $16,417,496.70.  Each Class Member who submits a simple claim form online, by phone, or by mail will receive a Cash Award. Under no circumstances will any amount of the Settlement Fund revert to Wells Fargo.

24.    The Class is composed of two Subclasses, Subclass One for persons called in connection with a Residential Mortgage Loan from November 17, 2011 to February 29, 2016, and Subclass Two for persons called in connection with a Home Equity Loan from April 14, 2011 to February 29, 2016.  A person who is a member of both Subclasses is eligible to make two claims on the Settlement Fund and receive two Cash Awards.

25.    The amount of each Cash Award is the claiming Class Member's *pro rata* share of the Settlement Fund.  Based on my experience litigating and settling similar TCPA class actions, I originally estimated that each Cash Award to Class Members who file a valid claim, while dependent upon the number of claims, would be in the range of $25 to $75.

26.   If uncashed checks permit a second pro rata distribution equal to or greater than $1.00 per qualifying claimant, the Claims Administrator will make a second pro rata distribution to Settlement Class Members who cashed settlement checks.  Only if a second distribution is not made, or if checks remain uncashed after the second distribution, will the uncashed amount be distributed as *cy pres* to Habitat for Humanity, subject to Court approval.

27.   The Settlement represents terrific value for the Class, particularly in light of the risks of proceeding with litigation.  The amount paid—more than $16.4 million—is an excellent result when measured against twenty-five years of TCPA settlements.  *See, e.g., Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 3, 2016), *appeal filed* ($34 million for more than 32 million class members); *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. Wash.) ($24.15 million for 7,792,256 class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ($17.1 million for 4,546,293 class members); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009 (N.D. Cal.) ($32,083,905 for approximately 7,723,860  class members); *Connor v. JPMorgan Chase Bank*, No. 10 CV 1284 (S.D. Cal.) ($11,665,592.09 for 2,684,518 class members); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190 (N.D. Ill.) ($39,975,000 for 9,065,262 class

members); *In re Capital One Tel. Consumer Protection Act Litig.*, No. 12-cv-10064 (N.D. Ill.) ($75,455,098 for 16,645,221 class members); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ($12.2 million for 47 million class members); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248 (S.D. Cal.) ($9 million for more than 6,079,411 class members).

## III.   HISTORY OF THE LITIGATION

28.    Since 2012, LCHB has engaged in a comprehensive litigation strategy to pursue class action TCPA claims against Wells Fargo.

29.    Before filing the *Markos*, *Page*, and *Davis* actions, Class Counsel thoroughly researched and investigated Wells Fargo's practices and Plaintiffs' legal claims by, among other things, interviewing Class Members, reviewing Class Members' pertinent document and information, including account applications and agreements, and researching relevant TCPA case law and regulations.  This information was critical to LCHB's understanding of the nature of the problem, the scope of potential damages and remedies, and the potential risks and benefits of continued litigation.

30.    After the *Markos*, *Davis,* and *Page* actions were filed, the parties agreed to explore mediation in large part because Class Counsel's extensive

pre-filing investigation and expertise from dozens of TCPA class actions prepared them to navigate an effective – and efficient – resolution of this litigation.

31.   To facilitate mediation, the parties conducted significant informal discovery, including review and analysis of Wells Fargo's call data and 3,245 pages of key documents.

32.   Concurrent with settlement negotiations, Class Counsel continued to speak with scores of Class Members about their experiences and problems with Wells Fargo's telephone calls.

33.   The Settlement was reached only after good faith, contentious, arms'-length negotiations.  All settlement discussions took place under the direction of Hunter R. Hughes, an experienced and well-respected private mediator.

34.   To facilitate mediation, the parties submitted detailed mediation submissions setting forth their respective views on the cases.

35.   On January 13, 2016, the parties participated in an all-day, in-person mediation under the direction of Mr. Hughes.  During these sessions, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class.  Counsel exchanged a series of counterproposals on key

aspects of the Settlement, including the parameters of the monetary relief for the Class, and the meaning and interpretation of the eligibility requirements.  At all times, the parties' settlement negotiations were highly adversarial, non-collusive, and at arm's length.

36.     Although the mediation was productive, the parties were unable to reach a resolution.

37.     With Mr. Hughes' assistance the parties continued to negotiate over the course of several months.  Through the mediated settlement negotiations and the investigation efforts, the parties reached an agreement in principle pursuant to a mediator's proposal.  The parties executed a Memorandum of Understanding ("MOU") on January 25, 2016, and a final Settlement Agreement on June 10, 2016.

38.     As agreed to in the MOU, Wells Fargo provided Class Counsel with confidential and proprietary confirmatory discovery to confirm the Final Class Size.  On July 13, 2016, Class Counsel took the deposition of Darrell Hunt, Wells Fargo's corporate representative most knowledgeable about the size of the Settlement Class.

39.     Since the Settlement was agreed to, Class Counsel have continued to work hard, including talking to Class Members about the Settlement, and preparing the Settlement papers.

40.     Although it is early in the Claims Period, initial estimates suggest that the claims rate may be high relative to similar settlements, and may even exceed the claims-rate estimates in the Motion for Preliminary Approval and the Class Notice.

## IV.     CLASS COUNSEL'S REQUEST FOR FEES AND COSTS

41.     In my opinion, Class Counsel's request for an award of 30% of the Settlement Fund, inclusive of costs, is fair and reasonable.

42.     Class Counsel's efforts resulted in an excellent result for the Class: an all-cash, non-reversionary Settlement Fund that compares well to past TCPA settlements.  The Settlement provides Class Members with real monetary relief, despite the fact that this is a purely statutory damages case involving nominal economic damages or actual damages (such as invasion of privacy) that are difficult to quantify.  This Settlement provides direct, monetary benefits to Class Members who realistically would not have filed their own individual lawsuits because each Class Member's case would have been too small to bring

1323218.1

on its own.  As important, Class Counsel's pre-filing investigation and approach to mediation resulted in a Settlement now, rather than after years of litigation.

43.     As detailed above, Class Counsel worked hard to secure the Settlement Fund.  Throughout the litigation, LCHB and the other firms comprising Class Counsel worked closely and in cooperation with one another to divide tasks, ensure efficient case management, and prevent duplication of efforts.  By assigning specific tasks among firms, they were able to capitalize on their expertise and obtain the best and most efficient resolution to this matter.

44.     My firm and the other firms comprising Class Counsel are among the nation's foremost plaintiffs-side TCPA attorneys.  Collectively, we have been involved in every major piece of TCPA litigation involving banks and debt collectors.  As detailed above, my firm has recovered over $280 million in non-reversionary cash for class members.

## V.     <u>CONTINGENT NATURE OF ACTION.</u>

45.     My firm and the other firms comprising Class Counsel litigated this matter entirely on a contingent fee basis.

46.     My firm spent many hours on this matter, including considerable time and effort investigating the facts and the merits of this action; engaging in

1323218.1

discovery and meet and confer efforts; analyzing documents and data; engaging

in settlement discussions and participating in a formal mediation with

Defendant; negotiating the settlement terms; and meeting and conferring with

Defendant and the settlement administrator regarding the notice and

administration plan.

47.    This matter has required LCHB's attorneys and staff to spend time

on this litigation that could have been spent on other fee-generating work.

Because LCHB undertook representation of this matter on a contingency-fee

basis, LCHB shouldered the risk of expending substantial costs and time in

litigating the action without any monetary gain in the event of an adverse

judgment.

48.    Despite the strengths of this case, it is my opinion that Plaintiffs

would face certain risks in litigating any action on a classwide basis.  Indeed,

LCHB has lost a number of TCPA class actions without any recovery for the

proposed class or any fees for their work on behalf of the proposed class.  *See*

*Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1208 (S.D. Cal. 2013)

(compelling claims to arbitration on an individual basis); *Moore v. Chase Bank*

*USA, N.A.*, Case No. 2:12-cv-10316-PA-E (C.D. Cal. Jan. 9, 2013) (dismissing

case); *Delgado v. US Bankcorp*, 2:12-cv-10313-SJO-AJW (C.D. Cal. Jan. 17,

2013) (dismissing case); *Brown v. DIRECTV, LLC*, 2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) (compelling claims to arbitration on an individual basis); *Evans v. Aetna Inc.*, Case No. 2:13-cv-01039-LA (E.D. Wisc. Nov. 20, 2013) (dismissing case); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 530 (E.D. Wis. 2014); (denying class certification after significant expert work and discovery); *Levin v. National Rifle Assoc. of Am.*, Case 1:14-cv-24163-JEM (S.D. Fla. Feb. 6, 2015) (dismissing case); *Charvat v. The Allstate Corp.*, Case No. 1:13-cv-07104 (N.D. Ill. Feb. 20, 2015) (terminating case); *Ineman v. Kohl's Corp.*, Case No. Case 3:14-cv-00398-wmc (W.D. Wisc. Mar. 26, 2015) (compelling claims to arbitration on an individual basis); *Aghdasi v. Mercury Insurance Group, Inc.*, Case No. 2:15-cv-04030-R-AGR (C.D. Cal. Mar. 16, 2016) (dismissing case after denial of class certification); *Wolf v. Lyft, Inc.*, Case 4:15-cv-01441-JSW (N.D. Cal. Mar. 28, 2016) (dismissing case); *Jefferson v. General Motors Fin. Co., Inc.*, Case No. 2:16-cv-02349-WHW-CLW (D.N.J. Jun. 28, 2016) (dismissing case).

## VI.   THE REQUESTED CLASS REPRESENTATIVE SERVICE AWARDS

49.    In my opinion, the requested service awards of $20,000 to each Class Representative are reasonable and should be approved.

1323218.1

50.     Each Class Representative received, and refused a Rule 68 offer of judgment from Wells Fargo.

51.     Each Class Representative received multiple calls from Wells Fargo, each potentially justifying $1,500 in statutory damages.

52.     Each Class Representative therefore put the Class's interests before their own, rejecting offers of judgment that likely would have compensated them more than the requested service awards

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 25th day of October, 2016 in San Francisco, CA.

s/ *Daniel M. Hutchinson*
Daniel M. Hutchinson
