# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| Steven L. Markos, Tiffany Davis, and Gregory Page, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Wells Fargo Bank, N.A. <br><br> Defendant. | Case No. 1:15-cv-001156-LMM <br><br> FILED IN CLERK'S OFFICE <br> U.S.D.C. Atlanta <br><br> NOV 2 5 2016 <br><br> JAMES N. HATTEN, CLERK <br> By: _____ Deputy Clerk |

## OBJECTION OF WANDA YDE

## INTRODUCTION

This is a class action lawsuit brought against Wells Fargo by 3.3 million class members[1] who received automated phone calls from Wells Fargo in violation of the Telephone Consumer Protection Act ("TCPA"). 47 U.S.C. § 227.

The Markos' complaint was filed on April 4, 2015.[2] Just nine months later on January 25, 2016 the parties executed a memorandum of understanding,[3] and then executed a settlement agreement on June 10, 2016.[4]

The settlement provides a non-reversionary settlement fund of $16.4 million, from which class counsel seek $4.9 in attorneys' fees and costs, or 30% of the gross fund. The actual cash that will be distributed to the class after deduction of $4.9 million in attorneys' fees, $60,000 in incentive payments, and perhaps $1 million or more in settlement administration and notice costs,[5] will likely be around $10.4 million.[6]

---

[1] Plaintiffs' Unopposed Motion to Modify the Preliminary Approval Order, ECF Doc. 46, at 2 (noting that "Class Counsel and Defendant have worked diligently with the Court-approved Settlement Administrator to: . . . verify and process contact information for the approximately 3,316,666 persons who compromise the Settlement Class").

[2] Class Action Complaint, ECF Doc. 1.

[3] Memorandum in Support of Class Counsel's Motion for an Award of Attorneys' Fees, Costs, and Service Awards for Class Representatives, ECF Doc. 51-1, at 6 (citing Hutchinson Declaration).

[4] *Id.* at 6.

[5] It does not appear class counsel have yet disclosed settlement administration costs.

[6] $16,417,496 - $4,925,249 - $60,000 - $1,000,000 = $10,432,247.

Cass counsel tout this as an extraordinary recovery, but it is less than 1% of the aggregate potential class damages. The minimum statutory penalty under the TCPA is $500 per violation; the maximum is $1500 per violation. 47 U.S.C. §227(b)(3). This puts the 3.3 million class members' aggregate potential damages between $1.6 billion and $4.9 billion (ECF Doc. 46, at 2).[7]

Less than 1% recovery is not extraordinary. It provides no basis for this Court to award anything above the benchmark, which is 25%, not 30% as suggested by class counsel. In fact, because the benchmark is even lower in TCPA cases, an award below 25% would be appropriate. Further, given the brevity of this litigation, Objector would urge a lodestar cross-check be performed to limit the windfall to class counsel.

Because every dollar awarded to class counsel is a dollar taken from the class in this common fund settlement, this Court must exercise is fiduciary duty to protect the absent class members, whose interests are not aligned with class counsel at this stage, and reject class counsels' excessive fee request.

## STANDING AND PROCEDURES TO OBJECT

Objector's full name, address, cellular telephone number, and email are as follows: Wanda Yde, 434 S. Whitney St., Aransas Pass, Texas 78336; (361) 717-2059.; and wepetrus@yahoo.com.

Objector is a person is a user or subscriber to a wireless or cellular service within the United States who used or subscribed to a telephone number to which

---

[7] 3,316,666  x $500 = $1,658,333,000; 3,316,666 x $1,500 = $4,974,999,000.

Wells Fargo made or initiated one or more calls or non-emergency texts using an automatic telephone dialing system or artificial or prerecorded voice technology, according to Wells Fargo's available records, and who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a call or non-emergency text in connection with a Residential Mortgage Loan from November 17, 2011 to February 29, 2016. The cellular telephone number at which Objector received a call or calls from the Defendant was (530) 736-6448. *See* Declaration of Wanda Yde, Exhibit "A" hereto, incorporated by reference as though set forth in full.

As such, Objector is a class member and has standing to make her objection. Additionally, Objector received a postcard notice in the mail, and thereafter filed a claim. *See* Exhibit A-1.[8]

Objector is represented by and has sought legal advice and assistance in this matter from Christopher Bandas, with the Bandas Law Firm, P.C., Corpus Christi, Texas (www.bandaslarvfirm.com), and this document was prepared with the assistance of counsel. No special favor or treatment is requested due to the fact that any document is submitted as pro se.

Objector objects to the proposed settlement in *Steven L. Markos, et al. v. Wells Fargo Bank* Case No. 1:15-cv-01156-LMM. The statement of the objections and the grounds therefore are set forth below. Objector is mailing this objection to the Court,

---

[8] Although Objector neglected to complete the subclass information requested on the claim form, she intends file a corrected claim form by the claims deadline. *See* Exhibit A and A-1.

the settlement claims administrator, and the attorneys as directed in the class notice. Objector does not intend on appearing or testifying at the fairness hearing either in person or through counsel, but asks that this objection be submitted on the papers for ruling at that time. Objector will not call any persons to testify at the Final Approval Hearing in support of the objection. Objector relies upon the documents contained in the Court's file in support of these objections. Objection is made to any procedures or requirements to object in this case that require information or documents other than those that are contained herein on grounds that such requirements seek irrelevant information to the objections, are vague and unnecessary, are not adequately described in the class notice, are unduly burdensome, are calculated to drive down the number and quality of objections to the settlement and violate Objector's and counsel's due process rights and/or Rule 23. Objector joins in and incorporates by reference the objections filed by other class member-objectors to the extent not inconsistent with this Objection.

## OBJECTIONS

### I.      30% of the Gross Settlement Fund is Excessive.

Although it is  difficult to discern from class counsels' motion for fees, the 30% fee request exceeds the 25% benchmark recognized in this district and in the Eleventh Circuit. *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1268–

69 (N.D. Ga. 2008); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694–96 (N.D. Ga. 2001).

"*Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 775 (11th Cir. 1991) . . . established that attorneys' fees should be a reasonable percentage of a common fund . . ., **and set a 25% recovery as an appropriate 'benchmark.'**" *Ingram*, , 200 F.R.D. at 695 (emphasis added); *see also Carpenters Health*, 587 F. Supp. 2d at 1269 (while "district courts usually award between 20% and 30% of the common fund . . . , 25% is "bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case")(quoting *Camden I*, 946 F.2d at 775). The "25% . . . 'bench mark' percentage fee award . . . may be adjusted in accordance with the individual circumstances of each case[.]" *Pedraza v. United Guar. Corp.*, CV100-108, 2001 WL 37071199, at *6 (S.D. Ga. June 22, 2001) (quoting *Camden I Condominium Ass'n,* 946 F.2d at 775).

The circumstances in this typical TCPA settlement that was settled quickly *do not* warrant an adjustment upward from 25%.

## A. This Court Has a Fiduciary Duty to the Class in Awarding Attorneys' Fees from the Common Fund.

This Court has a fiduciary obligation to protect the interests of the absentee Class members, including the responsibility to limit attorneys' fees to a reasonable amount. "[B]ecause the fee in this case will derive from the plaintiff class's settlement fund, and the defendants, therefore, no longer possess an economic interest in the

determination of the fee, the court must act as a fiduciary for class members and must be especially careful to scrutinize every factor relevant to determining the size of a reasonable attorney's fee." *Bowen v. SouthTrust Bank of Alabama*, 760 F. Supp. 889, 896– 97 (M.D. Ala. 1991) (quoting *Parker v. Anderson,* 667 F.2d 1204, 1214 (5th Cir.), *cert. denied,* \*897 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982); Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 255 (1985)). "Judicial scrutiny of class action fee awards and class settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost." *In re Southwest Voucher Litigation*, 799 F.3d 701, 712 (7th Cir. 2015); *see also In re: Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ("the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage").

## B. 30% is Excessive for this Ordinary TCPA Settlement.

This Court should exercise its fiduciary duty on behalf of the absent class members and reject the excessive fee request here.

The 30% fee award is *not* within the norm for fees in TCPA class action settlements. While there are outliers, the "data available on past awards in TCPA cases and other class actions show[s] that the median fee for large TCPA class actions were between 20% and 24% of the settlement fund[.]" *Wilkins v. HSBC Bank Nevada, N.A.*, 14 C 190, 2015 WL 890566, at \*10 (N.D. Ill. Feb. 27, 2015) (citing *In re Capital One Tel. Consumer Prot. Act Lit.,* No. 12 C 10064, 2015 WL 605203, at \*11-12, 15 (N.D. Ill.

Feb. 12, 2015)). In recent TCPA cases, courts have commonly awarded a percentage of 20% or less to class counsel. *See Bayat* v. *Bank of the West*, 2015 WL 1744342, at \*10 & n.10 (N.D. Cal. Apr. 15, 2015) (opting for the lodestar method but awarding the equivalent of 13.5% of the over $3.3 million settlement fund); *Rose* v. *Bank of Am. Corp.*, 2014 WL 4273358, at \*5, \*13 (N.D. Cal. Aug. 29, 2014) (choosing the lodestar method and awarding a fee that constituted about 7.5% of the over $32 million fund); *Michel* v. *WM Healthcare Solutions, Inc.*, 2014 WL 497031, at \*23 (S.D. Ohio Feb. 7, 2014) (awarding 15% of the $4.3 million settlement fund); *Wilkins* v. *HSBC Bank Nev., N.A.*, 2015 WL 890566, at \*12 (N.D. Ill. Feb. 27, 2015) (awarding 23.75% of the almost $40 million fund); *Arthur* v. *Sallie Mae, Inc.*, 2012 WL 4076119, at \*2 (W.D. Wash. Sept. 17, 2012) (awarding 20% of the about $24 million fund).[9]

Class counsel urge 30% is within the norm for TCPA settlements[10] in this circuit by referencing two unpublished district court orders from the Southern District of Florida. The *Guarisma v. ADCAHBMed. Coverages, Inc.*, No. 13-cv-21016, Dkt. No. 95 (S.D. Fla. June 24, 2015) order cited by class counsel offers no analysis whatsoever, and it is not clear from the order that the fees were even disputed. The other unpublished order, *Soto v. The Gallup Org.*, No. 13-cv-61747, Dkt. No. 95 (S.D.Fla. Nov. 24, 2015) relied on *Guarisma* for the notion that the one-third fee was

---

[9] Objector would urge that cases cited by class counsel outside the context of the TCPA be given no deference in setting the percentage of the fund recovery here.

[10] Memorandum in Support of Class Counsel's Motion for an Award of Attorneys' Fees, Costs, and Service Awards for Class Representatives, ECF Doc. 51-1, at 20.

consistent with similar TCPA settlements. These unpublished orders are outliers,[11] not roadmaps for appropriate recovery.

Class counsel then ask this Court to measure this TCPA settlement "against twenty-five years of TCPA settlements" and provide a chart listing nine TCPA settlements from across the country.[12] Yet, these cases confirm that 30% in attorneys' fees is too much. In eight of the nine cases cited in class counsels' chart, attorneys' fees were 25% or below.[13] *See Gehrich v. Chase Bank USA, N.A.*, No. 12 C5510, 2016 WL 806549 (N.D. Ill. Mar. 3, 2016) (awarding class counsel **21%** of the common

---

[11] Class counsel cite outliers from other jurisdictions which involve exceptional facts justifying an award above the benchmark. *See* Motion for Attorneys' Fees, ECF Doc. 51-1, at 21 n.9. For example, in *Hageman v. AT&T Mobility LLC, et al.*, 1:13-cv-50, Dkt. No. 68 (D. Mont. Feb. 11, 2015), the district court awarded class counsel 33%, inclusive of costs. That settlement, however, purportedly resulted in the largest recovery per class member in the 25 year history of the TCPA. ECF Doc. 68, at 8-9. Similarly, the district court in *Ikuseghan v.Multicare Health Sys.*, No. C14-5539, 2016 WL 4363198, at *2 (W.D. Wash.Aug. 16, 2016), awarded 30%, plus costs in a case in which class counsel secured "an extraordinarily good result for the class." The class members received as much as they would had they successfully litigated their claims under the TCPA ($500 per call). *Id.* at *1-2. The district court observed that "[t]his recovery is significantly superior to other TCPA class action settlements that have been approved in this Circuit and justifies an upward departure from the 25% benchmark rate." *Id.* Similarly, in *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209-10 (C.D. Cal. 2014), a 33% was justified where class counsel "achieved certification of the first federal TCPA class covering recipients of faxes that lacked compliant opt-out notices, regardless of whether the fax advertisements were solicited or unsolicited, and regardless of whether the defendant had an established business relationship with the persons to whom it sent the fax advertisements."

[12] Memorandum in Support of Class Counsel's Motion for an Award of Attorneys' Fees, Costs, and Service Awards for Class Representatives, at 11-12.

[13] In one of the nine cases, the court awarded 30%, "which departure from the 25% benchmark this Court finds is justified for the reasons set forth in the record." *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248, ECF Doc. 137, at 5 (S.D. Cal.). The record in that case shows the class action was on file for four years before settling, and involved far more litigation than took place here. ECF Doc. 1 (filed February 8, 2008); ECF Doc. 109-1 (settlement executed February 22, 2012). Indeed, unlike this case, the plaintiffs faced "many potentially dispositive motions and discovery disputes." ECF Doc. 115-1, at 9.

fund); *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. Wash.) (awarding **21%**); *Malta v. Fed. Home Loan Mortgage Corp.*, 10-CV-1290-BEN-NLS, 2013 WL 12095060, at \*1 (S.D. Cal. June 21, 2013) (**22.5%**); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009, ECF Doc. 59 (N.D. Cal.) (awarding **7.5%** of the gross fund on a percentage cross-check); *Connor v. JPMorgan Chase Bank*, No. 10 CV 1284 ECF Doc. 60-1 (S.D. Cal.) (class counsel sought **25%**); *Wilkins v. HSBC Bank Nevada, N.A.*, 14 C 190, 2015 WL 890566, (N.D. Ill. Feb. 27, 2015)(awarding **23.75%**); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 808 (N.D. Ill. 2015) (**20.77%**); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist., ECF Doc. 148, at 7-8 (N.D. Cal. Jan. 27, 2012) (awarding the **25%** benchmark). Meanwhile, six of the nine involved a greater class recovery; some far in excess of this case. *See e.g., Gehrich*, 2016 WL 806549, at \*2 ($34 million settlement fund); *Duke,* 5:12-cv-04009 ($32,083,905 settlement fund); *Wilkins v. HSBC Bank Nev., N.A.*, 2015 WL 890566, ($39,975,000 settlement fund); *Capital One*, 80 F. Supp. 3d at 808 ($75,455,098 settlement fund). This Court should not award fees based on class counsels' inflated benchmark.

## C. This is Not an Extraordinary TCPA Settlement and Class Counsel Should Not be Awarded Above the Benchmark.

In fact, there is no reason for this Court to award any amount above 20% to 25%. In determining whether an upward adjustment from the benchmark is appropriate, courts consider the twelve *Johnson* factors: (1) "the time and labor required," (2) "the novelty and difficulty of the questions," (3) "the skill requisite to

perform the legal service properly," (4) "the preclusion of other employment by the attorney due to acceptance of the case," (5) "the customary fee," (6) "whether the fee is fixed or contingent," (7) "time limitations imposed by the client or other circumstances," (8) "the amount involved and the results obtained," (9) "the experience, reputation, and ability of the attorneys," (10) "the 'undesirability' of the case," (11) "the nature and length of the professional relationship with the client," and (12) "awards in similar cases." *Carpenters Health*, 587 F. Supp. 2d at 1269 n.1 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–20 (5th Cir.1974)); *see also Camden I Condo. Ass'n*, 946 F.2d at 772 n.3, 776.

As Class counsel acknowledge, the most important factor is "the amount involved and the results obtained."[14] Yet, in the motion for attorneys' fees, they present only half the picture, praising the $16.4 million gross settlement fund while ignoring "the amount involved" – *i.e.*, the value of the class damages.

In a vacuum, the $16.4 million cash fund might be a "terrific result."[15] Relative to the $1.6 billion potential aggregate damages released, it is diminutive. This is particularly so considering the class will only receive something closer to $10.4 million.

---

[14] Memorandum in Support of Class Counsel's Motion for an Award of Attorneys' Fees, Costs, and Service Awards for Class Representatives, Doc. 51-1, at 11 (citing *Allapattah Servs., Inc. v. Exxon Corp.,* 454 F. Supp. 2d 1185, 1204-05 (S.D. Fla. 2006); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 351 (N.D. Ga. 1993)).

[15] *Id.* at 11.

Without even considering the possibility of treble damages, this is little more than one half of one percent recovery. In a similar case, a district court remarked that the class recovery under the TCPA settlement "represents a whopping 99.5% discount from the theoretical verdict value were statutory damages to be awarded to the entire class. This cannot be credibly called an 'outstanding' result." *Bayat v. Bank of the W.*, C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015).

Other factors also weigh strongly against the high fee request. Although class counsel have not disclosed the amount of labor they expended in the case, the lawsuit was settled quickly. It does not appear that any formal discovery was conducted, nor have class counsel detailed any depositions that were taken apart from one taken after the settlement was reached.[16]

Likewise, class counsel took on only limited risk in pursuing this case. The TCPA is a strict liability statute. A single text message results in recovery between $500 and $1,500. See 47 U.S.C. §227(b)(3). This makes TCPA class actions very likely to settle. *See, e.g.*, *Rose* v. *Bank of Am. Corp.*, 2014 WL 4273358, at *12 (N.D. Cal. Aug. 29, 2014) (reducing requested attorneys' fee award and noting "because the TCPA has the potential of ruinous financial liability . . . defendants will almost always settle if there is any merit at all to the case"); *Bayat*, 2015 WL 1744342, at *9 (noting that there is less risk in a TCPA case "where the potential recovery of statutory damages is as large as it is here . . . due solely to the size of the class and damages fixed by statute");

---

[16] *Id.* at 13-14.

*see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 237 (N.D. Ill. 2016) ("this case settled contemporaneously with or after several recent cases in this District and elsewhere that had established a template for TCPA litigation against large financial institutions, vastly reducing the uncertainty and risk for Class Counsel") (citations omitted). As a result, it not surprising that so many firms signed on to participate as class counsel.

While class counsel describe the risk as significant, the defenses outlined by class counsel, including consent, are not unique to this TCPA action. *See e.g., Wilkins v. HSBC Bank Nevada, N.A.*, 14 C 190, 2015 WL 890566, at *11(N.D. Ill. Feb. 27, 2015) (noting defenses included "the class members' alleged consent to receive automated phone calls; Rule 23 manageability issues; and potentially forthcoming FCC orders"). In *Wilkins*, a TCPA settlement which provided a far greater $39.9 million fund, the court remarked, "this case is an average TCPA class action. There are serious obstacles for Plaintiffs to overcome in establishing liability, but they are typical obstacles faced by most TCPA plaintiffs." *Id.* (concluding that the risk of TCPA litigation did not warrant exceeding the scale). As in *Wilkins*, the defenses, obstacles, and risks here do not warrant going above the norm for fees in TCPA settlements.

Finally, whatever percentage this Court determines as appropriate should be taken from the settlement fund after reduction of costs of administration, and not before. *See e.g., Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) ("[T]he ratio that is relevant to assessing the reasonableness of attorneys' fees that the parties

agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received"). Regardless, class counsels' request for 30% of the gross settlement fund departs from the interests of the Class and should not be granted.

## D. This Court Should Perform a Lodestar Cross-Check; No Multiplier is Appropriate.

Class have not made their lodestar information accessible to the class. Although not mandated in every case, there is an obvious need for a lodestar cross-check here given the limited time in which this case has been on file relative to the substantial fee request. *See e.g., Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (cross-checking a percentage-based award with class counsels' lodestar information); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001) (in finding "no reason to depart upward or downward from the circuit's 25% benchmark[,]" the court conducted a lodestar cross-check to confirm reasonableness of the fee request)

Without access to class counsels' lodestar, Objector would nevertheless assert that anything above a 1.0 multiplier would be a windfall here. As the United States Supreme Court has explained there is "a 'strong presumption' that the lodestar represents the 'reasonable' fee, . . . and have placed upon the fee applicant who seeks more than that the burden of showing that such an adjustment is *necessary* to the determination of a reasonable fee." *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) (emphasis original) (quotations omitted). A"lodestar figure includes most, if not all, of

the relevant factors constituting a 'reasonable attorney's fee.'" *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). "[A]n enhancement may not be awarded on a factor that is subsumed in the lodestar calculation." *Id.* at 553.

As discussed *supra*, there is nothing extraordinary about this TCPA settlement that would support an adjustment above class counsels' lodestar.

## II.   This Court Should Judicially Supervise Allocation of Attorneys' Fees.

This Court should not simply "determine an aggregate fee and costs award and give co-lead Class Counsel the authority to allocate among Class Counsel" as proposed in the motion for attorneys' fees.[17] Class counsel cite two opinions in support of this proposition.

The first, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357 (N.D. Ga. 1993), advised various firms making up class counsel to meet and negotiate an allocation for submission to the court. In the absence of such an agreement, the Court instructed it would set the matter "for a hearing and will allocate the overall award among participating counsel based on the reasonable efforts and relative responsibilities they exercised (not necessarily correlated to the hours expended) leading to the creation of the common fund for the benefit of the class." *Id.* In either case, judicial oversight of the fee allocation was required.

---

[17] Memorandum in Support of Class Counsel's Motion for an Award of Attorneys' Fees, Costs, and Service Awards for Class Representatives, ECF Doc. 51-1, at 9 n. 3.

The second, *Craft v. North Seattle Cmty. College Found.*, No. 07-cv-132, Dkt. No. 135 (M.D. Ga. Sept. 2, 2010), while allowing class counsel to allocate fees among themselves, only involved two law firms. This case involves an assortment of firms from around the nation. And in any case, *Craft* cited no authority for the notion that a court can simply hand over a lump sum to class counsel and trust that lead counsel will divide the funds fairly.

Although it does not appear that the Eleventh Circuit has reached the issue, several federal courts have observed that in "a class action settlement, the district court has an independent duty . . . to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *See In re High Sulfur Content Gasoline Prods. Litig.* (5th Cir. 2008) 517 F.3d 220, 227–28 ; *In re "Agent Orange" Prods. Liab. Litig.* (2d Cir. 1987) 818 F.2d 216, 223. The district court "must not … delegate that duty to the parties." *High Sulfur,* 517 F.3d at 228 (internal quotation omitted).

This Court's judicial supervision should not end with a lump sum payment to class counsel. The Court should oversee the allocation of funds. It should not simply trust that Class Counsel will do so fairly. While "lead counsel may be in a better position . . . to evaluate the contributions of all counsel seeking recovery of fees[,]" the allocation should be supervised by the court in light of inherent conflicts among the attorneys. (*Id.* at 234-35 [citing *In re Diet Drugs Prods. Liab. Litig.* (3d Cir. 2005) 401 F.3d 143, 173 (Ambro, J., concurring)]) ("They make recommendations on their own

16

fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?'").

### III.   The Proposed $20,000 Incentive Award to Each of the Three Named Plaintiffs is Unfounded and Suggests a Conflict.

The settlement appears to provide an estimated $25 to $75 to each class member who files a claim, yet it rewards the three class representatives a disproportionate $20,000 service fee.[18] This amount is unsubstantiated and excessive, and unnecessarily reduces the benefits to the class even further. More importantly, rewarding the named plaintiffs with between 266 to 800 times the average class recovery renders the named plaintiffs inadequate representatives.

It is well-established "that class representatives in class actions act as fiduciaries to the class." *In re U.S. Bioscience Securities Litig.*, 155 F.R.D. 116, 120 (E.D. Pa. 1994) (citing *In re Fine Paper Litigation,* 632 F.2d 1081, 1086 (3d Cir.1980); *Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975)). In that capacity, they "undertake to represent not only themselves, but all members of the class, in a fiduciary capacity, and are obligated to do so fairly and adequately, and with due regard for the rights of those class members not present to negotiate for themselves." *Women's Committee for Equal Employment Opportunity (WCEEO) v. National Broadcasting Co.,* 76 F.R.D. 173, 180 (S.D.N.Y. 1977). Significantly, "where representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries,

---

[18] Declaration of Daniel M. Hutchinson in Support of Class Counsel's Motion for an Award of Attorneys' Fees, Costs, and Service Awards for Class Representatives, ECF Doc. 51-2, at 17.

serious questions are raised as to the fairness of the settlements to the class." *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983) (quoting *Plummer v. Chemical Bank,* 91 F.R.D. 434, 441–42 (S.D.N.Y.1981), *aff'd,* 668 F.2d 654 (2d Cir.1982)). For example, "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interest they are appointed to guard." *U.S. Bioscience,* 155 F.R.D. at 120 (quoting *Weseley v. Spear Leeds & Kellogg,* 711 F.Supp. 713, 720 (E.D.N.Y. 1989)); *accord Staton v. Boeing Company,* 327 F.3d 938, 977 (9th Cir. 2003) ( if "such members of the class are provided with special 'incentives' in the settlement agreement, they may be more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large").

The $20,000 award here is out of step with the class recovery. This Court should require a significant reduction in the incentive award or refuse to approve the settlement altogether.

Although the Eleventh Circuit has not established a "rule that settlements benefit all class members equally, a disparate distribution favoring named plaintiffs requires careful judicial scrutiny...." *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983). Courts commonly consider: (1) the risk to the representative in commencing the suit, financial or otherwise; (2) the amount of time and effort by the representative; (3) the personal benefit enjoyed by the representative as a result of the

litigation; and (4) the duration of the litigation. *Demsheck v. Ginn Dev. Co., LLC*, 3:09-CV-335-J-25TEM, 2014 WL 11370089, at *5 (M.D. Fla. Mar. 5, 2014), *aff'd sub nom. Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628 (11th Cir. 2015).

In *Demsheck*, the district court rejected a request for a $15,000 incentive award where it exceeded the average settlement award by 19 times. *Id.* at *5. The court instead awarded $5,000 where "the record does not reflect a high level of risk to the Representative or an unusual commitment of time and effort to the litigation on behalf of the Class Representative." *Id.*

Apart from noting the representatives turned down an offer of judgment, class counsel have failed to explain what unique time and labor, if any, the class representatives expended that entitles them to such a disproportionate incentive fee.[19] *Compare with Craftwood Lumber Co. v. Interline Brands, Inc.*, 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) ($25,000 for a corporate class representative was appropriate where its president spent nearly 200 hours working on the case, investigated the claims, provided substantial assistance in responding to discovery, was deposed, attended two separate mediations while assisting with a third, and regularly communicated with class counsel regarding case strategy). Without this explanation, three awards of $20,000 from the gross settlement fund cannot be in the best interests of the class.

---

[19] Memorandum in Support of Class Counsel's Motion for an Award of Attorneys' Fees, Costs, and Service Awards for Class Representatives, ECF Doc. 51-1, at 22-23.

## CONCLUSION

Objector requests that this Court reject Class Counsels' request for 30% of the $16.4 million gross settlement fund, perform a lodestar cross-check, and award no more than 20% to 25% of the settlement fund (calculated after reduction of settlement administration expenses), with the excess remaining in the common fund for the benefit of the Class. Objector further requests that this Court refuse class counsels' request to award a lump sum of attorneys' fees for allocation by co-lead counsel without judicial supervision. Objector further requests that this Court reject the proposed $20,000 incentive fee for each the three class representatives. Alternatively, the settlement should be disapproved as unfair to the extent the incentive fee is not reduced.

DATED:  November 22, 2016                    Respectfully submitted,

                                             Wanda Yde
                                             434 S. Whitney St.
                                             Aransas Pass, Texas 78336
                                             (530) 736-6448
                                             wepetrus@yahoo.com

## Certificate of Service

The undersigned certifies that on November 22, 2016, she caused to be served

via USPS First Class Mail, postage prepaid, a copy of this Objection and associated

exhibits upon the following.

Markos v. Wells Fargo Bank, N.A.
Case No. 1:15-cv-01156-LMM (N.D. Ga.)
Clerk of the Court
U.S. District Court for the Northern District of Georgia
2211 United States Courthouse
75 Ted Turner Drive, SW
Atlanta Georgia 30303

Markos Wells Fargo TCPA Settlement Claims Administrator
c/o GCG
P.O. Box 10301
Dublin, OH 43017-5901

Leiff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111

Severson & Werson
One Embarcadero Center, Suite 2600
San Francisco, CA 94111

DATED:  November 22, 2016

Wanda Yde

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Steven L. Markos, Tiffany Davis,
and Gregory Page, on behalf of
 themselves and all others similarly
situated,

          Plaintiffs,

     v.

Wells Fargo Bank, N.A.

          Defendant.

Case No. 1:15-cv-001156-LMM

## DECLARATION IN SUPPORT OF OBJECTIONS TO CLASS ACTION SETTLEMENT

Comes now Wanda Yde and states the following under oath and under penalty

of perjury in support of her objection:

> "My name is Wanda Yde. I am over the age of eighteen (18)
> years. I have never been convicted of a felony. I am qualified and
> competent to make this declaration. The facts stated herein are within
> my personal knowledge. My address and contact information is as
> follows:

Wanda Yde
434 S. Whitney St.
Aransas Pass, Texas 78336
(361) 717-2059
wepetrus@yahoo.com.

I am a user or subscriber to a wireless or cellular service within the United States who used or subscribed to a telephone number to which Wells Fargo made or initiated one or more calls or non-emergency texts using an automatic telephone dialing system or artificial or prerecorded voice technology, according to Wells Fargo's available records. I used or subscribed to a cellular phone number to which Wells Fargo made or initiated a call or non-emergency text in connection with a Residential Mortgage Loan from November 17, 2011 to February 29, 2016. I am a class member as defined by the class notice.

The cellular telephone number which I received a call or calls from the Defendant was (530) 736-6448.

Additionally, I received a postcard notice in the mail for this class action lawsuit settlement, and filed a claim (a true and correct copy of which are attached as Exhibit A-1). I neglected to complete the subclass information requested on the claim form. I intend to file a corrected claim on the settlement website by the claims deadline."

Dated this the 22th day of November, 2016.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Wanda Yde

EXHIBIT A 1



Claim ID: 05090532
Confirmation No: 9604158531

**Wells Fargo Mortgage and Home Equity Line of Credit TCPA Settlement Claim Form**
THIS CLAIM FORM MUST BE POSTMARKED BY DECEMBER 22, 2016 AND MUST BE FULLY COMPLETED.
You may also submit your claim online at WWW.MARKOSWELLSFARGOTCPA.COM or by calling 1-866-562-0143.

Full Name: Wanda Yde
Address: 434 So Whitney TX 78336
Aransas Pass TX 78336

Para ver este aviso en español, visite WWW.MARKOSWELLSFARGOTCPA.COM.
For more information, visit WWW.MARKOSWELLSFARGOTCPA.COM

## LEGAL NOTICE
*Markos v. Wells Fargo*, 15-cv-1156-LMM
(N.D.Ga.)

A settlement has been proposed in this lawsuit pending in U.S. District Court for the Northern District of Georgia ("Court").

This case claims that Wells Fargo Bank, N.A. ("Wells Fargo") violated the Telephone Consumer Protection Act by calling or sending texts to cellphones without prior express consent using an automatic telephone dialing system or artificial or prerecorded voice in connection with either a mortgage and/or a home equity loan. Wells Fargo denies that it did anything wrong.

Who Is Included? You are included in the Settlement as a "Class Member" if: (1) you live in the United States; and (2) you received one or more calls or texts to your cellular telephone from Wells Fargo Bank, N.A. in connection with either a residential mortgage loan ("Subclass One") and/or a home equity loan ("Subclass Two") during the Class Period, which is November 17, 2011 to February 29, 2016 for Subclass One and April 14, 2011 to February 29, 2016 for Subclass Two.

Markos Wells Fargo TCPA
Settlement Claims Administrator
c/o GCG
P.O. Box 10301
Dublin, OH 43017-5901

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
K&H

WF10551085907

Claim ID: 05090532
Confirmation No: 9604158531

\*\*\*\*\*\*\*\*\*\*\*\*\*AUTO\*\*ALL FOR AADC 783
YDE WANDA
120 WOODHAVEN
INGLESIDE TX 78362-4674