# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Steven L. Markos, Tiffany Davis, and Gregory Page, on behalf of themselves and all others similarly situated, | Case No. 1:15-cv-01156-LMM |
| Plaintiffs, | |
| v. | |
| Wells Fargo Bank, N.A., | |
| Defendant, | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................1

II.  BACKGROUND .....................................................................................2

    A.   Class Notice and Response to the Settlement ......................................2

    B.   The Settlement Class ...........................................................................2

    C.   Monetary Relief ...................................................................................3

    D.   Class Release .......................................................................................4

    E.   Class Representative Service Awards, Attorneys' Fees, and
        Costs ....................................................................................................4

III. FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED. ............5

    A.   The Settlement Was Reached Without A Hint of Collusion. ..............6

    B.   The *Bennett* Factors Favor Approval. .................................................7

        1.   The Settlement Provides Substantial Relief, Particularly
            in Light of the Risks. ................................................................7

            a.   The Monetary Amount Offered in
                Settlement. ......................................................................8

            b.   The Strength of Plaintiffs' Case. .........................10

        2.   Continued Litigation is Likely to be Complex, Lengthy,
            and Expensive. ......................................................................14

        3.   There is Minimal Opposition to the Settlement......................14

        4.   The Stage of the Proceedings..................................................15

IV.  CONCLUSION..............................................................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

*ACC Int'l v. FCC*,
  No. 15-1211 (D.C. Cir.)..............................................................11

*Adams v. AllianceOne Receivables Mgmt. Inc.*,
  No. 08-cv-00248 (S.D. Cal.) ........................................................9

*Aliano v. Joe Caputo & Sons—Algonquin, Inc.*,
  No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011)...................13

*Arthur v. Sallie Mae Inc.*,
  No. 10-cv-00198 (W.D. Wash.) ....................................................8

*Arthur v. Sallie Mae, Inc.*,
  No. 10-cv-132413, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012)......11

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ...............16

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ................................................ 6, 7, 8

*Blessing v. Sirius XM Radio Inc.*,
  507 F. App'x 1(2d Cir. 2012)........................................................7

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ......................................................4

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663 (2016) ................................................................13

*Chapman v. First Index, Inc.*,
  No. 09 C 5555, 2014 WL 840565 (N.D. Ill. Mar. 4, 2014) (citing cases),
  *aff'd in part*, 796 F.3d 782 (7th Cir. 2015) ...................................12

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  258 F.R.D. 545 (N.D. Ga. 2007) ..................................................5

# TABLE OF AUTHORITIES
## (continued)

Page

*Connor v. JPMorgan Chase Bank,*
   No. 10 CV 1284 (S.D. Cal.) ................................................................9

*Couser v. Comenity Bank,*
   125 F. Supp. 3d 1034 (S.D. Cal. 2015) ................................................15

*Duke v. Bank of Am., N.A.,*
   No. 5:12-cv-04009 (N.D. Cal.)............................................................8

*Etzel v. Hooters of Am., LLC,*
   No. 15-01055, Dkt. No. 39 (N.D. Ga. Nov. 11, 2016)........................13

*Faught v. Am. Home Shield Corp.,*
   668 F.3d 1233 (11th Cir. 2011)............................................................6

*Figueroa v. Sharper Image Corp.,*
   517 F. Supp. 2d 1292 (S.D. Fla. 2007)..................................................7

*Gehrich v. Chase Bank USA, N.A.,*
   No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 3, 2016) ..................8

*Greco v. Ginn Dev. Co., LLC,*
   635 F. App'x 628 (11th Cir. 2015).......................................................7

*In re Capital One Tel. Consumer Protection Act Litig.,*
   80 F. Supp. 3d 781 (N.D. Ill. 2015)................................................ 9, 15

*In re Checking Account Overdraft Litig.,*
   830 F. Supp. 2d 1330 (S.D. Fla. 2011)..............................................5, 8

*In re Domestic Air Transp. Antitrust Litig.,*
   148 F.R.D. 297 (N.D. Ga. 1993) .................................................... 8, 10

*In re U.S. Oil & Gas Litig.,*
   967 F.2d 489 (11th Cir. 1992)..............................................................5

*Ingram v. The Coca-Cola Co.,*
   200 F.R.D. 685 (N.D. Ga. 2001) .................................................. 14, 15

*Kolinek v. Walgreen Co.,*
   311 F.R.D. 483 (N.D. Ill. 2015) .........................................................15

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Kramer v. Autobytel*,
   No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012).......9

*Leverso v. SouthTrust Bank of AL., N.A.*,
   18 F.3d 1527 (11th Cir. 1994) ...............................................................5

*Malta v. Fed. Home Loan Mortg. Corp.*,
   No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ...........................8, 9

*Manno v. Healthcare Revenue Recovery Grp.,LLC*,
   289 F.R.D. 674 (S.D. Fla. 2013) ............................................................12

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007).....................................................15

*Poertner v. Gillette Co.*,
   618 F. App'x 624 (11th Cir. 2015)..........................................................7

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
   297 F.R.D. 683 (S.D. Fla. 2014) ...........................................................6

*Spokeo v. Robins*,
   135 S. Ct. 1892 (2016) .......................................................................13

*Synfuel Techs., Inc. v. DHL Exp. (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ................................................................8

*Thorne v. Donald J. Trump for President, Inc.*,
   No. 1:16-cv-04603 (N.D. Ill).................................................................12

*Tillman v. Ally Fin. Inc.*,
   No. 16-313, 2016 WL 6996113 (M.D. Fla. Nov. 30, 2016) ...............................13

*Wilkins v. HSBC Bank Nev., N.A.*,
   No. 14-190, 2015 WL 890556 (N.D. Ill Feb. 27, 2015.) ...................................9

## STATUTES

47 U.S.C. § 227(b)(1)(A) ..............................................................................1

1332108.1

# TABLE OF AUTHORITIES
## (continued)

**Page**

## RULES

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) ........................10

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, 62 Communications Reg. (P&F) 1539, 2015 WL 4387780 (F.C.C.) .................11

## OTHER AUTHORITIES

Brian Fung, *With Trump on the horizon, the FCC signals it may not pass any more big rules*, Washington Post, Nov. 16, 2016..........................................................11

McLaughlin on Class Actions (8th ed. 2011) ............................................................7

Rubenstein, Newberg on Class Actions  (5th ed. 2015) ............................................5

1332108.1

## I.      <u>INTRODUCTION</u>

Plaintiffs respectfully seek final approval of a nationwide class action settlement ("Settlement") with Defendant Wells Fargo Bank, N.A.  Plaintiffs allege that Wells Fargo violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by placing automated non-emergency, debt-collection calls and texts in connection with mortgage loans without prior express consent.  The Settlement requires Wells Fargo to pay $16,417,496.70 into a non-reversionary cash fund, to be distributed *pro rata* to Class Members who file qualified claims.

The Court's preliminary determination that the Settlement should be approved was correct.  Class Members' reaction to the Court-ordered Notice has been extremely favorable:  to date, more than 406,000 Class Members submitted claims (over 12% of the Class); only 322 requested exclusion; and only five submitted valid and timely objections.  Ex. 3 (Cirami Decl.) at ¶ 22; Dkt. Nos. 49, 50, 53, 56, 57.  Plaintiffs submit that this Settlement is an excellent result for the Class, and satisfies the criteria for final approval.[1]

---

[1] Plaintiffs respond to the filed objections in the concurrently-filed Plaintiffs' Responses to Objections.

## II.  BACKGROUND[2]

### A.  Class Notice and Response to the Settlement

The Court-approved Notice program was fully and successfully implemented by the parties and Claims Administrator.  Mailed notice was sent individually to 3,316,666 Class Members.  *Id.* at ¶ 10.  To date, more than 406,000 Class Members have submitted claims – over 12% of the Class.  *Id.* at ¶ 21.  This claim-filing rate is particularly high for this type of action and demonstrates strong support for the Settlement.  Only 322 requested exclusion (less than 0.01% of Class Members).[3]  *Id.* at ¶ 22.  Only nine submitted objections, of which only five complied with the Court's requirements to object.[4]  *Id.* at ¶ 24; Ex. 1 (Hutchinson Decl.) at ¶ 9 & Ex. A; Dkt. Nos. 49, 50, 53, 54, 55, 56, 57, 58.

### B.  The Settlement Class

The Settlement Class is defined as:

---

[2] Since the Court is familiar with the factual and procedural background, Plaintiffs do not repeat it in this brief.

[3] This number may decrease.  A law firm submitted an invalid request to exclude 166 individuals from the Settlement that did not comply with the Court's Preliminary Approval Order.  *See* Dkt. No. 42-3 ("[N]o other person may exclude you from the Settlement Class[.]").  Wells Fargo agreed to allow these individuals to cure their exclusion requests by December 27, 2016.  Ex. 1 (Hutchinson Decl.) at ¶ 7; Ex. 3 (Cirami Decl.) at ¶ 23.

[4] Although four objections are facially invalid, Plaintiffs nevertheless address all issues raised by the objections in their Response to Objections.

> All users or subscribers to a wireless or cellular service within the United States who used or subscribed to a phone number to which Wells Fargo made or initiated one or more Calls during the Class Period using any automated dialing technology or artificial or prerecorded voice technology, according to Wells Fargo's available records, and who are within Subclass One and/or Two.

Settlement at ¶ 2.33.[5]  Subclass One addresses Residential Mortgage Loan calls.  *Id.* at ¶ 2.33(a).   Subclass Two covers Home Equity Loan calls.  *Id.* at ¶ 2.33(b).

### C.   **Monetary Relief**

The Settlement creates a non-reversionary cash Settlement Fund of $16,417,496.70.  *Id.* at ¶ 4.04; Dkt. No. 38-1 (Supp. Hutchinson Decl.) at ¶¶ 3-9.  Each Class Member who submits a valid claim via a simple claim form online, by phone, or by mail will receive a Cash Award.  Settlement at ¶¶ 4.05, 4.06.  Anyone who is a member of both Subclasses can make two claims.  *Id.* at ¶¶ 4.05, 4.06.  The amount of each Cash Award is the claiming Class Member's *pro rata* share of the Settlement Fund, after payment of attorneys' fees, costs of notice and claims administration, and Service Awards.  *Id*. at ¶¶ 4.05, 4.06.

---

[5] The Settlement is attached as Exhibit 1 to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 34-2).  Unless otherwise stated, all capitalized terms in this Memorandum carry the same meaning as defined in the Settlement.

If uncashed checks permit a second *pro rata* distribution equal to or greater than $1.00 per qualifying claimant, the Settlement requires a second *pro rata* distribution to all Class Members who cashed settlement checks.  Settlement at ¶ 7.04(e).  If no second distribution is made, or if checks remain uncashed after the second distribution, the uncashed amount will be distributed *cy pres* to Habitat for Humanity.  *Id.* at ¶ 7.04(f); Dkt. No. 38-1 (Supp. Hutchinson Decl.) at ¶¶ 10-13.

### D.  Class Release

Settlement Class Members who do not opt out will provide a release tailored to the conduct at issue in this case – calls made in connection with the specified types of mortgage loans during the applicable Class Period.  Specifically, they will release all claims "that arise out of [Wells Fargo's] use of an 'automatic telephone dialing system' or 'artificial or prerecorded voice' to contact or attempt to contact Settlement Class Members in connection with a Residential Mortgage Loan and/or Home Equity Loan during the Class Period."  Settlement at ¶13.01.

### E.  Class Representative Service Awards, Attorneys' Fees, and Costs

Class Counsel filed a motion seeking attorneys' fees under the percentage-of-the-fund method, which, under long-standing and controlling Circuit authority, is the appropriate method for calculating and awarding fees in a common fund settlement like this.  *See* Dkt. No. 51; *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946

F.2d 768, 774 (11th Cir. 1991).  Class Counsel also requested service awards of $20,000 each for the three Class Representatives.

## III.     FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED.

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."  Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007) ("In reviewing proposed settlements, courts should also bear in mind the judicial policy favoring settlements.").

In determining whether to approve the Settlement, the Court considers whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994).  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1344-45 (S.D. Fla. 2011) (citation omitted).  The Eleventh Circuit has identified six factors:

(1) the likelihood of success at trial;

(2) the range of possible recovery;

(3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;

(4) the anticipated complexity, expense, and duration of litigation;

(5) the substance and amount of opposition to the settlement; and

(6) the stage of proceedings at which settlement was achieved..

*See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  Application of these factors here confirms that the Settlement is fair, reasonable, and adequate, and should be finally approved.

## A.      The Settlement Was Reached Without A Hint of Collusion.

The Settlement is the product of many months of good-faith, adversarial, and contentious arm's-length negotiations.  *See Bennett*, 737 F.2d at 987 n.9 (approving settlement where "the settlement ha[d] been achieved in good faith through arms-length negotiations and is not the product of collusion between the parties and/or their attorneys"); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."). The parties reached settlement only after in-person meditation and several

telephone conferences with respected mediator Hunter Hughes.  *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion.").  These facts support approval.  *See, e.g.*, *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 630 (11th Cir. 2015) (approving settlement after four in-person mediations); *Poertner v. Gillette Co.*, 618 F. App'x 624, 625 (11th Cir. 2015) (approving settlement after "months" of mediation); *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 3 (2d Cir. 2012) (finding that "the proposed settlement was fair" where the "settlement was reached only after contentious negotiations"); 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

### B.  The *Bennett* Factors Favor Approval.

#### 1.  The Settlement Provides Substantial Relief, Particularly in Light of the Risks.

The first three *Bennett* factors capture the essence of Rule 23(e) analysis: whether the Settlement provides reasonable value to the Class when measured against the strength of the plaintiffs' case.  *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323-24 (S.D. Fla. 2007) ("The most important factor relevant to the fairness of a class action settlement is the . . . strength of the

plaintiff's case on the merits balanced against the amount offered in the settlement.") (quoting *Synfuel Techs., Inc. v. DHL Exp. (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).  Nevertheless, courts "must be guided by . . . 'the realization that compromise is the essence of settlement.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993) (quoting *Bennett*, 737 F.2d at 986).  The Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1345 (citation omitted).

### a.     The Monetary Amount Offered in Settlement.

The Settlement establishes a $16,417,496.70 non-reversionary common fund, an excellent result when measured against prior TCPA settlements:[6]

| Caption | Amount | Class Members |
|---|---|---|
| *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 3, 2016), *appeal filed* | $34 million | More than 32 million |
| *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. Wash.) | $24.15 million | 7,792,256 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) | $17.1 million | 5,887,508 |
| *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009 | $32,083,905 | 7,723,860 |

---

[6] *See* Dkt. No. 51-2 (Hutchinson Decl.) at ¶ 27.

| (N.D. Cal.) | | |
|---|---|---|
| *Connor v. JPMorgan Chase Bank*, No. 10 CV 1284 (S.D. Cal.) | $11,665,592.09 | 2,684,518 |
| *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890556 (N.D. Ill Feb. 27, 2015.) | $39,975,000 | 9,065,262 |
| *In re Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) | $75,455,098 | 16,645,221 |
| *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) | $12.2 million | 47 million |
| *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248 (S.D. Cal.) | $9 million | More than 6,079,411 |

Notable on that list is the *Malta* case, which, like this case, involved Wells Fargo mortgage debt collection calls. This case yields a per-class-member recovery that is approximately *40% higher* than what the class received in *Malta*.

Most importantly, the Settlement provides Class Members with real monetary relief, despite the fact that this is a purely statutory damages case involving nominal economic damages or actual damages (such as harassment and invasion of privacy) that are difficult to quantify. The Settlement provides direct, monetary benefits to Class Members who realistically would not have filed individual lawsuits because almost any case would be too small to bring on its own.

While the settlement amount does not constitute the full measure of statutory damages potentially available to the Class, this fact alone, however, should not

weigh against final approval.  *See In re Domestic Air Transp. Antitrust Litig.*, 148F.R.D. at 319 ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal quotation marks omitted).

### b.        The Strength of Plaintiffs' Case.

Plaintiffs continue to believe that their claims against Wells Fargo have merit.  Nevertheless, Plaintiffs and the Class would face a number of difficult challenges if the litigation were to continue.

First, the Parties have competing interpretations of what constitutes "prior express consent" under the TCPA based on the FCC's January 4, 2008, declaratory ruling, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (hereinafter "2008 Declaratory Ruling").  Plaintiffs maintain that the TCPA requires that the cell phone number be "provided during the transaction that resulted in the debt owed," *i.e.*, during the "origination" of the credit or banking relationship.  *See id.*  Wells Fargo, however, interprets the term "transaction" to cover a much longer time period.  If the Court found that the TCPA permits "prior express consent" to be given any time a customer provides a cell phone number as a contact number, the

amount of recoverable damages could be reduced significantly or eliminated altogether.  *See, e.g.*, *Arthur v. Sallie Mae, Inc.*, No. 10-cv-132413, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012) (granting final approval of TCPA settlement "in part because of the novelty of central issues").

Second, Plaintiffs maintain that, under the 2008 Declaratory Ruling, only "the customer" can provide prior express consent.  A recent FCC Order found that consent provided by a customer does not transfer to non-customers called at the same number.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, 62 Communications Reg. (P&F) 1539, 2015 WL 4387780 (F.C.C.).  Wells Fargo argues that the FCC Order adopted an incorrect interpretation of the statute and that a pending petition to the D.C. Circuit will overturn the FCC Order.  *See ACC Int'l v. FCC*, No. 15-1211 (D.C. Cir.).  This risk is particularly salient because president-elect Trump will appoint a new FCC commissioner in 2017 who may shift the balance of power on the five-member commission.  *See* Brian Fung, *With Trump on the horizon, the FCC signals it may not pass any more big rules*, Washington Post, Nov. 16, 2016 (noting that the "incoming administration . . . could take things in a very different direction next year").  Mr. Trump has

criticized certain litigation and currently faces a TCPA class action.  *See Thorne v. Donald J. Trump for President, Inc.*, No. 1:16-cv-04603 (N.D. Ill).

Third, while Plaintiffs continue to believe that class certification would be appropriate, Wells Fargo argues that certification of a litigation class would be inappropriate due to the question of whether Settlement Class Members consented to the calls at issue.  And "[c]ourts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc*., No. 09 C 5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) (citing cases), *aff'd in part*, 796 F.3d 783 (7th Cir. 2015); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 689-90 (S.D. Fla. 2013) (certifying TCPA class for trial only because "any persons who may have been subject to an individualized consent defense were excluded during [class] discovery").  If Wells Fargo presents convincing facts to support its position, the Court may decline to certify a class, leaving only the named Plaintiffs to pursue their individual claims.  In Class Counsel's experience, failure to secure class certification is a real risk that often dooms TCPA actions. Ex. 1 (Hutchinson Decl.) at ¶¶ 19-23.

Fourth, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards on due process grounds. *See, e.g.*, *Aliano v. Joe Caputo & Sons—Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) (noting that FACTA statutory damages of $100 to $1000 per violation, "although authorized by statute, would be shocking, grossly excessive, and punitive in nature").

Fifth, Wells Fargo contends that Plaintiffs may lack standing to pursue their claims after *Spokeo v. Robins*, 136 S. Ct. 1540 (2016).[7]  Additionally, Wells Fargo has, in the past, made offers of judgment under Rule 68 and claimed that Plaintiffs' claims consequently were mooted.  Although that specific proposition was rejected in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), there remains the possibility that a more complete tender might moot Plaintiffs' claims.

Finally, there is a risk of losing a jury trial.  And, even if Plaintiffs did prevail at trial, any judgment could be reversed on appeal.

---

[7] Plaintiffs disagree.  *See Etzel v. Hooters of Am., LLC*, No. 15-01055, Dkt. No. 39 (N.D. Ga. Nov. 11, 2016) (holding that, after *Spokeo*, an unwanted text message confers standing); *Tillman v. Ally Fin. Inc.*, No. 16-313, 2016 WL 6996113, at *2-4 (M.D. Fla. Nov. 30, 2016) (holding that, after *Spokeo*, plaintiffs have standing based on allegations they received autodialed calls).

The Settlement provides substantial relief to Settlement Class Members without delay and is fair and adequate, particularly in light of the above risks that Settlement Class Members would face in litigation.

### 2.   Continued Litigation is Likely to be Complex, Lengthy, and Expensive.

Continued litigation would involve extensive discovery and motion practice, including Plaintiffs' motion for class certification and Wells Fargo's motion for summary judgment.  The parties would engage experts to analyze Wells Fargo's call data.  It is likely to be years before the case could proceed to trial and through appeal.  Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiffs and Settlement Class Members to receive immediate and certain relief.  *See Ingram* , 200 F.R.D. at 691 (approving settlement where "the likely alternative to settlement now is lengthy, burdensome, and expensive litigation," and explaining that "the added benefit of obtaining [relief] now rather than years from now makes approval of this settlement in the best interests of the class").

### 3.   There is Minimal Opposition to the Settlement.

Class reaction to the Settlement has been overwhelmingly positive: more than 406,000 Class Members submitted claims (more than 12% of the Class); at most 322 excluded themselves (less than .01% of the Class); and only nine

submitted objections.  Ex. 1 (Hutchinson Decl.) at ¶¶ 7, 9 & Ex. A; Ex. 3 (Cirami

Decl.) at ¶¶ 22-23; Dkt. Nos. 49, 50, 53, 54, 55, 56, 57, 58.  The low objection rate

and high claims rate favor the Settlement.  *See Perez v. Asurion Corp.*, 501 F.

Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections

demonstrates the reasonableness of a settlement."); *Kolinek v. Walgreen Co.*, 311

F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with

2.5% claims rate); *In re Capital One Tel. Consumer Protection Act Litig.*, 80 F.

Supp. 3d 781, 787 (N.D. Ill. 2015) (7.9% claims rate); *Couser v. Comenity Bank*,

125 F. Supp. 3d 1034, 1043-44 (S.D. Cal. 2015) (finding the 7.7% claims rate was

a "higher than average claims rate" and weighed in favor of approval).

Additionally, Class Counsel, experienced TCPA and class action lawyers,

strongly endorse the Settlement.  Dkt. No 34-8 (Hutchinson Decl.) at ¶¶ 36-37; *see

also, e.g.*, *Ingram*, 200 F.R.D. at 691 ("In a case where experienced counsel

represent the class, the Court, absent fraud, collusion, or the like, should hesitate to

substitute its own judgment for that of counsel.") (internal quotation marks

omitted).

### 4.    <u>The Stage of the Proceedings.</u>

Although the Settlement was reached at an early stage of the litigation, that

does not weigh against final approval.  Class Counsel and Wells Fargo did the

work to evaluate properly the value of the case and reach a reasonable resolution. Counsel thoroughly investigated Wells Fargo's practices and Plaintiffs' claims. That investigation and research was critical to Class Counsel's understanding of the claims and remedies at issue, in particular because the TCPA legal landscape is in a state of flux. *See* 2015 Declaratory Ruling.  Before the parties went to mediation, the court in the *Page* action denied Wells Fargo's motion to strike the class allegations; Class Counsel conducted significant informal discovery, including review of Wells Fargo's call data and 3,245 pages of key documents; and both parties submitted detailed mediation briefs.  After the Settlement was reached, Class Counsel conducted significant confirmatory discovery, including a Rule 30(b)(6) deposition of Wells Fargo's corporate representative.

Any concerns about the early stage of proceedings are allayed by the result: an all-cash Settlement Fund that compares very favorably with similar TCPA class settlements.  *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").  The parties' efficient approach secured relief *now*, rather than after years of litigation.

## IV.    <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court approve the Settlement.

Dated:  December 13, 2016          Respectfully submitted,

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
By: /s/ Daniel M. Hutchinson
Daniel M. Hutchinson (*pro hac vice*)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Jonathan D. Selbin (*pro hac vice*)
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Andrew R. Kaufman (*pro hac vice*)
Email: akaufman@lchb.com
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

BURKE LAW LLC
Alexander h. Burke (*pro hac vice*)
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
Aburke@BurkeLawLLC.com

*Co-Lead Class Counsel*

SKAAR & FEAGLE, LLP
By: /s/ James M. Feagle
Georgia Bar No. 256916
Jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
404 / 373-1970
404 / 601-1855 fax

Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
krisskaar@aol.com
133 Mirramont Lake Drive
Woodstock, GA 30189
770 / 427-5600
404 / 601-1855 fax

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice*)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

LAW OFFICES OF DOUGLAS J.
CAMPION, APC
Douglas J. Campion (*pro hac vice*)
Email: doug@djcampion.com
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

KEOGH LAW, LTD.
Keith Keogh (*pro hac vice*)
Email: keith@koeghlaw.com
55 W. Monroe, Ste. 3390
Chicago, IL 60603
Telephone: 312-265-3258
Facsimile: 312-726-1093

GREENWALD DAVISON RADBIL PLLC
Michael L. Greenwald (*pro hac vice*)
Email: mgreenwald@gdrlawfirm.com
5550 Glades Rd., Suite 500
Boca Raton, FL 33431
Telephone: (561) 826-5477
Facsimile: (561) 961-5684

Aaron D. Radbil (*pro hac vice*)
Email: aradbil@gdrlawfirm.com
106 East Sixth Street, Suite 913
Austin, TX 78701
Telephone: (512) 322-3912
Facsimile: (561) 961-5684

KAZAROUNI LAW GROUP, APC
Abbas Kazerounian (*pro hac vice*)
Email: ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6806
Facsimile: (800) 520-5523

HYDE & SWIGART
Joshua B. Swigart, Esq. (*pro hac vice*)
josh@westcoastlitigation.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Additional Class Counsel*

20

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rules 5.1.C and 7.1.D of the Northern

District of Georgia, that the foregoing was prepared in 14-point Times New Roman

Font.

December 13, 2016.

/s/     Andrew R. Kaufman

1332108.1

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

December 13, 2016.

*/s/*    Andrew R. Kaufman