# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| Steven L. Markos, Tiffany Davis, and Gregory Page, on behalf of themselves and all others similarly situated, | Case No. 1:15-cv-01156-LMM |
| Plaintiffs, |  |
| v. |  |
| Wells Fargo Bank, N.A., |  |
| Defendant, |  |

## PLAINTIFFS' RESPONSES TO OBJECTIONS

# TABLE OF CONTENTS

**Page**

I.      Introduction ........................................................................1

II.     Reaction to the Settlement Has Been Overwhelmingly Positive.........3

III.    Four Purported Objections (Gaskins, Gottlib, Lowenbein, and
        Morley) Are Facially Invalid................................................5

IV.     Objections to the Merits of the Settlement Should Be
        Overruled.........................................................................6

V.      Wanda Yde's Objection to the Requested Attorneys' Fees,
        Costs, and Service Awards Should Be Overruled............................9

        A.   The Yde objection should be viewed with skepticism due
             to the involvement of Christopher Bandas. .............................9

        B.   The requested attorneys' fees comport with fee
             jurisprudence in this Circuit....................................................10

        C.   There is no "benchmark" below 30% in this Circuit, nor
             for TCPA cases in general. ....................................................11

        D.   Even if an upward adjustment from a "benchmark" was
             necessary, one would be justified here. ...................................14

        E.   The Court should award a percentage of the fund without
             discounting the costs of notice and administration..................16

        F.   A lodestar cross-check is unnecessary and inefficient. ...........17

        G.   Absent a dispute, the Court should not supervise
             allocation of attorneys' fees....................................................19

        H.   The Court should approve the requested Service Awards.......20

VI.     CONCLUSION .................................................................21

1332109.1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984)................................................................7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ...........................................................................17

*Camden I Condo Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ...................................................... 11, 18

*Campbell-Ewald v. Gomez*,
   136 S. Ct. 663 (2016) .........................................................................15

*Couser v. Comenity Bank*,
   125 F. Supp. 3d 1034 (S.D. Cal. 2015) ................................................4

*Dennis v. Kellogg Co.,*
   No. 09-cv-1786-L (WMc), 2013 U.S. Dist. LEXIS 163118
   (S.D. Cal. Nov. 14, 2013)...................................................................10

*Edelson PC v. The Bandas Law Firm PC*,
   No. 1:16-cv-11075, Dkt. No. 1 (N.D. Ill.)............................................9

*Faught v. Am. Home Shield Corp.*,
   668 F.3d 1233 (11th Cir. 2011) ..................................................... 7, 12

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..............................................................8

*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 216 (2d Cir. 1987) ...............................................................20

*In re Baby Prods. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013).................................................................17

*In re BankAmerica Corp. Sec. Litig.*,
   775 F.3d 1060 (8th Cir. 2015) ..............................................................8

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Capital One Tel. Consumer Protection Act Litig.*,
  80 F. Supp. 3d at 797 N.D. Ill. 2015 ....................................................13

*In re Cathode Ray Tube Antitrust Litig.*,
  281 F.R.D. 531 (N.D. Cal. 2012) .........................................................9

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011)...................................... 7, 12, 18

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) .........................................................7

*In re Elec. Books Antitrust Litig.*,
  639 F. App'x 724 (2d Cir. 2016) ..........................................................9

*In re Gen. Elec. Co. Sec. Litig.*,
  998 F. Supp. 2d 145 (S.D.N.Y. 2014)................................................10

*In re High Sulfur Content Gasoline Prods. Litig.*,
  517 F.3d 220 (5th Cir. 2008) ..............................................................20

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ..............................................................17

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) ...........................................................19

*Klier v. Elf Atochem N. Am.*,
  658 F.3d 468 (5th Cir. 2011) ................................................................8

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ...........................................................4

*Ossola v. Am. Exp. Co.*,
  No. 13-04836, Dkt. Nos. 379 (N.D. Ill. Dec. 2, 2016)........................14

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007)..................................................3

*Poertner v. Gillette Co.*,
  618 F. App'x at 624 (11th Cir. 2015)..................................................17

1332109.1

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Redman v. Radioshack Corp.*,
   768 F.3d 622 (7th Cir. 2014) ...................................................................16

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   No. 13-2018, Dkt. No. 337 (N.D. Ill. Dec. 8, 2016) .............................................14

*Spokeo v. Robins*,
   126 S. Ct. 1540 (2016) ................................................................ 15, 16

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1035 (2016) ................................................................ 15, 16

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) .............................................................12

*Wilkins v. HSBC Bank Nev., N.A.*,
   No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ....................................13

*Wolff v. Cash 4 Titles*,
   No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .......................12

## TREATISES

2 McLaughlin on Class Actions § 6:10 (10th ed. ....................................................3

1332109.1

## I.      <u>Introduction</u>

Plaintiffs and Class Counsel are proud of this nationwide class action

settlement ("Settlement") with Defendant Wells Fargo Bank, N.A.  The Settlement

requires Wells Fargo to pay $16,417,496.70 in cash into a non-reversionary

Settlement Fund, the net proceeds of which will, upon Court approval, be

distributed *pro rata* to more than 406,000 Class Members who have already filed

claims.  No money will revert back to Wells Fargo.  It is the product of extensive

discovery efforts and hard-fought settlement negotiations, including an in-person

mediation before Hunter Hughes, and was informed by Class Counsel's years of

experience litigating and resolving similar cases against Wells Fargo and other

defendants.  Plaintiffs and Class Counsel respectfully submit that this Settlement is

a great result, particularly in light of serious litigation risks, and as evidenced by

the overwhelmingly positive response of the Class to it.[1]

Class members have "voted with their feet" in favor of the Settlement, in

truly overwhelming numbers.  While more than 406,000 Class Members to date

have submitted claims to recover under the Settlement, only nine (9) objected, of

which only five (5) complied with the Court's requirements to object.   Dkt. Nos.

---

[1] The merits of the Settlement are addressed in the concurrently-filed
Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action
Settlement.

49, 50, 53, 56, 57.  Such infinitesimal numbers demonstrate that the overwhelming majority of Class Members approve of the Settlement, a fact strongly supporting a finding that the Settlement is fair, reasonable, and adequate.

Moreover, one objection was ghostwritten by Christopher Bandas, perhaps the most notorious of the "professional" objectors.  Bandas, and others like him, are nothing more than legal "grifters," who put forward objections not to improve settlements or assist the court, but use the threat of the delay and disruption of appeals to try to leverage payment of fees to themselves.   This objection—submitted by Wanda Yde—should be viewed with particular skepticism given Ms. Yde's association with Bandas.  Her boilerplate objections regarding the requested attorneys' fees do not comport with the law in *this* Circuit, do not apply to *this* Settlement, and ignore that Class Counsel's work obtained an excellent result for the Class in *this* case, despite the very real risks of facing an adverse ruling at class certification or on the merits that would have resulted in no recovery or recovery limited to only some few individuals.  The remaining objectors fail to state any valid reason for declining to approve the Settlement as fair, reasonable, and adequate.  Four additional objections are facially invalid.

None of the issues raised in any of the objections—valid or invalid—show cause to doubt the fairness and adequacy of the Settlement or the reasonableness of the requested attorneys' fees, costs, and service awards.

Plaintiffs respectfully submit that each objection should be overruled on its merits, and request that the Court grant final approval of the Settlement.

## II.     <u>Reaction to the Settlement Has Been Overwhelmingly Positive.</u>

Class member reaction to a proposed settlement is a factor in determining whether the settlement is fair, adequate, and reasonable.  *See, e.g.*, 2 McLaughlin on Class Actions § 6:10 (13th ed.) ("Courts have generally assumed that silence constitutes tacit consent to the agreement, so that the absence of objectors or receipt of a relatively small number of objections and opt-outs supports the conclusion that the settlement is adequate."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement.").

Here, Class Members' response has been overwhelmingly positive.  Class Members have "voted with their feet," and in large numbers:  over 406,000 have already filed claims – over 12% of the Class – with the deadline still a week away.  Ex. 3 (Cirami Decl.) at ¶ 21.  By contrast, only five timely and validly objected, representing less than 0.0002% of the Class.  Dkt. Nos. 49, 50, 53, 56, 57.  Another

322 Class Members timely opted out, representing less than 0.01% of Class Members.  *Id.* at ¶ 22.[2]

The *de minimis* number of objections is particularly compelling evidence that the Class supports this Settlement, especially in light of the superb, state-of-the-art class notice program.  That notice program included direct individual notice to the Class (supplemented by, but not reliant upon, publication notice). The resulting claim-filing rate is over 12 percent, far higher than any other TCPA class action of this scope.  *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *In re Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (7.9% claims rate); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043-44 (S.D. Cal. 2015) (finding the 7.7% claims rate was a "higher than average claims rate" and weighed in favor of approval).  Thus, the Court need not speculate about whether the paucity of objections signifies nothing more than a poor notice program or lack of Class Member interest.  Rather, the more than 406,000 Class

---

[2] This number may decrease.  A law firm submitted an invalid request to exclude 166 individuals from the Settlement that did not comply with the Court's Preliminary Approval Order.  *See* Dkt. No. 42-3 ("[N]o other person may exclude you from the Settlement Class[.]").  Wells Fargo agreed to allow these individuals to cure their exclusion requests by December 27, 2016.  Ex. 1 (Hutchinson Decl.) at ¶ 7; Ex. 3 (Cirami Decl.) at ¶ 23.

Members who have already made claims demonstrate that the handful of objectors are merely outliers who do not represent Class's true—and overwhelmingly positive—view of this Settlement.

**III.** **Four Purported Objections (Gaskins, Gottlib, Lowenbein, and Morley) Are Facially Invalid.**

The Court should disregard four invalid objections. The two objections filed by Shimon Gottlib (Dkt. No. 54) and Shmuel Lowenbein (Dkt. No. 55) are invalid because they include requests to be excluded from the Class. *See* Dkt. No. 47, at ¶ 11 ("If a Settlement Class Member submits both a Request for Exclusion and an objection, the Request for Exclusion will be controlling."). The objection filed by Steven C. Gaskins, Deborah A. Gaskins, and Macie E. Young (Dkt. No. 58) is invalid because it was postmarked November 25, 2016, after the objection deadline of November 22, 2016. Dkt. No. 47, at ¶ 11 (setting objection deadline); Ex. 1 (Hutchinson Decl.) at ¶ 8.

Finally, the objection filed by Thomas J. Morley is invalid because it was never received by the Court. *See* Dkt. No. 47, at ¶ 15 ("To object to the Settlement, Settlement Class Members must . . . file a written Objection with the Court[.]"); Ex. 1 (Hutchinson Decl.) at ¶ 9 & Ex. A. For these reasons, the Gottlib, Lowenbein, Gaskins et al., and Morley objections should be disregarded.

Regardless, Plaintiffs address these objections; none advances any argument that has merit.

## IV.   Objections to the Merits of the Settlement Should Be Overruled.

Three objections argue that the Settlement fund is too small.  Dkt. No. 49 (Evans); Dkt. No. 54 (Gottlib); Dkt. No. 58 (Gaskins); Dkt. No. 57 (Kapitaen).[3] But, as explained in the Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement (at 8-9), the Settlement provides greater relief per Class Member than other recent TCPA settlements approved by courts.  And the structure of the Settlement—all-cash, non-reversionary, pro-rata distribution to all valid claimants—is a better value for the Class than settlements that, for example, provide a fixed amount to each claimant, with unclaimed funds reverting to the defendant.

The role of the Court is not "to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as

---

[3] One objector, Angel Hilson, "agree[s] with the amount of the settlement," but objects to the estimated Cash Awards.  Dkt. No. 50.  However, Class Counsel cannot provide a precise amount for each Cash Award until the final claims rate is known.  Class Counsel will notify the Court of the final claims rate prior to the final approval hearing.  One objection, Steven Gaskins et al., asserts that the "settlement voucher[s]" will "benefit" Wells Fargo.  Dkt. No. 58, at 1.  The Settlement provides cash relief and does not include coupons or vouchers of any kind.

much from a settlement as they might have recovered from victory at trial." *In re*

*Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011)

(citation omitted); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D.

297, 323 (N.D. Ga. 1993) ("In any case there is a range of reasonableness with

respect to a settlement—a range which recognizes the uncertainties of law and fact

in a particular case and the concomitant risks and costs necessarily inherent in

taking any litigation to completion.") (citation omitted).  And the Court's judgment

must be "informed by the . . . realization that compromise is the essence of

settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Five of the filed objections state that the Settlement provides inadequate

compensation in light of the objector's individual experiences with Wells Fargo.

Dkt. No. 53 (Epstein); Dkt. No. 54 (Gottlib); Dkt. No. 55 (Lowenbein); Dkt. No.

58 (Gaskin); Dkt. No. 57 (Kapitaen).  Importantly, though the Settlement's release

is narrowly tailored to the allegations in the Complaint—it does not release any

unrelated claims Class Members may or may not have against Wells Fargo for

other misconduct.  Moreover, any Class Member who deems the Settlement

inadequate relief for herself individually had the right to opt out and pursue an

individual case. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1241-42

(11th Cir. 2011) (affirming approval of settlement, overruling objections of

insufficient relief, and explaining that "class members, like all class members, were free to opt out of the class"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (noting that any objector who feels "his or her personal claim [is] being sacrificed for the greater good . . . had the right to opt-out of the class"). Indeed, two objectors here exercised that right by opting out.

Finally, one objector, Angel Hilson, objects to the *cy pres* distribution of any unclaimed portion of the Settlement Fund.  Dkt. No. 50.  But *cy pres* is a last resort in this case, triggered only if either uncashed checks after the first distribution amount to less than $1.00 per qualifying claimant, or if an uncashed amount remains after the second distribution.  *See, e.g.*, *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015) (explaining that a "*cy pres* distribution . . . is permissible . . . when it is not feasible to make further distributions to class members") (internal quotation marks omitted); *Klier v. Elf Atochem N. Am.*, 658 F.3d 468, 474 (5th Cir. 2011) (same).

## V.     Wanda Yde's Objection to the Requested Attorneys' Fees, Costs, and Service Awards Should Be Overruled.[4]

### A.     The Yde objection should be viewed with skepticism due to the involvement of Christopher Bandas.

Ms. Yde's objection acknowledges that she "is represented by and has sought legal advice and assistance in this matter" from Christopher Bandas.  Dkt. No. 56, at 4.  Bandas is a notorious professional objector.  *See* https://www.serialobjector.com/persons/4.  Professional objectors are grifters: "lawyers who file stock objections to class action settlements—objections that are most often nonmeritorious—and then are rewarded with a fee by class counsel to settle their objections."  *In re Elec. Books Antitrust Litig.*, 639 F. App'x 724 (2d Cir. 2016) (citation and internal punctuation omitted).  Courts have repeatedly reprimanded Bandas for filing objections not "to effectuate changes to settlements, but  . . . for his own personal financial gain; he has been excoriated by Courts for this conduct."  *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012).  Just this month, Bandas's course of conduct was the subject of a RICO complaint against him.  *See Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11057, Dkt. No. 1 (N.D. Ill.).  A fuller picture of his extensive history of misconduct is laid out in Ex. 1 (Hutchinson Decl.) at ¶¶ 11-18.

---

[4] The Settlement is not dependent or conditioned upon the Court's approving the request for attorneys' fees, costs, and service awards.  Settlement at ¶ 5.04.

Bandas's history of misconduct is so extensive and well-established that Ms. Yde's association with him is grounds to view her objection with skepticism.  *See In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014) (requiring appeal bond, and finding that an objector's "relationship with Bandas, a known vexatious appellant, further supports a findings that [the objector] brings this appeal in bad faith"); *Dennis v. Kellogg Co.,* No. 09-1786, 2013 WL 6055326, at *4 n.2 (S.D. Cal. Nov. 14, 2013) ("[W]hen assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first.") (citation omitted).

## B. <u>The requested attorneys' fees comport with fee jurisprudence in this Circuit.</u>

With this brief, Plaintiffs submit the expert opinion of Professor Geoffrey P. Miller, a leading and esteemed expert in the field of class action fee jurisprudence. Ex. 2 (Miller Dec.).  Professor Miller is the Stuyvesant P. Comfort Professor of Law at New York University Law School who has worked, researched, and taught in the field of class action litigation for more than twenty years.  Attorneys' fees are a particular focus of his research.  Along with Professor Theodore Eisenberg, Professor Miller authored one of the most widely-cited articles about empirical research on this issue.  *Id.* at ¶ 7.

Based on his experience and research, Professor Miller opines that (1) the percentage-of-the-fund approach (required in this Circuit) offers advantages over alternative methods of calculating fees, such as lodestar; (2) the requested fee award is warranted in light of the result obtained, the novelty of the issues presented, the risk undertaken by Class Counsel, and the quality of legal representation provided to the Class; and (3) 30% of the fund is within the typical range of fee awards, both in this Circuit and the nation.

### C.   **There is no "benchmark" below 30% in this Circuit, nor for TCPA cases in general.**

Yde argues that the "benchmark" for percentage fees in this Circuit is 25%, and "even lower in TCPA cases." Dkt. No. 56, at 3. That is incorrect. Twenty-five years ago, in *Camden I Condo Ass'n v. Dunkle*, the Eleventh Circuit, although cautioning that "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee," identified a range in which "[t]he majority of common fund fee awards fall [of] between 20% to 30% of the fund." 946 F.2d 768, 774-75 (11th Cir. 1991). The court identified, "as a general rule," an "upper limit of 50%," and noted that "district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a 'bench mark' percentage fee award[]." *Id.*

*Camden I* did not establish a hard-and-fast rule of a 25% benchmark, nor is that term particularly helpful in this Circuit.  Instead, the court identified a typical range that would presumptively apply in the normal case, and left to the district courts the work of determining whether a fee within, below, or above that range was appropriate.  *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (explaining that "[*Camden I*] directed district courts to view this *range* as a 'benchmark[.],'" and affirming where the district court identified 30% as the benchmark and adjusted upward due to circumstances of the case) (emphasis added); *see also Faught*, 668 F.3d at 1243 (affirming, where the district court used 25% as the benchmark).

As a result, awards of 30% (plus costs) and higher are common in this Circuit.  *See, e.g.*, *Waters*, 190 F.3d at 1294-95 (affirming 33 1/3% fees, plus costs); *Craft v. N. Seattle Cmty. College Found.*, No. 07-cv-132, Dkt. No. 135 (M.D. Ga. Sept. 2, 2010) (awarding 33 1/3%, plus costs); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1365 ("Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent."); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market

rate in class actions); *see also* Dkt. No. 51-1 (Fees Motion), at 20 n.8 (citing cases);

Ex. 2 (Miller Dec.) at ¶¶ 33-42 (reviewing statistics).

Nor is it unusual for a TCPA class action to result in fees at 30% or more

(plus costs).  Class Counsel cited *fourteen* recent TCPA settlements awarding a

higher percentage than the 30% *inclusive* of costs requested here.  Dkt. No. 51-1

(Fees Motion), at 20-21 & n.9.  Yde dismisses the two recent in-Circuit citations

(both of which awarded one-third of the fund, one including costs, and one plus

costs) as "offer[ing] no analysis whatsoever."  Dkt. No. 56, at 8-9.  There is no

basis to say that these courts disregarded their obligation to ensure that the

approved settlements were fair, adequate, and reasonable.  A request of 30%,

inclusive of costs, is well within the norm for comparable cases.  Yde derides the

other citations as "outliers" involving "exceptional facts", but cherry-picks only a

few.  Dkt. No. 56, at 9 n.11.  That does not undermine the many cases

demonstrating that awards like the one requested are common.[5]

---

[5] Yde's reliance on the statement in *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *10 (N.D. Ill. Feb. 27, 2015), that the "data available on past awards in TCPA cases and other class actions show that the median fee for large TCPA class actions were between 20% and 24% of the settlement fund," ignores that the "data" cited in *Wilkins* referred to a finding in an earlier TCPA case referring to extremely large settlements, as that case involved a $75.5 million fund. *See In re Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d at 797. In any event, *Wilkins* awarded attorneys' fees of 30% of the first $10 million and
*Footnote continued on next page*

Professor Miller's analysis and empirical research support Class Counsel's request for attorneys' fees.  In particular, Professor Miller examined all reported class action fee opinions in the Eleventh Circuit in which the fee percentage could be determined, for the years 2009 to 2013.  Ex. 2 (Miller Decl.) at ¶ 42.  Professor Miller found that the mean fee awarded was 30% and the median fee was 33%.  *Id.* In other words, Class Counsel's request is at or below the mean in this Circuit (because many fee awards include a separate costs award), and well below the median.

### D.   Even if an upward adjustment from a "benchmark" was necessary, one would be justified here.

The relevant factors justify the requested award, regardless of where it stands relative to a "benchmark."  *See id.* at ¶¶ 22-28.  Yde's analysis of those factors is misguided.  First, Yde compares the value of the settlement to the total value recovered in other cases.  Dkt. No. 56, at 9-11.  But the most pertinent comparison is the amount recovered per Class Member, not the total settlement

Footnote continued from previous page
25% of the next $10 million.  2015 WL 890566, at *10.  And, just this month, two courts in the Northern District of Illinois (the same district as *Wilkins*) awarded one-third plus costs in TCPA class action settlements.  *Ossola v. Am. Exp. Co.*, No. 13-04836, Dkt. Nos. 379, 380 (N.D. Ill. Dec. 2, 2016); *Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13-2018, Dkt. No. 337 (N.D. Ill. Dec. 8, 2016).

amount.  *See* Dkt. No. 51-1 (Fees Motion), at 11-12.  On that metric, this Settlement is an excellent result.

Second, Yde discounts the risks Class Counsel incurred in pursuing this litigation.[6]  TCPA class actions are not, as Yde claims, slam dunks.  In Class Counsel's own experience, TCPA class actions run a significant risk of running aground at class certification, the merits, or both.  Ex. 1 (Hutchinson Decl.) at ¶ 19 (citing cases).  Often, cases are lost only after counsel incur significant expenses conducting motion practice, fact discovery, and expert discovery.  *Id.*  There is never a guarantee, *ex ante*, that a defendant will be willing to settle.  *Id.*

Moreover, the risk undertaken by Class Counsel is an important factor in fee jurisprudence.  Ex. 2 (Miller Dec.) at ¶ 28.  The risks of *this* class action were particularly high.  It was filed during a time of legal uncertainty, both as to the meaning of the TCPA and the possibility of even pursuing claims like this on a class-wide basis, or at all.  Three petitions for certiorari in *Spokeo v. Robins*, 126 S. Ct. 1540 (2016), *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1035 (2016), and *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), were all pending when this case filed; the petitions for review for the 2015 Declaratory Ruling were filed soon

---

[6] Objector Morley makes a similar argument in his unfiled objection.  Ex. 1 (Hutchinson Decl.) at Ex. A.

after.  Ex. 1 (Hutchinson Decl.) at ¶¶ 20-21; Ex. 2 (Miller Decl.) at ¶¶ 44-46.  And

that risk carried through until settlement.  *Spokeo* and *Tyson Foods* were not

decided until after the MOU was signed in this case, and the D.C. Circuit review of

the 2015 Declaratory Ruling remains pending.  And, the scope of the TCPA is

subject to future FCC orders, which may not be plaintiff-friendly.

### E.   The Court should award a percentage of the fund without discounting the costs of notice and administration.

Yde argues that the percentage of the fund should be calculated after

reduction of costs of administration.  Dkt. No. 56, at 13-14 (citing *Redman v.

Radioshack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014)).  *Redman* considered a

coupon settlement and held that reasonable attorneys' fees must be determined in

light of the "value of the settlement to the class."  *Redman*, 768 F.3d at 629.  The

concerns underlying *Redman* are not present here, where Class Counsel negotiated

an all-cash non-reversionary common fund.  Class Counsel "economized" the

expenses of notice and administration by soliciting competitive bids and requiring

a hard cap on costs – regardless of the claims rate.  Ex. 1 (Hutchinson Decl.) at ¶ 5.

That negotiation has benefitted the class as the claims rate here is high.

More importantly, no "*Redman* rule" has been adopted in this Circuit.  The

Eleventh Circuit has affirmed fee awards based on the gross value of the settlement

fund.  Two circuits have recently held that district courts, at minimum, have

*discretion* to calculate fee awards out of the gross value of the settlement fund.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("The district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses."); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 177-78 (3d Cir. 2013) ("We think it unwise to impose . . . a rule requiring district courts to discount attorneys' fees when a portion of the award will be distributed *cy pres*.").[7]

### F.      A lodestar cross-check is unnecessary and inefficient.

Yde asks this Court to cross-check the requested fee against Class Counsel's lodestar.  Dkt. No. 56, at 14-15.  Yet, as Yde concedes, a cross-check is "not mandated" and would be inefficient in light of the well-established Circuit authority requiring a percentage-of-the-fund approach.

The Eleventh Circuit adopted the percentage approach in part because the "lodestar approach, or for that matter, any method premised upon the number of hours expended, failed to achieve any of the the[] stated goals in common fund

---

[7] Alternatively, Yde's argument is contradicted by *Poertner v. Gillette Co.*, 618 F. App'x 624, 624 & n.2 (11th Cir. 2015), in which the court affirmed a fee award based on the total value of a settlement, including the value of unclaimed benefits where unclaimed value reverts to the defendant.  *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (affirming fee awarded as a percentage of common fund, including unclaimed value).

cases in which the measure of the recovery is the best determinant of the reasonableness and quality of the time expended." *Camden I Condo. Ass'n*, 94 F.2d at 773-74.  The lodestar approach also "encourages inefficiency," creating "little incentive to obtain an early settlement even where, as here, that settlement is substantial and results in immediate relief for the class, and is thus in the class' best interest." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362. A lodestar cross-check carries all of the problems of the lodestar approach. *See id.* ("The lodestar approach should not be imposed through the back door via a 'cross-check.'").

Indeed, the percentage-of-the fund approach is widely recognized to be superior because it complies with the private market for attorneys' fees, aligns counsel's incentives with those of the class, encourages counsel to engage in efficient litigation, and minimizes cost and burden for the court.  Ex. 2 (Miller Dec.) at ¶¶ 31-32.  For these reasons, courts in this Circuit "regularly award fees based on a percentage of the recovery, without discussing lodestar at all."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362 & n.33; *see also Camden I Condo Ass'n*, 94 F. 2d at 774 ("[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded . . . .  In this context, monetary results achieved predominate over all other criteria.")

(internal quotation marks, citations, and alteration omitted).

### G.   Absent a dispute, the Court should not supervise allocation of attorneys' fees.

Yde argues that the Court has a duty to supervise the allocation of any fee award among Class Counsel.  Dkt. No. 56, at 15-17.  That is incorrect.  Absent a dispute between attorneys, judicial supervision of fee allocation is unnecessary. *See Craft*, No. 07-cv-132, Dkt. No. 135 ("At the appropriate time, Class Counsel, in its discretion but subject to any agreements with counsel for the Class, shall allocate and distribute this award of Attorneys' Fees among counsel for the Class."); *In re Domestic Air Transp.*, 148 F.R.D. at 357 ("Ideally, allocation is a private matter to be handled among class counsel."); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 262 (D. Del. 2002); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 8:10ML 02151, 2013 U.S. Dist. LEXIS 123298, at *316 (C.D. Cal. July 24, 2013).[8]

---

[8] Yde argues that *Domestic Air* imposed "judicial oversight of the fee allocation." Not true.  That case only *considered* reviewing fee allocations where the presence of non-class plaintiffs' counsel created the possibility that class counsel's fee request would not be unanimous, a scenario not present here.  *See Domestic Air. Transp.*, 148 F.R.D. at 357 (distinguishing "Class counsel" from "all plaintiffs' counsel").  Yde discounts *Craft* because "only two law firms" were involved, but two law firms can have a dispute, just as a dozen law firms can be unanimous.

Yde relies on *In re High Sulfur Content Gasoline Prods. Litig.*, 517 F.3d 220, 227-28 (5th Cir. 2008), but that case is not to the contrary. There, the court held only that if there is a fee dispute between plaintiffs' attorneys—as there was in *High Sulfur*—judicial intervention is warranted. *See id.* at 234 ("It is one thing for all attorneys to come to an agreement about diving up fees, and quite another for five attorneys to declare how an award will cover themselves and seventy-four other attorneys with no meaningful judicial supervision or review.").[9]

### H.   The Court should approve the requested Service Awards.

Yde objects to the requested Service Awards, arguing that "[a]part from noting the representatives turned down [offers] of judgment, class counsel have failed to explain what unique time and labor . . . the class representatives expended." Dkt. No. 56, at 17-19. But Yde simply ignores the financial sacrifice Plaintiffs made to pursue this action. Plaintiffs declined Rule 68 offers, which would have paid them far more than they have requested as Service Awards. This sacrifice alone justifies the requests as fair compensation for financial sacrifices made on behalf of the Class. Dkt. No. 51-2 (Hutchinson Decl.) at ¶ 50; Dkt. No 51-4 (Keogh Decl.) at ¶ 5.

---

[9] Also different is *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987), which, like *High Sulfer*, had a dispute requiring judicial intervention.

## VI.   <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court overrule the objections.


Dated:  December 13, 2016          Respectfully submitted,

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
By: <u>/s/ Daniel M. Hutchinson</u>
Daniel M. Hutchinson (*pro hac vice*)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Jonathan D. Selbin (*pro hac vice*)
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Andrew R. Kaufman (*pro hac vice*)
Email: akaufman@lchb.com
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

BURKE LAW LLC
Alexander h. Burke (*pro hac vice*)
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
Aburke@BurkeLawLLC.com

*Co-Lead Class Counsel*

SKAAR & FEAGLE, LLP
Georgia Bar No. 256916
Jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
404 / 373-1970
404 / 601-1855 fax

Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
krisskaar@aol.com
133 Mirramont Lake Drive
Woodstock, GA 30189
770 / 427-5600
404 / 601-1855 fax

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice*)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

LAW OFFICES OF DOUGLAS J.
CAMPION, APC
Douglas J. Campion (*pro hac vice*)
Email: doug@djcampion.com
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

KEOGH LAW, LTD.
Keith Keogh (*pro hac vice*)
Email: keith@koeghlaw.com
55 W. Monroe, Ste. 3390
Chicago, IL 60603
Telephone: 312-265-3258
Facsimile: 312-726-1093

GREENWALD DAVISON RADBIL PLLC
Michael L. Greenwald (*pro hac vice*)
Email: mgreenwald@gdrlawfirm.com
5550 Glades Rd., Suite 500
Boca Raton, FL 33431
Telephone: (561) 826-5477
Facsimile: (561) 961-5684

Aaron D. Radbil (*pro hac vice*)
Email: aradbil@gdrlawfirm.com
106 East Sixth Street, Suite 913
Austin, TX 78701
Telephone: (512) 322-3912
Facsimile: (561) 961-5684

KAZAROUNI LAW GROUP, APC
Abbas Kazerounian (*pro hac vice*)
Email: ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6806
Facsimile: (800) 520-5523

HYDE & SWIGART
Joshua B. Swigart, Esq. (*pro hac vice*)
josh@westcoastlitigation.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Additional Class Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1.C and 7.1.D of the Northern District of Georgia, that the foregoing was prepared in 14-point Times New Roman Font.

December 13, 2016.

/s/     Andrew R. Kaufman

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

December 13, 2016.

/s/    Andrew R. Kaufman

1332109.1