# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Steven L. Markos, Tiffany Davis, and Gregory Page, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Wells Fargo Bank, N.A.,<br><br>Defendant, | Case No. 1:15-cv-01156-LMM |

### DECLARATION OF DANIEL M. HUTCHINSON IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND IN SUPPORT OF <u>PLAINTIFFS' RESPONSE TO OBJECTIONS</u>

Pursuant to 28 U.S.C. § 1746, I, Daniel M. Hutchinson, declare as follows:

1.  I am a partner in the law firm of Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), Court-appointed co-lead Class Counsel in this matter. I am a member in good standing of the bar of the State of California; the United States District Courts for the Central, Northern, and Southern Districts of California; the

- 2 -

United States District Court for the Eastern District of Wisconsin; and the U.S. Courts of Appeals for the First, Third, Fourth, and Ninth Circuits.

2. I have been one of the lawyers responsible for the prosecution of Plaintiffs' claims on behalf of the Class. I respectfully submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

## I. BACKGROUND AND EXPERIENCE

3. LCHB's qualifications and experience are fully laid out in my two prior declarations filed in support of the motion for preliminary approval and the motion for attorneys' fees, costs, and class representative service awards. *See* Dkt. Nos. 34-8, 51-2. Since my most recent declaration on October 25, 2016, courts have granted final settlement approval in two TCPA class cases in which LCHB served as lead counsel:

    a. *Ossola v. American Express Co., et al.*, Case No. 1:13-CV-4836 (N.D. Ill). On December 2, 2016, the court approved two separate class settlements of $8.25 million and $1 million, respectively, including fee awards of one third of the settlement funds, plus costs.

- 3 -

      b.    *Smith v. State Farm Mutual Auto. Ins. Co., et al.*, Case No. 1:13-cv-02018 (N.D. Ill.). On December 8, 2016, the court approved a $7 million settlement, including a fee award of one third of the settlement fund, plus costs.

## II.    THE SETTLEMENT

      4.    The terms of the Settlement are set out in Plaintiffs' preliminary approval motion (Dkt. No. 34) and my supplemental declaration describing the Final Class Size (Dkt. No. 38-1). In summary, the Settlement requires Wells Fargo to fund a non-reversionary cash Settlement Fund of $16,417,496.70. As described in my declarations in support of preliminary approval and attorneys' fees (Dkt. Nos. 34-8, 51-2), the Settlement represents terrific value for the Class, particularly in light of the risks of proceeding with litigation, and the amount paid—more than $16.4 million—is an excellent result when measured against twenty-five years of TCPA settlements.

## III.    CLASS NOTICE AND RESPONSE TO THE SETTLEMENT

      5.    Class Counsel economized the expenses of notice and administration by soliciting competitive bids from several settlement administrators and requiring that all proposals contain a hard cap on costs – regardless of the claims rate.

1331996.1

6. The data on the Class response to the Settlement is reported in the Declaration of Stephen J. Cirami (Ex. 3 to the Motion for Final Approval of Class Action Settlement).

7. The number of reported exclusions may decrease. A law firm submitted an invalid request to exclude 166 individuals from the Settlement. *See* Dkt. No. 42-3 ("[N]o other person may exclude you from the Settlement Class[.]"). Wells Fargo agreed to allow these individuals to cure their exclusion requests by December 27, 2016.

8. Three Class Members, Steven C. Gaskins, Deborah A. Gaskins, and Macie E. Young, filed an objection (Dkt. No. 47) that was postmarked November 25, 2016, after the objection deadline of November 22, 2016.

9. One Class Member, Thomas J. Morley, mailed an objection to Class Counsel. However, because the Morley objection was never received by the Court, it is invalid. *See* Dkt. No. 47, at ¶ 15 ("To object to the Settlement, Settlement Class Members must . . . file a written Objection with the Court[.]"). A true and correct copy of the Morley Objection is attached hereto as Exhibit A.

10. Plaintiffs have responded to the Gaskins and Morley objections in their Responses to Objections even though the objections do not comply with the Court's requirements.

## IV. SERIAL OBJECTOR CHRISTOPHER BANDAS

11. The objection filed by Wanda Yde warrants enhanced scrutiny due to her association with serial objector Christopher Bandas.

12. Ms. Yde acknowledges that she "is represented by and has sought legal advice and assistance in this matter" from Mr. Bandas. Dkt. No. 56, at 4.

13. Mr. Bandas has repeatedly been reprimanded by courts for filing objections not "to effectuate changes to settlements, but . . . for his own personal financial gain; he has been excoriated by Courts for this conduct." *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012).

14. His objections are regularly dismissed as unfounded. *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-1088, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013) (striking Mr. Bandas's objections and finding that they "were filed for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections"); *In re Wal-Mart Wage & Hour Emp't Prac. Litig.*, No. 06-00225, 2010 U.S. Dist. LEXIS 21466, at *16-17 (D. Nev. Mar. 8, 2010) (finding that Mr. Bandas had submitted objections that were "not supported by law or the facts and are indeed meritless" and that he had "a documented history of filing notices of appeal from orders approving other class action settlements, and

- 6 -

thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class.").

15. Here, Mr. Bandas refrained from entering his appearance in this case. He has used the same tactic in other cases to avoid court sanctions. *See, e.g.*, *In re Hydroxycut Mkt. & Sales Prac. Litig.*, No. 09-2087, 2014 WL 815394, at *3 (S.D. Cal. Mar. 3, 2014) (declining to impose Rule 11 sanctions for an improper objection because it was "doubtful whether the Court has jurisdiction to sanction Mr. Bandas," but threatening to refer Mr. Bandas "to the State Bar of Texas's Commission for Lawyer Discipline"). As of this filing, a judge in the Southern District of New York is considering whether to sanction Mr. Bandas under similar circumstances. *See* Campbell, *MLB Objector's Atty Gets 3rd Degree Over Possible Sanctions*, Law360 (July 14, 2016).

16. Just recently, a court reprimanded Mr. Bandas for filing an objection without even speaking to his client and for making attacks on the settlement contradicted by his client during her deposition. *See Chambers v. Whirlpool Corp.*, No. 11-1733, 2016 WL 5922456, at *8 (C.D. Cal. Oct. 11, 2016), *appeals filed* (9th Cir. Nos.16-56666, 16-58884, 16-58886, 16-56688, 16-56694).

17.    Just last week, Mr. Bandas's course of conduct was the subject of a RICO complaint filed against him and his collaborators. *See Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11057, Dkt. No. 1 (N.D. Ill.).

18.    In my view, disregarding Mr. Bandas' ghost-written work is the best means to deter him from using the threat of questionable litigation to hold settlements hostage.

## V.    <u>THE RISKS OF TCPA CLASS ACTION LITIGATION</u>

19.    As described in my declaration in support of the fees motion (Dkt. No. 51-2), TCPA class actions are risky. Indeed, LCHB has lost a number of TCPA class actions without any recovery for the proposed class or any fees for their work on behalf of the proposed class. *See Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1208 (S.D. Cal. 2013) (compelling claims to arbitration on an individual basis); *Moore v. Chase Bank USA, N.A.*, Case No. 2:12-cv-10316-PA-E (C.D. Cal. Jan. 9, 2013) (dismissing case); *Delgado v. US Bankcorp*, 2:12-cv-10313-SJO-AJW (C.D. Cal. Jan. 17, 2013) (dismissing case); *Brown v. DIRECTV, LLC*, 2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) (compelling claims to arbitration on an individual basis); *Evans v. Aetna Inc.*, Case No. 2:13-cv-01039-LA (E.D. Wisc. Nov. 20, 2013) (dismissing case); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 530 (E.D. Wis. 2014); (denying class certification after

significant expert work and discovery); *Levin v. National Rifle Assoc. of Am.*, Case 1:14-cv-24163-JEM (S.D. Fla. Feb. 6, 2015) (dismissing case); *Charvat v. The Allstate Corp.*, Case No. 1:13-cv-07104 (N.D. Ill. Feb. 20, 2015) (terminating case); *Ineman v. Kohl's Corp.*, Case No. Case 3:14-cv-00398-wmc (W.D. Wisc. Mar. 26, 2015) (compelling claims to arbitration on an individual basis); *Aghdasi v. Mercury Insurance Group, Inc.*, Case No. 2:15-cv-04030-R-AGR (C.D. Cal. Mar. 16, 2016) (dismissing case after denial of class certification); *Wolf v. Lyft, Inc.*, Case 4:15-cv-01441-JSW (N.D. Cal. Mar. 28, 2016) (dismissing case); *Jefferson v. General Motors Fin. Co., Inc.*, Case No. 2:16-cv-02349-WHW-CLW (D.N.J. Jun. 28, 2016) (dismissing case).

20.     The risks of this class action were particularly high.  It was filed during a time of legal uncertainty, both as to the meaning of the TCPA and the possibility of pursuing claims like this on a class-wide basis, or at all.  Several pending Supreme Court cases could have eviscerated Plaintiffs' claims, including *Spokeo v. Robins*, 136 S. Ct. 1540 (2016) (considering, but ultimately rejecting, the argument that violations of a federal privacy statute do not give standing to sue), *Campbell-Ewald v. Gomez*, 136 S. Ct. 663 (2016) (considering, but ultimately rejecting, the argument that an unaccepted Rule 68 offer of judgment could moot a named plaintiffs' claim and prevent her from pursuing a class action), and *Tyson*

*Foods v. Bouaphakeo*, 136 S. Ct. 1036 (2016) (considering, but not deciding, whether and when a plaintiff must show that each class member suffered the alleged injury). The petitions for certiorari in all three cases were pending when this case filed.

21. A number of petitions pending before the FCC have placed the TCPA legal landscape in a state of flux and could have ended this case. *See, e.g.*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, 62 Communications Reg. (P&F) 1539, 2015 WL 4387780 (F.C.C.), *pet. for rev. pending*, *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.). Those petitions were filed in the D.C. Circuit shortly after this case was filed.

22. That risk carried through until settlement. *Spokeo* and *Tyson Foods* were not decided until after the MOU was signed in this case, and the D.C. Circuit review of the 2015 Declaratory Ruling remains pending today.

23. The scope of the TCPA is subject to future FCC orders. President-elect Trump will appoint a new FCC commissioner in 2017 who may shift the balance of power on the five-member commission. *See* Brian Fung, *With Trump on the horizon, the FCC signals it may not pass any more big rules*, Washington Post, Nov. 16, 2016 (noting that the "incoming administration . . . could take things

in a very different direction next year"). Mr. Trump has criticized certain litigation and currently faces a TCPA class action. *See Thorne v. Donald J. Trump for President, Inc.*, No. 1:16-cv-04603 (N.D. Ill).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 13th day of December, 2016 in Dallas, TX.

> */s/ Daniel M. Hutchinson*
> Daniel M. Hutchinson

# EXHIBIT A

# Thomas J. Morley

*8 Windermere Brook, Suffern, NY 10901-4165*
*(845) 368-2853 – (845) 369-3506 fax – (914) 844-4554 cell – tjmorley@aol.com*

November 6, 2016

UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION
75 Ted Turner Dr NW
Atlanta, GA 30303

Case No. 1:15-cv-01156-LMM
Markos v.Wells Fargo Bank


To the Clerk of the Court:

I am writing to object to the legal fees being sought by Class Counsel in the referenced case. I find it objectionable that counsel is seeking the sum of $4,925,249.01.  Yes, that is 30% of the settlement fund amount. But, it is also 246 times **more** than **any** *injured party* is receiving in this case; it is $1,517.80 for each *page* of 'documentation' reviewed; and, it adds to the $84,000,000 already earned by counsel for the $280,000,000 in related settlements cited by counsel as justification of their qualification and value but not cited for the economies of scale and experience it also clearly provides.

I object to counsel not assuming sufficient risk to justify this level of compensation. Where was the risk in this case; where was the possibility of not being compensated; where was the risk of losing? Though counsel cites reviewing some 3,245 pages of relevant data it is conspicuous that no number of actual hours committed to this case is provided. Assuming it takes an hour for each page of information reviewed (hardly likely), that's $1,517.80 per hour, hardly a bargain for the aggrieved in this case whose rights to recovery were subsumed by counsel.

More succinctly, I object to counsel creating a lawsuit as an economic engine – for themselves – not for the purported noble purpose of righting a wrong but simply for the purpose of writing themselves a check, deriving for counsel a greater share of the litigation proceeds than any of the aggrieved. Further, I must ask, who sought out whom? Did one of the class representatives actually reach out to counsel claiming injury at the hands of Wells Fargo? Or, did class counsel seek out a 'client' to enable this to proceed; what was the actual genesis of this case?

I must ask the court to look at the issue of when is enough enough; when does the fee side of a class action suit move from reasonable in light of risk to generous to downright obscene and unjustified. I ask the court to determine how many actual hours of work were put into this case, and, what this fee cost works out to on an hourly basis. I'm not one to deny a fair and even generous level of compensation for quality work being well done, but, I just don't see a connection between cost and value in this case; I see profiteering and greed under the guise of rectifying a wrong and subsequently sanctioned by the court.

Respectfully submitted,

Tom Morley

Cc: Alexander H. Burke aburke@burkelawllc.com
Daniel M. Hutchinson dhutchinson@lchb.com
John C. Lynch John.lynch@troutmansanders.com
David M. Gettings David.gettings@troutmansanders.com