# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

| | |
|---|---|
| Steven L. Markos, Tiffany Davis, and Gregory Page, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>Wells Fargo Bank, N.A.<br><br>        Defendant. | Case No. 1:15-cv-001156-LMM |

**OBJECTOR WANDA YDE'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE HER OBJECTION OR, IN THE ALTERNATIVE, TO REQUIRE HER ATTORNEY CHRISTOPHER BANDAS TO ENTER A NOTICE OF APPEARANCE; WANDA YDE'S REPLY TO PLAINTIFFS' RESPONSE TO OBJECTIONS**

# INTRODUCTION

Class counsel ask this Court to strike class member Wanda Yde's objection not because of any substantive issue in her twenty-page objection, but instead because of their disdain for her attorney, Christopher Bandas. Their motion to strike is little more than a character assassination of Mr. Bandas, premised on false representations to the Court.

Mr. Bandas did not "ghostwrite" Ms. Yde's objection, as class counsel falsely allege. The objection **expressly disclosed Mr. Bandas's representation and assistance in drafting the objection**.[1] By definition that is not "ghostwriting." *In re Hood*, 727 F.3d 1360, 1363–64 (11th Cir. 2013) (describing "attorney ghostwriting" as "the *undisclosed* assistance of counsel in the drafting of a pro se document filed with the court") (emphasis added); *In re Ellingson*, 230 B.R. 426, 435 n.12 (Bankr. D. Mont. 1999) (defining ghostwriting as the "act of an *undisclosed* attorney who assists a self-represented litigant by drafting his or her pleadings as part of 'unbundled' or limited legal services") (emphasis added).

This disclosed assistance in drafting a legal document on behalf of a *pro se* client is authorized by the Eleventh Circuit, the Georgia Rules of Professional Conduct, and the American Bar Association as part of the unbundling of legal

---

[1] Objection of Wanda Yde, ECF Doc, 56. At 4.

services. *See In re Hood*, 727 F.3d 1360, 1363–64 (11th Cir. 2013) (lawyer who assists a *pro se* litigant by drafting a document submitted to the court is not required to sign the document, but must indicate that it was prepared with the assistance of counsel); ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 07-446 (May 5, 2007)(permitting drafting of legal documents for *pro se* litigants even without disclosure to the court);[2] Georgia Rules of Professional Conduct 1.2;[3] Paula Frederick, *The Ethics of Ghostwriting Pleadings*, 13 Ga. B. J. 46 (2007) (Georgia allows the provision of legal assistance to *pro se* litigants without requiring an attorney to disclose the nature and extent of such assistance to the court).

Mr. Bandas, who resides in Corpus Christi, Texas, was not attempting to evade the jurisdiction of this Court, as class counsel claim. Of course, he has now applied for admission *pro hac vice*.[4] Class counsel should have, but have failed to, withdraw the portion of their motion requesting an order for him to do so.

Otherwise, class counsels ask this Court to strike Ms. Yde's objection by labeling her attorney a "serial objector" and claiming he is only out to "extort

---

[2] Exhibit 3.

[3] "A lawyer may limit the scope and objectives of the representation if the limitation is reasonable under the circumstances and the client gives informed consent."

[4] ECF Doc. 65-67.

payment from plaintiffs' counsel."[5] The motivation behind this scorched-earth motion (securing $4.9 million in fees and costs from the settlement fund) is exposed by the *considerable* liberties they take in their account of other cases involving Mr. Bandas, in some places stating outright falsehoods.[6]

While class counsel claim they are not seeking to dissuade the Court from considering the substance of Ms. Yde's objection, in reality, that is exactly what they are asking. Their efforts to silence Ms. Yde's objection to their excessive fee request should be rejected.

## BACKGROUND

The parties settled this class action lawsuit just fourteen months after it was filed.[7] Despite the brevity of litigation and the absence of formal pre-settlement discovery, class counsel request nearly $5 million in attorneys' fees and costs. This is a substantial and disproportionate figure considering the class members will receive no more than $10.4 million.[8]

---

[5] Motion to Strike, ECF Doc. 61, at 2, 6.

[6] *See infra*, Section II (correcting class counsels' numerous false representations).

[7] Class Action Complaint, ECF Doc. 1 (filed on April 4, 2015); Memorandum In Support of Class Counsels' Fee Motion, ECF Doc. 51-1 at 6 (noting settlement executed on June 10, 2016).

[8] Objection of Wanda Yde, ECF Doc. 56, at 2-3.

Wanda Yde filed a timely objection and set forth her standing as a class member, which remains unchallenged.[9] On December 21, 2017, class counsel served Ms. Yde with a subpoena duces tecum and for oral deposition. The same day, class counsel also served her with their Response to the Objections and Motion to Strike Ms. Yde's objection.[10] This Court's order preliminarily approving the settlement provides that "[t]he Parties will have the right to depose any objector to assess whether the objector has standing."[11] Thus, Ms. Yde offered to testify concerning her standing as an objecting class member and the bases for her objection. Nevertheless, class counsel insist on exploring "the nature of her relationship with Mr. Bandas, her understanding of his history and practice, any promises he made to her with respect to objecting, and her awareness of her individual tax consequences for sums Mr. Bandas might receive."[12]

---

[9] Objection of Wanda Yde, ECF Doc. 56, at 3-4 and exhibits.

[10] Exhibit 1 attached hereto. This response to class counsels' motion to strike (ECF Doc. 61) and reply to the response to objections (ECF Doc. 59-2) is timely filed 14 days from service on her on December 21, 2016. *See* L.R. 7.1(b); 7.1(c).

[11] Amended Order (1) Conditionally Certifying a Settlement Class, (2) Preliminarily Approving Class Action Settlement, (3) Approving Notice Plan, and (4) Setting Final Approval Hearing, 1:15-cv-01156, ECF Doc. 47 (Sept. 7, 2016).

[12] Opposition to Motion to Quash, 2:16-mc-01398, ECF 10, at 5-6. Ms. Yde's filing of her motion to quash in the Southern District of Texas, (now transferred to this Court) was not an effort to evade this Court. Rather, Rule 45 calls for a motion to quash in the district where compliance with the subpoena is required (Corpus Christi, Texas). FED. R. CIV. P. 45(d)(3).

**I.      Ms Yde's Objection is Meritorious and Class Counsel Give this Court No Reason, Apart from Misleading *Ad Hominem* Attacks, to Conclude Otherwise.**

Class counsel fail to identify, *in any respect*, how they believe Ms. Yde's objection is frivolous.[13] This is **not** a "stock objection" or a "serial objection" as class counsel maintain.[14]

Ms. Yde's twenty-page objection carefully identifies why class counsels' fee request is excessive and in conflict with the best interests of the class. She corrects class counsels' false representation that the benchmark for attorneys' fees in the Eleventh Circuit is something other than 25%.[15] She notes that recovery in TCPA class action settlements is generally even lower than 25%.[16] She distinguishes no fewer than nine TCPA settlements cited by class counsel to support their position that they are entitled to 30% of the settlement's gross fund.[17] She breaks down the amount of damages that will actually go to the class ($10.4 million, a figure which

---

[13] Motion to Strike, ECF 61, at 2-3 (noting that class counsel have "detailed why the Court should overrule [Ms. Yde's objection] . . . on the merits").

[14] Motion to Strike, ECF Doc. 61, at 6 (claiming "Professional objectors like Bandas are grafters: 'lawyers who file stock objections. . . .'").

[15] *See* Objection of Wanda Yde, ECF Doc. 56, at 5-6.

[16] *See id.* at 7-8.

[17] *See id.* at 9-10.

class counsel do not dispute)[18] and quantifies how it is only a miniscule fraction (less than 1%) of the amount of damages released.[19]

Class counsel went to the trouble of responding to Ms. Yde's objection with expert testimony from Professor Geoffrey Miller in support of their fee request.[20] Yet, even Professor Miller does not set forth the normative recovery for TCPA settlements, which is below 25%. Nor does he take into account the time and labor expended by class counsel (suit was on file less than a year before a memorandum of understanding was reached), which has yet to be disclosed.

## II.     Class Counsels' Character Assassinations, Premised on False Assertions to this Court, Provide No Basis for Striking Ms. Yde's Objection.

Class counsels' inappropriate *ad hominem* attacks are a substitute for analysis. Making them particularly malevolent, they are replete with factual misrepresentations.

Mr. Bandas does not have a "track record" of filing objections that do not reflect the views of his client, as class counsel falsely state.[21] The one case cited by class counsel for this supposed "track record," *Chambers v. Whirlpool Corp.*,[22]

---

[18] *See id.* at 2-3.

[19] *See id.* at 2-3, 11-12

[20] Response to Objections, ECF 59-2, Ex. 2.

[21] Motion to Strike, ECF Doc. 61, at 4.

[22] CV111733FMOJCGX, 2016 WL 5922456, at *8 (C.D. Cal. Oct. 11, 2016), *judgment entered*, SACV111733FMOMLGX, 2016 WL 5921765 (C.D. Cal. Oct. 11, 2016).

involved a deposition by a lay witness who gave wavering testimony during an aggressive deposition on the intricacies of class action law by class counsel.

Although the objector in that case gave arguably contradictory testimony, it was due to class counsels' ability to confuse a lay person on questions relating to the propriety of their lodestar and other details of class action law.[23] The objector did not, as class counsel falsely alleged before the Southern District of Texas, "disclaim" her objection.[24] In fact, towards the end of deposition, she reaffirmed it.[25] After the deposition, she explained that she was nervous and intimidated by counsel, and confirmed that she stood by her objection.[26] Of note, the objector has appealed from the *Chambers* opinion, and it is currently the subject of a pending motion for summary reversal before the Ninth Circuit (9th Cir. 16-56666, Dkt. Entries 7-10).

Mr. Bandas was also not "reprimanded" for filing an objection without speaking to his client in *Chambers*.[27] While the court noted that he did not speak with the client before the objection was filed, the client conferred with Mr.

---

[23] Exhibit 2, Deposition of Christine Knott, at 73-82.

[24] Opposition to Motion to Quash, 2:16-mc-01398, ECF 10.Response to Motion to Quash, at 8.

[25] Exhibit 2, Deposition of Christine Knott, at 207-08.

[26] *Chambers v. Whirlpool*, 8:11-cv-01733, ECF Dic, 382, Exhibit 1. (C.D. Cal., Dec. 22, 2016).

[27] Motion to Strike, ECF Doc. 61, at 8; Declaration of Daniel Hutchinson, ECF Doc. 59-3, at 6.

Bandas's paralegal in detail ahead of the objection.[28] This does not somehow render the objection improper.

Class counsel also reference a case from the Southern District of New York, and attach the transcript from a July, 2016 hearing during which a judge asked Mr. Bandas some difficult questions.[29] It should be noted that after Mr. Bandas appeared at the hearing and answered the judge's pointed questions, the Court took no action. Of course, class counsel omits that important fact. Class counsel also reference a patently frivolous RICO suit filed against him, which is the latest and most inappropriate tactic to silence a meritorious objection. *See Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11075, Dkt. No. 1 (N.D. Ill.). The lawsuit is soon to be the subject of a 12b motion to dismiss. Here again, class counsel focuses on attacks, not actual outcomes.

Setting aside class counsels' misleading character attacks, Ms. Yde, as an objecting class member, plays a judicially recognized valuable role in the class action process. *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (Posner, J.); *UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 236 (10th Cir. 2009) (objectors can also "add value to the class-action settlement process by . . . preventing collusion

---

[28] Exhibit 2, Deposition of Christine Knott, at 33-34.

[29] Motion to Strike, ECF Doc. 61, at 11 (citing Ex. 1 (Hutchinson Decl.) at Ex. N.).

between lead plaintiff and defendants"). Class counsels' efforts to silence her objection are discouraged. *Trans Union*, 629 F.3d at 743 (because objectors may pose a risk to class counsels' fees, "class action lawyers may try to fend off interlopers who oppose a proposed settlement as insufficiently generous to the class[.]" These tactics should be curtailed – objectors "prevent[] cozy deals that favor class lawyers and defendants at the expense of class members. . . .").

Of course, Mr. Bandas' prior representation of objecting class members "has no greater bearing on the merits of the objection raised than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings." *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010) (emphasis added). "Merely characterizing some of the attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough." *Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011). And, class counsel neglect to mention that numerous clients represented by Mr. Bandas have succeeded in overturning unfair settlements and excessive fee awards.[30]

---

[30] *See, e.g., Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ("The judgment [approving the settlement] is reversed and the case remanded for further proceedings"); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 181-82 (3d Cir. 2013) ("We vacate the District Court's orders approving settlement and the fund allocation plan[;] "[w]e vacate the Court's order awarding attorneys' fees and costs because this award was based on the now-vacated settlement"); *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) ("we reverse the district court's order

Ultimately, it is neither logically nor legally permissible to conclude that an objection is valid or invalid from outcomes in other cases, especially when those outcomes are mixed.

### III. Mr. Bandas did Not "Ghostwrite" Ms. Yde's Objection and His Assistance to a *Pro Se* Objector was Proper.

There was nothing improper or unethical about providing counsel and assistance to Ms. Yde, who was acting *pro se* at the time she filed her objection. The objection was not "ghostwritten." *See Hood*, 727 F.3d at 1363–64; *Ellingson*, 230 B.R. at 435 n.12. The objection clearly provided:

> Objector is represented by and has sought legal advice and assistance in this matter from Christopher Bandas, with the Bandas Law Firm, P.C., Corpus Christi, Texas (www.bandaslawfirm.com), and this document was prepared with the assistance of counsel. No special favor or treatment is requested due to the fact that any document is submitted as pro se.[31]

This disclosure more than satisfies the requirements of the ABA, Georgia, and the Eleventh Circuit. *See Hood*, 727 F.3d at 1363–64; ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 07-446

---

approving the settlement and dismissing the case, vacate the judgment and award of attorneys' fees, and remand for further proceedings"); *Litwin v. iRenew Bio Energy Sols., LLC*, 172 Cal. Rptr. 3d 328, 333 (Cal. App. 2d Dist. 2014), *as modified* (May 29, 2014) (in a case in which Mr. Bandas represented the objector in the lower court, the "the order granting final approval of the settlement must be reversed").

[31] Objection of Wanda Yde, at 4.

(May 5, 2007);[32] Georgia Rules of Professional Conduct 1.2; Paula Frederick, *The Ethics of Ghostwriting Pleadings*, 13 Ga. B. J. 46 (2007).

The objection was not ghostwritten and complies with all relevant ethical authority. Meanwhile, Ms. Bandas has now filed an application to appear *pro hac vice*, yet class counsel have not withdrawn the portion of their motion attacking his failure to do so.

**IV. Class Counsels' Response and Motion to Strike Served on Ms. Yde on December 21st do Not Overcome the Objection's Correct Analysis that their Attorneys' Fees are Excessive.**

To the limited extent class counsels' papers address Ms. Yde's objection on the merits, they fail to justify their $4.9 million fee request. The benchmark in the Eleventh Circuit, as recognized by multiple opinions in this District, is 25%, **not 30%**. *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1268–69 (N.D. Ga. 2008) ("25% is [the] 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694–96 (N.D. Ga. 2001) (noting *Camden* "set a 25% recovery as an appropriate 'benchmark'"); *see also Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 775 (11th Cir. 1991). As recently as 2011, the Eleventh Circuit observed that it is "well-settled law from this [C]ourt that 25%

---

[32]ABA ethics opinion 07-446, at page 4 rejects "the contention that a lawyer who does not appear in the action circumvents court rules requiring the assumption of responsibility for their pleadings. Such rules apply only if a lawyer signs the pleading and thereby makes an affirmative statement to the tribunal concerning the matter."

11

is generally recognized as a reasonable fee award in common fund cases." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011).

And while awards of 30% or 33% may be common generally, they are not the norm for TCPA settlements. *See Wojcik v. Buffalo Bills, Inc.,* No. 8:12-cv-2414-T-23TBM, ECF Doc. 77, at 19 (requesting $562,500 or 22.6%) ECF Doc. 79, at 3 (awarding $562,500); *Bayat* v. *Bank of the West*, 2015 WL 1744342, at *10 & n.10 (N.D. Cal. Apr. 15, 2015) (opting for the lodestar method but awarding the equivalent of 13.5% of the over $3.3 million settlement fund); *Rose* v. *Bank of Am. Corp.*, 2014 WL 4273358, at *5, *13 (N.D. Cal. Aug. 29, 2014) (choosing the lodestar method and awarding a fee that constituted about 7.5% of the over $32 million fund); *Michel* v. *WM Healthcare Solutions, Inc.*, 2014 WL 497031, at *23 (S.D. Ohio Feb. 7, 2014) (awarding 15% of the $4.3 million settlement fund); *Wilkins* v. *HSBC Bank Nev., N.A.*, 2015 WL 890566, at *12 (N.D. Ill. Feb. 27, 2015) (awarding 23.75% of the almost $40 million fund); *Arthur* v. *Sallie Mae, Inc.*, 2012 WL 4076119, at *2 (W.D. Wash. Sept. 17, 2012) (awarding 20% of the about $24 million fund).

Class counsel accuse Ms. Yde's objection of cherry-picking cases to distinguish, yet apart from *Wilkins* (which class counsel distinguish as being a larger settlement), they offer no response to the TCPA settlements cited by Ms. Yde awarding at or below the 25% benchmark. Instead, they continue to ask that

this Court accept two unpublished orders from the Southern District of Florida, which fail to articulate an analysis for fees, as setting the bar.

Class counsel also fail to explain why they are entitled to more than 25% when eight of the nine cases which they call the measure from "twenty-five years of TCPA settlements"[33] awarded at or below 25%.[34]

Class counsel respond with expert testimony from Professor Miller, but even he does not break down the norm recovery for TCPA settlements. Further, his declaration fails to take account of the time and labor expended by counsel, which he acknowledges as the 2nd factor in the applicable *Johnson* test.[35] This is because class counsel continue to refuse to provide this information.

---

[33] Memorandum in Support of Attorneys' Fees, ECF Doc. 51-1 at 11-12.

[34] Objection of Wanda Yde, ECF Doc. 56, at 9-10 (*Gehrich v. Chase Bank USA, N.A.*, No. 12 C5510, 2016 WL 806549 (N.D. Ill. Mar. 3, 2016) (awarding class counsel **21%** of the common fund); *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. Wash.) (awarding **21%**); *Malta v. Fed. Home Loan Mortgage Corp.*, 10-CV-1290-BEN-NLS, 2013 WL 12095060, at *1 (S.D. Cal. June 21, 2013) (**22.5%**); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009, ECF Doc. 59 (N.D. Cal.) (awarding **7.5%** of the gross fund on a percentage cross-check); *Connor v. JPMorgan Chase Bank*, No. 10 CV 1284 ECF Doc. 60-1 (S.D. Cal.) (class counsel sought **25%**); *Wilkins v. HSBC Bank Nevada, N.A.*, 14 C 190, 2015 WL 890566, (N.D. Ill. Feb. 27, 2015)(awarding **23.75%**); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 808 (N.D. Ill. 2015) (**20.77%**); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist., ECF Doc. 148, at 7-8 (N.D. Cal. Jan. 27, 2012) (awarding the **25%** benchmark)).

[35] Declaration of Professor Miller, ECF 59-4, at 8 (noting that "[i]n determining the appropriate fee percentage, courts in the Eleventh Circuit take account of the factors articulated in *Johnson v. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) . . . [including] the time and labor required. . . ." yet failing to analyze the time and labor spent by class counsel).

Although class counsel spin the numbers, the $10.4 million recovery for 3.3 million members is not an "excellent" result. Based on the 406,000 claims filed,[36] the per-claimant recovery will be around $25. That is anything but exceptional.

Further, there is also no reason for this Court to decline a lodestar cross-check, and class counsels' advocacy against it suggests a windfall. The parties filed suit and executed a settlement approximately fourteen months later, conducting no formal discovery prior to settlement. At the very least, a $4.9 million fee for this time should raise an eyebrow. Meanwhile, class counsel have been litigating multiple TCPA class actions against Wells Fargo, and the class has no way to confirm that class counsel are not double dipping in their fees. Even under the percentage of the fund method, class counsels' time and labor are needed for this Court to conduct its analysis of the *Johnson* factors.

Not surprisingly, class counsel continue to maintain this Court has no duty to supervise allocation of fees among the various firms; yet at least one circuit court stated that in "a class action settlement, the district court has **an independent duty** . . . to the class and the public **to ensure that attorneys' fees are** reasonable and **divided up fairly among plaintiffs' counsel.**" *See In re High Sulfur Content Gasoline Prods. Litig.,* 517 F.3d 220, 227–28 (5th Cir. 2008) (emphasis added).

---

[36] Response to the Objections, ECF Doc. 59-2, at 1.

The district court "must not … delegate that duty to the parties." *High Sulfur,* 517 F.3d at 228 (internal quotation omitted). The Eleventh Circuit has issued no opinion suggesting otherwise.

Finally, class counsel submit that the three service awards of $20,000 are reasonable based solely on their refusal Rule 68 offers.[37] They cite no authority in support, nor do they discuss any time or labor that would justify this disproportionate award. As set forth in the objection, this amount is clearly excessive and suggests a conflict with the remaining members of the class, who will receive no more than approximately $25.[38] Unless this amount is substantially reduced, the settlement should not be approved.

## CONCLUSION

Objector Wanda Yde requests that this Court deny class counsels' motion to strike her objection. Objector further finds nothing in class counsels' response that diminishes her objection in any respect, and reiterates her objection with even greater confidence.

---

[37] Response to Objections, ECF Doc. 59-2, at 20-21.

[38] *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983) ("where representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlements to the class"); *Demsheck v. Ginn Dev. Co., LLC*, 3:09-CV-335-J-25TEM, 2014 WL 11370089, at *5 (M.D. Fla. Mar. 5, 2014), *aff'd sub nom. Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628 (11th Cir. 2015).

DATED:  January 4, 2017	Respectfully submitted,


	**S/ Jerome J. Froelich Jr.**
	Jerome J. Froelich, Jr.
	State Bar No. 278150


	McKENNEY & FROELICH
	One Midtown Plaza, Suite 910
	1360 Peachtree Street
	Atlanta, Georgia  30309-2920
	(404) 881-1111


## CERTIFICATE OF SERVICE

The undersigned certifies that today he filed the foregoing document and attached exhibits on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED: January 4, 2017	**S/ Jerome J. Froelich Jr.**
	Jerome J. Froelich, Jr.