1        IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF GEORGIA
2                  ATLANTA DIVISION

3

4  STEVEN L. MARKOS, TIFFANY         )
   DAVIS, and GREGORY PAGE, on       )
5  behalf of themselves and all      )
   others similarly situated,        )
6                                     )
                Plaintiffs,           )
7           v.                        )  CIVIL ACTION
                                      )  FILE NO. 1:15-CV-01156-LMM
8  WELLS FARGO BANK, N.A.,            )
                                      )  MOTION HEARING
9                Defendant.           )
   _____)
10

11

12  ------------------------------------------------------------

13        BEFORE THE HONORABLE LEIGH MARTIN MAY
                TRANSCRIPT OF PROCEEDINGS
14                  AUGUST 2, 2016

15  ------------------------------------------------------------

16

17

18      Proceedings recorded by mechanical stenography
        and computer-aided transcript produced by

19

20        WYNETTE C. BLATHERS, RMR, CRR
              Official Court Reporter
21            2314 U.S. Courthouse
              75 Ted Turner Drive, SW
22            Atlanta, Georgia  30303
                (404) 215-1547

23

24

25

```
 1   APPEARANCES:

 2   For the Plaintiff:          ALEXANDER H. BURKE
                                 Attorney at Law
 3                               Burke Law Offices, LLC
                                 Suite 9020
 4                               155 N. Michigan Avenue
                                 Chicago, Illinois  60601
 5
                                 JUSTIN T. HOLCOMBE
 6                               KRIS K. SKAAR
                                 Attorneys at Law
 7                               Skaar & Feagle, LLP
                                 133 Mirramont Lake Drive
 8                               Woodstock, Georgia  30189

 9                               JONATHAN D. SELBIN
                                 Attorney at Law
10                               Lieff Cabrasher Heiman & Bernstein
                                 250 Hudson Street, 8th Floor
11                               New York, New York  10013

12   For the Defendant:          JOHN C. LYNCH
                                 Attorney at Law
13                               Troutman Sanders, LLP
                                 222 Central Park Avenue
14                               Suite 2000
                                 Virginia Beach, Virginia  23462
15

16

17

18

19

20

21

22

23

24

25
```

```
1                    Tuesday Morning Session

2                      August 2, 2016

3                        8:30 a.m.

4                        —   —   —

5               P R O C E E D I N G S

6          COURTROOM SECURITY OFFICER:  All rise.  United States

7    District Court for the Northern District of Georgia, Atlanta,

8    is now in session, the Honorable Judge Leigh May presiding.

9          THE COURT:  Good morning.  You may be seated.

10         We are here this morning in Civil Action 15-CV-1156,

11   Markos et al. v. Wells Fargo Bank, N.A.  And if counsel would

12   introduce themselves for the record, please.

13         MR. BURKE:  Good morning.  Alex Burke for the

14   plaintiff.

15         THE COURT:  Good morning.  Kris Skaar for the

16   plaintiff.

17         MR. SELBIN:  Good morning, your Honor.  Jonathan

18   Selbin for plaintiff.

19         MR. HOLCOMBE:  Justin Holcombe for plaintiff.

20         THE COURT:  Okay.  Good morning to you all.

21         MR. LYNCH:  John Lynch for the defendant.

22         THE COURT:  Okay.  Good morning to you as well.

23   You're so lonely over there.

24         What we're going to do this morning is I have had a

25   chance to read all the documents that you've submitted, and
```

1    I'll hear from you first on the motion.  And then after that,

2    I have some questions about some of the individual attachments

3    and just -- what we'll probably do is after you argue your

4    motion, we'll just go one by one through those documents.  And

5    to the extent that I have questions, we can just kind of

6    tackle those as we go.  So, Mr. Burke, you can proceed.

7            MR. BURKE:  Thank you.  My plan was just to go

8    through some of the basics of the settlement and, as you

9    suggested, answer questions that you've got.

10           We're here today to present preliminary approval for

11   a proposed class action settlement.  This is a good

12   settlement.  It calls for a $16,400,000 non-reversionary fund

13   for the benefit of 3.3 million class members.  We made a

14   filing yesterday, a supplemental filing, updating the Court on

15   the number of class members and the settlement amount.  Those

16   are the correct numbers.

17           THE COURT:  And that is -- I understand on the

18   documentation it contemplated doing some additional discovery

19   to get more finality in the numbers, and that's the result of

20   what happened there?

21           MR. BURKE:  Yes.  We took a deposition on July 13th

22   and got the final numbers, so that's why that went down that

23   way.

24           The settlement calls for roughly $4.95 per class

25   member as a whole, which is a very high value in comparison

1  with other big bank TCPA settlements.

2      The notice plan that we've put together is estimated

3  to reach 91 percent of the class.  It calls for a postcard to

4  be mailed to every class member for whom we've got addresses.

5  We've got addresses for most class members.  The postcard will

6  have a tear-off claim form to make it easy for class members

7  to submit their claims, and I should say at this point there's

8  a claim process.  So it's class members who submit claims will

9  receive a pro rata amount after administrative costs, fees,

10  and class representative awards have been deducted.

11      In addition to direct notice, we contemplate internet

12  impression notice on Facebook, 17 million banner ad and

13  internet impressions.  We'll also have a settlement website, a

14  toll free IVR number where people can call in and get

15  information about the settlement on the telephone and also

16  press releases.

17      We anticipate requesting not more than 30 percent of

18  the settlement for attorney's fees and request -- anticipate

19  requesting $20,000 as a class representative service award for

20  each of the three plaintiffs, and the parties have agreed to

21  suggest as a cy pres there being Habitat for Humanity.  Now,

22  cy pres will only come into effect after redistributions of

23  settlement, uncashed funds.  We'll do redistributions, as many

24  as it takes, until the checks that we're sending out after

25  administrative costs are one dollar or less.

1          Class members are given a 10 percent claim rate.

2    Class members should -- claimants will receive about $31

3    apiece.  If the claims rate is 5 percent, class members should

4    receive around $59.  We negotiated a -- and that's based upon

5    the request in the papers.  Of course, the attorney's fees and

6    the service awards matter for making those calculations.

7          Also, I would mention that we negotiated a hard cap

8    for administrative costs regardless of the claims rate.  That

9    hard cap is 1.67 million.

10          Again, in comparison with similar TCPA settlements

11    with big banks, this settlement compares very favorably, and

12    I'm proud to present it today.  I'd be happy to answer any

13    questions you've got, your Honor.

14          THE COURT:  Okay.  I have to say that in terms of the

15    memorandum and brief itself, that I didn't have any initial

16    questions about that.  As I stepped through the factors to

17    look at in determining whether or not the settlement should be

18    approved for the amount of the settlement, when I looked at

19    the likelihood of success at trial, the range of possible

20    recovery, the point on or below the range of possible recovery

21    at which a settlement is fair, adequate and reasonable, the

22    complexity, expense and duration of litigation, the substance

23    and amount of opposition to the settlement, and the stage of

24    the proceedings at which the settlement was achieved, I did

25    find that certainly at this stage it's not the requirement

1  that would be at the end.  But for the initial showing for the

2  preliminary approval, I didn't find any problems as it relates

3  to that.

4       And although we haven't talked about it yet, I did

5  look at the issues relating to class certification and whether

6  the class should be certified and do find that that -- in your

7  brief that you did properly allege the different requirements

8  necessary for class certification.  So there's not anything

9  about those general issues that were troubling to me at the

10 outset.

11      I did have some questions about the details of the

12 notice and things of that, and maybe what we can do at this

13 time is just kind of jump into that.  And the first place I

14 wanted to go was in Exhibit 1, which is the settlement

15 agreement itself, and these are just going to be in order of

16 when I get to them in my notes.  The first question I had is

17 in paragraph 2.11 where the class counsel is defined.  And

18 what I noticed in going through these documents, that there is

19 a lot of inconsistency in determining who class counsel is.

20      For example, in 2.11 we have one set of lawyers.  In

21 my proposed order we have a different set of lawyers, and in

22 the notice we have an entirely -- so we have three different

23 sets of who class counsel is within the paperwork.  And, for

24 example, in my proposed order I think there's just two law

25 firms that I'm defining as class counsel, and, again, that's

1 | different from what the notice says about who class counsel is
2 | and the difference between settlement agreement. And there's
3 | a fourth inconsistency with who's actually on this case in
4 | terms of the docket.
5 | So is that something that just needs to be cleaned up
6 | or is that -- you know, who is class counsel, I guess?
7 | MR. BURKE: My goodness. Well, I would say that lead
8 | counsel is Lieff Cabraser and Burke Law Offices.
9 | THE WITNESS: And I think they're on all of them.
10 | MR. BURKE: We are. And, you know, I intended to
11 | just sort of mention a little bit of the background of these
12 | cases as we began. The first filed case is the case before
13 | your Honor the --
14 | THE COURT: Right. And I know you're trying to
15 | settle kind of all of these issues with all these different
16 | attorneys, but I would think that it may be necessary for, you
17 | know, these other attorneys -- you know, for my order to match
18 | up with what the notice and all that says. And there may need
19 | to be a little clean up with that.
20 | MR. BURKE: I think that that's right, your Honor,
21 | and I guess I wanted to explain that this was an ongoing
22 | process to get all these law firms wrangled up and working
23 | together on these cases. This wasn't a coordinated effort
24 | from the beginning. It was, all right, well, we've got this
25 | HELOC case that's been filed. There's a mortgage case that's

1  in Chicago.  We filed subsequently a mortgage case in state

2  court because of these pick-off issues that we've been dealing

3  with.

4          So I think that that -- that it is true that we need

5  to clean this up, and class members have to have a clear

6  directive as to who's representing them.  And so I think that

7  this is something that is important to have seen, and we would

8  clean it up.  But that background sort of gives a little

9  context for why there's so many law firms that are involved.

10          MR. SELBIN:  Your Honor, Jonathan Selbin from Lieff

11  Cabraser.  Good morning.  I believe the proposed order was

12  intended to set forth who you were designating as co-lead

13  counsel, which is Mr. Burke and myself, my law firm.  The

14  2.11, I believe -- and we will go back and double check all

15  this today because -- and I apologize, your Honor, if we

16  didn't match everything up.  I believe 2.11 was intended to

17  include all of the law firms who represented plaintiffs in any

18  of these cases that have been brought together, and

19  collectively they are class counsel, distinct from lead class

20  counsel.

21          That should match up.  I'm looking at the notice.

22  That list should match up.  If it doesn't, we will fix that --

23          THE COURT:  Okay.

24          MR. SELBIN:  -- because clearly your Honor is right.

25  The names need to be right, and I apologize that that

1  wasn't -- that that wasn't caught.  But I think that explains

2  the distinction generally between those two concepts, the

3  proposed order and the list in the settlement.

4        THE COURT:  Okay.  And the only additional item I

5  just have for me is that if there is anyone that is going to

6  be considered class counsel in this case, I would like to have

7  them enter an appearance in the case.

8        MR. SELBIN:  Absolutely.

9        THE COURT:  Because for issues that go down the line.

10 And in the proposed order it does just say class counsel and

11 not lead class counsel.  So there's just a few little things

12 like this.  And what I'm probably going to do today is we'll

13 kind of go through a few of these little clean-up issues.  And

14 I'll just have you resubmit the paperwork, and we won't need

15 another hearing.  We'll just kind of clean all this up and

16 have these attorneys that need to enter an appearance, and

17 then kind of when all that's done, I can likely, you know, go

18 over my notes and sign the order after we kind of go through

19 this.

20       MR. SELBIN:  Again, your Honor, I apologize that it

21 doesn't match up, and the terminology isn't correct.  I think

22 you're right plainly that everybody -- anybody who's going to

23 be counsel in this case needs to be counsel in this case.

24       THE COURT:  Right.

25       MR. SELBIN:  So that should have happened, and if it

1  hasn't, we'll make sure it happens.

2          THE COURT:  Okay.  That's no problem at all.

3          The next item I had in the settlement agreement --

4  oh, and just to kind of -- I know that you mentioned the cy

5  pres would likely be habitat for humanity, to the extent that

6  that was something that was necessary, and certainly at this

7  point in time I don't have any issue with that, so it's not a

8  problem.

9          And the next question I have is in Section 9.02,

10  which is the conditions for claiming the cash award.  And the

11  question I have deals with the identification code on the mail

12  notice, and there seems to be a little bit of an

13  inconsistency, at least in my reading of this provision, in

14  that on the third line it says that -- you know, it uses the

15  words "shall contain", and then it has a list of what needs to

16  be on the notice or the claim form itself.  And when I get to

17  No. 6, there's this phrase "where applicable", and then it

18  says "the identification code," and I think a word is missing

19  there.  I think it should say on.

20          But what I'm concerned about, a little bit, is let's

21  say that you're mailed notice and you get this identification

22  code on your notice, and you later go and make a claim on a

23  1-800 number or on the email.  And you don't know or you can't

24  find your form that has that little identification number on

25  it or even by the time you fill out the form, you don't any

1 longer have that form.  I don't think it's clear that you can

2 still make your claim without that number, and I think that

3 given all the different ways that you're getting the word out

4 there, that someone might be a claimant, I do think it would

5 probably make more sense to clean that up to make sure that

6 they didn't have to have that number on there.

7 　　　　　MR. BURKE:  Perhaps it does, your Honor.

8 　　　　　MR. SELBIN:  Your Honor, I just wanted to infer to

9 make sure I wasn't speaking out of school in making this

10 representation.  In all of these settlements, there are lists

11 of items that you want to make sure people include, if they

12 can.

13 　　　　　THE COURT:  Right.

14 　　　　　MR. SELBIN:  This is a claims administration issue.

15 No one's claim will be denied here because they don't put the

16 claim number on when they file the claim, the identification

17 number.  Now, if we say under notice that you have to provide

18 that, we maybe need to make that more clear.

19 　　　　　THE COURT:  And we'll get to that, and I think it

20 does say that.

21 　　　　　MR. SELBIN:  Okay.  But that's a claims

22 administration issue.  We've never denied claims.  Claims

23 administrators just don't deny claims on that sort of basis.

24 　　　　　THE COURT:  Okay --

25 　　　　　MR. SELBIN:  We'll clean that up.  Right.

1  Understood.

2      THE COURT:  Okay.  That's no problem.  Now, this is

3  may be a bigger issue that we need to talk about, and that's

4  in paragraph 10.03 as it relates to objections.  And it states

5  that, any and all objections shall identify any lawyer that

6  assisted or provided advice as to this case or such objection,

7  and any documents supporting the objection must also be

8  attached to the objection.

9      And I wanted to hear more about that specific

10  provision and why that's necessary as to this particular

11  settlement.

12      MR. SELBIN:  It's a good question, your Honor, and

13  this is borne of a long history of professional objectors who

14  enter into these cases and have become ever more sophisticated

15  in how they do so.  And so, for example -- and we can submit

16  it to your Honor if you're interested.  There's a transcript

17  from a case in the last month or so of a notorious

18  professional objector who ghostwrote objections for his

19  client, never made an appearance in the case, never appeared

20  in the court.  And the Court ultimately viewed his conduct as

21  sanctionable, but he had never appeared in court.  And the

22  Court had sort of only by happenstance figured out that he was

23  actually ghostwriting these objections.

24      We hope it doesn't happen here, but the notion here

25  is to flesh out if somebody is actually not pro se.  We have

1  no problem with pro se objectors.  We have no problem with

2  objectors represented by counsel who are making good faith

3  objections.  There's just a recent history of these

4  professional objectors hiding behind pro se objectors, and we

5  want to make sure that at least the Court is aware and we're

6  aware this person is actually providing representation behind

7  the scenes for this pro se objector.

8       And if you're interested, we can submit the

9  transcript from the recent hearing.  I forget the judge's

10 name.  It's a relatively new judge.

11      MR. BURKE:  I don't know the judge.

12      MR. SELBIN:  I don't remember her name.  It's not a

13 case where -- the *Major League Baseball* case is the case.  But

14 this is borne of those concerns, that somebody is not really a

15 pro se objector, that they're a stalking horse for a

16 professional objector.

17      THE COURT:  Well, we'll get to that when we step a

18 little further along.  I don't have any problem necessarily

19 with finding out if someone is represented by counsel because

20 I do think -- and, again, kind of the professional objectors

21 they're allowed to do that, so it's not that I want to prevent

22 that from happening.  But I do think that it is important when

23 someone is represented by counsel that we know that so

24 communications can go through counsel and there's not any ex

25 parte contact and things of that nature.  So I don't have a

1  problem with that idea.

2          I will say that when we get, I think, maybe to the

3  notice or something, that the language in there may be a bit

4  broader than that, and I think it encompasses like if you talk

5  to anybody about this like, you know, if my mom gets one of

6  these in the mail, she calls me and asks -- and I think the

7  language is not as tight as it might need to be.  So we'll get

8  to that when we step through it because I think it says did

9  you talk to anyone about this, or something of that nature,

10  you need to disclose who that is.

11          MR. BURKE:  Certainly our intent is not to chill

12  speaking with lawyers and that's -- so let's look at that.

13          THE COURT:  Yes, because I think it's the

14  representation piece that's the issue, not that you've talked

15  to your cousin to see if this is a scam or not.

16          MR. SELBIN:  That's right.

17          THE COURT:  Okay.  We'll get to that.  In paragraph

18  12.01 about the final judgment, the deadlines in here are -- I

19  want to talk about this for a minute because we have our own

20  rules for when something is filed after an appeal and the

21  timing of that and, you know, the timing for seeking an appeal

22  and things of that nature.  And I'm just a little concerned

23  that the settlement is seeking to change, you know, the

24  Court's way of dealing with appeals and finality and things of

25  that nature in a way that maybe I'm not appreciating.  And I

1  just don't know why we need a separate kind of within the

2  settlement determination of that when there are kind of rules

3  and deadlines that all people know what they are because

4  they're the Court's Deadlines and rules.

5      MR. SELBIN:  Your Honor, I don't think we're trying

6  to alter any of the Court's own deadlines.  The notion here

7  was, I believe, to define finality for purposes of the

8  contractual arrangement between the parties for when different

9  obligations kick in as between the parties.  I don't think we

10  could by contract alter the Court's deadlines, and that was

11  certainly not the intent.

12      THE COURT:  Okay.  Well, that's fine then.  I just

13  wanted to make sure that there wasn't any kind of thought

14  there for that.

15      MR. LYNCH:  Completely agree.  We agree with that,

16  Judge.

17      THE COURT:  Okay.  On 17.08, that deals with the time

18  periods, it says that the time periods and dates described

19  herein are subject to Court approval and may be modified upon

20  order of the Court or written stipulation of the parties.

21      I do have some concern with that in that if you both

22  want to change a deadline in this, there's literally a 95,

23  98 percent chance that I will agree with that, but I would

24  like to see it before y'all kind of unilaterally make a

25  change, not that anything improper would happen.  I just --

1  once I approve this I'm uncomfortable with you having kind of

2  unilateral power to change it, and so, you know, if you don't

3  mind taking out written stipulation of the parties.  But I

4  will tell you when something comes to me on a consent motion,

5  it's rare that I don't sign it that day or the next day or get

6  you on the phone and ask the question that day.  I mean, those

7  come to me in a separate stack several times a day, and I

8  don't think that that would be a problem.  It's just it's a

9  little bit of a blank check kind of provision.

10       MR. SELBIN:  Your Honor, you know, this is one of the

11  great benefits of having fresh eyes look at documents that

12  have been based on earlier documents and those kinds of

13  things.  The intent here was simply that as to any obligations

14  between the two parties that didn't affect the Court, we could

15  agree if they are going to be a day late getting us something,

16  we can agree they can be a day late getting us something as

17  long as it doesn't affect anything, vis-a-vis the class.

18       The intention always was -- and we will clarify --

19  that as to any Court ordered deadlines only the Court can move

20  those deadlines, not us unilaterally.  But I absolutely

21  appreciate you pointing out as written it says more than that,

22  so we will fix that.

23       THE COURT:  And I don't have a problem with the other

24  issue.  Okay.  So that takes me through the settlement

25  agreement.

1        And then on Exhibit A the only thing I just wanted to

2   point out on that is back to the issue about the claim ID

3   number and maybe -- and I'm not going to say exactly what you

4   have to have in there, you know.  You know, maybe just put in

5   parentheses if available or something like that so that if

6   someone looks at this and says, oh, I can't find my claim ID

7   number, they're not like, oh, well, I guess I can't do this.

8        MR. BURKE:  That's fine.

9        MR. SELBIN:  Easy enough, your Honor.  Good idea.

10       THE COURT:  Okay.  On Exhibit B with the proposed

11  final approval order and judgment, I appreciate getting this,

12  and what I'm going to do on this is just kind of hold this

13  until we see -- you know, I didn't see anything in this, and

14  I'm glad to have it.  But I think it's a little premature to

15  go through this until I kind of know what's going on, and

16  that's not a problem.

17       MR. SELBIN:  The defendants like to put those in.

18  That's why we put them in, but they necessarily change.

19       THE COURT:  Right, right.  And I didn't see anything

20  that caused me concern at this stage based upon that document.

21       On the notice, which is Exhibit C1 -- and I will say

22  all this is just kind of little technical things.  So the

23  first issue I wanted to talk about was if you look at the top

24  of the document, it says page 9 of 11, and it's objecting to

25  the settlement.  And it's a little bit what we talked about

1 before and I just -- I don't have any problems with the

2 concept as you described it to me.  I think that tightening it

3 up, though, that deals with all objections shall identify any

4 lawyer that's representing you, I think, would be better

5 because if they just consulted a lawyer and they didn't do

6 anything about -- you know, that they're not involved in the

7 case and, you know, I don't know that that's something that

8 they have to do then if they don't have current

9 representation.  But if they do, then I think that's a

10 different issue.

11       MR. BURKE:  Again, it's aimed at professional

12 objectors and --

13       MR. SELBIN:  In a very limited context but I think

14 that -- and I want to be clear again, your Honor.  We're not

15 suggesting that objectors shouldn't be heard and even that

16 professional objectors shouldn't be heard.  They absolutely

17 have a right to be.  Our concern here is just fleshing out

18 whether they're ghostwriting and not appearing to avoid having

19 to show up in front of your Honor.  But I think, I think your

20 Honor's suggestion of lawyer that represented you in -- with

21 respect to your objection, something like that, would capture

22 what we're trying to flesh out.

23       THE COURT:  I just want to tighten it up a little bit

24 because it's very broad as written, and I think that the

25 concept is, again, fine, but it's a little broad as the way

 1 that it's drafted.

 2          MR. BURKE:  We can work on that, your Honor.  That's

 3 fine.

 4          MR. SELBIN:  I think we can tighten that up.

 5          THE COURT:  And again to that any document supporting

 6 the objection, there's potential for some privilege related

 7 issues as to that.  You know, any document supporting the

 8 objection must also be attached to the objection.  If someone

 9 does have counsel and, you know, there are documents that

10 they've created and provided to -- you know, there can be

11 privilege related issues.  You know, they can't be required to

12 provide all documents relating to the objections.

13          MR. SELBIN:  All documents you wish for the Court to

14 consider?

15          THE COURT:  Yes.

16          MR. SELBIN:  There you go.

17          THE COURT:  Thank you.

18          MR. SELBIN:  Better language.  Great.

19          THE COURT:  That's perfect.

20          So that takes us to the next paragraph, which is

21 paragraph 12, and this is a very small issue.  But it comes up

22 in a few of these documents.  And just to -- I think that my

23 courtroom number is identified in like three different places

24 as a different courtroom, so this one is blank.  So in

25 paragraph 12 you can just insert 2167 as to -- actually,

1   that's my chambers.  What's the -- 2107, okay, as to the

2   courtroom and that's not a big deal.

3        And then on 13 where you're asking people to tell the

4   Clerk of Court if they're coming to the hearing, if you can

5   just make sure that they put on there -- it says be sure to

6   include, and it has a list of different things.  Add to that

7   the case number because we'll need to put these on the docket,

8   so the clerk will need to know the case number.  And, also, if

9   you can just insert the address of the Clerk of Court just so

10   people will have that so it's clear to them where they need to

11   mail these.

12        MR. SELBIN:  Okay.

13        THE COURT:  I think that's it.  So that takes us to

14   Exhibit C2.  And I think most of these are covered but -- and

15   this is just a picky thing that I'm just mentioning because I

16   saw it.  In Summary of the Settlement it looks like we're

17   missing the close of the parentheses after the -- it's

18   $4,895,710.80, and then there should be two parentheses there

19   to close it up.  It's not like a big deal, but I do a lot of

20   editing.  So when you see something, you point it out.

21        And then on How Do I Make a Settlement Claim, on sub

22   part 3, the claim ID number on this postcard and just say, you

23   know, if you have that information available or something of

24   that nature.

25        MR. SELBIN:  Perhaps just replace if you were mailed

1  a postcard with if available.

2      THE COURT:  Yeah.  Exactly.  And then again, you

3  know, with do I have a lawyer, you know, just kind of checking

4  through all that.  And then when you go to the second side of

5  the paper where it says you must also identify your lawyer

6  that assisted or provided advice, you know, just kind of make

7  that consistent with the change that we've already discussed.

8      MR. SELBIN:  I'm sorry, your Honor.  Which page?

9      THE COURT:  If you go -- I'm sorry.  I have mine to

10  go page.  If you go to the next page, which is page 4 of 4,

11  and if you go to subsection 2, it has that same lawyer

12  language in there that we just need to make consistent with

13  that other change.

14      MR. SELBIN:  Got it.

15      THE COURT:  And then if we go down to the scheduled

16  hearing, it has the -- where the hearing will be, and just

17  change that courtroom number to that one we just did, that

18  2107.  It says 2211.

19      MR. SELBIN:  Got it.

20      THE COURT:  Okay.  In the proposed order let's see

21  what I have.  Again, in Subsection 6, the class counsel

22  appointment, we already talked about that, but it just lists

23  the two law firms.

24      MR. SELBIN:  And, your Honor, are you fine in that

25  order just designating that as co-lead counsel and leaving

1  just the two or do you want us to list everybody?

2       THE COURT:  Well, I guess the question for you is --

3  and I think, you know, I would assume that in terms of some of

4  the issues you're dealing with, that it may make sense for me

5  to designate who is class counsel so that there's not -- I

6  don't know.  You know, I would think that it may be important

7  to have a court order saying who is class counsel just in

8  general or it may just be important to have a court order that

9  says who is lead counsel.  But given the way things work out,

10 I would assume that having everyone listed, maybe having lead

11 counsel as one paragraph and the entirety of the class counsel

12 in another paragraph, and that way if somebody thinks they're

13 class counsel and they're not, then they can move but that

14 there's some clarity who that all is.

15       MR. SELBIN:  That's a great idea.

16       MR. BURKE:  That makes sense, and it's consistent to

17 notices and everything else, yes.

18       MR. SELBIN:  So we'll put it in both ways.

19       THE COURT:  Okay.  And then if we get to page 6 and

20 it's the sentence right above paragraph 13 -- and this is, I

21 think, just a tightening up of the language because it says,

22 no settlement class member or any person acting on behalf of

23 or in concert or participation with that settlement class

24 member may exclude another settlement class member from the

25 settlement class.  And I think that that needs to be tightened

1    up to deal with the attorney issue as well because, for

2    example, the way it's written right now if you have an elderly

3    person that received a lot of these phone calls and their

4    grandson helps them fill out the paperwork, in my court order

5    I'm saying that they can't do that.  And I think that's too

6    broad the way -- and I think that if someone does have an

7    attorney, they could do that.  The attorney could file the

8    paperwork for them.

9          MR. SELBIN:  That's right, your Honor.  This was

10   designed -- and this is very rare these days, but it used to

11   be more common where people would try to gather together a

12   bunch of opt-out and purport to represent other class members

13   who they didn't have any formal attorney-client relationship

14   with.  They were just saying I'm going to opt-out everybody

15   from the state of Texas kind of thing.  It doesn't happen

16   often.  I think that's what that was designed for, but I think

17   we can tighten that language up.

18         THE COURT:  Yeah.  I think it's troubling the way

19   it's written.

20         MR. SELBIN:  Understood.  Understood.

21         THE COURT:  And paragraph 15, and this is just picky.

22   If we go down to the fifth line, it refers to multiple

23   defendants.  So we'll go ahead and just clean that up and just

24   take off the "s" there.

25         MR. BURKE:  Your Honor, may I ask a question about

1  the prior --

2      THE COURT:  Certainly.

3      MR. BURKE:  My experience has been that not only do

4  you sometimes get opt-outs for the state of Texas, but

5  sometimes you'll get an opt-out from a lawyer that is not

6  signed by the class member and the signature is a requirement.

7  And I think that that is the -- the signature itself is the

8  most difficult part of doing a mass opt-out, which is what I

9  think the defendant is concerned about.

10      What are your thoughts about this?

11      THE COURT:  I have no problem whatsoever in requiring

12  the signature.  I don't think that it's just, as a general

13  nature, right for someone to exclude someone from a settlement

14  without their signature.  I just think that the language in

15  here right now just wouldn't allow someone to even help them

16  figure this out.  And --

17      MR. SELBIN:  That's not the intention.

18      THE COURT:  And I understand the issue.  A signature

19  requirement doesn't cause me any pause.

20      MR. LYNCH:  We would want that, Judge.

21      THE COURT:  Okay.  I think that's fine.  So if y'all

22  can, you know, work on the language on that, a signature

23  requirement is just fine.  If someone is making a decision,

24  they should sign it.  And, you know, even if they have a

25  lawyer or a friend that is just helping them read through it,

1  at the end their decision memorialized by signature shouldn't

2  be any problem, so I have no problem with that.

3       MR. BURKE:  Thank you.

4       THE COURT:  I don't also have anything else that I

5  noticed in terms of the proposed order, but what I will ask

6  you to do -- and I think this makes sense.  But since we've

7  had some of these changes, I will have you kind of refile what

8  needs to be refiled with the updates.  And then when you file

9  everything, why don't you do this:  With the proposed order

10 insert the dates that you are -- you know, based upon all

11 those different rules that you have, but do them as if I

12 signed the order seven days after I receive it.

13      Since I've gone over everything in a lot of detail, I

14 can't imagine a circumstance in which, you know, I won't be

15 able to redo this within a week after receiving it, but I

16 don't know when that's going to be.  And I'll check the dates

17 that you give me but it's also -- it's kind of nice to have or

18 let's see -- oh, yes.  And, also, I would send that Word

19 version as well in case I need to make any changes to that,

20 but I think that at least I can kind of verify my dates with

21 your dates so I don't calculate that incorrectly.  I can't

22 remember on this particular order if you need a hearing date

23 to back this out.

24      MR. SELBIN:  The final approval, yeah, we have to

25 notice the class.

1          THE COURT:  Okay.  Before you file that just email

2     Ms. Bachelor and tell them -- tell her basically, you know,

3     when out you're looking for a hearing, and we can give you a

4     date that you can put in the paperwork when you submit it.  So

5     we shouldn't have any problem getting that to you.

6          MR. SELBIN:  The other alternative on that, your

7     Honor, if it simplifies things for you, if in your preliminary

8     approval order, assuming you grant it, if you put the date of

9     the final approval hearing, we can then just put it into the

10    notice document.  That's the only place it needs to appear is

11    in the various notice documents.  So it's pretty standard to

12    just incorporate that date after you --

13         THE COURT:  Okay.  Either way is fine, yeah, either

14    way, whatever you prefer.  We can -- you know, we're a pretty

15    efficient ship around here, so we can get you a date that will

16    likely be final.  If you want to email Ms. Bachelor, we can

17    get that on the calendar, but we're also fine doing it the

18    other way.

19         MR. SELBIN:  I do have a question about what your

20    Honor expects in terms of new filing.  Obviously the proposed

21    order needs to be submitted.  Revised notices need to be

22    resubmitted.  On the settlement agreement I think it would be

23    difficult for us, not impossible, but difficult to go back and

24    make changes to a settlement agreement, get their client in

25    particular to approve it, and get everything done

1   expeditiously.  I'm wondering if given the representations

2   we've made to your Honor about the concerns you have on the

3   settlement agreement -- and as I recall the biggest one was

4   this issue about trying to change court deadlines without

5   Court permission -- if that's sufficient for you or if you

6   need us to redraft the settlement agreement on those points

7   and we execute it.

8        MR. LYNCH:  Or the changes can be made and attorneys

9   can initial them to --

10       MR. SELBIN:  Right.  I'm just trying to figure out

11   what your Honor's preference on that is.

12       THE COURT:  Well, what I can do that I think will

13   probably deal with that is in my order what I will do is state

14   that I'm approving a settlement agreement with the exception

15   of, you know, paragraph blah, blah, blah, not approving the

16   unilateral changing of dates, and paragraph blah, blah, blah

17   I'm not approving.  And if I do it that way, then I'm

18   approving the settlement agreement, but I'm not approving the

19   provisions I don't approve.  And, you know, we can do it that

20   way or --

21       MR. SELBIN:  I'm only hesitating, your Honor, because

22   in -- I don't mean any disrespect on this, but I'm concerned

23   that some objector might say the Court has to give a thumbs up

24   or a thumbs down to the settlement as a whole as written

25   rather than as picking and choosing.  And I understand these

are minor, and I'm not questioning your authority to do that.
But there is case law that suggests that the Court has to give
the thumbs up or thumbs down.  So I think maybe we ought to
make the changes, initial them, and submit it that way, and
that will get it -- the changes your Honor wants while also
avoiding the need for these folks to go back through a whole
process with their client.

MR. LYNCH:  That would be fine with us, Judge, if
that's okay with you.

THE COURT:  That would be fine, but, you know,
resubmit the new settlement agreement as part of the, you
know, amended order.  And I wouldn't, you know, if it was just
one thing but I think we've got several.  We've got the class
counsel.  We've got the attorney issue.  We've got a few in
here.  So I'm having a clean copy that makes it clear what
exactly I'm approving.

MR. SELBIN:  Absolutely.

THE COURT:  I think it is better.

MR. SELBIN:  I'm just trying to protect the record on
that point, your Honor.

THE COURT:  I think that works.

MR. SELBIN:  Okay.

THE COURT:  That works.  And, also, to -- if as
you're doing this -- you know, I've gone through a lot very
quickly.  If you have any question about -- if you just want

1  to send a paragraph, you know, with the change to me as we're

2  going, I mean, the final version is going to be on the record.

3  There's no, you know, concern about that.

4      You know you can email, you know, both send a joint

5  email to Ms. Bachelor, and if there's any question about your

6  notes about what I said or -- I mean, obviously there's a

7  transcript of all that, but I'm happy if you want to send an

8  email and, you know, ask a question, a clarification of

9  anything I've said today because I know it makes all the sense

10  in the world until you go back and try to redraft it and

11  nobody can remember exactly why it made so much sense.  So I'm

12  happy --

13      MR. SELBIN:  You can't read my writing either?  Is

14  that your point?  Thank you, your Honor.

15      THE COURT:  You're welcome.  I'm happy to do that

16  because in the end you both want to not waste time by going

17  through iterations of this, so I'm happy, happy to do that.

18      MR. BURKE:  And I think on whatever is submitted

19  we're going to make efforts to get this in very quickly.  Our

20  final approval dates are approaching up into the holidays, and

21  it would be our preference to get final approval before the

22  end of the year.

23      THE COURT:  I'll move very quickly on it.  There's no

24  reason why, I mean, you won't get it back.  I've gone through

25  the work that I need to do, so it's just more going through it

1    again and making sure that my concerns have been dealt with.

2    And then I can sign it.

3            MR. SELBIN:  I think he was talking to defense

4    counsel.  That's my read of that.

5            THE COURT:  Well, I can't do much on that.

6            MR. SELBIN:  Thank you very much, your Honor.  That's

7    very helpful.

8            THE COURT:  You're welcome.  Is there anything else

9    that -- and, Mr. Lynch, you haven't spoken much but I think --

10           MR. LYNCH:  Judge, we want to thank the Court for its

11   time on this, and we obviously support the motion and

12   appreciate your consideration.

13           THE COURT:  And, again, you know, we're not done, but

14   I do want to thank you for your hard work in getting the

15   settlement hammered out.  I haven't said a lot about that, but

16   I do think that it does appear to me to be a fair settlement.

17   And I know it's difficult to get all the parties together,

18   especially given how many different cases were pending in

19   different courts with different lawyers involved.  I know that

20   that's not an easy task getting everybody to the table and

21   getting something that everyone is agreeable to.  So I say

22   that now before I hear if people don't agree about this.

23           But at least based upon what I have in front of me

24   today, I do want to thank you for your hard work in getting it

25   done because it's a lot of work.

1          MR. BURKE:  Thank you, Judge.

2          THE COURT:  Okay.  All right.  If there's nothing

3   else, then I'll just wait until I get the updated documents.

4   And when I get those too, if I have any additional questions,

5   I'll send out an email copy to all parties that brings up what

6   the issues are that I have that we can work through.

7          So with that, thank you all, and we are in recess.

8          COURTROOM SECURITY OFFICER:  All rise.  Court is in

9   recess until further order.

10          (Whereupon, the proceedings were adjourned at 9:15

11   a.m.)

12                              -   -   -

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    REPORTERS CERTIFICATE

2

3

4          I, Wynette C. Blathers, Official Court Reporter for

5  the United States District Court for the Northern District of

6  Georgia, with offices at Atlanta, do hereby certify:

7          That I reported on the Stenograph machine the

8  proceedings held in open court on August 2, 2016, in the

9  matter of STEVEN MARKOS, TIFFANY DAVIS and; GREGORY PAGE, on

10 behalf of themselves and all others similarly situated v.

11 WELLS FARGO BANK, N.A., Case No. 1:15-CV-01156-LMM; that said

12 proceedings in connection with the hearing were reduced to

13 typewritten form by me; and that the foregoing transcript

14 (Pages 1 through 32) is a true and accurate record of the

15 proceedings.

16         This the 13th day of January, 2017.

17

18

19

20                         _____

                               /s/ Wynette C. Blathers, RMR, CRR
21                                 Official Court Reporter

22

23

24

25