# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| STEVEN L. MARKOS, TIFFANY DAVIS, and GREGORY PAGE, on behalf of themselves and all others similarly situated, | Case No. 1:15-cv-01156-LMM |
| Plaintiffs, |  |
| v. |  |
| WELLS FARGO BANK, N.A., |  |
| Defendant. |  |

## PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION TO STRIKE THE OBJECTION FILED BY WANDA YDE

## I.    __INTRODUCTION__

Plaintiffs previously moved to strike the objection of Wanda Yde unless her attorney, professional objector Christopher Bandas, who ghost-wrote her objection, subjected himself to this Court's jurisdiction by appearing in this case on her behalf *pro hac vice*.   (Doc. 61.)  Mr. Bandas has now done so.  (Doc. 79).  That would seem to moot Plaintiffs' motion.  But the discovery this Court permitted Plaintiffs to take of Ms. Yde—including Ms. Yde's deposition—has exposed serious misconduct by the attorneys purporting to act on her behalf that may warrant additional inquiry and relief.

Specifically, although Ms. Yde claimed to be proceeding "*pro se*," she has been represented by the Bandas Law Firm since October 2016—a month before she filed her objection.  Indeed, despite the fact she never met with Mr. Bandas or any other attorney to discuss her objection—and did not even know who the other attorneys Mr. Bandas brought into this case were—Mr. Bandas wrote her objection in its entirety (she barely reviewed it before filing), provided her ongoing legal advice, and caused the objection to be filed in this Court.  Plaintiffs believe that this conduct implicates Georgia's prohibitions on the unauthorized practice of law.

And although Ms. Yde's discovery responses suggest that she had no prior relationship with her attorneys, that is indisputably not true.  Ms. Yde's mother, Ms. Janet Petrus, has worked as Mr. Bandas' legal assistant for over ten years.  In

fact, Ms. Yde's only conversations about her objection and retention of Mr. Bandas all took place with her mother, not Mr. Bandas or any other attorney at his office (nor any of the additional attorneys Mr. Bandas has hired since to work on it with him).  Ms. Yde did not meet with Mr. Bandas until the week before her deposition. Mr. Bandas also employed Ms. Yde herself for almost a year, and Ms. Yde may well work for him again.  The attorneys purporting to act for Ms. Yde affirmatively concealed these facts in signed discovery responses stating there were no documents showing a "familial, professional, or employment relationship" between Ms. Yde and the Bandas Law Firm.  That representation is false.

These facts evidence a pattern of material and intentional misdirection and misconduct by Mr. Bandas and his co-counsel.  Plaintiffs recognize that addressing these issues may require additional inquiry.  However, as the Court knows, Plaintiffs are of the view that the Court has a duty to consider the substance of Ms. Yde's objection regardless of whether it was submitted in good faith or otherwise proper, a view the Court itself has expressed as well.  *See* Transcript of Telephone Conference Proceedings at 15:23, 16:8-14 (Jan. 5, 2017). There is thus no reason to delay the final approval hearing or the Court's ruling on final approval, even if the

Court deems additional inquiry is necessary regarding the conduct of Ms. Yde's counsel.[1]

## II.   BACKGROUND

On January 5, 2017, the Court denied Ms. Yde's Motion to Quash and ordered Ms. Yde to produce documents and testify at deposition.  Doc. 78.) Plaintiffs deposed Ms. Yde on Saturday, January 14, 2017.  Ms. Yde's deposition testimony (full transcript and exhibits attached as Exhibit A) confirmed the following facts:

### A.   Ms. Yde Has a Long Familial and Professional Relationship with Attorney Christopher Bandas and the Bandas Law Firm.

Ms. Yde's mother, legal assistant Janet Petrus, has worked as a full-time employee for Bandas Law Firm for over ten years.  Yde Dep. at 68:14-70:2.  Ms. Yde also worked on sporadic filing projects for Bandas Law Firm for approximately one year from around November 2015 to May 2016.  *Id.* at 10:16-11:9, 13:21-14:12.  Ms. Yde confirmed that, if asked, she would work for Mr. Bandas' firm again. *Id.* at 70:5-11.

### B.   Ms. Yde Was Not Really Proceeding *Pro Se*.

Ms. Yde received class notice for this case in late October 2016.  *Id.* at 30:2-7.  She immediately contacted her mother, Mr. Bandas' legal assistant Janet Petrus.

---

[1] Plaintiffs respectfully withdraw their alternative request that the Court require Mr. Bandas to enter an appearance.  Mr. Bandas has been admitted *pro hac vice* and the Court therefore has full discretion to hold him accountable for his conduct.

*Id.* at 29:24-30:1, 30:8-15.  Mr. Bandas, through Ms. Yde's mother, advised Ms.

Yde to object.  *Se id.* at 44:21-25; 51:5-22.  Ms. Yde entered into a "verbal

contract" for Mr. Bandas to represent her.  *Id.* at 66:8-9, 74:20-75:17.  Mr. Bandas

has been her attorney since October 2016.  *Id.* at 65:25-66:3.  Ms. Yde did not do

any independent research regarding the Settlement.  *Id.* at 37:7-25.  Instead, she

relied on Mr. Bandas and her mother.  *Id.* at 37:14-19.  Indeed, until just a few

days before her deposition, she only ever spoke with her mother about the

objection, not Bandas or any other attorney.  *Id.* at 17:16.

Mr. Bandas drafted an objection for Ms. Yde to sign.  *Id.* at 44:21-25, 45:1-

2, 20-21, 49:2-11.  Ms. Petrus presented Ms. Yde with the objection one day at

work around 8:00 a.m.  *Id.* at 45: 16-19.  While still working, Ms. Yde briefly

reviewed and signed the objection.  *Id.* at 45:23-46:-14.  Ms. Yde did not draft or

edit any part of the objection, which Bandas authored.  *Id.* at 46:15-20, 49:2-11.

Because she trusted her mother to act in her best interests, Ms. Yde asked only a

few questions before signing.  *Id.* at 40:19-41:6: 45:3-9; 84:9-16.

Even though Ms. Yde had a "verbal contract" with Mr. Bandas by which he

represented her in this matter, the objection was filed "*pro se*."  (Doc. 56 at 4.)

Ms. Yde does not recall whether she or someone else sent in the objection.  Yde

Dep. at 47:2-48:16.  But she does know it was solely Mr. Bandas' idea to file the

objection *pro se*.  *Id.* at 95:19-96:2.  Ms. Yde does not know why Mr. Bandas insisted that she file *pro se* rather than through him.  *Id.*

Mr. Bandas subsequently hired attorneys from the Texas law firm Huseman & Stewart to represent *him*.  *Id.* at 65:5-12.  Ms. Yde confirmed that those attorneys "work for Chris."  *Id.*  She first met them on January 11, 2017, a few days before her deposition.  *Id.* at 14:13-15:15.  Ms. Yde never signed any retainer agreement with Huseman Stewart.  *Id.* at 65:9-12.  She is unsure whether those attorneys represent her.  *Id.*  That despite the fact that Mr. Swallow of that firm has now appeared *pro hac vice* on her behalf in this case and signed discovery responses as her attorney.  *See* (Doc. 81); Exh. B at 1.

Two weeks ago, Mr. Bandas hired renowned Atlanta criminal defense attorney Jerome Froelich, Jr. to appear in this matter.  *Id.* at 83:6-20, 63:17-25. Mr. Bandas did not inform Ms. Yde that he hired a Georgia attorney until January 11, 2017.  *Id.* at 81:18-82:9.  Prior to that time, Mr. Bandas never told Ms. Yde that he is not licensed to practice law in Georgia or that he had any intention of associating with or hiring a Georgia attorney.  *Id.* at 78:10-12, 81:18-82:3.  Ms. Yde never signed a retainer agreement with Mr. Froelich.  *Id.* at 64:24-65:4. Again, despite the fact that Mr. Froelich has entered an appearance in this case on her behalf.  (Doc. 70.)

Around the same time he hired Mr. Froelich, Mr. Bandas asked Ms. Yde to sign a retainer agreement, backdated to November 20, 2016—two days before Ms. Yde's November 22, 2016 Objection. *Id.* at 66:4-9 & Exh. 1 at 4 (showing November 20, 2016 as the effective date). Ms. Yde's mother Janet Petrus came to her home to procure Ms. Yde's signature. Yde Dep. at 66:10-13. Ms. Yde spent less than ten minutes (and perhaps even less than five minutes) reviewing the contract. *Id.* at 66:18-67:4. Once again, because she trusted her mother, she asked only a few questions and signed it. *Id*. at 76:22-77:15.[2]

Ms. Yde confirmed that the retainer agreement prohibits Mr. Bandas from filing for *pro hac vice* status or appearing on her behalf in the Northern District of Georgia. *Id.* at 79:1-80:10. Mr. Bandas never told Ms. Yde that he had any intention of filing *pro hac vice* in this case or making any appearance in this Court. *Id.* at 80:11-13. Yet, Mr. Bandas has appeared *pro hac vice* in this case. (Doc. 79.)

C.    **Ms. Yde's Objection**

Ms. Yde is understandably upset at Wells Fargo, as Wells Fargo foreclosed on her home mortgage. Her primary complaint relates to that foreclosure, and

---

[2] There is some question as to whether the contract produced (Yde Dep. Exh. 1) is the one Ms. Yde signed. Although she confirmed she signed only one retainer agreement, she specifically remembers the written document including the word "contract" at the top, and balked when presented with the document produced in discovery. Yde Dep. at 77-78.

what she views as Wells Fargo's failure to provide the assistance it promised her in avoiding foreclosure. Yde Dep. at 19:18-22:4.  She appreciates the work that Plaintiffs and Class Counsel did to hold Wells Fargo accountable.  *Id.* at 59:6-13. However, Ms. Yde appears to have directed her anger toward Plaintiffs and Class Counsel instead of Wells Fargo.

Ms. Yde testified that she (incorrectly) thought Class Counsel is requesting attorneys' fees of $60,000 for their work in this action.  *Id.* at 38:6-11.  She thought that even that amount was too much for Class Counsel.  *Id.* at 53:9-12.  (After coaching from her counsel during a 30-minute deposition break, she changed her testimony.  *Id.* at 52:6-53:7.

In notable contrast to her views on Class Counsel's fees, Ms. Yde does not believe there should be *any* limit on the amount her own counsel, Mr. Bandas, can receive for her objection.  *See id.* at 109:3-6.  Ms. Yde expressly agreed that Mr. Bandas will receive as much as 90% or 95% of any amount the Court might award her or the parties might pay her to settle a claim.  *Id.* at 88:19-91:16 , 107:18-108:14; *see also id.* Ex. 1 at ¶ 3.2 (limiting Ms. Yde's recovery in all events to $5,000).[3]  Ms. Yde believes that a 90% fee award to Mr. Bandas would be fair. Yde Dep. at 107:18-108:14.  Ms. Yde has no idea how much her mother stands to

---

[3] This is the issue Plaintiffs previously flagged as having serious potential tax implications for Ms. Yde and Mr. Bandas.  Case No. 1:17-mi-00001 (N.D. Ga.), Doc. 10  (Response in Opposition to Motion to Quash), at 8-9.

receive from that award for bringing her case to Mr. Bandas. *Id.* at 68:21-69:4. Her mother's compensation from Mr. Bandas, if any, is an issue beyond the scope of the discovery Plaintiffs were permitted.

Ms. Yde was not aware of any of the risks that Class Counsel faced in pursuing this action on behalf of the Class. *Id.* at 56:9-63:16.

Regardless of how this Court rules at final approval, Ms. Yde will defer completely to Mr. Bandas in determining whether or not to appeal the Court's ruling. *Id.* at 85:22-86:25.

      **D.**     **Ms. Yde's Counsel Withheld Evidence and Signed False Discovery Responses.**

Following the Court's discovery order (Doc. 78), Plaintiffs issued four document requests to Ms. Yde and set the response date as January 11, 2017, three days before Ms. Yde's deposition. *See* Yde Dep. Ex. 4 (deposition notice and document requests). Request No. 4 sought:

> Documents sufficient to show any familial, professional, or employment relationship between YOU and Christopher Bandas, John Swallow, Jerome Froelich, or any other attorney acting or your behalf.

*Id.* at 7.

Ms. Yde did not respond on January 11, and did not respond to Class Counsel's meet-and-confer request, and therefore waived all objections. *See, e.g.*, *Stone v. Zimmer, Inc.*, No. 09-80252, 2009 WL 9567924, at *2 (S.D. Fla. Dec. 4,

2009).  On January 12, 2017, following further direction from the Court, attorney John Swallow produced written responses (signed by him), which he amended after Class Counsel identified an error.  *See* Exh. B.  In response to Request 4, Mr. Swallow wrote:  "Subject to and without waiving the foregoing objections, ***none***."  *Id.* at 7 (emphasis added).

At deposition, Ms. Yde confirmed that she never saw or learned of that request, and never searched for any pay stubs and other responsive documents.  Yde Dep. at 122:7-124:2.  Ms. Yde agreed that there *are* responsive documents because she worked for the Bandas Law Firm and Mr. Bandas' legal assistant Jan Petrus is her mother.  *Id.* at 122:7-124:2, 124:7-16, 127:3-14.

## III.   ARGUMENT

### A.   Mr. Bandas' Conduct in Representing Ms. Yde While Pretending She Was Pro Se was Improper.

It is uncontested that Mr. Bandas wrote Ms. Yde's objection—she did not write or edit any part of it, but simply signed it when her mother, Mr. Bandas' paralegal, presented it to her.  Such ghostwriting is improper.  *See* (Doc. 61 at 10-11) (discussing authorities finding that ghostwriting violates rules of professional conduct).  However, Mr. Bandas' conduct may well be more serious than Plaintiffs initially thought.  Plaintiffs believe that Mr. Bandas' conduct may constitute unauthorized practice of law subject to punishment by the Supreme Court of Georgia.  *See* O.C.G.A. § 15-19-51; Ga. State Bar, Rule 14.1.

### 1.    **Mr. Bandas Did Not Provide "Unbundled Legal Services."**

Mr. Bandas contends that his authorship of Ms. Yde's "pro se" objection constitutes "unbundled legal services." (Doc. 77; 77-4.)  The facts, however, do not support that contention.  Ms. Yde did not receive unbundled, *a la carte* legal services of the type, for example, that a Legal Aid attorney might provide to a *pro se* client.  Rather, the evidence confirms that Mr. Bandas forged a contractual relationship with Ms. Yde to provide a full range of bundled legal services:

First, Ms. Yde entered into a verbal contract with Mr. Bandas that was not limited in scope to the drafting of a single document.  Yde Dep. at 66:8-9, 74:20-75:17.  Ms. Yde believes that Mr. Bandas was her attorney since she first received the class notice.  *Id.* at 65:25-66:9.  Mr. Bandas has continually represented Ms. Yde since she first received notice of this case in October 2016, providing a full range of advice and legal services through regular communications via Ms. Jan Petrus, Ms. Yde's mother and Mr. Bandas' legal assistant.  *See id.* at 65:25-66:3

Second, the Objection itself is not limited.  Rather, the Objection clearly states:  "Objector is represented by and has sought legal advice and assistance in this matter from Christopher Bandas, with the Bandas Law Firm, P.C.," not that Ms. Yde merely obtained assistance in drafting a single document.   (Doc. 56 at 4.)

Third, Mr. Bandas has represented Ms. Yde throughout the proceedings in this Court.  The objection was only submitted *pro se* because "that's what he [Bandas] recommended."  Yde Dep. at 95:10-16.

Fourth, Mr. Bandas will continue to represent Ms. Yde in appellate proceedings.  Mr. Bandas' written representation agreement with Ms. Yde provides that "[i]n the event of adverse decisions that we believe raises meritorious appellate issues, we will file a notice of appeal on your behalf, and either make an appearance or retain an attorney to make an appearance in appellate proceedings." *Id.* Exh. 1 at ¶ 1.4.  Indeed, Ms. Yde will defer completely to Mr. Bandas for the appeal of the Court's ruling.  Yde Dep. at 85:22-86:25.

There is nothing "unbundled" about Mr. Bandas' services.  Nor could there be:  as detailed in the Motion to Strike, Mr. Bandas' modus operandi is to hold settlements hostage with the threat of drawn-out, meritless appeals.  He "has been excoriated by Courts for this conduct."  *See, e.g..*, *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012).  If his representation were truly limited to drafting an objection, he would lose the leverage necessary to secure a large payment for himself.

### 2.   Mr. Bandas Was Prohibited from Providing Bundled Legal Services in this State.

It is uncontested that Mr. Bandas was not authorized to practice law in this State or District when he submitted Ms. Yde's Objection.  In his Opposition, Mr.

Bandas relies upon Formal Opinion 07-446 of the ABA Standing Committee on Ethics and Professional Responsibility.  Bandas, however, ignores that the Opinion only applies "as long as the lawyer does not [provide assistance to a pro se litigant'] in a manner that violates rules that otherwise would apply to the lawyer's conduct."  *Id.*  But, Mr. Bandas is not licensed to practice in Georgia and therefore cannot receive the protection of that Opinion.

All of this strongly suggests that Mr. Bandas engaged in the unauthorized practice of law.  O.C.G.A. § 15-19-51.  Georgia considers such representation without seeking admission *pro hac vice* a crime involving "moral turpitude." *In re Schrader*, 523 S.E.2d 327 (Ga. 1999) (suspending a Georgia lawyer from the practice of law for filing a probate petition in New York without seeking admission *pro hac vice*).[4]  This Court's Local Rules also expressly prohibit an attorney from engaging in the practice of law without authorization.  *See* L.R. 83.1(F)(&) ("**Unauthorized Practice**. Any person who before admission to the bar of this court . . . exercises any of the privileges bestowed upon members of this bar or who pretends to be entitled to such privileges shall be guilty of contempt of this court and shall be subject to punishment therefor and shall be subject to any other discipline which the court may impose.").

---

[4] It is therefore unsurprising that the attorney hired by Mr. Bandas, Jerome Froelich, is a well-respected criminal defense attorney who specializes in defending attorneys facing charges of fraud or racketeering.  *See* http://www.mckenneyfroelichlaw.com/ froelich.htm.

The practice of law in this State includes 1) "[t]he preparation of legal instruments of all kinds whereby a legal right is secured," 2) "[t]he giving of any legal advice," and 3) "[a]ny action taken for others in any matter connected with the law."  O.C.G.A. § 15-19-50; *see also In re Upl Advisory Opinion 2002-1*, 591 S.E.2d 822, 823 (Ga. 2004).  Mr. Bandas indisputably took each of these steps.  Mr. Bandas authored Ms. Yde's objection—a document with the sole purpose of affecting legal rights and obligations in this proceeding— and caused it to be filed in this Court.  *See* Yde Dep. Ex. 1 at ¶ 1.4 ("[W]e will craft the legal arguments used in your objection, and handle the logistics of filing the objection[.]").  At the time, Ms. Yde was not represented by nor even consulted any Georgia attorneys.  Yde Dep. at 63:22-24 (referring to Georgia counsel as "a new one" who "Chris [Bandas] just hired").  Mr. Bandas did not inform Ms. Yde that he hired a Georgia attorney until a few days ago.  *Id.* at 81:18-82:9.  Prior to that time, Mr. Bandas never told Ms. Yde that he had any intention of associating with or hiring a Georgia attorney, or filing *pro hac vice* in this Court.  *Id.* at 78:10-12, 81:18-82:3.  When Mr. Bandas took these actions, he practiced law in this District—a District in which he was not authorized to practice.

Worse yet, this misconduct was a transparent, calculated tactic to evade this Court's jurisdiction.  *See* (Doc. 62-1, at 91-102) (Transcript from *Garber v. Office*

*of the Commissioner of Baseball*, No. 12-cv-3704 (S.D.N.Y. Jul. 15, 2016)).  This is improper and likely constitutes the unauthorized practice of law.

### B.   Mr. Yde's Counsel Withheld Evidence and Signed False Discovery Responses.

Ms. Yde's counsel engaged in additional misconduct.  Class Counsel's discovery requests—issued pursuant to this Court's order (Doc. 80)—requested documents sufficient to show any familial, professional, or employment relationship between Ms. Yde and Mr. Bandas.  *See* Yde Dep. Exh 4 at 7. Responsive documents, such as pay stubs, exist because Ms. Yde worked for Mr. Bandas and her mother, Jan Petrus, is Mr. Bandas' legal assistant.  Yde Dep. at 122:7-124:2, 124:7-16, 127:3-14.  Yet Mr. Swallow signed discovery responses denying the existence of responsive documents, *see* Exh. B. at 7, and Ms. Yde confirmed that she never saw or learned of the request, and so never searched for responsive documents.  Yde Dep. at 122:7-124:2.  Suppression of evidence and false representations violate both Federal Rule of Civil Procedure 26 and Mr. Swallow's ethical obligations.

This all suggests an intent to hide the fact that Ms. Yde has a close personal and professional relationship with Mr. Bandas' firm.  That fact, coupled with her lack of knowledge regarding the settlement and her objection, her simply signing of a document Bandas wrote, and the carte blanche authority granted him by her

retainer, suggests that she is merely an instrument of Bandas' purposes, not someone objecting in her own right.

## IV.   <u>CONCLUSION</u>

Plaintiffs recognize that these are serious allegations, and they may well merit further inquiry.  Yet, the facts marshaled are undisputed and overwhelming, and Class Counsel believe they are compelled to bring them to the Court's attention.  Indeed, as officers of the Court, Class Counsel are obligated to do so.

While these issues may well necessitate further inquiry, they do not prevent the Court from conducting the final approval hearing as noticed to the Class, nor prevent it from considering the substance of Ms. Yde's objection.  Respectfully, it can and it should.  The Court has allotted Mr. Bandas fifteen minutes at tomorrow's hearing to address Plaintiffs' Motion to Strike Ms. Yde's objection. (Doc. 78.).  Plaintiffs stand ready to provide the Court with any further information or briefing it deems appropriate regarding these matters.

Respectfully submitted,

Dated:  January 16, 2017          By:  */s/ James M. Feagle*


SKAAR & FEAGLE, LLP
James M. Feagle
Georgia Bar No. 256916
Email: Jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
Telephone: (404) 373-1970
Facsimile: (404) 601-1855

Justin T. Holcombe
Georgia Bar No. 552100
Email: jholcombe@skaarandfeable.com
Kris Skaar
Email: krisskaar@aol.com
133 Mirramont Lake Drive
Woodstock, GA 30189
Telephone: (770) 427-5600
Facsimile: (404) 601-1855 fax

LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Jonathan D. Selbin (*pro hac vice*)
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Daniel M. Hutchinson (*pro hac vice*)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Andrew R. Kaufman (*pro hac vice*)
Email: akaufman@lchb.com
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

BURKE LAW LLC
Email: Alexander H. Burke (*pro hac vice*)
Aburke@BurkeLawLLC.com
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289


MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice*)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

LAW OFFICES OF DOUGLAS J. CAMPION, APC
Douglas J. Campion (*pro hac vice*)
Email: doug@djcampion.com
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

KEOGH LAW, LTD.
Keith Keogh (*pro hac vice*)
Email: keith@koeghlaw.com
55 W. Monroe, Ste. 3390
Chicago, IL 60603
Telephone: 312-265-3258
Facsimile: 312-726-1093

GREENWALD DAVISON RADBIL PLLC
Michael L. Greenwald (*pro hac vice*)
Email: mgreenwald@gdrlawfirm.com
5550 Glades Rd., Suite 500
Boca Raton, FL 33431
Telephone: (561) 826-5477
Facsimile: (561) 961-5684

Aaron D. Radbil (*pro hac vice*)
Email: aradbil@gdrlawfirm.com
106 East Sixth Street, Suite 913
Austin, TX 78701
Telephone: (512) 322-3912
Facsimile: (561) 961-5684

KAZAROUNI LAW GROUP, APC
Abbas Kazerounian (*pro hac vice*)
Email: ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6806
Facsimile: (800) 520-5523

HYDE & SWIGART
Joshua B. Swigart, Esq. (*pro hac vice*)
josh@westcoastlitigation.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1.C and 7.1.D of the Northern District of Georgia, that the foregoing was prepared in 14-point Times New Roman font.

Dated: <u>January 16, 2017</u>          <u>*/s/ James M. Feagle*</u>

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

January 16, 2017.

/s/   *James M. Feagle*