IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


STEVEN L. MARKOS, ET AL.,     )
                              )
                PLAINTIFFS,   )
                              )          DOCKET NUMBER
        VS.                   )          1:15-CV-1156-LMM
                              )
WELLS FARGO BANK, N.A.,       )          ATLANTA, GEORGIA
                              )          JANUARY 17, 2017
                DEFENDANTS.   )
                              )
                              )
_____)



TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LEIGH MARTIN MAY,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:          JONATHAN SELBIN & ANDREW KAUFMAN
                            LIEFF, CABRASER, ET AL.
                            NEW YORK, NEW YORK  10013
                            NASHVILLE, TENNESSEE  37219

                            ALEXANDER BURKE
                            CHICAGO, ILLINOIS  60601


(APPEARANCES CONTINUED ON THE NEXT PAGE.)

*MECHANICAL STENOGRAPHY OF PROCEEDINGS*
*AND COMPUTER-AIDED TRANSCRIPT PRODUCED BY*

OFFICIAL COURT REPORTER:    MONTRELL VANN, RPR, RMR, RDR, CRR
                            2160 UNITED STATES COURTHOUSE
                            75 TED TURNER DRIVE, SOUTHWEST
                            ATLANTA, GEORGIA  30303
                            (404)215-1549

APPEARANCES CONTINUED

FOR THE PLAINTIFF:        KRIS SKAAR, JAMES FEAGLE &
                          JUSTIN HOLCOMBE
                          SKAAR & FEAGLE
                          WOODSTOCK, GEORGIA  30189

                          KEITH KEOGH
                          CHICAGO, ILLINOIS  60603

FOR THE DEFENDANT:        JOHN LYNCH & DAVID GETTINGS
                          TROUTMAN SANDERS, LLP
                          VIRGINIA BEACH, VIRGINIA  23462

COUNSEL FOR WANDA YDE:    JEROME FROELICH
                          MCKENNEY & FROELICH
                          ATLANTA, GEORGIA  30309

*(IN ATLANTA, FULTON COUNTY, GEORGIA, JANUARY 17, 2017, IN*
2  *OPEN COURT.)*

3          THE COURT:  OKAY.  GOOD MORNING.  YOU MAY BE SEATED.
4  WE ARE HERE IN CIVIL ACTION 15-CV-1156, MARKOS, ET AL. VS. WELLS
5  FARGO BANK, N.A.

6          AND IF COUNSEL WOULD INTRODUCE THEMSELVES FOR THE RECORD,
7  PLEASE.

8          MR. SELBIN:  GOOD MORNING, YOUR HONOR.  JONATHAN
9  SELBIN WITH CABRASER, HEIMANN & BERNSTEIN ON BEHALF OF
10  PLAINTIFFS AND THE CLASS.

11          THE COURT:  OKAY.

12          MR. BURKE:  GOOD MORNING.  ALEX BURKE FOR PLAINTIFFS
13  AND THE CLASS.

14          MR. SKAAR:  KRIS SKAAR OF SKAAR & FEAGLE ON BEHALF OF
15  THE PLAINTIFFS AND THE CLASS.

16          MR. KEOGH:  GOOD MORNING, YOUR HONOR.  KEITH KEOGH
17  ALSO FOR THE PLAINTIFFS AND THE CLASS.

18          MR. HOLCOMBE:  JUSTIN HOLCOMBE, SKAAR & FEAGLE,
19  PLAINTIFFS AND THE CLASS.

20          MR. KAUFMAN:  GOOD MORNING.  ANDREW KAUFMAN FOR
21  PLAINTIFFS AND THE CLASS.

22          THE COURT:  OKAY.  GOOD MORNING.

23          MR. LYNCH:  GOOD MORNING.  JOHN LYNCH FOR DEFENDANT,
24  WELLS FARGO BANK.

25          MR. GETTINGS:  GOOD MORNING, JUDGE.  DAVID GETTINGS

1   FOR WELLS FARGO BANK.

2           THE COURT:  OKAY.  GOOD MORNING TO YOU.

3           MR. FROELICH:  YOUR HONOR, JERRY FROELICH FOR OBJECTOR

4   YDE.

5           THE COURT:  OKAY.  GREAT.  AND DO WE HAVE ANY OTHER

6   OBJECTORS HERE IN THE COURTROOM?

7       OKAY.  I'LL JUST NOTE FOR THE RECORD THAT NOBODY ELSE IS

8   HERE, AT LEAST AT THIS POINT IN TIME, AS AN OBJECTOR OR

9   REPRESENTING AN OBJECTOR.  WE HAVE SEVERAL MOTIONS TO DEAL WITH

10  IN THE CASE.  WE HAVE THE MOTION FOR A FINAL APPROVAL OF THE

11  CLASS SETTLEMENT, THE MOTION FOR AWARD OF ATTORNEY'S FEES, COST

12  AND SERVICE AWARD, AND WE ALSO HAVE PENDING THE MOTION TO STRIKE

13  THE OBJECTION OF WANDA YDE.  AND WE'RE GOING TO GO THROUGH ALL

14  OF THAT IN DETAIL, BUT WHAT I WANT TO DO FIRST IS JUST I HAVE A

15  FEW JUST GENERAL QUESTIONS I WANTED TO ASK JUST TO KIND OF GET

16  MY OWN BEARINGS ON WHAT IT IS EXACTLY THAT WE'RE DOING HERE

17  TODAY.  AND THE FIRST QUESTION I WANTED TO ASK IS IN RELATION TO

18  THE MOTION TO STRIKE THE OBJECTION OF WANDA YDE.  THE MOTION

19  ITSELF HAD TWO REQUESTS FOR RELIEF.  IT ASKS FOR THE OBJECTION

20  TO BE STRICKEN FROM THE RECORD, OR, FOR COUNSEL, MR. BANDAS, WHO

21  IS APPEARING ON BEHALF OF MS. YDE, BE REQUIRED TO ENTER AN

22  APPEARANCE IN THE CASE.  AND WHEN WE LAST SPOKE THERE WERE SOME

23  ISSUES REGARDING THE PRO HAC VICE APPLICATION OF MR. BANDAS

24  WHICH HAVE SINCE BEEN RESOLVED AND HE HAS MADE AN APPEARANCE IN

25  THE CASE.

```
 1      SO JUST IN TERMS OF WHERE WE ARE WITH THAT MOTION, IS IT

 2   STILL MOOT?  I MEAN, IS IT MOOT, OR IS IT STILL PENDING?

 3           MR. SELBIN:  SORRY, YOUR HONOR.

 4           THE COURT:  THAT'S FINE.

 5           MR. SELBIN:  JONATHAN SELBIN.  GOOD MORNING.  YOUR

 6   HONOR, I THINK, AS WE INDICATED IN THE PAPERS WE FILED

 7   YESTERDAY -- AND I KNOW I APOLOGIZE FOR FILING PAPERS ON A

 8   HOLIDAY.  IN LIGHT OF THE DEPOSITION TAKING PLACE ON SATURDAY,

 9   WE WANTED TO GET THAT TO YOUR HONOR AS SOON AS WE COULD.  AS WE

10   NOTED IN THAT, IN SOME SENSE THE MOTION IS MOOT.  AND THAT'S

11   TRUE FOR A COUPLE OF REASONS.  FIRST, BECAUSE HE HAS NOW

12   APPEARED PRO HAC VICE, AND THAT WAS THE FOCUS OF THE MOTION, WAS

13   TO GET HIS -- GET MR. BANDAS BEFORE YOUR HONOR AND TO ENSURE

14   THAT YOU HAD JURISDICTION OVER HIM BECAUSE WE HAD CONCERNS ABOUT

15   HIS CONDUCT IN THIS CASE GIVEN CONDUCT IN OTHER CASES.  SO IN

16   THAT SENSE THE MOTION IS MOOT, AND WE CAN WITHDRAW THE MOTION TO

17   STRIKE THE OBJECTION.  HOWEVER, AS WE ALSO NOTED, THE DEPOSITION

18   AND THE ASSOCIATED DISCOVERY HAS REVEALED SOME POTENTIAL

19   MISCONDUCT THAT WE THINK MAY REQUIRE FURTHER INQUIRY BY THE

20   COURT.  SO I THINK WE CAN WITHDRAW THE MOTION TO STRIKE THE

21   OBJECTION.  WE THINK YOUR HONOR OUGHT TO CONSIDER ITS MERITS

22   ANYWAY, AS WE'VE TALKED ABOUT PREVIOUSLY, AND I KNOW YOUR HONOR

23   HAS INDICATED WE THINK EVEN A BAD FAITH OBJECTION OR AN IMPROPER

24   OBJECTION OUGHT TO BE CONSIDERED ON THE MERITS AS PART OF THE

25   COURT'S CONSIDERATION OF THE SETTLEMENT.  SO I THINK WE'RE
```

PREPARED TO WITHDRAW THAT MOTION AT THIS POINT WITH THE CAVEAT
THAT WE THINK IT HAS REVEALED, IF YOU WILL, SOME POTENTIAL
MISCONDUCT THAT MAY WARRANT FURTHER INQUIRY.

THE COURT:  OKAY.  WELL, I HAVEN'T HAD A CHANCE TO
READ THAT MOTION YET.  I DIDN'T REALIZE IT WAS FILED, BUT THAT
WAS JUST -- I DIDN'T CHECK THE RECORD ON IT THIS MORNING.  BUT
WHAT I'M GOING TO DO TODAY, SINCE YOU'VE MADE AN ORAL MOTION TO
WITHDRAW THE MOTION TO STRIKE, I AM GOING TO GRANT THAT ORAL
MOTION AND WE'RE GOING TO WITHDRAW THE MOTION TO STRIKE.  AND I
WILL CONSIDER THE OBJECTION ON ITS MERITS.  AND IF THERE IS A
SECONDARY MOTION FILED, I'LL JUST TAKE A LOOK AT THAT AND THEN
WE'LL FIGURE OUT WHERE TO GO ON THAT.  AND THAT'S REALLY KIND OF
RELATED TO WHAT I WANTED TO SAY ABOUT ALL THE ISSUES THAT AROSE
ON FRIDAY CONCERNING THE DEPOSITION AND ALL THAT, IS THAT UNTIL
I REALLY KNOW WHAT IT IS THAT I NEED TO RULE ON AND WHAT ISSUES
MAY BE RELEVANT FOR MY CONSIDERATION, IT'S VERY DIFFICULT FOR ME
TO KNOW WHAT MIGHT BE RELEVANT AND WHAT MIGHT NOT BE RELEVANT.
AND CERTAINLY WITH WHAT I HAD IN FRONT OF ME ON FRIDAY, WHAT WAS
LEFT, THERE WASN'T A LOT, I THOUGHT, THAT WAS LEFT FOR ME TO
CONSIDER.  SO IT WAS DIFFICULT FOR ME TO KNOW EXACTLY WHAT I
MIGHT NEED TO GET FROM THAT DEPOSITION.

SO WHAT I THINK AT LEAST AT THIS POINT IN TIME, AND I'LL
READ YOUR MOTION AND IT MAY CHANGE THIS, IS WHAT I'M GOING TO DO
WITH THE OUTSTANDING ISSUES ABOUT THE DEPOSITION, KIND OF THIS
BIGGER KIND OF SIDE ISSUE THAT WE'RE DEALING WITH, IS WAIT UNTIL

1    I SEE THE MOTION THAT'S FILED.  WITHIN THAT MOTION IF THERE IS

2    ANY DISCOVERY THAT YOU'RE REQUESTING, PUT THAT WITHIN THAT, AND

3    THEN I'LL HEAR FROM DEFENSE COUNSEL -- WELL, NOT DEFENSE

4    COUNSEL, BUT OBJECTOR'S COUNSEL ON THAT, AND THEN SEE WHAT IT IS

5    I FEEL LIKE I NEED ON MY BEHALF TO KIND OF FERRET OUT WHATEVER

6    IT IS THAT YOU'RE ASKING ME TO DO, AND THEN CERTAINLY PROVIDE

7    MS. YDE'S COUNSEL WITH A CHANCE TO RESPOND TO THAT, AND WE CAN

8    JUST KIND OF GO THROUGH THERE.  BUT MY UNDERSTANDING, AS WE ARE

9    KIND OF HERE TODAY, IS THAT THOSE ISSUES DO NOT REALLY CONCERN

10   THE OTHER TWO MOTIONS THAT I HAVE PENDING IN FRONT OF ME, WHICH

11   IS THE MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT AND THE

12   MOTION FOR AWARD OF ATTORNEY'S FEES.  SO I DON'T SEE ANYTHING

13   ABOUT THOSE ISSUES THAT REQUIRE ME TO POSTPONE OR NOT CONSIDER

14   OR FULLY HEAR THOSE MOTIONS ON THEIR MERITS AND ACTUALLY GET AN

15   ORDER OUT IN THAT REGARD.

16       AND, MR. FROELICH, WHERE I AM TODAY IS I'M GOING TO ALLOW

17   YOU TIME TO PRESENT YOUR OBJECTIONS AND I'M GOING TO CONSIDER

18   MS. YDE'S OBJECTIONS FULLY AND GIVE YOU AN OPPORTUNITY AT A

19   CERTAIN POINT IN THE HEARING TO ADDRESS THE COURT ON THOSE.  AND

20   WE'LL SAVE THESE OTHER DEPOSITION-RELATED KIND OF ISSUES AS WE

21   KIND OF MOVE FORWARD.  NOW YOU HAVE THE DEPOSITION TRANSCRIPT.

22   I'LL GET A NEW MOTION, SEE WHAT IT IS YOU WANT ME TO RULE ON,

23   WE'LL KIND OF APPROACH IT THAT WAY.

24       MR. SELBIN:  YOUR HONOR, WE THINK THAT MAKES PERFECT

25   SENSE.  WE THINK THAT'S A BIT OF A SIDE SHOW.  WE DON'T THINK IT

```
 1   HAS ANY RELEVANCE TO THE COURT'S CONSIDERATION OF THE MERITS OF
 2   THE SETTLEMENT, THE MERITS FOR THE MOTION OF ATTORNEY'S FEES.
 3   WE THINK YOUR HONOR OUGHT TO CONSIDER THOSE.  JUST TO CLARIFY,
 4   WE DIDN'T FILE A NEW MOTION WITH RESPECT TO WHAT WE LEARNED IN
 5   THE DEPOSITION.  WE ACTUALLY FILED A REPLY, IF YOU WILL, IN
 6   SUPPORT OF THE MOTION TO STRIKE, BUT IN THAT WE INDICATED -- WE
 7   ATTACHED A COPY OF THE TRANSCRIPT, OF THE DEPOSITION FOR YOUR
 8   HONOR SO YOU WOULD HAVE THAT, AND WE POINTED OUT SOME FACTS THAT
 9   WERE LEARNED IN THE DEPOSITION AND INDICATED SOME AREAS WE
10   THOUGHT MIGHT MERIT FURTHER INQUIRY SEPARATE AND APART FROM
11   CONSIDERATION OF THE SETTLEMENT HERE.  AND SO WE AGREE THAT YOUR
12   HONOR HAS FULL AUTHORITY, AND NOTHING ABOUT THAT IMPLICATES THE
13   PENDING OTHER TWO MOTIONS.
14          THE COURT:  OKAY.  AND, MR. FROELICH, ANYTHING YOU
15   WANTED TO SAY ON THAT?  IT SEEMS LIKE WE'RE KIND OF IN AGREEMENT
16   THAT WE'LL HEAR YOUR CLIENT'S OBJECTION WHOLLY WITHOUT REGARD TO
17   THESE OUTSIDE ISSUES AND HEAR IT ON ITS MERITS.
18          MR. FROELICH:  YES, YOUR HONOR.  THE ONLY THING IS
19   THERE IS A LOT OF AD HOMINEM ATTACKS ON MY CLIENT THROUGHOUT
20   THEIR MOTIONS.  AND I WON'T GO INTO THOSE, ADDRESS THOSE, BUT I
21   DON'T -- OBVIOUSLY THE COURT'S NOT GOING TO CONSIDER THOSE.  AND
22   I -- AND MY PROBLEM IS I'M VERY CONCERNED ABOUT THE RECORD GOING
23   UP WITH THESE -- WITH THE ATTACKS, YOU KNOW.  I THINK WE HAD
24   RESPONDED TO THEM IN THE PLEADINGS, BUT I WANT TO MAKE SURE
25   THAT, YOU KNOW, WITH THE WITHDRAWAL, THOSE ATTACKS ARE
```

1   WITHDRAWN.

2          THE COURT:  WELL, LET'S SAY AT THIS POINT IN TIME I'M

3   NOT GOING TO REQUIRE THEM TO WITHDRAW ANY OF THE PRIOR PLEADINGS

4   THAT THEY HAVE FILED IN THE CASE, BUT IN TERMS OF MY DECISION

5   TODAY, NONE OF THAT IS IMPACTING MY CONSIDERATION OF YOUR

6   CLIENT'S OBJECTION.  AND WE'LL JUST SEE KIND OF WHAT NEW MOTION

7   I HAVE BEFORE I CAN REALLY MAKE A DECISION WHAT I'M GOING TO DO

8   GOING FORWARD.  BUT IN TERMS OF THE RECORD TODAY, IN TERMS OF

9   HER OBJECTION, THAT'S NOT ANYTHING THAT I'M BASING MY DECISION

10  ON AND NOT ANYTHING THAT I'M CONSIDERING FOR PURPOSES OF TODAY'S

11  HEARING.

12         MR. FROELICH:  THANK YOU, YOUR HONOR.  I JUST WANTED

13  TO MAKE IT CLEAR.  THANK YOU.

14         THE COURT:  CERTAINLY.  NOW, SO THAT LEAVES US WITH

15  THE TWO, THE MOTIONS FOR FINAL APPROVAL OF CLASS SETTLEMENT AND

16  FOR THE AWARD OF ATTORNEY'S FEES, COST AND SERVICE AWARDS.

17         AND I HAVE A FEW QUESTIONS MYSELF ON THESE, BUT WHAT I'LL

18  ALLOW YOU TO DO, MR. SELBIN, IS GO AHEAD AND MAKE YOUR

19  PRESENTATION.  AND I MAY INTERRUPT YOU WITH QUESTIONS OR SAVE

20  THEM FOR THE END, JUST DEPENDING ON KIND OF HOW IT WORKS WITH

21  YOUR PRESENTATION.  SO, WITH THAT, PLEASE PROCEED.

22         MR. SELBIN:  THANK YOU VERY MUCH, YOUR HONOR, AND MAY

23  IT PLEASE THE COURT.  I'M PROUD TO PRESENT THIS SETTLEMENT TO

24  THE COURT.  IT'S THE PRODUCT OF MANY YEARS OF LITIGATION ACROSS

25  MULTIPLE LINES OF WELLS FARGO'S BUSINESS INVOLVING T.C.P.A.

```
 1   CALLS AND HAS RESULTED IN A SETTLEMENT THAT AT $16.4 MILLION WE

 2   THINK IS A TERRIFIC RESULT FOR THE CLASS.  AND WE THINK THAT

 3   THAT CAN BE SEEN AS A RESULT OF THE NUMBER OF PEOPLE WHO HAVE

 4   CLAIMED.  WE'VE HAD OVER 407,000 CLASS MEMBERS MAKE CLAIMS HERE,

 5   WHICH IS GREATER THAN 12 PERCENT CLAIMS RATE WHICH, AS YOUR

 6   HONOR MAY KNOW, A CONSUMER CLASS ACTION INVOLVING SMALL DOLLAR

 7   CLAIMS IS PRETTY EXTRAORDINARY AND IS ON THE HIGH END FOR THE

 8   BIG BANK T.C.P.A. SETTLEMENTS.

 9       THE OTHER THING THAT'S ON THE HIGH END OF THE T.C.P.A. BIG

10   BANK SETTLEMENTS IS THE DOLLAR VALUE HERE PER CALL OR FOR -- I'M

11   SORRY -- PER UNIQUE CELL PHONE NUMBER.  WE HAVE HERE A

12   SETTLEMENT THAT WAS VALUED IN TERMS OF COMING UP WITH THE

13   $16.4 MILLION BASED ON 3.3-MILLION-OR-SO CLASS MEMBERS AND $4.95

14   PER CELL -- PER CELL NUMBER.  AND THAT IS SIGNIFICANTLY HIGHER

15   THAN MOST OF THE BIG BANK SETTLEMENTS THAT HAVE BEEN APPROVED

16   CONSISTENTLY BY OTHER COURTS WHICH ARE TYPICALLY IN THE 3- TO

17   $4, MAYBE $4.50 RANGE.  SO THIS IS ON THE HIGH END IN TERMS OF

18   THE VALUE OF THE SETTLEMENT.

19       IN TERMS OF THE PAY-OUT TO CLASS MEMBERS, ASSUMING FOR THE

20   MOMENT THAT YOUR HONOR WERE TO AWARD THE MOTION FOR ATTORNEY'S

21   FEES IN FULL AND BASED UPON THE HARD CAP WE NEGOTIATED WITH THE

22   CLAIMS ADMINISTRATOR FOR NOTICE AND CLAIMS COST, WHICH IS

23   SOMETHING THAT WE THOUGHT WAS VERY IMPORTANT TO ENSURE THAT THEY

24   DIDN'T OVER-BILL THE CASE, THE PAY-OUT HERE IS GOING TO BE MORE

25   THAN $24 PER TIMELY CLAIMANT THAT'S BEEN RECEIVED.  WE ESTIMATED
```

```
 1    IN OUR ORIGINAL PAPERS AND IN THE NOTICE THAT THE PAY-OUT WOULD

 2    BE SOMEWHERE BETWEEN 25- AND $75.  WE'RE ON THE LOW END OF THAT

 3    OBVIOUSLY, BUT THAT'S A RESULT SOLELY OF THE NUMBER OF CLAIMS

 4    WE'VE RECEIVED.  WE GOT A MUCH HIGHER CLAIMS RATE HERE THAN WE

 5    HAVE IN ALMOST ANY OTHER OF THE BIG BANK SETTLEMENTS.  THE

 6    ENTIRE SETTLEMENT WAS NEGOTIATED UNDER THE AUSPICE OF HUNTER

 7    HUGHES WHO YOUR HONOR MAY BE FAMILIAR WITH.  I KNOW HE'S WELL

 8    KNOWN IN THIS DISTRICT, VERY HIGHLY RESPECTED MEDIATOR.  HE

 9    OVERSAW EVERY ASPECT OF IT.

10        IN TERMS OF EVALUATING CLASS MEMBER RESPONSE TO THE

11    SETTLEMENT, AS I INDICATED, THERE HAVE BEEN 407,000-AND-CHANGE

12    CLAIMS FILED, ONLY NINE OBJECTIONS, 254 OPT-OUTS OF WHICH, I

13    THINK, NINE WERE LATE.  AND SO WE -- THEY MAY OR MAY NOT BE

14    HONORED.  WE HAVE NO PROBLEM HONORING LATE OPT-OUTS.  THAT'S

15    SOMETHING THE COURT CAN ORDER OR WE CAN PERHAPS AGREE WITH

16    DEFENSE COUNSEL.  OF THOSE OBJECTIONS, ALL BUT ONE ARE TRUE PRO

17    SE OBJECTIONS, AND THEN WE HAVE THE ONE OBJECTION BY MR. BANDAS

18    ON BEHALF OF HIS CLIENT, WANDA YDE.  THE BASIC OBJECTIONS ARE

19    ALL TO THE FEES AND STIPENDS.  THERE'S REALLY NO OBJECTION THAT

20    TARGETS THE SETTLEMENT ITSELF.  THERE ARE SOME PRO SE FOLKS WHO

21    THINKS THAT WELLS FARGO IS A BAD COMPANY AND HAS DONE A LOT OF

22    BAD THINGS TO THEM AND OUGHT TO BE HELD LIABLE FOR A LOT MORE

23    MONEY AS A RESULT OF THAT, BUT THOSE AREN'T REALLY TARGETED FOR

24    THESE CLAIMS IN THIS SETTLEMENT AND THOSE ISSUES AREN'T RELEASED

25    AS A RESULT OF THIS SETTLEMENT.  IF SOMEBODY HAD SOME OTHER
```

```
 1   PROBLEM WITH WELLS FARGO, THOSE CLAIMS AREN'T RELEASED AS A
 2   RESULT OF OUR SETTLEMENT WHICH FOCUSES ON THE T.C.P.A. CLAIMS AT
 3   ISSUE HERE.  SO GIVEN THAT THERE REALLY AREN'T OBJECTIONS TO THE
 4   SETTLEMENT AS SUCH, MY INCLINATION WOULD BE TO MOVE TO THE FEE
 5   AND STIPEND ISSUE UNLESS YOUR HONOR HAS SOME SPECIFIC QUESTIONS
 6   ABOUT THE SETTLEMENT ITSELF THAT YOU'D LIKE ME TO ADDRESS.
 7           THE COURT:  JUST A COUPLE.  IN TERMS OF THE WAY THAT
 8   YOU WANTED TO PROCEED WITH THE ORDERS, IT APPEARS THAT YOU'RE
 9   REQUESTING THAT I ENTER IN TWO SEPARATE ORDERS DEALING WITH THE
10   APPROVAL OF THE CLASS SETTLEMENT SEPARATELY FROM THE ATTORNEY'S
11   FEES, COST AND SERVICE AWARDS AND THE TWO.  IS THERE ANY REASON
12   AS TO THAT?
13           MR. SELBIN:  THERE'S NOT.
14           THE COURT:  OKAY.
15           MR. SELBIN:  THERE'S NOT, YOUR HONOR.  I THINK -- I
16   THINK WE BELIEVED WE NEEDED TO FILE IT AS TWO SEPARATE MOTIONS,
17   BUT IT CAN -- IT CAN AND TYPICALLY IS DONE IN A SINGLE FINAL
18   APPROVAL ORDER THAT ALSO ADDRESSES FEES, BUT THOSE FEES ARE
19   INTEGRAL TO THE FINAL APPROVAL OF THE SETTLEMENT ITSELF.
20           THE COURT:  THAT WAS MY UNDERSTANDING.  IT SEEMED LIKE
21   YOU WANTED THEM BROKEN OUT, AND I JUST COULDN'T UNDERSTAND WHY.
22   THAT MAKES SENSE.  AND IN TERMS OF WHAT WE SAW WITH THE COURT,
23   THERE WERE TWO -- I DON'T KNOW THAT YOU CALL THEM OBJECTIONS
24   WOULD BE APPROPRIATE, BUT IT WAS DOCKETS NUMBER 74 AND 76 HAD TO
25   DEAL WITH ADDRESS CHANGES, AND SOMEONE WAS MAKING CLAIM ON
```

```
 1  BEHALF OF THE ESTATE AND WANTED KIND OF THAT INFORMATION TO BE
 2  SUBSTITUTED.  I JUST WANTED TO MAKE SURE THAT THAT WAS SOMETHING
 3  THAT WAS HANDLED SINCE THEY DID FILE SOMETHING ON THE DOCKET.
 4  THEY WEREN'T OBJECTIONS PER SE, BUT THEY WANTED THE ADDRESS
 5  CHANGES AND THE ESTATE TO BE SUBSTITUTED AND THINGS OF THAT
 6  NATURE.  IS THAT SOMETHING THAT Y'ALL HAVE GOTTEN IN TOUCH WITH
 7  THEM AND DEALT WITH?
 8          MR. SELBIN:  I BELIEVE, YOUR HONOR, AND I'LL ASK
 9  MR. BURKE TO ADDRESS THIS, I BELIEVE WE'VE REACHED OUT TO
10  EVERYONE OF THOSE PEOPLE.  GO AHEAD.
11          MR. BURKE:  YES, JUDGE.  I WAS -- I INVESTIGATED THIS
12  THIS MORNING.  I THINK THAT WE HAVE REACHED OUT TO THESE PEOPLE.
13  AND IF WE HAVEN'T, WE'LL MAKE SURE THEY'RE TAKEN CARE OF.  THESE
14  ARE THINGS THAT WE'VE SEEN, WE TRY TO TAKE CARE OF AS THEY COME
15  UP.  MY INVESTIGATION THIS MORNING WITHOUT MY ELECTRONICS WAS
16  DIFFICULT, SO THE ANSWER IS, YES, WE THINK WE HAVE.  AND IF WE
17  HAVEN'T, WE'LL MAKE SURE IT HAPPENS.
18          THE COURT:  OKAY.
19          MR. SELBIN:  I CAN -- I CAN TELL YOUR HONOR AS A
20  MATTER OF PRACTICE MY OFFICE CALLS THOSE FOLKS AND HELPS THEM
21  NAVIGATE WHATEVER PROBLEM THEY HAVE.  SO I CAN'T TELL YOU THAT
22  THESE SPECIFIC INDIVIDUALS WE DID THAT FOR, BUT AS A MATTER OF
23  PRACTICE WE DO.  AND AS MR. BURKE SAID, IF WE HAVEN'T, WE WILL.
24          THE COURT:  OKAY.  AND THERE WERE, ON THE DOCKET 54
25  AND 55, WERE FOLKS THAT APPEARED TO BE REQUESTING EXCLUSION FROM
```

```
 1   THE SETTLEMENT, BUT ALSO HAD SOME COMMENTS ABOUT THE SETTLEMENT.

 2   AND MY APPROACH WAS TO ASSUME THAT THEY HAD OPTED OUT AND TREAT

 3   THEM KIND OF IN THAT REGARD.

 4       IS THAT HOW Y'ALL ARE HANDLING THOSE FOLKS AS WELL?

 5          MR. SELBIN:  YES, YOUR HONOR.  WE -- WE GENERALLY

 6   TREAT THOSE FOLKS AS OPT-OUTS BECAUSE ONCE YOU'VE OPTED OUT, YOU

 7   AREN'T A CLASS MEMBER WITH STANDING TO OBJECT.  AT THE SAME

 8   TIME, IF THERE'S ANY ISSUES THAT THEY RAISED IN THEIR COMMENTS

 9   THAT YOUR HONOR WISHES TO CONSIDER AS PART OF SETTLEMENT

10   APPROVAL, FOR THE SAME REASON WE THINK ANY OBJECTION OUGHT TO BE

11   CONSIDERED, WE WOULD ENCOURAGE YOUR HONOR TO EVALUATE THE MERIT

12   OF THOSE OBJECTIONS EVEN THOUGH THOSE INDIVIDUALS HAVE OPTED

13   OUT.

14          THE COURT:  I WILL.  I JUST WANTED TO MAKE SURE YOU

15   ALSO HAD THEM LISTED ON THE OPTED OUT.  AND ALSO IN TERMS OF A

16   FINAL LIST OF ALL THE FOLKS THAT HAVE OPTED OUT, THAT WAS

17   SOMETHING THAT AT LEAST AS AN INITIAL THOUGHT I WOULD LIKE TO

18   GET IN TERMS OF MY ORDER SO THAT THERE'S SOME CLARITY ON WHO ARE

19   THE OPT-OUTS AND WHO ARE NOT.  IS THAT SOMETHING THAT YOU CAN

20   GET TO ME AT SOME POINT?

21          MR. SELBIN:  I BELIEVE GARDEN CITY GROUP FILED A

22   DECLARATION WITH FINAL NUMBERS.  I DON'T RECALL.  I APOLOGIZE.

23   I NEED TO CHECK.

24       DID THEY INCLUDE THE LIST?

25          MR. BURKE:  THE LIST IS --
```

```
 1            MR. SELBIN:  GO AHEAD.

 2            MR. BURKE:  THE LIST IS IN THE EXHIBITS.

 3            THE COURT:  OKAY.  I JUST MUST HAVE MISSED THAT.

 4    OKAY.  GREAT.

 5            MR. SELBIN:  AND I BELIEVE WE'RE AT PEACE AS TO WHO IS

 6    A LEGITIMATE OPT-OUT AND WHO IS NOT.  IS THAT --

 7            MR. LYNCH:  THAT'S MY UNDERSTANDING, JUDGE.

 8            THE COURT:  OKAY.  WELL, I'LL LOOK IN THE DOCKET AND

 9    MAKE SURE I PULL THAT EXHIBIT.  AND IF I HAVE ANY QUESTIONS

10    ABOUT THAT, I WILL LET YOU KNOW, OR, IF KIND OF GOING BACK AND

11    LOOKING AT YOUR NOTES, YOU THINK ANOTHER DOCUMENT IS MORE UP TO

12    DATE, JUST LET ME KNOW BECAUSE I DO INTEND IN DEALING WITH THIS

13    TO HAVE AN APPENDIX AS IT RELATES TO THOSE IF THERE IS FINAL

14    APPROVAL OF THE SETTLEMENT.

15        NOW --

16            MR. SELBIN:  AND, YOUR HONOR, JUST -- I'M SORRY TO

17    INTERRUPT YOU.  JUST ON THAT -- ON THAT ISSUE, THE ONE LINGERING

18    ISSUE THAT WE HAD -- OR I GUESS THERE'S TWO LINGERING ISSUES,

19    AND THAT'S WHY I JUST WANTED TO CONFIRM THAT WE WERE IN

20    AGREEMENT ON THE FINAL LIST.  THERE WAS A -- THERE WAS A

21    GROUP -- A GROUP OPT-OUT BY A LAW FIRM WHICH YOUR HONOR HAD --

22            THE COURT:  YES.

23            MR. SELBIN:  -- WHICH YOUR HONOR HAD PROHIBITED IN THE

24    ORDER.  WE REACHED OUT TO THOSE FOLKS.  THEY'VE BEEN WORKING

25    THROUGH GETTING INDIVIDUAL OPT-OUTS.  I BELIEVE THAT'S ALL BEEN
```

```
 1   FINALLY DEALT WITH, BUT IT IS WORTH ALL OF US, I THINK, GOING

 2   BACK AND RECONFIRMING THAT AND LETTING YOUR HONOR KNOW THAT

 3   THAT'S A COMPLETE NUMBER OR A FINAL LIST.  AND THEN THERE HAVE

 4   BEEN SOME LATE OPT-OUTS.  AND AS I THINK I INDICATED, OUR

 5   GENERAL VIEW IS THAT AS LONG AS SOMEONE MADE A GOOD FAITH EFFORT

 6   AND GOT CLOSE, IF THEY'RE AN ABSENT CLASS MEMBER, THAT OUGHT TO

 7   BE HONORED.  I DON'T KNOW WELLS FARGO'S POSITION.  I JUST WANT

 8   TO MAKE SURE WE CAN GO BACK AND MAKE SURE ALL OF THOSE PEOPLE

 9   EITHER ARE OR ARE NOT ON THE FINAL LIST.

10        MR. LYNCH:  YES, JUDGE.  THERE WERE TWO ISSUES WITH

11   THE OPT-OUTS.  ONE WERE (VERBATIM) SOME TIMELY MADE.  THERE ARE

12   SOME THAT WERE LATE.  AND, YOU KNOW, WE'D SEEK THE COURT'S

13   GUIDANCE ON THAT.  I MEAN, THERE IS A DEADLINE.  THE OTHER

14   ISSUE, JUDGE, AND I THINK IT'S A RELATIVELY SMALL NUMBER, LIKE,

15   SIX, SOME PEOPLE FILED CLAIMS AND THEY OPTED OUT.

16        THE COURT:  RIGHT.

17        MR. LYNCH:  AND I THINK THERE'S SIX OF THOSE.  I THINK

18   THAT'S RIGHT.  WE WOULD TAKE THE POSITION THAT IF THEY MADE A

19   CLAIM, THAT GOVERNS, NOT NECESSARILY THE OPT-OUT.  BUT, AGAIN,

20   WE'D SEEK THE COURT'S GUIDANCE ON THAT.  I MEAN, IT'S SOMETHING

21   THAT -- I DON'T KNOW WHAT THE PLAINTIFF'S POSITION IS, BUT IT'S

22   A CONTRADICTORY MANEUVER FOR -- IT'S A RELATIVELY SMALL NUMBER

23   OF SIX.

24        THE COURT:  WELL, I GUESS THERE'S TWO ISSUES.  ONE,

25   ARE THE ONES THAT ARE UNTIMELY.  AND I GUESS IN TERMS OF SOME OF
```

```
 1   THOSE -- AND I DON'T REALLY HAVE THE EXACT CIRCUMSTANCES OF
 2   THOSE IN FRONT OF ME -- BUT IF THEY'RE PRO SE AND THEY'RE PRETTY
 3   CLOSE, I THINK MY GENERAL INCLINATION ON THOSE WOULD BE JUST TO
 4   GO AHEAD AND HONOR THOSE BECAUSE IF THOSE INDIVIDUALS HAD
 5   APPROACHED THE COURT AND ASKED FOR AN EXTENSION GIVEN THAT
 6   THEY'RE PRO SE AND WE'RE KIND OF IN THE HOLIDAYS AND IT WAS
 7   CLOSE, THEN MY INCLINATION WOULD BE TO ALLOW THOSE JUST BECAUSE
 8   THAT'S TYPICALLY WHAT I DO WITH EVEN ATTORNEYS THAT ARE SLIGHTLY
 9   LATE IN TERMS OF A DEADLINE.
10        IN TERMS OF THOSE THAT SOUGHT CLAIMS AND OPTED OUT, I GUESS
11   ON SOME OF THAT I WOULD HAVE TO SEE A LITTLE BIT MORE OF THE
12   LANGUAGE THAT WE'RE KIND OF DEALING WITH HERE TO KNOW WHAT THEIR
13   ACTUAL INTENT WAS.  AND IT APPEARS THAT MAYBE THAT'S SOMETHING
14   THAT Y'ALL WANTED TO ADDRESS AS WELL.
15             MR. BURKE:  YES, JUDGE.  WHAT -- WE HAVE CONSISTENTLY
16   THROUGH THESE TALKS, OUR POSITION IS YOU CAN'T HAVE BOTH.
17             THE COURT:  RIGHT.
18             MR. BURKE:  AND THAT WE SHOULD REACH OUT TO THOSE
19   FOLKS AND SEE WHAT THEY WANT TO DO.  AND IF THEY WANT TO OPT
20   OUT, THEN WE SHOULD -- OUR POSITION IS THAT SHOULD BE HONORED.
21   IF THEY WANT A CLAIM, THEN THEY SHOULD GET THAT.
22             THE COURT:  AND THAT WOULD BE MY GENERAL THOUGHT, IS
23   IF WE CAN SOMEHOW DEFINE THE INTENT.  I KNOW SOME OF THESE KIND
24   OF RANGE KIND OF IN TERMS OF THE CLARITY OF WHAT WE'RE DEALING
25   WITH HERE AND THE CLARITY OF THE PERSON AND KIND OF THEIR
```

CIRCUMSTANCES.  BUT, AGAIN, WHEN YOU'RE DEALING WITH A PRO SE

PERSON THAT HAS A DIFFICULT TIME UNDERSTANDING EXACTLY, AS MUCH

AS WE TRY TO MAKE THIS AS CLEAR AS POSSIBLE, I THINK THAT PEOPLE

HAVE A REALLY HARD TIME SOMETIMES UNDERSTANDING WHAT THEY'RE

SUPPOSED TO.  AND IF THAT'S SOMETHING THAT WE CAN FERRET OUT,

ESPECIALLY GIVEN THE SMALL NUMBER OF THESE THAT WE'RE DEALING

WITH, THAT WOULD BE MY INCLINATION IS THE BEST WAY TO HANDLE

THOSE.  AND IF THERE IS SOME KIND OF ISSUE OR CONFLICT, I WOULD

BE HAPPY TO GET INVOLVED IN THOSE INDIVIDUALLY.  BUT IF WE CAN

SOMEHOW GET A LITTLE BIT MORE INFORMATION AS TO THEIR INTENT, I

THINK THAT THAT WOULD MAKE ME FEEL A LITTLE BIT MORE COMFORTABLE

ABOUT HOW WE HANDLE THOSE.  BUT I CERTAINLY AGREE THAT THEY

CAN'T BE BOTH.  WE DO NEED AN OPPORTUNITY TO KIND OF LOOK AT

THOSE A LITTLE CLOSER.

        BUT I WILL ALSO SAY, MR. LYNCH, IF WE START GETTING A LOT

OF THESE AND A PROBLEM, THEN I WOULD BE WELCOME TO HEAR YOUR

ARGUMENT ON THOSE INDIVIDUALLY AND TO DEAL WITH THEM.  BUT IF

THERE'S JUST A FEW AND WE CAN ASCERTAIN THE INTENT, THAT WOULD

BE MY GENERAL FEELING OF HOW WE WANT TO HANDLE THOSE.  BUT IF

YOU WANT TO ARGUE ABOUT THEM SPECIFICALLY, THEN I'M HAPPY TO DO

THAT BECAUSE I DON'T WANT YOU TO KIND OF WAIVE YOUR RIGHTS ON

THIS BASED ON MY GENERAL IDEA OF KIND OF THE COURSE OF CONDUCT

AND WHAT WE'RE DEALING WITH WHEN I HAVEN'T HAD A CHANCE TO LOOK

AT THOSE.

        MR. LYNCH:  COMPLETELY UNDERSTAND, JUDGE, AND I THINK

```
 1   AS A FIRST STEP TRYING TO DISCOVER THE TRUE INTENT MAKES A LOT

 2   OF SENSE.

 3            THE COURT:  OKAY.

 4            MR. SELBIN:  I'D EXPECT WE CAN WORK THIS OUT.

 5            MR. LYNCH:  SO DO I.

 6            THE COURT:  OKAY.

 7            MR. SELBIN:  AND NOT BOTHER THE COURT WITH IT.

 8            THE COURT:  OKAY.  WELL, THAT SOUNDS FINE WITH ME.  I

 9   THINK WE'RE KIND OF ALL ON THE SAME PLACE ON THAT.  AND WHAT I

10   ALSO WANT TO SAY BEFORE WE MOVE TO THE ATTORNEY'S FEES AND COST

11   OF SERVICE AWARDS, IF I HAVEN'T MENTIONED IT ALREADY, I HAVE HAD

12   A CHANCE TO REVIEW THE PLEADINGS THAT WERE FILED AND LOOK AT THE

13   MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT AND ALL THE

14   ELEMENTS.  AND I DIDN'T FIND ANYTHING IN THE BRIEFING THAT WAS

15   MISSING IN TERMS OF YOU NEEDING TO MAKE AN ADDITIONAL

16   PRESENTATION ON IT.  AND I ALSO REVIEWED THE OBJECTIONS, AND I

17   THINK IT IS A FAIR CHARACTERIZATION TO SAY THAT THEY DEAL WITH

18   THE ATTORNEY'S FEES ISSUES AND THE AMOUNT TO BE PAID TO THE

19   CLASS REPS.  THERE WERE SOME MORE KIND OF OVERALL COMPLAINTS

20   ABOUT WELLS FARGO AND BEHAVIOR, BUT I ALSO AGREE THAT THOSE WERE

21   BASICALLY DEALING WITH ISSUES THAT AREN'T RELATED TO THE

22   T.C.P.A. RELATED CLAIMS.  THEY KIND OF HAD BIGGER PROBLEMS WITH

23   WELLS FARGO OR THEY JUST WERE KIND OF GENERALLY, THIS ISN'T

24   ENOUGH MONEY, BUT MAYBE NOT MADE IN A TOTALLY COHERENT MANNER.

25   BUT I DO THINK THAT REALLY THE BULK OF WHAT WE'RE DEALING WITH
```

1    HAS TO DO WITH THE ATTORNEY'S FEES.  AND I THINK IT'S

2    APPROPRIATE TO MAKE KIND OF A GREATER SHOWING ON THAT ON THE

3    RECORD BECAUSE THAT'S WHAT REALLY WE'RE DEALING WITH.  BUT I DO

4    THINK I DON'T REALLY NEED TO HEAR ANYTHING ELSE ON THE RECORD AS

5    TO THE AMOUNT OF SETTLEMENT AND KIND OF THESE LOGISTICAL ISSUES

6    THAT I THINK WE'VE ALREADY TALKED ABOUT.

7        SO, WITH THAT, I THINK IT'S FINE, MR. SELBIN, TO MOVE TO

8    THE ATTORNEY'S FEES, COST AND CLASS REP ISSUE AND TO KIND OF

9    WEAVE YOUR RESPONSE TO THE OBJECTIONS INTO THAT.

10       AND, MR. FROELICH, AFTER MR. SELBIN IS DONE, THEN I'LL GIVE

11   YOU AN OPPORTUNITY TO MAKE YOUR ARGUMENT ON BEHALF OF YOUR

12   CLIENT SPECIFICALLY.

13       AND, MR. SELBIN, IF YOU WANT TO RESPOND TO THAT AS WELL,

14   I'LL GIVE YOU AN OPPORTUNITY TO DO THAT.  SO YOU CAN PROCEED

15   WITH THE SECOND MOTION.

16           MR. SELBIN:  THANK YOU, YOUR HONOR.  AND I WOULD NOTE

17   THAT I'VE BEEN DOING THIS ABOUT TWO DECADES AND I DON'T THINK

18   I'VE EVER HAD A CASE, CERTAINLY NOT MANY, WHERE THERE HAVE BEEN

19   SO FEW OBJECTIONS TO THE SETTLEMENT ITSELF, TO THE REALLY

20   SUBSTANTIVE MERIT SETTLEMENT OR WHETHER THERE WAS SOME SPECIFIC

21   PROBLEM WITH IT.  AND I THINK THAT SPEAKS VOLUMES AND I THINK

22   IT'S RELEVANT TO THE COURT'S ANALYSIS ON THE FEE ISSUE, WHICH IS

23   WHY I ALLUDE BACK TO THAT.  AS YOUR HONOR KNOWS, WE'VE SOUGHT A

24   30 PERCENT FEE AWARD HERE ON THE COMMON FUND THEORY.  THAT

25   INCLUDES COSTS.  IT'S NOT 30 PERCENT PLUS COSTS.  AND THE TOTAL

1    AMOUNT IS 4.925 MILLION AND A FEW EXTRA DOLLARS ON THE END OF

2    THAT.  ONE VERY IMPORTANT THRESHOLD POINT I WANT TO MAKE IS THAT

3    THIS IS NOT A SETTLEMENT THAT INCLUDES ANYTHING LIKE A CLEAR

4    SAILING CLAUSE.  WE HAD NO AGREEMENT WITH WELLS FARGO AS TO THE

5    AMOUNT OTHER THAN WE -- THAN WE WOULD MAKE A PETITION TO THE

6    COURT.  SO THERE IS NO CLEAR SAILING AGREEMENT HERE WITH RESPECT

7    TO THE FEES.  AS WE BRIEFED, THE ELEVENTH CIRCUIT IN THE

8    CAMDEN I CASE IDENTIFIED 20 TO 30 PERCENT AS THE RANGE IN WHICH

9    THE MAJORITY OF COMMON AWARDS -- COMMON BENEFIT AWARDS FALL.

10   AND IN THE WATERS CASE, THE ELEVENTH CIRCUIT CALLED THAT 20 TO

11   30 PERCENT THE BENCHMARK.  SO WHILE SOME COURTS, THE

12   NINTH CIRCUIT, FOR EXAMPLE, SAYS 25 PERCENT IS THE BENCHMARK,

13   THE ELEVENTH CIRCUIT HAS EXPRESSLY SAID 20 TO 30 PERCENT RANGE

14   IS THE BENCHMARK FOR FEES IN A COMMON FUND CASE.

15        PROFESSOR MILLER -- AND WE SUBMITTED HIS DECLARATION, AND

16   HE IS THE MILLER IN EISENBERG & MILLER WHO HAVE WRITTEN

17   EXTENSIVELY FOR MANY, MANY YEARS THE LEADING ACADEMICS ON

18   ATTORNEY'S FEES -- SUBMITTED A DECLARATION.  AS HE NOTED, AWARDS

19   OF 30 PERCENT AND HIGHER ARE COMMON IN THIS CIRCUIT.  AND HIS

20   DATA SPECIFICALLY SHOWS HE'S REVIEWED ALL OF THE CASES WITHIN

21   THE ELEVENTH CIRCUIT FEDERAL COURT, AND THERE IS A 30 PERCENT

22   MEAN FEE AND A 33 PERCENT MEDIAN FEE.  NOW, THAT'S NOT BROKEN

23   OUT BY WHETHER COSTS ARE INCLUDED OR NOT.  I SUSPECT THERE'S A

24   MIX IN THERE OF WHETHER THAT'S 30 PERCENT PLUS COST, 30 PERCENT

25   COST INCLUDED.  HERE WE'RE SEEKING 30 PERCENT COST INCLUDED.

```
 1   AND THAT'S IN THE MILLER DECLARATION AT PARAGRAPH 42.  THAT'S
 2   NOT ANY DIFFERENT IN T.C.P.A. CASES.  IT IS TRUE THAT IN SOME OF
 3   THE LARGER BANK CASES, THE CAP ONE CASE, THE H.S.B.C. CASE, THE
 4   BANK OF AMERICA CASE, THE PERCENTAGES WERE LOWER, BUT THERE'S
 5   SOME VERY IMPORTANT CAVEATS THAT I WANT TO BRING TO THE COURT'S
 6   ATTENTION ABOUT THOSE CASES AND WHY THEY'RE DIFFERENT AND WHY WE
 7   DON'T THINK THEY APPLY HERE.
 8       FIRST AND MOST OBVIOUSLY, THEY WERE CITED UNDER DIFFERENT
 9   CIRCUIT LAW, AND THE CIRCUITS VARY TREMENDOUSLY IN HOW THEY
10   TREAT ATTORNEY'S FEES IN A COMMON FUND CASE.  THE CAP ONE AND
11   H.S.B.C. CASES WERE CITED UNDER SEVENTH CIRCUIT LAW.  THE BANK
12   OF AMERICA CASE WAS DECIDED UNDER NINTH CIRCUIT LAW.  AS I
13   NOTED, THE NINTH CIRCUIT HAS A HARD-AND-FAST 25 PERCENT
14   BENCHMARK RULE AND A MANDATED LODESTAR CROSS CHECK.  AND THE
15   ELEVENTH CIRCUIT, OF COURSE, NOT ONLY DOESN'T MANDATE A LODESTAR
16   CROSS CHECK, THERE'S REALLY NOT MUCH DISCUSSION OF THE NEED FOR
17   ONE.  AND, IF ANYTHING, THERE'S DISCUSSION ABOUT HOW THAT SIMPLY
18   REINTRODUCES SOME OF THE INEFFICIENCIES OF THE LODESTAR METHOD
19   THAT YOU TRY TO AVOID BY GOING TO A PERCENTAGE OF THE FUND
20   METHOD.
21       THE OTHER THING IS THAT THOSE WERE MUCH BIGGER SETTLEMENTS
22   IN EVERY INSTANCE.  THE CAP ONE CASE WAS $75.5 MILLION
23   SETTLEMENT.  THE H.S.B.C. WAS 40 MILLION.  THE BANK OF AMERICA
24   WAS 32 MILLION.  AND IT IS OFTEN THE CASE, ALTHOUGH NOT EVERY
25   CIRCUIT DOES THIS EITHER, THAT THE HIGHER THE CASH VALUE, THE
```

```
 1   LOWER THE PERCENTAGE THE COURTS TYPICALLY AWARD IN TERMS OF

 2   ATTORNEY'S FEES.

 3        SO, FOR EXAMPLE, IN THE CAP ONE CASE, AND THAT'S PROBABLY

 4   THE MOST LENGTHY OPINION THAT ADDRESSES THESE ISSUES, THE COURT

 5   ACTUALLY ENDED UP DOING A BLENDED AWARD WHERE THE COURT DECIDED

 6   THAT IT WOULD AWARD 30 PERCENT OF THE FIRST 10 MILLION,

 7   25 PERCENT OF THE NEXT 10 MILLION, AND SO ON.  AND THEN IT

 8   ACTUALLY PUT IN A RISK PREMIUM ON THE FIRST 10 MILLION.  SO AT

 9   THE END OF THE DAY, THE CAP ONE JUDGE, JUDGE HOLDERMAN, AWARDED

10   36 PERCENT OF THE FIRST 10 MILLION IN RECOVERY FOR THE CLASS,

11   AND THEN 25 PERCENT FOR THE NEXT 10 MILLION, AND SO ON.  SO

12   THOSE ARE CASES WHERE, IF YOU LOOK AT THE VALUE OF THIS

13   SETTLEMENT AT $16.4 MILLION, IN FACT UNDER JUDGE HOLDERMAN'S

14   ANALYSIS IN THE CAP ONE CASE, 30 PERCENT FITS RIGHT IN THERE IN

15   TERMS OF AN APPROPRIATE AWARD GIVEN WHAT HE DID THERE.

16        AS WE ALSO NOTED, THERE ARE TWO RECENT IN-CIRCUIT CASES

17   AWARDING THIRTY-THREE-AND-A-THIRD PERCENT, THE SOTO VS. GALLUP

18   ORGANIZATION CASE FROM THE SOUTHERN DISTRICT OF FLORIDA, AND THE

19   GUARIZMA (PHONETIC) CASE -- I HOPE I'M PRONOUNCING THAT RIGHT --

20   ALSO FROM THE SOUTHERN DISTRICT OF FLORIDA.  WE ALSO PUT IN

21   FRONT OF YOUR HONOR MY FIRM AND SOME OF THE OTHER FIRM'S

22   RECENTLY OBTAINED FINAL APPROVAL OF TWO SETTLEMENTS IN THE

23   NORTHERN DISTRICT OF ILLINOIS, ONE INVOLVING STATE FARM, THE

24   OTHER INVOLVING AMERICAN EXPRESS.  IN EACH OF THOSE THE COURT

25   AWARDED THIRTY-THREE-AND-A-THIRD PERCENT ON T.C.P.A. SETTLEMENT.
```

ONE OF THOSE SETTLEMENTS WAS A SEVEN-MILLION-DOLLAR SETTLEMENT,
ONE OF THOSE WAS A $9.25 MILLION SETTLEMENT.  SO IT IS NOT
CORRECT TO SAY, AS SOME OF THE OBJECTORS SAY, PARTICULARLY
MR. BANDAS, THAT THIS IS AN OUTSIZED FEE AWARD IN THE CONTEXT OF
T.C.P.A. CASES.

     I WANT TO ADDRESS ALSO HERE THE RISK ISSUE, AND I'M GOING
TO COME BACK TO THE JOHNSON FACTORS, BUT IT STRIKES ME AS VERY
IMPORTANT TO ADDRESS HERE THE RISK THAT WE FACED IN THIS CASE
BECAUSE IT MAY SEEM -- AND CERTAINLY MR. BANDAS ARGUES THAT
THESE ARE SLAM DUNK CASES, THAT YOU JUST FILE THE CASE AND BIG
BANKS PAY LOTS OF MONEY TO SETTLE THEM.  BUT THAT'S NOT TRUE IN
GENERAL AND IT'S REALLY NOT TRUE HERE.  AS WE PUT IN OUR
BRIEFING, THERE HAVE BEEN MANY YEARS IN THIS CASE AND RELATED
CASES WHERE WE'VE LITIGATED AGAINST WELLS FARGO OVER THESE
T.C.P.A. ISSUES.  WE HAVE FACED MOTIONS TO COMPEL ARBITRATION
THAT WE BEAT.  WE HAVE FACED MOTIONS TO DISMISS THAT WE'VE BEAT.
AND SO THOSE APPLY IN ANY T.C.P.A. CASE AND THEY WERE RISKS
HERE.  BUT THE TIMING HERE IS OF PARTICULAR IMPORTANCE GIVEN THE
SUPREME COURT.  THE EARLIEST OF THESE COMPLAINTS WAS FILED IN
APRIL OF 2015.  THAT SAME MONTH, TWO WEEKS LATER, THE SUPREME
COURT GRANTED CERT IN THE SPOKEO CASE, WHICH, IF IT HAD GONE
AGAINST US ON THE STANDING ISSUE, WOULD HAVE RESULTED IN A ZERO
RECOVERY IN THIS CASE.  TWO WEEKS AFTER THAT, THE SUPREME COURT
GRANTED CERT IN THE CAMPBELL-EWALD CASE, WHICH HAD TO DO WITH
OFFERS OF JUDGMENT AND WHETHER YOU COULD MOOT A CLASS CASE BY

```
 1   MAKING AN OFFER OF JUDGMENT TO THE NAMED CLASS REPRESENTATIVES.
 2   THAT AFFECTED US BECAUSE WE HAD OFFERS OF JUDGMENT HERE FROM
 3   WELLS FARGO TO THE NAMED PLAINTIFFS.  AND IF THOSE HAD BEEN
 4   EITHER ACCEPTED OR REJECTED AND IF CAMPBELL-EWALD HAD COME DOWN
 5   DIFFERENTLY, THE ENTIRE CASE WOULD HAVE GONE AWAY.  A MONTH
 6   AFTER THAT THE SUPREME COURT GRANTED CERT IN THE TYSON -- THE
 7   TYSON'S CASE WHICH ADDRESSED CLASS CERTIFICATION STANDARDS AND
 8   WAS WIDELY VIEWED AS A POTENTIAL GAME CHANGER IN TERMS OF
 9   GETTING CLASSES CERTIFIED OF ANY KIND.  ALL OF THOSE, ALL OF
10   THAT HAPPENED WITHIN TWO MONTHS OF THIS CASE BEING FILED AND ALL
11   OF THOSE WERE PENDING WHILE WE LITIGATED THIS CASE AND
12   ULTIMATELY SETTLED IT.
13       THERE WAS ONE OTHER ISSUE THAT WAS ON THE TABLE AT THAT
14   TIME.  A MONTH AFTER THE TYSON GRANT IN JULY OF 2015, A PETITION
15   WAS FILED BY MANY BIG DEFENDANTS WITH THE D.C. CIRCUIT TO REVIEW
16   THE F.C.C. RULINGS THAT INTERPRET THE T.C.P.A., AND THOSE
17   RULINGS HAD GENERALLY BEEN PLAINTIFF-FRIENDLY AT THE F.C.C.
18   LEVEL.  AND THEY WERE BEING CHALLENGED IN THE D.C. CIRCUIT, AND
19   THAT'S STILL PENDING.  SO ALL OF THOSE CASES PROVIDED VERY REAL
20   RISK TO WHETHER WE COULD RECOVER ANYTHING IN THIS CASE ON BEHALF
21   OF THE CLASS.  AND I CAN TELL YOU HAVING BEEN AT THE MEDIATION
22   WITH HUNTER HUGHES, THAT THAT RISK WAS VERY REAL TO US, THAT WE
23   WOULD SIMPLY RECOVER NOTHING.  IN THAT CONTEXT HAVING RECOVERED
24   $16.4 MILLION ON THE HIGH END OF THE DOLLAR PER UNIQUE CELL
25   PHONE NUMBER RANGE, I SUBMIT IS A TERRIFIC OUTCOME THAT WE
```

1    OBTAINED FOR THE CLASS.

2        TURNING TO THE JOHNSON FACTORS, AND I'VE ADDRESSED THESE A

3    LITTLE BIT ALREADY, BUT I WANT TO WALK THROUGH THEM IN THE

4    CONTEXT OF JOHNSON VERY BRIEFLY.  AS I READ THE ELEVENTH CIRCUIT

5    LAW, IF THE COURT'S GOING TO CONSIDER GOING OUTSIDE THE RANGE OF

6    20 TO 30 PERCENT, IT HAS TO CONSIDER THE JOHNSON FACTORS.  I

7    THINK THEY'RE ALSO RELEVANT EVEN IF THE COURT IS JUST

8    CONSIDERING WITHIN THAT RANGE, BUT EITHER WAY THEY'RE RELEVANT

9    TO THE COURT'S ANALYSIS.

10       FIRST JOHNSON FACTOR, THE VALUE, AS I'VE INDICATED, THE

11   RESULT COMPARES VERY FAVORABLY HERE WITH ALL OF THE OTHER LARGE

12   BANK DEBT COLLECTION CASES.  I BELIEVE IT'S THE LARGEST PER

13   UNIQUE CELL PHONE NUMBER AT $4.95.  IT'S CERTAINLY HIGHER THAN

14   THE OTHER BIG ONES, THE H.S.B.C., THE CAP ONE, AND THOSE CASES

15   WHICH OFTEN AND TYPICALLY SETTLE IN THE 3- TO $4 RANGE.

16       SECOND, THE CASE RESULTED FROM MANY YEARS OF A LONG

17   COORDINATED MULTI-CASE, MULTI-JURISDICTION EFFORT ON BEHALF OF

18   THE LAWYERS WHO ARE BEFORE YOUR HONOR TO HOLD WELLS FARGO

19   ACCOUNTABLE FOR ITS T.C.P.A. VIOLATIONS.  AS I THINK YOUR HONOR

20   KNOWS, THERE'S OTHER CASES PENDING IN OTHER COURTS HERE IN THIS

21   DISTRICT.  THERE WAS A CASE IN CALIFORNIA.  THERE HAVE BEEN MANY

22   OTHER CASES THAT WE'VE BEEN INVOLVED WITH AS PART OF THAT

23   COORDINATED EFFORT ACROSS MULTIPLE LINES OF BUSINESS.  AND IT'S

24   THAT EFFORT THAT ENABLED US, WE THINK, TO SECURE A RELATIVELY

25   QUICK SETTLEMENT IN THIS LITIGATION.

THE COURT:  AND THAT'S A QUESTION I WANTED TO ASK YOU

ABOUT BECAUSE I THINK IT CUTS BOTH DIRECTIONS.  IT CUTS IN TERMS

OF, YES, YOU COME TO IT WITH EXPERIENCE AND YOU KIND OF KNOW

WHAT YOU'RE DOING IN THESE CASES, BUT IT SEEMS TO BE THAT

THERE'S ALSO A CONCERN FOR DOUBLE RECOVERY OF FEES IN THAT

YOU'RE GETTING PAID FOR THIS WORK IN ALL THESE DIFFERENT CASES

SO THAT YOU CAN'T CHARGE A CLIENT FOR DOING WORK THAT YOU'VE

ALREADY DONE IF YOU CAN USE IT IN ANOTHER CASE.  SO EXPLAIN HOW

THAT FACTOR DOESN'T CUT THAT OTHER DIRECTION AS WELL.

                MR. SELBIN:  SURE.  I THINK IT'S A VERY GOOD QUESTION.

I THINK THERE'S TWO ANSWERS.  I THINK -- I THINK ONE ANSWER IS

WHAT PROFESSOR MILLER SAYS IN HIS DECLARATION, WHICH IS THAT

GOOD GOLFERS GET A HANDICAP BECAUSE THEY'VE DONE VERY WELL, AND

SO THEY PLAY WITH A HANDICAP THE NEXT TIME THEY PLAY.  THAT'S

NOT HOW LAWYERING WORKS.  AND SO THE FACT THAT WE'VE DONE A GOOD

JOB IN PREVIOUS CASES, WHETHER WELLS FARGO SPECIFIC OR

MORE GENERALLY, DOESN'T MEAN THAT WE SHOULD GET LESSER AWARD IN

A CASE BECAUSE WE'VE DONE WELL ON BEHALF OF OUR CLIENTS IN OTHER

CASES.  BUT MORE SPECIFICALLY HERE, THE DOUBLE DIPPING CONCERN

WOULD ONLY APPLY IN THEORY IF WE WERE SEEKING PAYMENT ON A

LODESTAR MULTIPLIER BASIS AND WE WERE PUTTING LODESTAR INTO

MULTIPLE CASES THAT WAS DUPLICATIVE.

            SO TWO ISSUES.  NUMBER ONE, IN ALL OF THESE CASES WE'RE

SEEKING A PERCENTAGE OF THE FUND RECOVERY BECAUSE THESE ARE

LARGE NON-REVERSIONARY CASH FUNDS.  WE'RE NOT SEEKING RECOVERY

BASED ON ANY GIVEN HOUR OF WORK THAT WE DID.  WE'RE SEEKING
RECOVERY UNDER THE COMMON FUND DOCTRINE WHICH SAYS THAT THE BEST
MEASURE OF WHAT WE'VE DONE IS THE RESULT WE GOT FOR THE CLASS IN
ABSOLUTE DOLLAR TERMS.  SO WE'RE NOT SEEKING A DOLLAR HERE THAT
WE'RE ALSO SEEKING AS A DOLLAR IN ANOTHER CASE IN THIS COURT OR
IN A PREVIOUS CASE.

THE SECOND THING IS, TO THE EXTENT WE DO PUT OUR LODESTAR
INTO ANY OF THESE CASES, SO, FOR EXAMPLE, THE NINTH CIRCUIT
CASES YOU HAVE TO PUT YOUR LODESTAR IN FOR PURPOSES OF CROSS
CHECKING, WE'RE NOT DOUBLE COUNTING ANY OF THAT TIME.  WE KEEP
DISTINCT RECORDS THAT DISTINGUISHES BETWEEN THE TIME THAT WE PUT
INTO THE MORTGAGE CASE BEFORE YOUR HONOR AND THE -- THE DEPOSIT
LINE CASE AND THE STUDENT LOAN CASE, THAT TIME IS ALL KEPT
DISTINCT.  SO WE ARE NOT SEEKING DOUBLE RECOVERY.  EVEN IF WE
WERE TO PUT IN OUR LODESTAR, WE WOULD SEPARATELY SUBMIT THE
LODESTAR FOR EACH CASE TO ENSURE THAT WE'RE NOT -- THERE'S NO
DUPLICATION OF THOSE HOURS.

THE THIRD FACTOR IS THE ATTORNEY'S ABILITY AND REPUTATION,
EXPERIENCE, AND I -- WE'VE ALREADY TALKED ABOUT THAT -- THE
CONTINGENT NATURE OF THE LITIGATION AND THE RISK THAT EXISTS.
I'VE ALREADY WALKED THROUGH THAT -- THE SPOKEO, THE
CAMPBELL-EWALD, THE TYSON, THE D.C. CIRCUIT PETITION -- VERY
REAL RISK TO THIS CASE SPECIFICALLY, NOT TO MENTION THE GENERAL
RISK ASSOCIATED WITH ANY CLASS ACTION, GETTING IT CERTIFIED,
MAINTAINING THAT ON APPEAL, WINNING JUDGMENT, ALL OF THE USUAL

1   THINGS.  AND WE HAVE LOST EACH OF THOSE IN OTHER T.C.P.A. CASES.

 2   NOT EVERY T.C.P.A. CASE IS WON.  NOT EVERY T.C.P.A. CASE

 3   SETTLES.  I CAN TELL YOUR HONOR WE HAVE LOST MOTIONS TO COMPEL

 4   ARBITRATION THAT HAVE ENDED CASES.  WE HAVE LOST MOTIONS FOR

 5   CLASS CERTIFICATION THAT HAVE ENDED CASES.  NOT EVERY CASE IS A

 6   WINNER IN THAT REGARD.

 7        FIFTH, AS WE'VE DISCUSSED -- OR AS I'VE DISCUSSED, THE

 8   REQUESTED FEE COMPORTS WITH FEES IN OTHER T.C.P.A. CASES OF THIS

 9   SIZE.  AND WE THINK TOGETHER ALL OF THOSE FACTORS AMPLY SUPPORT

10   THE 30 PERCENT AWARD THAT WE'RE SEEKING HERE.  MR. BANDAS RAISES

11   THE LODESTAR CROSS CHECK ISSUE.  CERTAINLY THE COURT HAS THE

12   DISCRETION TO ASK US TO SUBMIT OUR LODESTAR AND COSTS, BUT THE

13   ELEVENTH CIRCUIT DOESN'T REQUIRE IT, AND A NUMBER OF COURTS HAVE

14   NOTED THAT DOING A LODESTAR CROSS CHECK REINTRODUCES ALL OF THE

15   PROBLEMS THAT THE COURT SOUGHT TO AVOID IN A COMMON FUND CASE BY

16   USING THE COMMON FUND FEE DOCTRINE, THE PERCENTAGE DOCTRINE.

17   AND IT DOESN'T ADVANCE THE POLICY BEHIND THAT, WHICH IS, OF

18   COURSE, TO MEASURE THE RESULT OBTAINED AND THE VALUE OF THE

19   SERVICES THAT GOT IT BASED ON HOW YOU DID FOR YOUR CLASS.  AND

20   WE THINK THAT'S THE BEST MEASURE AND WE THINK THAT'S EXACTLY

21   WHAT THE ELEVENTH CIRCUIT HAS SAID IS THE BEST MEASURE.  YOU DO

22   WELL ON FEES BY DOING GOOD FOR YOUR CLASS.  AND THE BIGGER THE

23   SETTLEMENT YOU OBTAIN, THE BIGGER YOUR FEE.  AND BY GOING INTO A

24   LODESTAR CROSS CHECK AND REDUCING DOWN FROM THAT NUMBER IS NOT

25   MANDATED BY THE ELEVENTH CIRCUIT.  AND WE DON'T THINK THERE'S

```
 1   ANY BASIS PARTICULARLY IN A CASE LIKE THIS.  YOU OFTEN HEAR
 2   ABOUT CLASS ACTIONS AND OBJECTORS LIKE TO CITE THEM WHERE
 3   THERE'S A REVERSION TO THE DEFENDANT, SO THE NUMBER FOR THE
 4   CLASS IS PHONY.  IF EVERYBODY CLAIMED, IT WOULD BE A
 5   BILLION-DOLLAR SETTLEMENT.  BUT FIVE PEOPLE CLAIM, AND SO IT'S A
 6   NO VALUE SETTLEMENT.  AND THE ATTORNEYS SAY, WELL, BUT WE
 7   CREATED A BILLION DOLLARS WORTH OF VALUE, WE SHOULD GET THE FULL
 8   VALUE OF THAT.
 9       NOW, THE ELEVENTH CIRCUIT ACTUALLY SAYS THAT'S WHAT YOU'RE
10   SUPPOSED TO DO, YOU'RE SUPPOSED TO TAKE THE VALUE MADE AVAILABLE
11   TO THE CLASS.  BUT YOU DON'T HAVE TO DO THAT HERE BECAUSE THIS
12   IS A NON-REVERSIONARY FUND.  ALL OF THIS MONEY WILL GO OUT TO
13   THE CLASS.  THERE'S A FIRST DISTRIBUTION TO EVERYBODY.  IF
14   THERE'S UNCASHED CHECKS AND YOU CAN SEND OUT A DOLLAR OR MORE TO
15   PEOPLE, YOU SEND OUT A SECOND ROUND.  ONLY AT THE END OF THE DAY
16   IF THERE'S ANY MONEY LEFT OVER DOES ANY MONEY GO TO CY-PRES --
17   TO HABITAT FOR HUMANITY IS THE PROPOSED CY-PRES RECIPIENT HERE.
18   SO WE THINK IN LIGHT OF ALL THAT, WE THINK THE LODESTAR CROSS
19   CHECK IS NOT NECESSARY.
20       THE CASES THAT MR. BANDAS CITED, I THINK HE PUT THEM IN HIS
21   RESPONSE TO THE MOTION TO QUASH OR MAYBE THE REPLY ON THE MOTION
22   TO QUASH, SO WE DIDN'T HAVE A CHANCE TO RESPOND TO THEM.  HE
23   CITED AN INGRAM (PHONETIC) CASE FROM THE NORTHERN DISTRICT OF
24   GEORGIA, 2001.  THAT SETTLEMENT WAS A MIX OF CASH AND NON-CASH
25   RELEASE -- RELIEF.  EXCUSE ME.  AND COUNSEL IN THAT CASE
```

NEGOTIATED A FEE BELOW 25 PERCENT.  HE CITES THAT AS AN EXAMPLE

OF A CASE WHERE LESS THAN 30 PERCENT WAS AWARDED.  CLASS COUNSEL

NEGOTIATED A FEE THAT WAS BELOW 25 PERCENT THERE.

IN THE SUNBEAM SECURITIES LITIGATION CASE FROM THE SOUTHERN

DISTRICT OF FLORIDA, THE COURT DID A LODESTAR CROSS CHECK, BUT

THAT WAS ONLY BECAUSE CLASS COUNSEL SUBMITTED TIME OR WAS

CLAIMING THE BENEFIT OF WORK FOR AN ENTIRE CASE WHEN ONLY PART

OF THE CASE HAD SETTLED.  AND THE COURT WANTED TO SEE, WELL, HOW

MUCH WORK WENT INTO THE PART THAT SETTLED AND HOW MUCH OF THE

WORK WENT INTO THE PART THAT'S STILL GOING ON.  THE COURT

ACTUALLY DID THE LODESTAR CROSS CHECK, BUT DIDN'T BOTHER TO

CALCULATE THE MULTIPLIER THERE.  IT DECIDED 25 PERCENT WAS A

BETTER FEE THAN 30 PERCENT BECAUSE THE WHOLE CASE HADN'T

SETTLED.  WE DON'T THINK THAT'S RELEVANT HERE BECAUSE THAT'S NOT

OUR SITUATION.

MR. BANDAS RAISES A POINT ABOUT THE COURT SUPERVISING FEE

ALLOCATION AMONG PLAINTIFFS' LAWYERS.  THE CASE LAW IS VERY

CLEAR THAT, ABSENT A DISPUTE THAT REQUIRES THE COURT'S

INTERVENTION -- DISPUTE BETWEEN PLAINTIFFS' COUNSEL, NOT FROM AN

OBJECTOR -- ABOUT HOW THE FEE SHOULD BE ALLOCATED, THE FEE

ALLOCATION AMONG COUNSEL IS A MATTER OF PRIVATE AGREEMENT THAT

WE'RE ENTITLED TO MAKE AMONGST OURSELVES.  AND THAT'S IN PART

BECAUSE WE'RE THE ONES WHO KNOW WHO BROUGHT WHAT TO THE TABLE IN

TERMS OF EXPERIENCE, IN TERMS OF CLIENTS, IN TERMS OF PARTICULAR

EFFORT IN A CASE.  I BELIEVE ALL OF THE CASES THEY CITE INVOLVE

SITUATIONS WHERE THERE WAS A DISPUTE AMONG PLAINTIFFS' COUNSEL
THAT REQUIRED COURT INTERVENTION.  THEY ALSO DON'T EXPLAIN WHY
THE COURT GETTING INVOLVED IN THE FEE ALLOCATION IS OF ANY
BENEFIT TO THE CLASS, BECAUSE, OF COURSE, ONCE THE COURT AWARDS
THE FEE AMOUNT, THAT AMOUNT COMES OUT OF THE SETTLEMENT FUND.
AND HOW IT GETS ALLOCATED AMONG PLAINTIFFS' COUNSEL WON'T
BENEFIT THE CLASS OR AFFECT THE CLASS IN ANY WAY.

     JUST A COUPLE MORE POINTS ON THE FEE, REALLY JUST ONE.
MR. BANDAS ARGUES THAT THE NOTICE AND CLAIMS ADMINISTRATIVE COST
OUGHT TO COME OFF THE TOP BEFORE THE FEE IS CALCULATED.  THE
ELEVENTH CIRCUIT HAS NEVER HELD THAT THAT'S NECESSARY OR
APPROPRIATE.  THERE'S A SINGLE SEVENTH CIRCUIT CASE THAT SAYS
YOU HAVE TO DO IT.  IT'S THE REDMAN CASE.  IF YOUR HONOR'S NOT
FAMILIAR WITH THAT CASE, IT'S A PRETTY REMARKABLE SETTLEMENT IN
THAT CASE.  IT WAS A COUPON CASE, EFFECTIVELY NO NOTICE, A, YOU
KNOW, REVERSIONARY.  THERE WAS NO REAL VALUE TO THE SETTLEMENT
THAT WAS -- THAT WAS ASSURED THE WAY THERE IS HERE.  AND NO
OTHER CIRCUIT HAS ADOPTED THE REDMAN RULE.  THE NINTH CIRCUIT
HAS EXPRESSLY REJECTED IT.  THIS CASE HAS NONE OF THE PROBLEMS
FROM REDMAN.  IT'S AN ALL CASH NON-REVERSIONARY FUND, EXCELLENT
NOTICE AS EVIDENCED BY THE HIGH CLAIMS RATE, A HARD CAP ON COST
FOR THE CLAIMS ADMINISTRATOR, ALL THE BEST PRACTICES IN TERMS OF
HOW TO REDUCE THE COST OF NOTICE IN CLAIMS ADMINISTRATION WHILE
STILL PROVIDING OUTSTANDING NOTICE AND CLAIMS ADMINISTRATION.

     LAST ISSUE IS THE STIPENDS.  THE STIPENDS HERE ARE $20,000

EACH.  WE RECOGNIZE THAT THOSE ARE HIGHER THAN IN SOME OTHER

CASES, ALTHOUGH LOWER THAN IN SOME T.C.P.A. CASES.  THERE'S A

REASON THEY'RE HIGH HERE.  AS I INDICATED WHEN TALKING ABOUT THE

CAMPBELL-EWALD CASE, WELLS FARGO MADE SERIOUS OFFERS OF JUDGMENT

TO OUR INDIVIDUAL CLIENTS WHICH THEY COULD HAVE TAKEN AND MADE

MORE MONEY IF THEY HAD TAKEN THE INDIVIDUAL OFFERS OF JUDGMENT.

BY DECLINING THOSE OFFERS OF JUDGMENT, THEY ENSURED THAT THEY

COULD OBTAIN RELIEF FOR THE CLASS, AND THEY DID.  THEY OBTAINED

$16.4 MILLION FOR THE CLASS.  SO THEY DID EXACTLY WHAT THEY WERE

SUPPOSED TO DO, WHICH IS THEY PUT THE INTEREST OF THE CLASS

AHEAD OF THEIR OWN INDIVIDUAL INTERESTS.  AND WE THINK $20,000

IS AN APPROPRIATE AWARD IN LIGHT OF THE OFFER -- THE OFFERS OF

JUDGMENT WELLS FARGO MADE HERE.

    SO I DON'T BELIEVE I HAVE ANY OTHER ISSUES TO ADDRESS.  I

DON'T THINK IT'S WORTH GOING INTO ANY OF THE ISSUES WE'VE RAISED

ABOUT MR. BANDAS RELATED TO HIS HISTORY OF PROFESSIONAL

OBJECTIONS.  IT'S ALL IN THE PAPERS.  IF YOUR HONOR HAS

QUESTIONS ABOUT THAT, WE'RE HAPPY TO ADDRESS THAT.

        THE COURT:  OKAY.  AND I DON'T WANT TO TAKE THAT UP

TODAY, SO OKAY.

        MR. SELBIN:  OKAY.  GREAT.

        THE COURT:  OKAY.  WELL, AND I DON'T HAVE ANY MORE

QUESTIONS RIGHT NOW, BUT I MAY HAVE SOME ADDITIONAL QUESTIONS

AFTER I HEAR FROM OTHER COUNSEL.

    AND, MR. LYNCH, I APOLOGIZE.  I DIDN'T ASK YOU FOR YOUR

COMMENTS IN TERMS OF THE FIRST MOTION OR THE SECOND, SO AT THIS
TIME ANYTHING YOU WANT TO ADD.  I KNOW THAT WELLS FARGO WAS MOST
INTERESTED IN MAKING ARGUMENTS IN TERMS OF THE RISK KIND OF
PORTION ABOUT THIS AND THE UNSETTLED STATE OF THE LAW ON A LOT
OF THESE ISSUES, AND I DO WANT TO HEAR FROM YOU ON THAT IF YOU
WANT TO SAY ANYTHING.

        MR. LYNCH:  OKAY.  AND, JUDGE, FIRST OF ALL, WE DO
SUPPORT THE SETTLEMENT AND WE ARTICULATED THE VARIOUS RISKS THAT
BOTH SIDES HAD IN OUR PAPERS.  AND THERE WAS A SPOKEO RISK ON
STANDING.  THERE'S AN OFFER OF JUDGMENT RISK WHICH WE HAD IN THE
CAMPBELL-EWALD CASE.  THERE'S OBVIOUSLY A GENERAL RISK IN CLASS
ACTIONS, AS MR. SELBIN STATED, BOTH ON CONSENT, BOTH ON THE ORAL
REVOCATION PIECE, AND THEN CERTIFYING THE CLASS ACTION UNDER THE
T.C.P.A.  YOU KNOW, THERE'S DECISIONS GOING BOTH WAYS.  WE WERE
VERY AGGRESSIVE AND STRENUOUS IN OUR VIEWS OF THE CASE.  WE DID
HAVE SEVERAL SESSIONS WITH HUNTER HUGHES.  WE SUPPORT THE
SETTLEMENT.  WE BELIEVE THERE WAS RISK ON BOTH SIDES.

    WITH RESPECT TO THE ATTORNEY'S FEES, JUDGE, WELLS FARGO
BANK IS NOT GOING TO TAKE ANY POSITION ON THAT.

        THE COURT:  OKAY.

        MR. LYNCH:  THANK YOU, JUDGE.

        THE COURT:  THANK YOU VERY MUCH.

    MR. FROELICH.

        MR. FROELICH:  YES, YOUR HONOR.  YOUR HONOR, ONE OF
THE PLEADINGS FILED BY CLASS COUNSEL, THEY REFERRED TO ME AS A

CRIMINAL DEFENSE LAWYER.  I'VE ALSO DONE PLAINTIFF'S CLASS

ACTION WORK.  I'VE HAD TWO -- I'VE REVERSED, NOT THIS COURT, BUT

IN THIS DISTRICT COURT TWO DIFFERENT DISTRICTS (VERBATIM) HERE

IN CLASS ACTIONS AND WON THOSE, IN FACT ACTUALLY HAD, I THINK,

FOUR OR FIVE VICTORIES IN CLASS ACTIONS BEFORE IN THIS DISTRICT

AND OTHER DISTRICTS.

    THE -- ONE OF THE THINGS I'M GLAD COUNSEL KIND OF CORRECTED

IN THEIR FIRST -- ON PAGE ONE OF THEIR FIRST REQUEST FOR FEES,

IT SAID, MOREOVER, COURTS IN THIS CIRCUIT HAVE LONG HELD THAT

30 PERCENT OF THE COMMON FUND PLUS COSTS IS APPROPRIATE.  THEY

CITE WATERS VS. INTERNATIONAL PRECIOUS METALS CORP.  WELL, THAT

WAS -- THAT'S NOT WHAT THAT COURT SAID.  THE COURT SAID BETWEEN

20 TO 30 PERCENT IS WHAT -- AND I THINK THAT COUNSEL HAS

ADMITTED THAT NOW.  AND ALSO THAT CASE, I THINK, WENT FOR SEVEN

YEARS, OR FIVE OR SIX YEARS, AND WAS COMPLICATED.  THIS IS A

CASE, YOUR HONOR, WHEREIN I WOULD SUBMIT, FIRST OF ALL, THEY'RE

PER SE VIOLATIONS.  WHEN YOU DO THIS, IT'S A PER SE VIOLATION

AND YOU'RE LOOKING AT 500- AND $1500 IN -- FOR EACH VIOLATION.

SO THERE WAS A LOT OF MONEY THAT WAS ON THE TABLE.  THEN WE GET

AND WE FIND OUT THAT IT SETTLED FOR $24 BASICALLY.  AND WHEN YOU

VIEW THAT AS THE POTENTIAL -- NOW, I UNDERSTAND DOING CLASS

ACTION, DOING PLAINTIFF'S WORK, YOU MAY NOT BE ABLE TO NEGOTIATE

$500 OR $1500 OR WHATEVER IT IS, BUT 24 IS PRETTY LOW.  AND

THEN, YOUR HONOR, YOU HAVE TO LOOK AT -- AND I KNOW THEY'VE

TALKED ABOUT LODESTAR.  THE CLASS ACTIONS I'VE BEEN IN I'VE HAD

```
 1   TO -- BASICALLY I DID INFORM THE COURT OF MY -- YOU KNOW, THE
 2   HOURS THAT WERE PUT IN AND THEY WERE LONG, HARD-FOUGHT CLASS
 3   ACTIONS THAT HAVE ESSENTIALLY GONE TO THE ELEVENTH CIRCUIT,
 4   SOME -- ONE DID NOT, WHICH WERE SUCCESSFUL.  AND I NEVER GOT
 5   30 PERCENT.  BUT I THINK IN THIS SITUATION THERE WASN'T EVEN ANY
 6   DISCOVERY.  ACCORDING TO THEIR PAPERS, THERE WAS INFORMAL
 7   DISCOVERY, THE COMPLAINT IS FILED, THEY SIT DOWN, THEY GO RIGHT
 8   INTO MEDIATION.  AND I BELIEVE THE PAPERS SAY THERE WAS
 9   APPROXIMATELY -- I THINK IT'S 3100 AND 20 (VERBATIM) DOCUMENTS
10   OR SOMETHING LIKE THAT.  THOSE CAN GOT (VERBATIM) THROUGH IN --
11   YOU KNOW, A PARALEGAL CAN GET THROUGH THAT OR I CAN GET THROUGH
12   THAT VERY QUICKLY.  SO I DON'T THINK THERE'S A LOT OF WORK IN
13   THIS.  AND I DON'T THINK THAT, IN ADDITION, THAT THERE IS A LOT
14   OF, YOU KNOW, TIME THAT'S IN -- AND I DON'T THINK THAT THE --
15   THE CLASS, I THINK YOU WOULD HEAR A LOT MORE CLASS OBJECTIONS IF
16   THEY KNEW THEY -- YOU KNOW, THE $24 AS COMPARED TO 500- TO
17   $1500.  I WOULD NOT -- WE'RE NOT OBJECTING TO THE SETTLEMENT AS
18   WHOLE BECAUSE I SAY I UNDERSTAND THERE ARE RISKS AND THOSE
19   THINGS, BUT I DON'T -- I DON'T BELIEVE WHEN YOU LOOK AT WHAT THE
20   VALUE OF IT IS, THE $24, AND THE AMOUNT OF TIME THAT WAS PUT
21   INTO IT -- THERE'S AN ADMISSION -- I MEAN, IT'S -- I THINK THE
22   WHOLE CASE WENT 14 MONTHS BEFORE IT WAS SETTLED AND THERE WAS
23   NO -- NO DISCOVERY OR ANYTHING.  AND I THINK, YOU KNOW, THAT
24   WELLS FARGO SAW SOME RISK AND I THINK THEY SAW A LARGE RISK AND
25   THEY GOT A DEAL THAT THEY, YOU KNOW, THEY WOULD BE CRAZY NOT TO
```

```
 1   TAKE.  AND THAT'S -- THAT'S THE ARGUMENT.  AND I THINK THE COURT
 2   SHOULD CONSIDER THAT, THAT IT'S ONLY -- THAT IT WAS ONLY 14
 3   MONTHS.  THERE WAS NO DISCOVERY.  AND AS FAR AS THE RISKS TO
 4   THE -- AS TO THE CLASS REPRESENTATIVES, ON $20,000, THE OTHERS
 5   ARE GETTING $24 AND THEY'RE GETTING $20,000.  IF THERE HAD BEEN
 6   AN ARBITRATION PROVISION OR ANYTHING LIKE THAT AND THE CLASS HAD
 7   NOT BEEN CERTIFIED, THEY STILL HAD THEIR ACTIONS AND THEY HAD --
 8   AND, AS I SAY, THESE ARE PER SE VIOLATIONS.  AND SO I DON'T
 9   THINK THERE WAS REALLY THAT GREAT OF RISK TO THE CLASS
10   REPRESENTATIVES.  AND I BELIEVE A CLASS REPRESENTATIVE SHOULD
11   GET A LITTLE MORE, BUT YOU'RE IN A POSITION WHERE THEY WERE
12   NEVER DEPOSED.  THEY'RE NOT DEPOSED.  THEY DIDN'T DO ANYTHING.
13   THEIR NAME IS ON HERE AND THAT WAS BASICALLY IT.
14           THE COURT:  OKAY.  AND YOU HAD OTHER OBJECTIONS.  YOU
15   WANTED TO HAVE THE ATTORNEY'S FEE BILLING RECORD SUBMITTED TO
16   THE COURT, AS WELL AS HAVE THE COURT GET INVOLVED TO THE
17   ALLOCATION OF THE FEES --
18           MR. FROELICH:  YOUR HONOR, WE WITHDRAW THE
19   ALLEGATION -- I MEAN, THE -- YOU KNOW, HOW THE FEES ARE SPLIT.
20   WE WITHDRAW THAT.  BUT I THINK THAT THE COURT SHOULD GET THE
21   HOURS.  THAT'S WHAT I WAS SAYING, THAT I'VE ALWAYS HAD TO
22   REPRESENT TO THE COURT HOW MUCH TIME I PUT IN.  AND I ALWAYS DID
23   IT SO THE COURT KNEW, BUT, OF COURSE, I WAS IN CASES WHERE, YOU
24   KNOW, WE WENT THREE AND FOUR, FIVE YEARS AND WERE UP AND DOWN
25   BEFORE THE ELEVENTH CIRCUIT.  BUT I THINK THAT'S IMPORTANT FOR
```

```
1    THE COURT TO REALLY MAKE A DECISION ON -- THEY'RE ASKING FOR --

2    THAT'S -- THEY'RE ASKING FOR THE TOP OF $30,000 -- OF 30 PERCENT

3    ON PEOPLE WHO ARE GETTING $24.

4         THE COURT:  DID YOU WANT TO SPEAK TO THE ARGUMENT

5    ABOUT ONE OF THE REASONS WHY WE ALLOW CONTINGENCY FEE AND A

6    PERCENTAGE-BASED RECOVERY IS BECAUSE WE DON'T WANT TO ENCOURAGE

7    CLASS COUNSEL TO ENGAGE IN KIND OF NEEDLESS WORK TO RUN UP THE

8    FEES OR TO ENGAGE IN KIND OF LENGTHY FORMAL DISCOVERY WHEN IF

9    KIND OF THE WHOLE WAY THE FEDERAL COURT IS GOING IS TO ENCOURAGE

10   PARTIES TO GET TOGETHER EARLY TO EXCHANGE THE RELEVANT DOCUMENTS

11   THAT THEY NEED AND TO KIND OF ACT PROFESSIONALLY AND MATURELY

12   AND NOT JUST LITIGATE THE CASE INTO THE GROUND, BUT COME UP WITH

13   A GOOD SOLUTION BASED ON THE INFORMATION THEY NEED IS WHAT WE'RE

14   SUPPOSED TO KIND OF WANT THE PARTIES TO DO?

15        MR. FROELICH:  YES, YOUR HONOR.  AND I UNDERSTAND THAT

16   POSITION.  AND I THINK IN CASES WHERE YOU'VE GONE YEARS AND

17   YEARS AND YEARS, BUT WHEN YOU WALK INTO SOMETHING AND IT'S

18   SETTLED THAT QUICKLY AND YOU GO RIGHT INTO ARBITRATION AND YOU

19   HAVE SETTLEMENT AND YOU PUT A LOT OF LAWYERS IN IT, I THINK THAT

20   THE COURT SHOULD LOOK AT THE PERCENTAGE.  I DON'T KNOW IF YOU

21   REALLY NEED NINE MILLION LAWYERS OR TEN ON 20 LAWYERS, WHATEVER

22   YOU HAVE IN A CASE.  AND SO I THINK THAT YOUR HONOR SHOULD LOOK

23   AT IT.  I THINK IT IS A -- AN IMPORTANT -- TIME IS MONEY FOR A

24   LAWYER.  AND I DON'T THINK THAT YOU SHOULD JUST BE ABLE TO SAY,

25   YOU KNOW, I GET A PERCENTAGE OF THIS.  THAT'S DONE IN -- I KNOW
```

1    IN PERSONAL INJURY CASES AND CASES LIKE THAT, BUT WHERE THERE'S

2    A -- I THINK THERE'S A LOT MORE RISK.  AND THIS IS A PER SE

3    VIOLATION.  THIS WAS NOT -- I DON'T CONSIDER THIS -- I LOOKED AT

4    IT BEFORE I GOT IN IT, AND I -- THIS IS -- THIS IS -- YOU KNOW,

5    YOU -- THE CHANCES OF GETTING A CLASS WERE -- WERE VERY, VERY

6    GOOD.  I DON'T THINK -- AND I ALSO THINK THIS WAS A BENEFIT TO

7    THE BANK IN THAT THEY WERE ABLE TO, YOU KNOW, WRAP UP EVERYTHING

8    VERY QUICKLY.  AND SO I THINK THEY WERE -- THIS WAS A BENEFIT TO

9    BOTH PARTIES, BUT I THINK THE CLASS MEMBERS OF 24 PERCENT, $24,

10   I JUST THINK THAT, AGAIN, WE'RE NOT CHALLENGING THAT, BUT I

11   THINK THAT'S SOMETHING THE COURT SHOULD CONSIDER AND CONSIDER

12   WHEN THEY'RE ASKING FOR -- AND HOW SHORT IT WAS WHEN THEY'RE

13   ASKING FOR THE TOP OF -- THE TOP AMOUNT OF THE FEES AT

14   30 PERCENT.

15           THE COURT:  OKAY.  THANK YOU VERY MUCH.  I KNOW THAT

16   SOME PEOPLE -- YOU CAN BE SEATED, MR. FROELICH.

17           MR. FROELICH:  THANK YOU.

18           THE COURT:  I KNOW SOME PEOPLE HAVE COME IN SINCE WE

19   STARTED.  I JUST WANT TO MAKE SURE FOR THE RECORD WE DON'T HAVE

20   ANYBODY ELSE HERE WHO IS AN OBJECTOR OR APPEARING ON BEHALF OF

21   AN OBJECTOR.  OKAY.  I DIDN'T THINK SO, BUT JUST WANTED TO MAKE

22   SURE I'M NOT FORGETTING ANYONE.

23      SO, MR. SELBIN, IF YOU WANTED TO ADDRESS THOSE COMMENTS OF

24   MR. FROELICH.

25           MR. SELBIN:  THANK YOU, YOUR HONOR.  JUST VERY BRIEFLY

```
1    AND JUST A COUPLE OF THEM.  MR. FROELICH SAID A NUMBER OF TIMES
2    THESE ARE PER SE VIOLATIONS THAT ARE SIMPLE TO PROVE.  WOULD
3    THAT THAT WERE THE CASE, THERE ARE A WHOLE HOST THAT I'LL LET
4    MR. LYNCH ADDRESS WHAT THEY ARE.  THERE ARE A WHOLE HOST OF
5    PROBLEMS WITH PROVING THESE CLAIMS STARTING WITH WHETHER IT'S AN
6    AUTO DIALER, CONTINUING ON WITH WHETHER YOU GAVE CONSENT, WHAT
7    THE MEANING OF CONSENT IS.  SOME PEOPLE GAVE THEIR PHONE NUMBER
8    ON THEIR ORIGINAL APPLICATION WHICH SOME OF THOSE INCLUDED
9    CONSENT LANGUAGE.  SOME OF THESE PEOPLE LATER INFORMED THE BANK
10   THAT THEY SHOULD CALL THEM ON THIS CELL PHONE NUMBER.  IN FACT
11   HIS CLIENT, MS. YDE, WE LEARNED AT HER DEPOSITION, TESTIFIED
12   THAT THE ONLY PHONE SHE HAD AT THE TIME SHE TOOK OUT HER ACCOUNT
13   WITH WELLS FARGO IS HER CELL PHONE NUMBER, SO, OF COURSE, SHE
14   PUT THAT ON HER APPLICATION WHEN SHE TOOK OUT HER LOAN.  THAT'S
15   NOT A PER SE VIOLATION TO CALL THAT PERSON.  WE HAVE ARGUMENTS
16   ON MS. YDE'S BEHALF AS TO WHY SHE DID NOT CONSENT TO BE CALLED
17   VIA AN AUTO DIALER ON HER CELL PHONE, BUT THAT'S A TOUGH
18   INDIVIDUAL CLAIM THAT SHE HAS.  THEY HAVE VERY GOOD DEFENSES TO
19   THAT CLAIM.  SO IF THESE WERE AS EASY TO DO AS MR. FROELICH
20   SAYS, I AM SURE HE AND MR. BANDAS AND OTHERS WOULD BE FILING
21   THESE CASES ALL THE TIME AT 500- TO $1500 IN A PER SE VIOLATION
22   PER CALL.
23       HE ALSO INDICATED THAT THERE WOULD HAVE BEEN MORE
24   OBJECTIONS IF PEOPLE HAD KNOWN THEY WOULD GET $24.  WELL, THE
25   NOTICE TOLD PEOPLE THEY WOULD GET BETWEEN 25- AND $75.  SO
```

ACTUALLY PEOPLE DID KNOW WHAT THEY WERE GOING TO GET, AND SOME
OF THOSE PEOPLE DECIDED THEIR CLAIMS WERE MORE VALUABLE THAN
THAT AND OPTED OUT.  IN PARTICULAR, AS I INDICATED, THERE'S A
LAW FIRM THAT REPRESENTS A BUNCH OF THESE FOLKS, AND THEY MADE
THE DECISION WITH THEIR CLIENTS THAT $24 OR $75, OR WHATEVER IT
WAS GOING TO BE, WASN'T ENOUGH, AND THEY OPTED OUT, AND THAT'S
PEOPLE'S RIGHT AND THEY WILL TAKE THE RISK OF PROVING THOSE
CASES AND TRYING TO DO BETTER.  AND WE WISH THEM WELL, BUT
THAT'S -- PEOPLE WERE NOTICED AS TO WHAT THE AMOUNT WOULD BE.

     AND THEN I WANT TO JUST COME TO THIS ISSUE THAT THIS WAS
ALL JUST FILED AND SETTLED QUICKLY.  AND YOUR HONOR ASKED A
QUESTION ABOUT THIS, SO I WANT TO MAKE SURE I PROVIDE THE FULL
BACKGROUND.  AS I INDICATED, THESE CASES ARE PART OF AN OVERALL
LITIGATION STRATEGY THAT ACTUALLY GOES BACK TO 2012.  MY
PARTNER, MR. HUTCHINSON, IN HIS DECLARATION LAYS OUT THE WHOLE
HISTORY OF ALL OF THESE CASES.  AND THERE'S A REASON THAT THERE
HAVE BEEN DIFFERENT CASES IN DIFFERENT TIME PERIODS AND THERE
AREN'T -- NOT ALL ONE JUST CASE -- OR JUST ONE CASE.  EXCUSE ME.
AND THE PRIMARY REASON IS THAT THESE ARE DIFFERENT LINES OF
BUSINESS AT WELLS FARGO.  AS YOUR HONOR KNOWS, BANKS PROVIDE
VERY DIFFERENT SERVICES AND BANKS ARE CONGLOMERATES OF MANY
DIFFERENT LINES OF BUSINESS, AND EACH LINE OF BUSINESS HAD A
DIFFERENT DECISION-MAKER AT WELLS FARGO.  SO THESE CASES WERE
ADDRESSING DIFFERENT LINES OF BUSINESS.  HERE WE HAVE THE HOME
MORTGAGE AND THE HELOC CLAIMS, THERE'S A DEPOSIT LINE, THERE'S A

1   CREDIT CARD LINE, THERE'S ET CETERA, ET CETERA, DIFFERENT LINES

 2   OF BUSINESS, AND SOME OF THESE HAVE BEEN MULTIPLE CASES OVER THE

 3   SAME LINES OF BUSINESS BECAUSE AFTER ONE PERIOD OF TIME SETTLED,

 4   WELLS FARGO CONTINUED TO MAKE CALLS TO PEOPLE IN THAT LINE OF

 5   BUSINESS.  AND SO A FOLLOW-ON CASE WAS FILED AS WELL.  SO THIS

 6   IS ALL PART, AS I INDICATED, OF A LONG-STANDING COORDINATED

 7   NATIONWIDE, REALLY, GROUP OF CASES AGAINST WELLS FARGO AND THAT

 8   GO BACK TO 2012.  SO I THOUGHT THAT WAS IMPORTANT.

 9       I THINK MR. LYNCH MAY ADDRESS SOME OF THE PER SE --

10           THE COURT:  OKAY.

11           MR. SELBIN:  -- ISSUES WITH YOUR HONOR'S PERMISSION.

12           THE COURT:  CERTAINLY.

13           MR. LYNCH:  AND, JUDGE, AGAIN, WE TAKE NO POSITION ON

14   THE ATTORNEY'S FEES ON BEHALF OF WELLS FARGO BANK, BUT THESE ARE

15   NOT PER SE VIOLATIONS.  YOU START WITH WHETHER THE CALL WAS MADE

16   FROM AN AUTO DIALER.  THAT'S SOMETHING THAT HAS TO BE, YOU KNOW,

17   DEVELOPED IN A CASE AND DETERMINED.  TWO, WITH CONSENT, CONSENT

18   CAN BE OBTAINED OBVIOUSLY AT THE ORIGINATION OF THE ACCOUNT AND

19   AN AUTHORIZATION FORM, BUT OUR POSITION IS CONSENT CAN ALSO BE

20   OBTAINED DURING THE SERVICING OF A MORTGAGE ACCOUNT.  YOU CAN

21   GET CONSENT FROM THE ACCOUNT HOLDER TO CALL ANOTHER NUMBER.

22   ALSO, THE ISSUE OF ORAL REVOCATION, JUDGE, WHETHER SOMEONE

23   DURING THE CONTEXT OF A TELEPHONE CALL SAYS, PLEASE QUIT CALLING

24   ME.  THAT'S SOMETHING THAT JUST BECAUSE A CALL IS MADE ISN'T A

25   PER SE VIOLATION.  YOU'VE GOT INHERENT INDIVIDUALIZED ISSUES IN

1 THE SERVICING OF EVERY ACCOUNT THAT YOU HAVE TO LOOK AT THE

2 INDIVIDUAL ACCOUNTS TO DETERMINE THAT.  AND THESE AREN'T PER SE

3 VIOLATIONS YOU CAN JUST COUNT UP.

4          THE COURT:  OKAY.

5          MR. LYNCH:  THANK YOU.

6          THE COURT:  THANK YOU VERY MUCH.

7      WAS THERE ANYTHING ELSE THAT Y'ALL WANTED TO SAY ABOUT

8 THESE TWO PENDING MOTIONS AT THIS POINT?

9          MR. SELBIN:  YOUR HONOR, I DON'T THINK SO.  I WOULD

10 JUST SAY THAT, AGAIN, WE'RE PROUD OF THE SETTLEMENT AND WE ARE

11 PLEASED TO PRESENT IT TO THE COURT.

12          THE COURT:  OKAY.  THANK YOU.

13      WELL, WHAT I'M GOING TO DO IN TERMS OF KIND OF WHAT WE HAVE

14 LEFT TO DO ON THE CASE, IS THAT I'M GOING TO, AS YOU EXPECTED,

15 TO ISSUE AN ORAL -- NOT AN ORAL -- A WRITTEN ORDER ON THESE TWO

16 MOTIONS.  AND WHAT I WOULD LIKE FROM COUNSEL, JUST SO THAT WE

17 CAN GET SOME CLOSURE ON SOME OF THE KIND OF MORE TECHNICAL

18 ISSUES WE HAVE OUTSTANDING, WHY DON'T Y'ALL GET TOGETHER ON THIS

19 ISSUE OF KIND OF THESE STRAGGLER OPTING-OUT FOLKS AND KIND OF

20 THESE KIND OF LAST-MINUTE CHECKS ON THE PEOPLE THAT KIND OF

21 WANTED THEIR ADDRESSES CHANGED AND ALL THAT SO THAT WE JUST HAVE

22 CLOSURE ON THOSE ISSUES AND I HAVE A FINAL LIST OF WHAT WE'RE

23 DEALING WITH IN TERMS OF THE OPT-OUTS SO THAT WE DON'T GO KIND

24 OF DOWN THE ROAD FURTHER AND THEN I'M LEFT WITH AN ISSUE ABOUT

25 WHETHER SOMEONE OPTED OUT AND NOT, AND Y'ALL ARE LONG GONE AND I

1  HAVE A VERY UNCLEAR RECORD IN TERMS OF THAT.  BECAUSE I DO WANT

2  TO MAKE SURE, IF THESE ISSUES COME UP DOWN THE ROAD, THAT WE

3  HAVE AT LEAST KIND OF DEALT WITH THEM IN THE UNDERLYING CASE.

4  BUT I ASSUME THAT Y'ALL CAN GET THAT DONE RELATIVELY QUICKLY.

5  AND I DO HAVE TO SAY THAT I EXPECT TO BE RELATIVELY QUICK ON MY

6  ORDER AS WELL.  I'VE LOOKED AT THIS IN A LOT OF DETAIL AT THE

7  EARLIER STAGE, AS WELL AS IN PREPARATION FOR TODAY.  AND

8  ALTHOUGH I DO WANT TO LOOK AT SOME OF THESE ISSUES IN A LITTLE

9  BIT MORE DETAIL, I DO FEEL LIKE I HAVE THE RECORD I NEED IN

10 FRONT OF ME.  I DON'T THINK THAT THERE IS ANY ADDITIONAL

11 INFORMATION I NEED FROM ANY OF THE PARTIES AT THIS TIME.

12     LIKE I SAID, I HAVE LOOKED AT THIS AND I DON'T HAVE ANY

13 ISSUES ABOUT NEEDING MORE INFORMATION.  I THINK THAT THE

14 BRIEFING IS GOOD AND THE HEARING TODAY HAS ANSWERED SOME OF THE

15 OTHER QUESTIONS I HAVE.  SO AS SOON AS I HAVE SOME CLOSURE MAYBE

16 IN TERMS OF A JOINT STATEMENT FROM THE PARTIES ON THESE

17 LINGERING ISSUES AND THEN AN UPDATED LIST OF THOSE WHO ARE

18 OPTING OUT, THEN I CAN GET TO AN ORDER ON THESE TWO MOTIONS.

19 AND THEN IN TERMS OF THESE OUTSTANDING ISSUES POTENTIALLY THAT

20 ARE THERE WITH MS. YDE'S OBJECTION, REALLY ALL I'M GOING TO DO

21 ON THAT IS, UNTIL I HAVE A MOTION THAT I NEED TO RULE ON, I

22 DON'T HAVE ANYTHING TO DO.  SO WHEN I GET A MOTION, I'LL LOOK AT

23 THAT.  I'LL SEE IF I DO NEED ANY ADDITIONAL INFORMATION OR IF I

24 DON'T.  BUT AS I SAID AT THE BEGINNING OF THE HEARING, I DON'T

25 SEE ANYTHING ABOUT THAT ISSUE THAT PERTAINS AT THIS POINT WHERE

WE ARE TO THE TWO PENDING MOTIONS ABOUT THE APPROVAL OF THE

SETTLEMENT.  SO I'M GOING TO GO AHEAD AND GO ON AND DO WHAT I

NEED TO DO IN TERMS OF THOSE MOTIONS WITHOUT REGARD TO THOSE

OUTSIDE ISSUES.  BUT CERTAINLY IF THERE IS SOMETHING I NEED TO

RULE ON, I WILL.  EVEN IF IT IS A TANGENTIAL ISSUE, I MEAN, I'M

NOT THE KIND OF JUDGE THAT'S JUST GOING TO SAY, THIS DOESN'T

CONCERN WHAT I HAVE IN MY MOTION.  I'LL LOOK AT IT ON ITS

MERITS.  AND IF WE DO NEED TO GET BACK INTO SOME OF THE ISSUES

THAT CAME UP ON FRIDAY AND SATURDAY, WE WILL.  BUT I HONESTLY

DON'T KNOW WHAT IT IS YOU WANT ME TO DECIDE, SO I DON'T KNOW

WHAT'S GOING TO BE RELEVANT IN THAT REGARD.

I DIDN'T HAVE ANY OTHER QUESTIONS ON MY LIST.  LET ME MAKE

SURE.  I THINK THOSE ARE ALL THE QUESTIONS I HAD.

MR. SELBIN, WAS THERE ANYTHING ELSE THAT YOU HAD?

MR. SELBIN:  YEAH, I'M SORRY, YOUR HONOR.  JUST ON

THIS ISSUE OF THE YDE AND MR. BANDAS ISSUE, I KNOW YOUR HONOR

HASN'T HAD A CHANCE TO READ THOSE PAPERS, AND WE'RE NOT WEIGHING

IN ON THOSE TODAY.  I ONLY WANTED TO ADDRESS, WE DIDN'T FILE IT

AS A NEW MOTION WITH RESPECT TO HIM.

THE COURT:  OKAY.

MR. SELBIN:  WE INFORMED THE COURT ABOUT WHAT WE VIEW

AS DISCOVERY ABUSE AND POTENTIAL UNAUTHORIZED PRACTICE OF LAW

ISSUES.  IF YOUR HONOR WOULD LIKE US TO BRING THAT FORWARD AS A

NEW MOTION, I SUPPOSE WE CAN DO THAT.  I'M HESITANT TO DO IT

UNTIL YOUR HONOR REVIEWS THAT AND HAS AN OPPORTUNITY TO LET US

```
 1  KNOW WHAT YOU WOULD LIKE FROM US ON THAT.

 2          THE COURT:  OKAY.  WELL, LET ME KIND OF MAKE IT A

 3  LITTLE MORE CLEAR.  IT'S NOT THAT I WOULD LIKE YOU TO FILE A

 4  MOTION OR I WOULD NOT LIKE YOU TO FILE A MOTION.  I MEAN, IT'S

 5  GOING TO BE UP TO YOU WHETHER OR NOT YOU WANT TO FILE A MOTION

 6  OR NOT, BUT AT THIS DATE AND TIME I HAVE NOTHING PENDING TO DEAL

 7  WITH.  SO I'M NOT REQUESTING THAT ANY PARTY MAKES A MOTION, BUT

 8  IF YOU WOULD LIKE TO MAKE A MOTION, CERTAINLY I WILL LOOK AT IT.

 9          MR. SELBIN:  OKAY.

10          THE COURT:  BUT I JUST DON'T KNOW WHAT ISSUE IT IS

11  THAT YOU'RE REALLY ASKING ME TO RULE UPON WITHOUT A MOTION.

12          MR. SELBIN:  VERY GOOD.

13          THE COURT:  BUT I'M HAPPY TO ADDRESS ANYTHING YOU'LL

14  FILE.  SO THE WAY WE'RE GOING TO HANDLE THIS IS THAT ULTIMATELY

15  I'M GOING TO PROCEED WITH THESE MOTIONS AND AT SOME POINT ENTER

16  AN ORDER WITH THAT.  AND AT SOME POINT THE CASE MAY BE CLOSED,

17  BUT EVEN IF THE CASE IS CLOSED, NO MATTER KIND OF WHERE WE ARE,

18  IF YOU WOULD LIKE TO MAKE A MOTION FOR ME TO CONSIDER, THAT

19  OPENS THE CASE BACK.  AND I WILL HAVE TO SAY, I'M HAPPY TO DO

20  THAT.  IT'S NOT SOMETHING I'M GOING TO BE ANGRY AT YOU FOR DOING

21  BECAUSE IT APPEARS THAT THERE ARE REAL ISSUES THAT YOU WOULD

22  LIKE THE COURT TO ADDRESS.  IT HAS TO BE KIND OF IN THE FORM OF

23  SOMETHING FOR ME TO DECIDE.

24          MR. SELBIN:  UNDERSTOOD.

25          THE COURT:  BUT I'M NOT ORDERING ANYONE TO MAKE A
```

MOTION AND I'M NOT ORDERING THERE TO BE A TIME PERIOD ON IT.

I'M JUST GOING TO PURSUE THE MOTIONS THAT I HAVE PENDING AND

DEAL WITH THOSE AS I MOVE FORWARD, BUT I DON'T HAVE ANY PROBLEM

IF YOU DO WANT TO FILE A MOTION.

       MR. SELBIN:  VERY GOOD, YOUR HONOR.  UNDERSTOOD.

       THE COURT:  IS THERE ANYTHING ELSE THE PARTIES WANT TO

ADDRESS BEFORE WE ADJOURN FOR TODAY?

       MR. SELBIN:  NOTHING HERE, YOUR HONOR.

       MR. LYNCH:  NO, NOTHING.  THANK YOU, JUDGE.

       THE COURT:  OKAY.  WELL, THANK YOU ALL.  AND EXPECT AN

ORDER FROM ME SHORTLY.  WITH THAT, WE'RE IN RECESS.  THANK YOU.

              (PROCEEDINGS ADJOURNED.)

C E R T I F I C A T E


UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

       I, MONTRELL VANN, RPR, RMR, RDR, CRR, OFFICIAL COURT

REPORTER OF THE UNITED STATES DISTRICT COURT, FOR THE NORTHERN

DISTRICT OF GEORGIA, ATLANTA, DO HEREBY CERTIFY THAT THE

FOREGOING 47 PAGES CONSTITUTE A TRUE TRANSCRIPT OF PROCEEDINGS

HAD BEFORE THE SAID COURT, HELD IN THE CITY OF ATLANTA, GEORGIA,

IN THE MATTER THEREIN STATED.

       IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS, THE

20TH DAY OF JANUARY 2017.




                              /S/ MONTRELL VANN
                              MONTRELL VANN, RPR, RMR, RDR, CRR
                              OFFICIAL COURT REPORTER
                              UNITED STATES DISTRICT COURT