## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Steven L. Markos, Tiffany Davis and
Gregory Page, on behalf of themselves
and others similarly situated,

        Plaintiffs,

    v.

Wells Fargo Bank, N.A.,

        Defendant.

Civil Action No. 1:15-cv-01156-LLM

## MEMORANDUM IN SUPPORT OF WELLS FARGO BANK, N.A.'S MOTION FOR AN ORDER ENFORCING THIS COURT'S INJUNCTION AGAINST TIMOTHY STEPHENS AND FOR AN ORDER TO SHOW CAUSE IF HE FAILS TO COMPLY

### I.  INTRODUCTION

Timothy Stephens ("Mr. Stephens"), a mortgage borrower and class member, in

violation of the injunction issued by this Court, has filed a lawsuit against Wells Fargo

Bank N.A. ("Wells Fargo") in the United States District Court for the Northern

District of Illinois, Case No. 1:16-cv-04404 (the "Illinois Action"), asserting claims

released as part of the Settlement Agreement reached in this matter.[1] Specifically, Mr. Stephens alleges that Wells Fargo called him in relation to his residential mortgage loan. Mr. Stephens further alleges that he received calls from Wells Fargo from August 2014 to April 2016 that were made using an automatic telephone dialing system. Mr. Stephens seeks to recover a statutory penalty of $500 or $1500 for each of these calls.

However, Wells Fargo was previously sued in—and settled—this class action, which was based on calls using an automatic telephone dialing system ("ATDS") made in connection with Wells Fargo residential mortgage loans and home equity loans. On January 30, 2017, this Court granted the Final Approval Order and Judgment in *Markos v. Wells Fargo,* Case No. 1:15-cv-01156-LLM (the "Final Judgment"). Dkt. No. 90. Under the terms of the *Markos* Settlement Agreement, Wells Fargo paid a total of $16,417,496.70 to resolve all claims arising out of calls to residential mortgage borrowers between November 17, 2011 and February 29, 2016 and home equity borrowers between April 14, 2011 and February 29, 2016, that were made using an ATDS. The *Markos* Settlement Agreement and this Court's January

---

[1] Unless otherwise, defined herein, capitalized terms shall have the same meaning as those set forth in the June 10, 2016 Settlement Agreement, Dkt. No. 34-2, as incorporated by this Court's Final Judgment.

30, 2017 Order granting final approval of that settlement explicitly release Wells Fargo from any liability for calls placed during the class periods described above. Accordingly, the claims alleged by Mr. Stephens in the Illinois Action are barred—almost in their entirety—by the *Markos* settlement and this Court's Final Judgment. Specifically, all of Stephens' claims that are based on calls made by Wells Fargo through February 29, 2016 are barred by the *Markos* settlement.

Mr. Stephens has been given notice that his claims against Wells Fargo would be (and now have been) released under the *Markos* settlement. On September 23, 2016, the Class Settlement Administrator in *Markos* sent Mr. Stephens individual notice of the *Markos* class action and proposed settlement by first class mail to his last known address as reflected in Wells Fargo's records. This address in Schaumburg, Illinois is the same address of the property securing the mortgage held by Wells Fargo. When Mr. Stephens persisted in litigating his separate lawsuit in the Northern District of Illinois, Wells Fargo explained to his counsel that the great majority of his claims were barred by the *Markos* settlement. Mr. Stephens has refused to limit his claims to calls after February 29, 2016, and is insistent that he can re-litigate claims subject to the *Markos* release.

This Court has ample authority to protect its jurisdiction and enforce the terms of the *Markos* settlement. The Settlement Agreement and Final Judgment plainly

releases all claims for calls during the Class Period. The notice sent to Mr. Stephens and other class members explains their claims for calls during this period will be released. The Final Judgment specifically bars and enjoins settlement class members from "commencing, instituting, continuing, pursuing, maintaining, prosecuting, or enforcing any Released Claims (including, without limitation, in any individual, class or putative class, representative or other action or proceeding), directly or indirectly, in any judicial, administrative, arbitral, or other forum, against the Released Parties." Dkt. No. 90 at ¶ 13. Accordingly, Wells Fargo respectfully requests that the Court enjoin Mr. Stephens and his counsel from litigating claims that were released under the *Markos* settlement.  Wells Fargo also respectfully requests that the Court issue an Order requiring Mr. Stephens to show cause as to why he should not be held in contempt if he fails to cease re-litigating these claims in response to this motion and in contravention of this Court's January 30, 2017 Final Judgment.

## II. BACKGROUND

### A.    The *Markos* Settlement

On April 14, 2015, Steven L. Markos filed a class action in the Northern District of Georgia against Wells Fargo, captioned *Markos v. Wells Fargo Bank, N.A.,* Case No. 1:15-cv-01156-LLM (the "*Markos* Action"). This case was consolidated with two other class actions filed against Wells Fargo: *Page v. Wells Fargo Bank,*

*N.A.*, Case No. 1:15-cv-06511-MFK (N.D. Ill) (the "*Page* Action") and *Davis v. Wells Fargo Bank, N.A.* Case No. 15 A 1898-1, which was originally filed in state court and subsequently removed to the Northern District of Georgia, Case No. 1:15-cv-3140-TWT (N.D. Ga.) (the *"Davis* Action"). The *Markos, Page* and *Davis* actions each alleged that Wells Fargo violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by using an automatic telephone dialing system and/or artificial or prerecorded voice to call cellular telephones, without the prior express consent of the plaintiffs and putative class members (the *Markos, Page* and *Davis* actions shall be referred to cumulatively as "*Markos*").

While Wells Fargo denied the substantive allegations of the *Markos* Action, the parties agreed to enter into a Settlement Agreement and Release ("Settlement Agreement"). *See* Dkt. No. 34-2. As defined in the Settlement Agreement, Settlement Class Members were divided into two subclasses: (1) Subclass One consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Residential mortgage loan between November 17, 2011 and February 29, 2016; and (2) Subclass Two consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Home Equity Loan between April 14, 2011 and February 29, 2016. *Id.* at ¶ 2.13 and¶ 2.33.

On June 29, 2016, plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement. On August 10, 2016, Plaintiffs filed a Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement to address certain procedural issues raised by the Court. *See* Dkt. No. 42. The Court granted plaintiffs' Renewed Motion on August 15, 2016. *See* Dkt. No. 45. Included as part of the Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement was a Claim Form, Long Form Notice, and Post Card Notice[2]. *See* Dkt. No. 42-2, 42-3 and 42-4.

In the Order the Court issued on August 15, 2016, the Court found that the Settlement Agreement was: (1) fair, reasonable, and adequate, and within the range of possible approval; (ii) the Agreement had been negotiated in good faith at arm's-length between experienced attorneys familiar with the legal and factual issues of the case, and (iii) that the class notice forms were appropriate and warranted. Dkt. No. 45, ¶ 3. The Court also appointed Garden City Group as Class Administrator, *id.* at ¶ 8, and approved the proposed Notice Plan for giving notices to the Settlement Class, *id.* at ¶ 9. In doing so, the Court found that the "Notice Plain, in form, method, and

---

[2] The post card notice was later amended and approved by the court on September 6, 2016. Dkt. Nos. 46-47. The Court also approved additional time for the notice to be sent. *Id.*

content, complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances." *Id.* at ¶ 9.

The Notice Plan included in the Settlement Agreement provides for notice to be mailed via first class mail to the most recent mailing address available in Wells Fargo's account records. Dkt. 34-2 at ¶ 8.02. In addition to notice by mail, the Settlement Agreement also provided for notice via publication and internet, a press release, and a toll free telephone number for receiving calls related to the settlement. *Id.* at ¶ 8.03-8.06.

The Class Administrator sent notice of the *Markos* settlement to Timothy Stephens at the address of Wells Fargo's records on September 23, 2016. *See* **Exhibit 1**, Declaration of Robert Jindra ("Jindra Decl.") at ¶¶ 5-6. The Class Administrator has confirmed that Mr. Stephens is a Class Member and was mailed a notice. *Id.* The Class Administrator also has confirmed that Mr. Stephens did not timely exclude himself from the Class. *Id.* at ¶ 7.

The Court conducted a hearing on plaintiffs' Motion for Final Approval of Class Action Settlement on January 17, 2017. Dkt. No. 86. On January 30, 2017, the Court issued its Final Judgment. Dkt. No. 90. In this Order, the Court approved the Settlement Agreement and Settlement contemplated thereby, and found that the terms constituted, in all respects, a fair, reasonable, and adequate settlement as to all

Settlement Class Members in accordance with Rule 23 of the Federal Rules of Civil Procedure. *Id.* at ¶ 9.

The Final Judgment also found that "Class Notice was disseminated to members of the Settlement Class in accordance with the terms set forth in the Settlement Agreement and that Class Notice and its dissemination were in compliance with this Court's Preliminary Approval Order." Dkt. No. 90 at ¶ 5. The Court also determined that:

> the Class Notice and claims submission procedures set forth in the Settlement Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement and this Order.

*Id.* at ¶ 6.

**B.     Mr. Stephens Seeks to Re-litigate Released Claims in His Individual Case Versus Wells Fargo**

On April 18, 2016, Mr. Stephens filed a lawsuit against Wells Fargo in the United States District Court for the Northern District of Illinois. *See* the Complaint attached as Exhibit A to **Exhibit 2**, the Declaration of Courtney C. Wenrick ("Wenrick Decl."). The Illinois Action alleges that Wells Fargo called Mr. Stephens' cell phone between August 2014 to April 2016 in relation to his residential mortgage loan using an automatic telephone dialing system in violation of the TCPA. *Id.* at ¶¶ 7-

21, 30-31. As noted above, Mr. Stephens is a Class Member in the *Markos* Action. *See* Jindra Decl., at ¶ 5.

Based on the Final Judgment, Wells Fargo asked Mr. Stephens' counsel to agree to not pursue TCPA claims based on any calls he received prior to and including February 29, 2016 because all claims for such calls are barred by the Final Judgment. *See* Wenrick Decl., at ¶ 8. Counsel for Mr. Stephens indicated that he would not agree that calls prior to February 29, 2016 were barred. *Id.* at ¶ 9. Wells Fargo then informed Mr. Stephens' counsel that it would be bringing this motion. *Id.* at ¶ 9. This motion is necessary to enforce the injunction in the Final Judgment, which prohibits Mr. Stephens from further prosecuting his claims for calls that occurred prior to or on February 29, 2016. *Id.* at ¶ 5.

## III.  LEGAL ARGUMENT

**A.   The *Markos* Settlement Released All Claims Arising Out of Calls to Wells Fargo Mortgage Borrowers Between November 17, 2011 and February 29, 2016.**

The *Markos* Settlement releases claims by Class Members during the Class Period. Dkt. No. 34-2 at ¶ 13.01; Dkt. No. 90 at ¶ 12. As part of the Final Judgment, the Court certified a permanent nationwide settlement class composed of the following members:

> **SETTLEMENT CLASS:** All users or subscribers to a wireless or cellular service within the United States who

> used or subscribed to a phone number to which Wells Fargo made or initiated one or more Calls during the Class Period using any automated dialing technology or artificial or prerecorded voice technology, according to Wells Fargo's available records, and who are within Subclass One and/or Two, which are defined as follows:
>
> **Subclass One** consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Residential Mortgage Loan.
>
> **Subclass Two** consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Home Equity Loan.

Dkt. No. 90 at ¶ 2. The Class Period was defined as November 17, 2011 through February 29, 2016 for Class Members in Subclass One, consisting of persons called in connection with a Residential Mortgage Loan. Settlement Agreement, Dkt. No. 34-2 at ¶ 2.13.

The Final Judgment bound each Class Member to the Class Settlement. Dkt. No. 90 at ¶ 9. Because Mr. Stephens did not opt out of the *Markos* Class Settlement he is a Class Member bound by the Court's Final Judgment. *Id.* at ¶¶ 8-9 and Exhibit A[3]. As a Class Member under the Final Judgment, Mr. Stephens is enjoined from

---

[3] Mr. Stephens is not on the list of persons who opted out of the *Markos* settlement. Dkt. No. 90, Ex. A; Dkt. No. 89-1; Jindra Decl.

prosecuting any actions in which "Released Claims" have been asserted by "Released

Parties":

> Each and every Settlement Class Member, and any person
> actually or purportedly acting on behalf of any Settlement
> Class Member(s), is hereby permanently barred and
> enjoined from commencing, instituting, continuing,
> pursuing, maintaining, prosecuting, or enforcing any
> Released Claims (including, without limitation, in any
> individual, class or putative class, representative or other
> action or proceeding), directly or indirectly, in any judicial,
> administrative, arbitral, or other forum, against the
> Released Parties. This permanent bar and injunction is
> necessary to protect and effectuate the Settlement
> Agreement, this Order, and this Court's authority to
> effectuate the Settlement Agreement, and is ordered in aid
> of this Court's jurisdiction and to protect its judgments.

Dkt. No. 90 at ¶ 13. As a signatory to the *Markos* Class Settlement, Wells Fargo is one

of the "Released Parties" and Class Members are permanently barred from bringing

any "Released Claims" against it. *Id.* at ¶¶ 12-13; Dkt. No. 34-2 at ¶ 2.30. The Class

Settlement defines claims being released by Class Members to include:

> any and all claims, causes of action, suits, obligations,
> debts, demands, agreements, promises, liabilities,
> damages, losses, controversies, costs, expenses and
> attorneys' fees of any nature whatsoever, whether based on
> any federal law, state law, common law, territorial law,
> foreign law, contract, rule, regulation, any regulatory
> promulgation (including, but not limited to, any opinion or
> declaratory ruling), common law or equity, whether known
> or unknown, suspected or unsuspected, asserted or
> unasserted, foreseen or unforeseen, actual or contingent,
> liquidated or unliquidated, punitive or compensatory, as of

the date of the Final Approval Order, that arise out of the Released Parties' use of an "automatic telephone dialing system" or "artificial or prerecorded voice" to contact or attempt to contact Settlement Class Members in connection with a Residential Mortgage Loan and/or Home Equity Loan during the Class Period. Released Claims include the claims of Wells Fargo Residential Mortgage Loan account holders, Home Equity Loan account holders and non-account holders who are members of the Settlement Class.

Dkt. No. 34-2 at ¶ 13.01 (defining "Released Claims"). Additionally, plaintiffs and each Settlement Class Member are "deemed to have agreed and covenanted, not to sue any of the Released Parties with respect to any of the Released claims, and agree to be forever barred from doing so in any court of law or equity, arbitration proceeding or any other form." *Id.* at ¶ 13.04.

Thus, all Class Members' claims, including Mr. Stephens' claims pertaining to calls to his cellular telephone regarding his residential mortgage account prior to February 29, 2016 are "Released Claims" that are subject to the permanent injunction entered in the Final Approval Order. *See* Dkt. No. 34-2 at ¶ 2.13; Dkt. No. 90 at ¶¶ 2, 9.

**B.     The *Markos* Class Administrator and Wells Fargo Have Provided Best Practicable Notice.   Mr. Stephens' Claims For Calls During the Class Period Are Barred.**

The *Markos* Class Notice was mailed via first class mail to the last known address of the Settlement Class Members (Dkt. No. 34-2 at ¶ 8.02), published through

banner ads posted on Yahoo! Audience Network. (Dkt. No. 59-5 at ¶¶ 9 and 16), and given in a press release (*Id.* at ¶ 18). The Class Administrator also maintains a settlement website and toll-free phone number. Dkt. No. 34-2 at ¶¶ 8.04 and 8.05. Additionally, the Class Administrator researched updated addresses for any mailed notices that were returned undeliverable and re-mailed notices where it was able to obtain a new address. *Id.* at 8.02.

Mr. Stephens is a *Markos* Class Member who was mailed notice of the *Markos* Settlement at his property address, which was not returned as undeliverable, and did not opt out of the settlement. Jindra Dec. at ¶¶ 5-7.[4] Under Eleventh Circuit law, a final judgment in a class action is res judicata as to all member of the class. *Juris v. Inamed Corp.*, 685 F.3d 1294, 1340 (11th Cir. 2012); *Papazian v. Gold Key Lease, Inc.*, 962 F. Supp. 1469, 1470 (M.D. Fla. 1997). The judgment binds the entire class provided that the due process requirements of the United States Constitution have been met, including the requirement of notice to absent class members. *Papazian,* 962 F. Supp. at 1470 (citing *Gonzales v. Cassidy,* 474 F.2d 67, 74 (5th Cir. 1973)).

---

[4] These facts alone show that notice was reasonable. *Vargas v. Capital One Fin. Advisors*, 559 Fed.App'x. 22, 27 (2d Cir. 2014) (notice is adequate where evidence demonstrates that it was mailed to the correct address and not returned to the sender as undeliverable).

The United States Supreme Court has held that a fundamental requirement of due process is that notice to absent class members must be accomplished by a method that is the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12, (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Due process requires that "[t]he means employed [to give notice] ... be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane,* 377 U.S. at 315.

Due process does not require that members of a class personally receive notice. *Juris,* 685 F. 3d at 1321 (11th Cir. 2012); *see also Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (explaining that even in an opt-out class action, the class notice standard is "best practicable," as opposed to "actually received"); *Adams v. S. Farm Bureau Life Ins. Co.*, 417 F. Supp. 2d 1373, 1380 n. 6 (M.D. Ga. 2006) ("The analysis for purposes of due process is on the notice plan itself, and actual receipt of notice by each individual class member is not required"), *aff'd*, 493 F.3d 1276 (11th Cir. 2007); *In re Prudential Sec. Inc. Ltd*. P'ships Litig., 164 F.R.D. 362, 368 (S.D.N.Y. 1996), ("It is widely accepted that for the due process standard to be met it is not necessary that every class member receive actual notice"), *aff'd*, 107 F.3d 3 (2d

Cir. 1996); *Trist v. First Fed. Sav. & Loan Ass'n of Chester*, 89 F.R.D. 1, 2 (E.D. Pa. 1980) ("*Mullane*...has never been interpreted to require the sort of actual notice demanded by the defendants"); 4 William B. Rubenstein et al., Newberg on Class Actions § 11:53 (4th ed. 2011) ("Thus, due process does not require actual notice, but rather a good faith effort to provide actual notice. Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprize interested parties").

The Supreme Court has repeatedly held that notice by first-class mail is sufficient, notwithstanding the Court's awareness that not every first-class letter is received by the addressee. *See e.g. Mullane,* 377 U.S. at 319; *Shutts*, 472 U.S. at 812. "Particularly where mailing is supplemented by other forms of notice such as posting or publication, the risk of non-receipt is constitutionally acceptable." *Weigner v. City of N.Y.,* 852 F.2d 646, 651 (2d Cir. 1988); *Cayuga Indian Nation v. Carey* (N.D.N.Y. 1981) 89 F.R.D. 627, 633 (although court held that "individual notice by first class mail, coupled with notice by publication satisfies the requirements of due process.") "[P]erfect mailing" is not required and even class members who slip through the crack are part of the class "barring some systematic exclusion of a particular category of class members." *Trist*, 89 F.R.D. at 3. Further, it is sufficient to mail notices to the last known addresses of class members. *In re Nissan Motor Corporation Antitrust*

*Litigatio*n, 552 F.2d 1088, 1098 (5th Cir. 1977) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)); *Appleton Electric Co. v. Advance-United Expressway*, 494 F.2d 126, 137-29 (7th Cir. 1974) (directing defendants to compile lists of the last known addresses of class members and approving certification of the class despite the fact that some defendants had no records, or incomplete records, of the names and addresses of absent class members)).

This Court has already found that the Settlement Notice in *Markos* met the due process standard. Dkt. No. 90 at ¶ 6. Other courts have found similar notice appropriate. *See, e.g. Adams v. S. Farm Bureau Life Ins. Co.,* 493 F.3d 1276, 1286–87 (11th Cir. 2007) (holding that notice was reasonable when it was sent to the last known address via first class mail, returned notices were further investigated to obtain the correct address and in addition to these mailings, there was a toll free telephone number to field inquiries about settlement, notice was published in USA Today and information was posted on a website); *Family Med. Pharmacy, LLC v. Trxade Grp., Inc.,* No. CV 15-0590-KD-B, 2016 WL 6573981, at *9 (S.D. Ala. Nov. 4, 2016) (holding that a TCPA class action notice that directed the recipient to the website or the toll free number to obtain a copy of the Settlement Agreement and release as well as other information and warned recipients that their legal rights would be would be impacted meet the requirements of due process).

Because notice here was the best practicable and satisfied due process, any attempt by Mr. Stephens to re-litigate these claims is barred by res judicata, even if he contends never received the notice. *Juris*, 685 F.3d at 1320-21; *Kreger v. Medicredit, Inc.*, No. 8:16-CV-1481-T-33JSS, 2016 WL 3906960, at *4 (M.D. Fla. July 19, 2016), reconsideration denied, No. 8:16-CV-1481-T-33JSS, 2016 WL 4370097 (M.D. Fla. Aug. 16, 2016); *see also Langford v. Devitt,* 127 F.R.D. 41, 44-45 (S.D.N.Y. 1989) (noting that the notice procedures ordered by a court are "presumptively valid" and there is no requirement that "each and every class member receive notice in the specific-form ordered by the court").

## C.   This Court Retained Jurisdiction to Enforce The *Markos* Settlement and Has the Power to Issue an Injunction Against Re-litigation of Released Claims

By entry of the Final Judgment, the Court retained jurisdiction over "all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the settlement." Dkt. No. 90, at ¶ 23. Additionally, the Final Judgment provided that:

> in the event that any provision of the Settlement or this Order is asserted by Wells Fargo as a defense in whole or in part…in any other suit, action, or proceeding brought by a Settlement Class Member or any person actually or purportedly acting on behalf of any Settlement Class Member(s), that suit, action or other proceeding shall be immediately stayed and enjoined until this Court or the court or tribunal in which the claim is pending has

> determined any issues related to such defense or assertion."

*Id.* at ¶ 16. Accordingly, this Court is the appropriate venue to bring this motion.

Further, "[f]ederal courts have long recognized a court's power to effectuate its orders." *In re Managed Care*, 756 F.3d 1222, 1233 (11th Cir. 2014). Under the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"). 28 U.S.C. § 1651(a). Federal District Courts overseeing settlements of nationwide class actions have ample authority under the All Writs Act to enjoin parallel litigation to preserve their own authority to enforce the settlement. *United States v. New York Telephone Co.,* 434 U.S. 159, 172 (1977) (recognizing a federal court retains the power "to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.").

The authority to protect a judgment under the All Writs Act is broader than the authority conferred in a 'traditional' injunction issued under Federal Rule of Civil Procedure 65, which allows a district court to enjoin the actions of parties and their 'officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them.'" *Faught v. Am. Home Shield Corp.*, 660 F.3d 1289, 1292-93 (11th Cir. 2011). "The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to

protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." *Klay v. United Healthgroup*, 376 F.3d 1092, 1100 (11th Cir. 2004). Under the All Writs Act, "'injunctions are enforced through the district court's civil contempt power.'" *Faught*, 660 F.3d at 1293 (*quoting Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010)). When claims are brought by a settlement class member which are barred or would interfere with an approved class settlement, the class action defendant should move for an order to show cause why the settlement class member "should not be held in contempt for violating the injunction against the prosecution of released claims." *Id.*

It is well-settled in the Eleventh Circuit that where a class settlement and final judgment enjoin class members from prosecuting separate litigation, it is for the issuing court to determine whether the lawsuit violates the court's injunction against re-litigation. *See Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276 (11th Cir. 2007); *Reynolds v. McInnes*, 338 F.3d 1201, 1208 (11th Cir. 2003); *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000); *Wesch v. Folsom*, 6 F.3d 1465, 1474 (11th Cir. 1993) (holding that the district court did not abuse its discretion in enjoining a proceeding related to a class action); *Battle v. Liberty Nat'l Life Ins.*, 877 F.2d 877 (11th Cir. 1989) (affirming district court order enjoining certain class members from pursuing related claims in another proceeding); *Winchester v. Florida Farm Bureau*

*Equities, Inc.*, 2010 WL 1459797 (N.D. Fla. Apr. 9, 2010) (enjoining pending state court litigation pursuant to final judgment retaining jurisdiction to enforce class settlement agreement), *aff'd*, 427 Fed. App'x. 833 (11th Cir. 2011); *Horton v. Met. Life. Ins. Co.*, 459 F. Supp. 2d 1246 (M.D. Fla. 2006) (granting permanent injunction of Pennsylvania suit as barred by class action settlement).

**D.   Mr. Stephens Should Be Enjoined From Litigating Claims That Were Released in the *Markos* Settlement, and the Court Should Issue An Order to Show Cause Why Stephens and His Counsel Should Not Be Held in Contempt if they Fail to Comply**

The claims in the Illinois Action fall within the Released Claims in the Settlement Agreement, and the continued prosecution of those claims threatens this Court's jurisdiction and impairs its authority to oversee the settlement in *Markos*.  As a result, the Court should enforce its injunction and order Mr. Stephens to refrain from further prosecuting the Illinois Action, to the extent he seeks to recover for calls prior to and including February 29, 2016. Additionally, the Court's enforcement Order should order Mr. Stephens to show cause as to why he and his counsel should not be held in contempt if they continue to fail to dismiss the Released Claims.

As laid out in more detail above, Mr. Stephens—a *Markos* Class Member—is "permanently barred and enjoined from commencing, instituting, continuing, pursuing, maintaining, prosecuting, or enforcing any Released Claims…directly or indirectly, in any judicial, administrative, arbitral, or other forum, against the Released

Parties." Dkt. No. 90 at ¶ 13. The Released Claims in the *Markos* Settlement—claims "as of the date of the Final Approval Order, that arise out of the Released Parties' use of an 'automatic telephone dialing system' or 'artificial or prerecorded voice' to contact or attempt to contact Settlement Class Members in connection with a Residential Mortgage Loan and/or Home Equity Loan during the Class Period"—are precisely the type of claims that Mr. Stephens seeks to bring in the Illinois Action. Dkt. No. 34-2 at ¶ 13.01; Wenrick Decl.

There can be no dispute that Mr. Stephens' claims are premised upon the same factual predicate as Released Claims defined in the Settlement Agreement. Mr. Stephens wants to recover for calls from Wells Fargo in relation to his residential home mortgage account from August 2014 through April 2016.[5] Accordingly, Mr. Stephens is willfully violating the Final Judgment and should be enjoined from re-litigating Released Claims in the Illinois Action. Dkt. No. 90 at ¶¶ 12-13, and 16; Dkt. No. 34-2 at ¶ 13.04 ("each Settlement Class Member will be deemed to have agreed and covenanted, not to sue any of the Released Parties with respect to any of

---

[5] The *Markos* Settlement Agreement and Final Order involve claims for calls made on residential home mortgage accounts from November 17, 2011 to February 29, 2016.

the Released claims, and agree to be forever barred from doing so in any court of law or equity, arbitration proceeding or any other form").

Wells Fargo already paid over $16 million dollars to resolve claims asserted by Mr. Stephens in the Illinois Action for calls made using an ATDS to residential mortgage borrowers from November 17, 2011 and February 29, 2016. In exchange for this payment, all class members who did not opt-out of the settlement are permanently barred and enjoined from re-litigating Released Claims. Dkt. No. 90 at ¶ 13. Allowing Mr. Stephens to pursue the Released Claims included in the Illinois Action would deny Wells Fargo the benefit of its bargain and undermine the finality of the Settlement Agreement.

Further, to the extent that Mr. Stephens continues to pursue the Release Claims, the Court should hold him in contempt for not dismissing claims barred by the *Markos* settlement. Courts have held class members in contempt for refusing to dismiss claims barred by a class action settlement. *See, e.g.*, *Saccoccio v. JPMorgan Chase Bank, N.A.,* No. 13-21107-CIV, 2015 WL 3822315, at *5 (S.D. Fla. June 9, 2015) (giving the class member 20 days to withdraw her state court action or be held in contempt of court); *Liles v. Del Campo*, 350 F.3d 742 (8th Cir. 2003) (affirming district court order enforcing injunction and holding intervenor attorneys in contempt for violating class action preliminary approval order that enjoined related litigation).  Here, Mr.

Stephens is not only seeking to re-litigate the Released Claims, but refuses to dismiss released claims when presented with evidence that he was a member of the *Markos* class and that notice was proper.

## IV.  CONCLUSION

Based on the foregoing Wells Fargo respectfully requests that this Court enter an injunction prohibiting Mr. Stephens from litigating claims barred by the *Markos* Class Settlement in the Illinois Action. If Mr. Stephens refuses to dismiss his claims that are barred by the *Markos* settlement, Wells Fargo respectfully requests that this court hold Mr. Stephens in contempt of court.

Dated:  March 29, 2017                    Respectfully submitted,

By:   /s/ Stephen W. Riddell
                Of Counsel

Stephen W. Riddell
(Georgia Bar No. 604810)
stephen.riddell@troutmansanders.com
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree St., N.E., Suite 5200
Atlanta, GA 30308
(404) 885-3000
(404) 885-3900 (fax)

John C. Lynch (*pro hac vice*)
john.lynch@troutmansanders.com
David M. Gettings (*pro hac vice*)
david.gettings@troutmansanders.com
TROUTMAN SANDERS LLP
222 Central Park Avenue Suite 2000. Virginia
Beach, VA 23462
(757) 687-7500
(757) 687-7510 (fax)

Chad R. Fuller (*pro hac vice*)
chad.fuller@troutmansanders.com
TROUTMAN SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130
(858) 509-6056
(858) 509-6040  (fax)

*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

I certify that the foregoing document was prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Time New Roman and a point size of 14.

/s/ Stephen W. Riddell

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2017, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will provide notification of such filing to all counsel of record.

I further certify that on March 29, 2017, a true and correct copy of the foregoing was sent via email and U.S. Mail to:

**Counsel for Timothy Stephens**
Mohammed Omar Badwan
Ahmad Tayseer Sulaiman
SULAIMAN LAW GROUP, LTD.
900 Jorie Boulevard, Suite 150
Oak Brook, IL 60523
mbadwan@sulaimanlaw.com
ahmad.sulaiman@sulaimanlaw.com

Daniel John McGarry
WHITESIDE & GOLDBERG, LTD.
155 N. Michigan Avenue Suite 540
Chicago, IL 60601
dmcgarry@wglawgroup.com

/s/ Stephen W. Riddell

30850449