IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEVEN MARKOS, *et al.*,

    Plaintiffs,

v.

WELLS FARGO BANK, N.A.,       CIVIL ACTION NO.
                                          1:15-CV-1156-LMM

    Defendants.

## ORDER

This case comes before the Court on Defendant's Motion for an Order to Enforce this Court's Final Judgment Against William and Cynthia Hanna [136]. After a review of the record and a hearing on the matter, the Court enters the following Order:

### 1. Factual Background

On January 30, 2017, this Court entered its Final Approval Order and Judgment in this case. Dkt. No. [90]. On September 26, 2017, Class Members William and Cynthia Hanna filed suit against Defendant in the Southern District of Ohio, claiming Defendant violated the Telephone Consumer Protection Act by using an automatic dialing system which delivered prerecorded messages between 2015 and January 30, 2017, as relevant here. See Civ. A. No. 2:17-cv-0844-JLG-EPD (S.D. Ohio), Dkt. No. [1].

On May 3, 2018, Defendant moved for an order under the All Writs Act, 28 U.S.C. § 1651(a), seeking to enjoin the Hannas from pursuing calls made during the release period in their Southern District of Ohio case and to show cause why they should not be held in civil contempt if they continue to pursue damages for those calls. Along with its motion, Defendant produced evidence that the Hannas and their phone number ending in 9230 were listed on the class member list, and the Class Administrator, Garden City Group ("GCG"), sent a notice of settlement to their Grove City, Ohio address. Defendant produced evidence that the notice of settlement was not returned to GCG, and GCG did not receive a timely opt-out notice from the Hannas. See Dkt. No. [136-3] at 1-3.

Following multiple extensions of time, on June 5, 2018 the Hannas filed a Response in Opposition to the Motion, stating that Defendant's motion was "premature" and merely a "means to obstruct the Hannas' ability to conduct discovery on their claims." Dkt. No. [147] at 1. As to their argument that the dispute was "premature," the Hannas argued that because they have not moved for judgment on any of their allegations, Defendant should not have yet moved for an injunction while they were attempting to investigate whether they opted out. The Hannas also stated that they had recently "remembered deciding to opt out of Markos" and "discovered" a copy of an opt-out letter that they sent in their personal files.

On June 19, 2018, Defendant filed a Reply in which it stated the Hannas' response brief was the first time they had ever contended they properly opted out

2

of Markos. In fact, in response to Wells Fargo's motion to stay in the Ohio action, the Hannas only stated that a stay would be moot, as the Hannas intended to amend their complaint in the Ohio action to remove the offending allegations. Defendant also noted that the Hannas' letter was submitted without any proof that it was actually sent and the Hannas did not have any explanation for why they only recently "remembered" that they had opted out. The Hannas also did not file an affidavit which supported any of the claims made in the response brief.

On June 27, 2018, the Court held a conference with the parties to discuss the pending motion. The Court advised the Hannas that if they intended to claim that they mailed these newly discovered opt-out notices, they would be required to file an affidavit. And if they filed an affidavit, the Court would then be required to hold an evidentiary hearing to resolve the factual dispute.

On July 13, 2018, both Hannas filed affidavits, which stated that William Hanna typed his opt-out letter on Cynthia Hanna's personal computer that was "showing signs of a virus." Cynthia Hanna stated that she also typed her letter on the personal laptop. Neither saved a copy of their letters by any electronic means because they were afraid to transfer the virus to a new computer. The Hannas then printed both letters and placed them in an envelope on October 23, 2016. The same day they also made copies of the letters for their own records, since they could not save the letter on the virus-ridden computer. Cynthia Hanna mailed the letters on October 25, 2016, and she then threw her laptop away sometime in Spring 2017.

The Hannas stated that the reason they initially forgot about opting out was that in Spring 2017, Cynthia Hanna became pregnant and the pregnancy was high risk. "Due to the high risk pregnancy, stress, and anxiety from the previous year" the Hannas did not "vaguely" remember the letters until their attorney asked them about the Markos settlement. And due to the volume of paper in their home office, they were unsure where the documents had been filed. However, after a search of their home, they eventually found the letters "among [their] records" on March 26, 2018. See Dkt. Nos. [156, 157].

On September 14, 2018, the Court held an evidentiary hearing.[1] Defendant first called Loree Kovach, VP of Operations for GCG, the Claims Administrator in this matter. In relevant part, Kovach testified that she oversaw the project team that carried out the Markos claims settlement and that, having personally reviewed GCG's proprietary database for the Markos settlement, the Hannas did not mail opt-out letters.[2]

Kovach first testified regarding GCG's internal procedures for receiving and logging opt-out requests. She advised that each case is assigned a unique P.O. Box, and all written correspondence is to be mailed to that address. When mail is received, all of the mail is taken, sorted, and scanned into the internal system.

---

[1] As a consideration to the Hannas, the Court allowed them to testify via video conference.

[2] Pursuant to this Court's Order, opt outs were required to be mailed to GCG to a specific P.O. Box in order to be valid. See Dkt. No. [45] at 5-6.

Typically, all the opt outs that are picked up from the P.O. Box on a certain day are scanned into the system altogether, and then a GCG employee assigns each opt out to the particular record. Materials are also generally inputted into GCG's proprietary system at or around the time the mail is received. Kovach also testified that while a significant amount of mail is received by GCG every day, there is limited opportunity for error due to its internal controls.

Kovach testified that she had reviewed the claims files for the Hannas and did not locate the purported opt-out letters on GCG's system. She also testified that she reviewed the Hannas' letters, which were received with their affidavits in this matter, and she believes that had the letters been sent to GCG, the letters would have been classified as opt outs. She also testified that when a processor is reviewing correspondence, there is no possibility to delete a letter; the processor would have had to assign it to a record or escalate it to a supervisor. Kovach stated that she reviewed GCG's email system for Markos opt outs and did not find any emails with either of the Hannas' letters referenced.

Finally, Kovach testified that the possibility that GCG received the Hannas' letters and did not possibly classified them was "very, very remote." Because the Hannas' letters clearly referenced their names and the Markos suit, it would have required the processor to have blindly associated two different letters to two random records without regard for the letters' substance.

On cross, Kovach testified while every piece of mail would have been reviewed when it came in during the regular course of business, she did not

independently look back through every piece of mail that was received related to Markos as that would have required reviewing tens of thousands of documents, at a minimum. She also testified it was theoretically possible for someone who opted out to not have been added to the opt out list, though it was very unlikely because it would have required a series of mistakes.

Defendant next called William Hanna to the stand. William Hanna testified that he learned of the Markos suit through the class action notice, which was mailed to him. He does not know if he still has a copy of the notice and has not had the opportunity to look for the notice due to work and personal obligations. After discussing the notice with his wife, he stated that they elected to opt out. They had previously made a claim in another Wells Fargo class action, Malta, and after some research, he learned they had only received checks for approximately $3.07. They decided that since Wells Fargo kept violating the law and if they made a claim it would be for very little, they should opt out to be able to sue for all of the calls Wells Fargo had made to them.

He doesn't remember how long there was between the Hannas' receipt of the notice and the decision to opt out, but he remembers drafting the letter on October 23, 2016 (because the letters were dated that date). He said he believes he would have included the confirmation number on his letter if he had had the notice with him at the time the letter was drafted. His letter does not contain this number, however. He also stated that he scanned in his letter on his home printer

6

to make a copy, but he did not think the printer[3] made an electronic file as a result.

With regard to where the letter was drafted, William Hanna testified that he and his wife individually drafted their opt out letters on her laptop, which had a virus, even though the Hannas owned a desktop PC and another laptop that were not infected with a virus. As for why the Hannas elected to use the infected computer, William Hanna stated that Cynthia Hanna's laptop was "right there" and it was "easy to do" on her computer. He testified that he thought Cynthia Hanna drafted her letter first, and then he took her letter and made it a "bit more formal" with a header and other changes.

He also testified that Cynthia Hanna placed the letters in an envelope and mailed them. They were not sent certified mail or return receipt requested; the Hannas did not send the letters in any way to facilitate tracking. He testified that they did not do anything to follow up after mailing because their life was so busy at that point with substantial personal and professional obligations, including car accidents, a high risk pregnancy, and a miscarriage. Although, in the Summer of 2017, the Hannas prepared for and filed suit against Defendant in Ohio. He explained that they ultimately filed suit because they kept getting inundated by calls from Wells Fargo while visiting his father over Memorial Day weekend 2017.

---

[3] He also stated they no longer own this printer.

7

William Hanna testified that they did not mention the class action letters to any third parties at the time they were drafted.

William Hanna testified that he began thinking about the opt-out letter in Spring 2018. He stated he could not remember if he had opted out in Markos or if he had filed a claim as he had in the prior class action that occurred about five years ago, Malta. With the baby and all of their personal obligations, the Hannas had become very disorganized, so it took them a while—a few weeks—to locate the box with the opt out letters. William Hanna testified he did not know if he also filed the notice in his records alongside the opt-out letters, but the opt-out letters were located on March 26, 2018. William Hanna testified that at first they only brought his letter to their attorney, because they thought they only needed one, but after they learned they needed two, Cynthia Hanna brought her letter to their attorney afterward.

In response to the Court's questioning, William Hanna testified that when his attorney was negotiating a possible stipulation that the Hannas were Markos class members, he had not yet remembered the letters at that time. William Hanna did not know why, if his attorney had received his opt-out letter in March 2018, that his attorney would state months later that he was going to amend their Ohio complaint to remove claims barred by Markos. He also did not know why the first time the opt-out letters were mentioned by his counsel was in June 2018.

Next, Cynthia Hanna testified. Her testimony was identical to that of William Hanna's, except she also offered the following additional facts. She

testified that she did not recall if there were one or two claims notices sent, but that the Hannas no longer have the Markos class notice. She also believes she mailed the letters on a Tuesday, which was her day off at the time. And she stated that she never cashed her $3.00 Malta check and that Markos was the first class action for which she mailed an opt-out letter.

Following the hearing, Defendant filed an affidavit which stated that the Hannas actually received four checks from the Malta settlement, two for $84.78 and two for $3.07. In response, the Hannas' counsel filed an affidavit which stated that he received from the Hannas a variety of documents in Spring 2018, including the two Malta related checks discussed above. The Hannas' counsel also stated that while his clients were looking for the opt out letters and he was asking for additional time, Defendant threatened "deadlines and consequences" if the Hannas did not enter into a stipulation. He also stated that he received a copy of William Hanna's letter just before the first filing made in this Court in May 2018 and he received Cynthia Hanna's opt out soon after. Counsel also states that the Hanna affidavits "contain a small error pertaining to the date the opt-out letters were provided" to him, but he does not state the actual date they were provided.

### 2. Discussion

The All Writs Act provides, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28

9

U.S.C. § 1651(a). "In allowing courts to protect their 'respective jurisdictions,' the Act allows them to safeguard not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1099 (11th Cir. 2004) (internal footnotes omitted). "Such writs may be directed to not only the immediate parties to a proceeding, but to 'persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and . . . even those who have not taken any affirmative action to hinder justice.'" Id. at 1100 (quoting United States v. N.Y. Tel. Co., 434 U.S. 159, 174 (1977)).

The Court finds that an injunction is appropriate in this case. Essentially, the Court does not find the Hannas' testimony credible because of the sheer number of implausible occurrences that would have all had to occur for their version of facts to be true. For the Hannas' version to be true:

- They would have both drafted an opt-out letter, which they know to be important, on a virus-ridden computer when two other unaffected computers were in the house (with one of which being a laptop that could have also been used on the couch in the living room);
- They were in possession of the class action notices at the time they drafted the letters, but did not place their confirmation numbers on their letters;

- They made a copy of the documents on their home printer, which they no longer have in their possession;
- Then, they threw away the virus-ridden laptop so there would be no way to possibly recover a copy of the letter;
- Then, they mailed letters they knew to be important without any form of tracking;
- Then, they never followed up to make sure their opt outs were received, even after they filed suit on the exact same allegations some nine months later;
- The Hannas saved a copy of the letters but did not also save the notice in the same place, to the extent it was saved at all;
- GCG, who has a very complicated process to assure that letters do not get lost, somehow lost two different letters; and,
- The Hannas then "forgot" for many months that they ever filed the opt-out letters, even after they had filed suit on identical claims.

The Court understands that the Hannas have experienced a very tough two years, but the Court does not find it credible that they mailed their opt-out letters. The Court is also concerned about the discrepancies in the Hannas' affidavits. In their original affidavits, they stated that they provided their letters on the same date as the meet and confer in the Ohio matter, March 26, 2018, but even now counsel does not have a date for when those letters were actually provided to him besides "just before making the first filing in May 2018 with this Court." Dkt. No.

11

[168] ¶ 6. Even assuming it was merely a mistake that the Hannas provided their letters in May instead of March 2018, because both Hannas signed affidavits in July 2018, the Court does not find it credible that both Hannas and their attorney would not have caught this discrepancy so close in time to the date they provided their letters. The Court simply finds that there is no evidence that the letters were ever sent, especially in light of GCG's strict standards.

The Court therefore **ENJOINS** William and Cynthia Hanna from pursuing any claims which were barred by the Markos class action, or claims that occurred on or before January 30, 2017, in Civ. A. No. 2:17-cv-0844-JLG-EPD (S.D. Ohio).

**IT IS SO ORDERED** this 12th day of October, 2018.

*(signature)*
**Leigh Martin May**
**United States District Judge**